**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEITH MATHIS, *et al.*,            ) | |
|                                  ) | |
|                  *Plaintiffs*,            ) | |
|                                  ) | |
|     v.            )     Case No. 1:07-cv-01155-RMU | |
|                                    ) | |
| GEO GROUP INC., *et al.*,            ) | |
|                                  ) | |
|                 *Defendants.*            ) | |
|                                  ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
GEO GROUP, INC.'S MOTION TO DISMISS AND MOTION TO TRANSFER**

Plaintiffs Keith Mathis, *et al.*, by and through counsel, submit this Memorandum in opposition to Defendant GEO's Motion to Dismiss and Motion to Transfer.

## INTRODUCTION

Plaintiffs have sued GEO Group, Inc. ("GEO"), the United States Bureau of Prisons ("BOP"), and BOP Director Harley Lappin, on behalf of themselves and others similarly situated, for failing to provide adequate health care to inmates of Rivers Correctional Institution ("Rivers").  Defendant GEO operates Rivers under contract with the BOP.  Plaintiffs allege that the broken health care delivery system at Rivers is grossly inadequate and violates the Eighth Amendment; violates the Rehabilitation Act, 29 U.S.C. § 794(a); constitutes common-law negligence; and breaches GEO's contract with the BOP to operate Rivers ("GEO Contract") of which Plaintiffs are intended third party beneficiaries.

Plaintiffs chose as their forum the judicial district where they have resided as citizens; where they were sentenced as D.C. Code offenders; where the federal Defendants reside; and where GEO has benefited for many years from transacting business.  Yet GEO now seeks to avoid this Court's jurisdiction and adjudicate in a foreign forum injuries suffered by D.C. Code

offenders and residents, all of which arose out of GEO's conduct that occurred in material part in the District of Columbia.  The Court should reject GEO's effort.

The Court should deny GEO's motion to dismiss for want of personal jurisdiction because the Complaint contains detailed allegations demonstrating that Plaintiffs' claims arise from GEO's contacts with this forum.  Those allegations include a description of GEO's extensive business activities in and directed at the District, and the links between those business activities and the claims in this lawsuit.  Having accepted the benefits of transacting business in the District, and having profited from those business activities for many years, GEO cannot now avoid the corresponding obligation of answering claims in the District that arise out of that same conduct.  Because this Court plainly has personal jurisdiction over GEO with respect to the specific claims asserted in this lawsuit, GEO's motion to dismiss this case for lack of personal jurisdiction should be denied.

GEO's alternative motion to transfer venue should also be rejected.  Two of the Named Plaintiffs live in the District of Columbia, and much of the evidence that is relevant to Plaintiffs' claims is found in this jurisdiction.  Moreover, the federal courts of the District of Columbia have a special interest in safeguarding the Constitutional rights of D.C. residents who are sentenced to imprisonment under D.C. law.  The Plaintiffs' choice of forum should not be thwarted by GEO's effort to move this suit to a foreign forum that will be inconvenient for many of the Plaintiffs and their witnesses and that has no comparable "public interest" in the well-being of D.C. residents and persons who are sentenced under D.C. law.  Because both the private and public interest factors weigh heavily in favor of this forum, GEO's venue transfer motion should also be denied.

## BACKGROUND

The named Plaintiffs are ten District of Columbia citizens who were sentenced in District of Columbia courts for violations of the District of Columbia Code.  Compl. ¶ 10-19.  They seek to represent a class of current and former prisoners at Rivers, the vast majority of whom are also citizens of the District of Columbia and D.C. Code felony offenders.  Compl. ¶ 32.

This case arises out of developments in recent years that have moved many D.C. offenders out of prisons that are operated or supervised directly by the D.C. Department of Corrections and into private, for-profit prisons that are operated under contract with the BOP.  In 1997, Congress mandated that D.C. Code felony offenders serve their terms of incarceration in federal penal institutions.  Compl. ¶ 28-29, 32; National Capital Revitalization and Self-Government Improvement Act of 1997, 111 Stat. 712, *codified at* D.C. Code § 24-101.  This change in the law created new business opportunities for companies in the private corrections industry such as GEO, and, shortly thereafter, GEO pursued a federal contract to "serve a population principally consisting of District of Columbia sentenced felons" at a facility to be built "within 300 miles of the United States Capitol Building, Washington, D.C."  Ex. 1 to Estrada Decl. (GEO Contract, Part 1, Section B  ("The Schedule") at 1.)  In order to win the contract to house D.C. Code felony offenders, GEO directed extensive and continuous communications at persons and entities located in the District of Columbia.  Compl. ¶¶ 30-34.  Among other things, GEO engaged in targeted sales and marketing activities directed at the District, and directed written, telephonic, and electronic communications at the District in pursuit of its commercial interests.  *Id*. ¶ 30.

GEO's predecessor corporation was ultimately awarded the GEO Contract in 2000.  *See* GEO Contract, Contract Award at 1.  Since that time, GEO has engaged in regular and extensive

reporting to persons and entities in the District of Columbia concerning GEO's business operations, the treatment and supervision of D.C. offenders, and its provision of medical care to the Named Plaintiffs and other members of the class. *Id.* ¶¶ 34, 35. By entering into the contract, GEO also expressly agreed to comply with and implement any new legal requirements that might arise, including those required by "DC law." GEO Contract, Statement of Work at 7 (emphasis added). By submitting to the law of the District of Columbia, GEO has also agreed to permit inspections of its facilities by government authorities, including officials of the District of Columbia. *See* D.C. Code § 24-101(h)(4) (describing the duties of the District of Columbia Corrections Information Council, which include conducting unannounced inspections of correctional facilities housing D.C. sentenced felons and reviewing "inmate files and records, . . . [and] administrative and policy directives of the facility . . .").

Finally, in addition to its many contacts with the District of Columbia that pertain directly to the GEO contract, GEO also maintains other systematic and continuous contacts with the District of Columbia, causing it to engage a registered agent in the District of Columbia since 1996. *See* Compl. ¶ 30; *see also* Ex. 2 to Estrada Decl. (attaching copy of D.C. Dep't of Consumer & Regulatory Affairs, Basic Business License Information for GEO registered agent).

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER GEO BASED ON GEO'S PURPOSEFUL AND SUBSTANTIAL CONTACTS WITH THIS FORUM THAT GIVE RISE TO THIS LAWSUIT.

Plaintiffs' burden of establishing personal jurisdiction is far from onerous at this early stage of the litigation. "[P]laintiff[s] need only make a prima facie case for personal jurisdiction to survive a motion to dismiss" on personal jurisdiction grounds. *Fletcher v. D.C.*, 481 F. Supp.

2d 156, 168 (D.D.C. 2007); *see also Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (plaintiffs "can satisfy [their] burden with a <u>prima facie</u> showing.").

In determining whether personal jurisdiction exists, "plaintiffs' assertions of fact are presumed true" where, as here, they are not "directly contradicted by affidavit, or other evidence." *AGS Int'l Serv. S.A. v. Newmont USA*, 346 F. Supp. 2d 64, 73 (D.D.C. 2004); *see also Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) ("[F]actual discrepancies appearing in the record must be resolved in favor of the plaintiff").  Moreover, plaintiffs are not limited to "evidence that meets the standard of admissibility required by the district court," but instead may rely on their "pleadings bolstered by such affidavits and other written materials as [they] can otherwise obtain."  *Mwani*, 417 F.3d at 7.

Here, the allegations in the Complaint easily establish a <u>prima facie</u> case for personal jurisdiction over GEO.  Moreover, GEO's <u>sole</u> defense to personal jurisdiction -- the so-called "government contacts" exception -- is without merit.

## A.    This Court Has Personal Jurisdiction Over GEO

The Complaint contains detailed allegations concerning GEO's extensive contacts with the District of Columbia and its residents.  These allegations are more than sufficient to establish personal jurisdiction over GEO under governing law.

Because GEO is a nonresident party, *see* Compl. ¶ 21, this Court looks to D.C. law to determine whether GEO is subject to federal district court jurisdiction.  *See* Fed. R. Civ. P. 4(k)(1)(A).  The D.C. long-arm statute confers specific jurisdiction over a nonresident defendant for a claim "arising from" the defendant's "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1).  Courts in this Circuit have held that this provision "is to be given 'an <u>expansive</u> interpretation that is coexistent with the due process clause.'" *Fletcher*, 481 F. Supp. 2d at 169 (emphasis added), *citing Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

This effectively "collapse[s]" the statutory long-arm and constitutional due process analyses. *See Kroger v. Legalbill.com LLC*, No. 04-2189 (ESH), 2005 WL 4908968, at *6 (D.D.C. Apr. 7, 2005).

In applying this rule, "courts in this jurisdiction have consistently held that the only nexus required by . . . §13-423(a)(1) . . . between the District of Columbia and the nonresident defendant is some affirmative act by which the defendant brings itself within the jurisdiction and establishes minimum contacts." *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 57 (D.D.C. 2005) (citation and quotation marks omitted). This Court accordingly has personal jurisdiction over a defendant where -- as here -- (1) the defendant voluntarily and deliberately undertook a business activity in the District, and (2) the claims at issue arise out of or relate to that business activity. *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000); *accord Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104-05 (D.D.C. 2002).

       1.      **"Transacting business": GEO has voluntarily and deliberately undertaken business activity in the District of Columbia.**

Courts in this Circuit have adopted a broad reading of the "transacting business" prong of D.C. Code §13-423(a)(1). *See Sheikh v. Mr. K's Restaurant, Inc.*, No. 04-00515, 2005 WL 1387591, at *3 (D.D.C. June 10, 2005) (citation omitted) (holding that even "a single act alone may be sufficient" to meet the "minimum contacts" required under the long-arm statute and due process.).

A nonresident defendant's "conduct and connection with the forum state" need only be "such [that] he should reasonably anticipate being haled in to court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (referring to this as a "fair warning" requirement). Accordingly, federal and state courts in the District of Columbia have held that transactions need

not be extensive in number, duration or scope in order to give a defendant "fair warning." For example, contacts with the District of Columbia consisting largely of phone conversations, letters, and isolated business trips can be sufficient. *See, e.g., Sheikh*, No. 04-00515, 2005 WL 1387591, at *5 (mail and telephone); *Kroger*, 2005 WL 4908968, at *5 (contacts included phone, mail, and "at least one business trip to the District"); *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 74 (D.D.C. 1992) (phone calls and mailings directed at D.C.); *Unidex Sys. Corp. v. Butz Eng'g Corp.*, 406 F. Supp. 899, 902 (D.D.C. 1976) (one lunch, a several-hour tour of a work facility, an office meeting, and a proposal submitted in D.C.); *Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C. 1981) (mail and telephone); *cf. Fletcher v. D.C.*, 481 F. Supp. 2d at 170 (defendants who "supervise[] D.C. prisoners" transact business in D.C.).

GEO has maintained <u>extensive</u> contacts with the District. Those contacts, which are detailed in paragraphs 30 through 35 of the Complaint, far exceed the "minimum contacts" necessary to assert jurisdiction over an out-of-state defendant.

The Complaint alleges that GEO maintains a continuing business presence in the District; has competed for and won more than a dozen contracts from the BOP, the U.S. Marshals Service, and U.S. Immigrations and Customs Enforcement; and maintains a registered agent in the District. Compl. ¶ 30. Several years ago, GEO sought, competed for, and won the contract to operate the Rivers facility by purposefully taking advantage of extensive commercial contacts with the District of Columbia. Compl. ¶¶ 30-31. The Rivers Request for Proposal specifically sought a private contractor to house and care for persons convicted of D.C. Code violations. Compl. ¶ 31. The vast majority of those D.C. Code offenders are District residents. GEO negotiated the terms of and executed the GEO Contract in the District of Columbia. *See id.* Under the terms of this contract, GEO submitted to long-term oversight and management in the

District of Columbia, and agreed to perform substantial and material obligations in the District related to the care and treatment of D.C. residents transferred to the Rivers facility. Compl. ¶¶ 33-34 (describing detailed health care notification, reporting and approval requirements that occur in the District of Columbia). And GEO also agreed to "comply with and implement . . . DC law" as part of its contract for this facility. GEO Contract, Statement of Work at 7.

On very similar facts, another federal district court held that it had jurisdiction over an out-of-state prison operator that contracted to provide prison services to Missouri prisoners. *See In Re Texas Prison Litig.*, No. 98-7110-TX-C-5, 41 F. Supp. 2d 960 (W.D. Mo. Feb. 12, 1999). The court determined that the Missouri long-arm statute, which like D.C.'s is co-extensive with the due process clause, authorized the district court to exercise personal jurisdiction over a county in Texas housing Missouri prisoners where "[t]he [prison] contract required the [defendant] to notify Missouri, in writing, and to obtain advance authorization for nonemergency medical, dental or psychiatric care not covered under enumerated routine services"; report such events as inmate deaths and escapes to Missouri; and "receive[] continuing payments from Missouri for the housing and supervision of Missouri prisoners." *Id.* at 964. The GEO Contract contains similar reporting requirements, and more. *See* GEO Contract, Statement of Work at 34-35 (GEO required to report medical policies and procedures, deaths, and emergency care outside the facility), 28-29 (GEO required to report "significant incidents" such as escapes); GEO Contract, Section B ("The Schedule") at 2-4 (pricing schedule for contract performance); *see also* Compl. ¶¶ 34, 36. GEO therefore plainly "received fair notice from the contract documents and the course of dealing that [it] might be subject to suit" in the District. *Burger King*, 471 U.S. at 487.

GEO's contacts with the forum, as alleged in the Complaint, are "voluntary and deliberate" and not "random, fortuitous, tenuous and accidental." *Shoppers Food Warehouse*, 746 A.2d at 329. As a consequence, GEO has transacted business in the District within the meaning of the District's long-arm statute.

**2.    "Arising From":  The Claims In This Suit Arise From And/Or Relate To GEO's Business Dealings In The District.**

In order for the Court to assert jurisdiction over GEO under Section 13-423(a)(1), the Plaintiffs' claims also must arise from GEO's contacts with the District. Plaintiffs easily meet this requirement as well.

D.C. courts have emphasized that the "arising from" requirement in the D.C. long-arm statute must be read broadly. In a leading decision construing the long-arm statute, the D.C. Court of Appeals held that the "arising from" language "bars only claims <u>unrelated to</u> the acts forming the basis for personal jurisdiction." *Shoppers Food Warehouse*, 746 A.2d at 333 (emphasis added). Because courts require only a "discernible relationship" between the claim and the business transacted, the "arising from" requirement should be interpreted "flexibly and synonymously with 'relate to' or having a 'substantial connection with.'" *Id*. at 329, 335; *accord Kroger*, 2005 WL 4908968, at *7 (noting that there is a "discernible relationship" if minimum contacts exist). Courts must focus on the relationship among the defendant, the forum, and the litigation, not on whether a defendant's conduct was directed toward a particular plaintiff. *Shoppers Food Warehouse*, 746 A.2d at 329.

The claims alleged in the Complaint are related directly to GEO's contacts with the forum. All of Plaintiffs' claims against GEO are based on GEO's conduct toward D.C. Code offenders who were and are incarcerated at Rivers pursuant to a contract that GEO solicited, negotiated, and performs, in part, in the District of Columbia. Compl. ¶¶ 30-34. The inadequate

9

systems, policies, and practices that are condoned or affirmatively authorized by GEO are crafted and maintained in consultation with, and approved by, the BOP in the District of Columbia. Compl. ¶¶ 35-39. The GEO Contract expressly requires GEO to comply with District of Columbia law, *see* GEO Contract, Statement of Work at 7, including all laws and regulations "governing the delivery of health services." *Id*. at 32; Compl. ¶ 35. That contract also requires GEO to have written plans and procedures for medical, mental health, and dental services, and to submit those plans and procedures to the BOP in the District of Columbia for "review and concurrence" in order to facilitate the proper care and treatment of District inmates housed at Rivers. GEO Contract, Statement of Work at 5-6, 34; Compl. ¶ 35.

In short, Plaintiffs' claims are "related to" acts that have taken place in the District. Accordingly, because the Plaintiffs' claims arise out of GEO's contacts with the forum, jurisdiction is proper over GEO.

### B.    The "Government Contacts" Exception Does Not Apply.

GEO does not dispute that it has minimum contacts with the District of Columbia. Nor does it dispute that the Plaintiffs' claims arise out of those contacts. Instead, GEO argues that the Court is precluded from considering those contacts in its jurisdictional analysis under the so-called "government contacts" exception. *See* GEO Mem. at 3. GEO is wrong.

The "government contacts" exception is rooted in the First Amendment. It is intended to ensure that citizens are able to petition the federal government in D.C. without automatically submitting to the jurisdiction of the D.C. courts, a result that could be viewed as chilling First Amendment rights. In this way, the "government contacts" exception "protect[s] one's right to petition the government for a redress of grievances, without fear of the threat of suit if their contacts were limited to asserting that constitutional right." *Rose v. Silver*, 394 A.2d 1368, 1374

(D.C. 1978). The D.C. Court of Appeals has made clear, however, that the exception is narrowly confined to protecting First Amendment interests: "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by the long-arm statute and are sufficient to withstand a traditional due process attack." *Id.* at 1374; *see also Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 932 n.10 (D.C. Cir. 1981); *Johns v. Rozet*, 770 F. Supp. 11, 19 (D.D.C. 1991).

GEO did not enter the District of Columbia in order to petition the government. It entered this forum in pursuit of commercial interests -- to win a contract to operate a prison housing D.C. prisoners. This simply is not conduct that implicates any First Amendment interest, and the "government contacts" exception does not apply. *See, e.g.*, *World Wide Minerals, Ltd. v. Kaz.*, 116 F. Supp. 2d 98, 105-106 (D.D.C. 2000) (embassy meetings involving the pursuit of a proprietary interest fall outside scope of exception); *Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 75 & n.9 (D.D.C 1992); *Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407, 411 (D.D.C. 1978) ("there is nothing unseemly in subjecting corporations to personal jurisdiction in the District when those corporations' contacts with the District involve substantial commercial relations with the federal government acting in its proprietary capacity"), *aff'd*, *Nalls v. Rolls-Royce, Ltd.*, 612 F.2d 587 (D.C. Cir. 1980).

GEO's effort to shoehorn its commercial contacts into the "government contacts" exception relies on *Savage v. Bioport*, *Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006). That reliance is misplaced.

In that case, the Court concluded that it lacked personal jurisdiction over a defendant that had contracted with the Department of Defense to provide an anthrax vaccine. *Savage* bears virtually no resemblance to this case: the contract negotiations in *Savage* occurred outside of the

District; the defendant maintained no registered agent or other business presence in the District; and the defendant had transacted no business with any entity in the District of Columbia on matters giving rise to the lawsuit. *Id.* at 58. Nor did the plaintiff in *Savage* explain how the defendant's contacts with the District were related to the plaintiff's claims. *Id.* at 61. On these facts, the district court held that personal jurisdiction did not exist over the defendant.

In a single paragraph, the Court then stated that one category of defendant's contacts with the Department of Defense should be excluded from the jurisdictional analysis under the "governmental contacts" exception. *Id.* at 62. The purchase contract at issue had been negotiated and formed in Maryland and Virginia, but the defendant had also approached the Defense Department (apparently in the District) "in an attempt to <u>influence government action</u>" concerning the anthrax vaccine. *Id.* (emphasis added). Applying the "government contacts" exception, the Court held that this category of lobbying contacts could not be considered in the jurisdictional analysis. *Id.*

*Savage* simply does not support GEO's efforts to exclude all of its commercial contacts from the jurisdictional analysis in this case. In sharp contrast to *Savage*, Plaintiffs here are all domiciled and/or resident in D.C., the contract solicitations and negotiations occurred in the District, GEO performs contract obligations in D.C., GEO maintains a registered agent in D.C., GEO has transacted business in D.C. concerning matters giving rise to this lawsuit, and GEO has not disputed that Plaintiffs' claims arise out of the contacts alleged in the Complaint.

Most fundamentally, GEO's government contacts do not involve petitioning the government -- its contacts with BOP were and are purely commercial in character. GEO sought to win a government contract and continues to maintain contacts with BOP in an effort to satisfy its obligations under that contract. Therefore, the First Amendment -- and the "government

contacts" exception -- simply has no place in the analysis and does not stand in the way of

obtaining personal jurisdiction over GEO in this District.

## II.    BECAUSE THE PUBLIC AND PRIVATE INTERESTS WEIGH IN FAVOR OF THIS FORUM, THE  CASE SHOULD NOT BE TRANSFERRED TO NORTH CAROLINA.

In the alternative, GEO has moved to transfer this case to the Eastern District of North

Carolina.  GEO's alternative motion fares no better.

On a motion to transfer venue under 28 U.S.C. § 1404(a), the moving party bears the

burden of showing that the transferee forum is clearly more convenient.  *Air Line Pilots Ass'n v.*

*Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987).  GEO has not met its burden.  Proper

evaluation of the factors considered in deciding whether to transfer a case, and particularly those

factors that this Court has emphasized in the context of prisoner litigation, demonstrates that the

District Court for the District of Columbia is the proper venue for this case.

### A.    Private Interest Factors

#### 1.    The Plaintiffs' Choice of Forum

Courts in this District place substantial emphasis on the plaintiffs' choice of forum in

prisoners' rights litigation.  This Court has held that "it is almost a truism that a plaintiff's choice

of a forum will <u>rarely be disturbed</u> . . . unless the balance of convenience is strongly in favor of

the defendant." *Jackson v. District of Columbia*, 89 F. Supp. 2d 48, 52-53 (D.D.C. 2000)

(emphasis added), *vacated on other grounds*, 254 F.3d 262 (D.C. Cir. 2001); *see also Shakur v.*

*Federal Bureau of Prisons*, 950 F. Supp 3, 4 (D.D.C. 1997).  This well-settled rule places a

heavy burden on GEO to show why the Plaintiffs' choice of forum should not be respected.

GEO asserts that 28 U.S.C. §1404(a) requires that prisoner petitions should be transferred

to the judicial district in which the plaintiff's prison facility is located "absent extraordinary

circumstances." *See* Def.'s Mem. at 6-7; *see also id*. at 4 (arguing that "actions brought by

inmates against The GEO Group, and its predecessor Wackenhut Correctional Corporation" should be transferred to the judicial district in which the "facility in question is located."). There is no such rule. *See Shakur*, 950 F. Supp at 4 (rejecting a similar argument that the statute "requir[es] transfer of a prisoner's case to the site of incarceration").

The three cases that GEO cites to support its assertion are inapposite. GEO first cites two unpublished decisions in which the Court transferred cases brought by individual *pro se* plaintiffs. *See* Def.'s Mem. at 4 (citing *Jackson v. Federal Bureau of Prisons*, No-06-592(GK), 2006 WL 2434938 (D.D.C. Aug. 22, 2006) and *McCullough v. Federal Bureau of Prisons*, No. 05-374 (HHK), 2006 WL 667166 (D.D.C. Mar. 15, 2006)). The plaintiffs in both cases brought claims arising out of discrete acts that occurred entirely outside of the District, and the Court transferred those cases to other judicial districts after concluding that personal jurisdiction was lacking in the District of Columbia.

Here, by contrast, the Court has personal jurisdiction over GEO, and the Complaint alleges that the acts giving rise to Plaintiffs' claims occurred in the District of Columbia, as well as in North Carolina. Moreover, unlike the plaintiffs in *Jackson* and *McCullough*, the Named Plaintiffs in this case include current residents of the District of Columbia. Compl. ¶¶ 10-19. Much of the evidence and many of the witnesses with knowledge relevant to Plaintiffs' claims are also located in the District. *Id.* Therefore, these two cases lend no support for GEO's position.

The other cases GEO cites also fail to support its argument. GEO offers *Rogers v. Federal Bureau of Prisons* for the proposition that "when an inmate not incarcerated in the District of Columbia brings a petition for mandamus or declaratory judgment seeking resolution of issues not related to the District of Columbia, the court should, absent extraordinary

circumstances, transfer the action as a matter of course to the district of confinement." Def.'s

Mem. at 6-7 (*quoting Rogers*, 257 F. Supp. 2d 147, 148 (D.D.C. 2003) (citing *Young v. Director,*

*United States Bureau of Prisons*, 367 F.2d 331 (D.C. Cir. 1966) and *Starnes v. McGuire*, 512

F.2d 918 (D.C. Cir. 1974) (en banc))).   In each of these cases, courts granted motions for

transfer only after concluding that the District of Columbia had little or no interest in the cases

because the plaintiffs were neither incarcerated *nor* sentenced in the District of Columbia.[1]

Because a plaintiff's choice of forum is presumptively entitled to great respect, and

because GEO fails to meet its heavy burden to overcome that presumption, this factor weighs

heavily against transfer.

### 2.    The Defendants' Desire for an Alternative Forum

By definition, any defendant that moves to transfer venue has expressed its preference for

another forum, but this factor has little if any significance here.   GEO's preference must be

weighed against the fact that all of the Named Plaintiffs were D.C. residents when sentenced as

District of Columbia Code violators; all were sentenced in the D.C. courts; all prefer to have

their claims heard in the District; and two currently live in D.C.   Moreover, the other two

defendants in this case reside in the District of Columbia, and they routinely litigate prisoners'

rights cases in this forum.  *See, e.g.*, *Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76

(D.D.C. 2006); *Tanner v. Fed. Bureau of Prisons*, 433 F. Supp. 2d 117 (D.D.C. 2006).

---

[1] GEO ignores that in *Young*, the court specifically noted that it might have reached a different result with respect to transfer if the plaintiffs had established a connection with the District of Columbia.  *See Young*, 367 F.2d at 333 n.8 ("different considerations may well apply to actions instituted by inmates of the Lorton Reformatory, Lorton, Virginia.")  GEO's omission is particularly notable here, as this litigation concerns GEO's management of a facility that, like Lorton Reformatory, houses persons who have been sentenced to incarceration by the District of Columbia courts for violations of District of Columbia law.

### 3.    *Whether the Claim Arose Elsewhere*

Defendants incorrectly assert that the facts giving rise to this action occurred only in the Eastern District of North Carolina. While Defendants' provision of inadequate medical care included conduct that took place in the Eastern District of North Carolina, the actions giving rise to that unlawful conduct include acts and omissions that occurred in the District of Columbia. The Complaint contains detailed allegations linking Plaintiffs' claims to Defendants' conduct that occurred in or was directed at the District, including GEO's agreement to provide adequate health care to District of Columbia prisoners transferred to its Rivers facility; improper or inadequate health care and mortality reports that were submitted to the BOP in the District; and the failure of BOP officials in the District to provide adequate oversight and supervision of its contractor GEO. Compl. ¶¶ 10-19. Because Plaintiffs' claims arise out of conduct that occurred both in the District of Columbia and in North Carolina, this factor does not favor transfer.

### 4.    *The Convenience of the Parties*

Two of the Named Plaintiffs -- and two of the three Defendants -- are currently located in the District of Columbia. All of the parties, including GEO, are represented by D.C. counsel. *See* Def.'s Mem. at 12 (identifying Deborah J. Israel of Womble Carlyle's D.C. office as counsel to GEO). The District is a convenient forum for the parties and their counsel.

GEO's only argument in favor of transfer is that "class members" (not Named Plaintiffs) are "centralized at Rivers Correctional Institute." Def.'s Mem. at 8. GEO's argument about inconvenience on behalf of its litigation opponents should be given no weight, and the Court has held that this argument can be disregarded if a prisoner chooses the District of Columbia as his preferred forum. *See Starnes*, 512 F.2d at 927-28. This factor also weighs against transfer.

### 5.    The Convenience of the Witnesses

GEO does <u>not</u> dispute that the District is a convenient forum for witnesses who are parties, employees of parties, or experts.  *See* Def.'s Mem. at 8.  It argues for transfer, however, on the theory that this Court might not be able to compel GEO's <u>former</u> employees to appear at trial, and asserts that such former employees are "more likely" to reside within the subpoena power of a North Carolina court.  *See id.*

This argument ignores that if the case were transferred to North Carolina, the same issue would then arise with respect to the <u>BOP's</u> former employees, thereby eliminating any hypothetical benefit of transfer.  Moreover, GEO has not even asserted (much less submitted evidence) that it will need to call any former GEO employees at trial.  In addition, the ability to subpoena distant witnesses and to preserve testimony for trial by conducting depositions (irrespective of actual attendance) is the same here as it would be in the Eastern District of North Carolina.  Finally, GEO's explicit concession that "there should be little need to compel witnesses" at trial is all but fatal to its argument.  *See* Def.'s Mem. at 8.  This factor also does not weigh in favor of transfer.

### 6.    The Ease of Access to Sources of Proof

The allegations in the Complaint suggest that the principal sources of proof will be (i) plaintiffs residing in the District; (ii) medical providers in the District that treated plaintiffs before or after they were transferred to Rivers; (iii) records and witnesses located within the BOP in the District; (iv) records and witnesses located at the Rivers facility in North Carolina; and (v) records and witnesses located at GEO's headquarters in Florida.

Rivers asserts that it would be burdensome for its witnesses in North Carolina to travel to the District for trial.  Of course, it would be equally burdensome if the named Plaintiffs residing

in the District, their witnesses in this forum, and the witnesses from D.C. called by the federal defendants were all required to travel to North Carolina.  If one or more current Rivers inmates are called to testify at trial in the District, we are confident that the parties and this Court can develop suitable transportation procedures to minimize any inconvenience to GEO.  Moreover, it is noteworthy that, while the distances may be shorter in absolute terms, similar transportation arrangements would also need to be made were prisoners to be transported from the facility in Winton, North Carolina to the federal courthouse in Elizabeth City, Fayetteville, Greenville, New Bern, Raleigh, or Wilmington, North Carolina, where the Eastern District sits.

**B.     Public Interest Factors**

**1.     *The Transferee's Familiarity with the Governing Laws***

Plaintiffs' federal constitutional and Rehabilitation Act claims predominate the legal questions raised by this case.  *See* Compl. ¶¶ 40-44.  As GEO concedes, all federal courts are presumed equally capable of deciding issues of federal law.  *See* Def's Mem. at 10; *see also Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68 (D.D.C. 2005).  The presence of federal claims therefore does not weigh in favor of transfer.

GEO also concedes that the presence of a third-party beneficiary claim that may (or may not) require application of North Carolina law does not weigh in favor of transfer.  *See* Def.'s Transfer Memo at 10 n.1.

GEO's sole argument is that North Carolina law may apply to the court's analysis of the Plaintiffs' state law negligence claim.  Def's Mem. at 10.  But GEO misconstrues the nature of Plaintiffs' claim as one for medical malpractice under North Carolina statute.  *Id*. (citing N.C. Gen. Stat § 90-21.11 *et seq*.).  Plaintiffs have brought no such claim.  Plaintiffs' negligence claim rests on allegations that the systemic breakdown in health care delivery at the Rivers facility constitutes negligence by GEO -- not medical malpractice.  Compl. ¶¶ 80–83.  The Complaint

18

cites specific examples of GEO's negligence, including its negligent "hiring, training, supervision and retention of employees"; GEO's negligent failure to maintain an adequate level of qualified health care staff at Rivers; and GEO's negligent failure to monitor the staff and oversee adequate treatment. *See, e.g.*, Compl. ¶ 38. No expertise in the North Carolina medical malpractice statute is required in order to adjudicate Plaintiffs' negligence claim, a very standard claim that this Court is more than capable of resolving.

Because none of Plaintiffs' claims requires specialized knowledge of North Carolina law, this factor does not weigh in favor of transfer.

### 2.      *The Relative Congestion of the Courts*

GEO has presented a misleading analysis of this factor. GEO notes that as of 2006, there were more cases pending in federal district court in the District of Columbia (3,276) than in the Eastern District of North Carolina (1,391). *See* Def.'s Mem. at 11. From this fact GEO then leaps to the erroneous conclusion that courts in this judicial district are more congested than courts in North Carolina's Eastern District.

What this ignores, of course, is that there are more than four times as many active federal district court judges in the District of Columbia than there are in the Eastern District of North Carolina. *See* Ex. 3 to Estrada Decl. (comparing the dockets for the 13 active district court judges in the D.C. district court with the dockets for the 3 active district court judges in the Eastern District of North Carolina). As a result, in 2006, the D.C. District Court had 197 case filings per judge, compared with 469 filings per judge in the Eastern District of North Carolina. *See id.* During that same period, the D.C. District Court had an average of 274 pending cases per judge, versus 459 pending cases per judge in the Eastern District of North Carolina, a 68 percent

difference. *See id*. GEO's flawed "congestion" argument, when properly analyzed, plainly weighs against -- not for -- transfer.

>    **3.    The Local Interest of the District of Columbia and the D.C. District Court**

Both this Court and the District of Columbia have a strong local interest in the treatment of D.C. citizens who are sentenced by D.C. courts for violations of D.C. law. *See Jackson*, 89 F. Supp. 2d at 53 (recognizing that the D.C. District Courts have a significant interest in the "treatment of prisoners sentenced within its borders, many of whom undoubtedly are its citizens"). In *Jackson*, the Court analyzed the "local interest" factor in the context of D.C. offenders who were incarcerated in Lorton, Virginia, pursuant to a contract between the D.C. Department of Corrections and the Commonwealth of Virginia. In denying the defendants' motion to transfer the case to the Eastern District of Virginia, the Court held that a D.C. court's local interest in alleged harm to D.C. inmates incarcerated at Lorton was no less significant than a Virginia court's interest in alleged harm to prisoners sentenced in Virginia. *Id.* The fact that the D.C. offenders were physically incarcerated in Virginia did not diminish that interest.

 Moreover, many -- and probably most -- of the D.C. citizens who are subjected to unconstitutionally substandard medical care while incarcerated at Rivers will one day return to the District. The harms inflicted on these men at Rivers are likely to impact this community through increased health care expenditures, a greater demand for social services, and perhaps in other untoward ways that cannot be anticipated. The District of Columbia plainly has a substantial interest in ensuring that its citizens receive appropriate care while incarcerated at Rivers.

Because the District of Columbia and the D.C. courts have a paramount interest in ensuring that D.C. offenders are not subjected to unconstitutional or other unlawful treatment by

GEO, and because North Carolina has no comparable "local interest" in D.C. offenders and residents, this factor weighs heavily against transfer.

* * * *

Application of each of the relevant facts weighs against transfer of the case to North Carolina.

## CONCLUSION

Accordingly, GEO's motion to dismiss or to transfer this case to the Eastern District of North Carolina should be denied.

## REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on GEO's motion to dismiss or to transfer this case.

Respectfully submitted,

    /s/  Danielle M. Estrada

Donald L. Kahl (DC Bar # 489472)      Anthony Herman (DC Bar # 424643)
Philip Fornaci (DC Bar # 434824)      Donald J. Ridings Jr. (DC Bar # 466808)
Deborah Golden (DC Bar # 470578)      Danielle Estrada (DC Bar # 494517)
Ivy A. Lange (DC Bar # 488147)        COVINGTON & BURLING LLP
WASHINGTON LAWYERS' COMMITTEE FOR     1201 Pennsylvania Avenue N.W.
   CIVIL RIGHTS AND URBAN AFFAIRS     Washington, D.C.  20004
11 Dupont Circle N.W.                 202.662.6000 (ph)
Suite 400                             202.778.6000 (fax)
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on the 9th day of August, 2007, a copy of the foregoing was electronically filed.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Deborah J. Israel, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
*Counsel for Defendant GEO Group, Inc.*

Karen L. Melnik
U.S. Attorney's Office
555 Fourth Street, N.W.
Room E4112
Washington, D.C. 20530
*Counsel for Defendants Federal Bureau of Prisons and Harley Lappin*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DECLARATION OF DANIELLE M. ESTRADA**

Danielle M. Estrada, under penalty of perjury, hereby declares as follows:

I am an associate in the law firm of Covington & Burling LLP, attorneys for Plaintiffs Keith Mathis *et al.* in this matter. I am licensed to practice law in the District of Columbia, and am a member in good standing of the bar of the United States District Court for the District of Columbia. I submit this Declaration in support of Plaintiffs' Opposition to GEO Group Inc.'s Motion to Dismiss and Motion to Transfer.

1.      Attached as Exhibit 1 are true and correct copies of contract documents obtained from the BOP reflecting the contract awarded by the Bureau of Prisons ("BOP") to Wackenhut Corrections Corporation (predecessor to the GEO Group, Inc.) on March 7, 2000. The attached documents include the Contract Award, Conditional Acceptance of Final Offer of Wackenhut Corrections Corporation dated April 13, 1999, Pricing Schedule, and Part I ("The Schedule"), which includes the District of Columbia Sentenced Felons Phase II Statement of Work, from the BOP's Request for Proposal PCC-0004.

2.      Attached as Exhibit 2 is a true and correct copy of the results of a search of the District of Columbia Department of Consumer & Regulatory Affairs online organization

1

registration search engine.  The information concerning the GEO Group Inc.'s registered agent in

the District of Columbia was obtained from http://mblr.dc.gov/corp/lookup/status.asp?id=181299

(last viewed on August 9, 2007).

        3.     Attached as Exhibit 3 are true and correct copies of the Federal Court

Management Statistics reports on the United States District Court for the District of Columbia

and the United States District Court for the Eastern District of North Carolina for the fiscal year

ending September 30, 2006, which were obtained from the U.S. Courts website *at*

http://www.uscourts.gov/fcmstat/index.html (last viewed on August 9, 2007).

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed this 9th day of August, 2007 in Washington, D.C.

/s/ Danielle M. Estrada
Danielle M. Estrada

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEITH MATHIS, *et al.*,                                )
                                                       )
                            *Plaintiffs*,              )
                                                       )
       v.                                              )   Case No. 1:07-cv-01155-RMU
                                                       )
GEO GROUP INC., *et al.*,                              )
                                                       )
                            *Defendants.*              )
                                                       )

**PLAINTIFFS' OPPOSITION TO GEO GROUP, INC.'S**
**MOTION TO DISMISS AND MOTION TO TRANSFER**

# EXHIBIT 1

# GEO Contract

# CONTRACT AWARD

| | | PAGE | OF | PAGES |
|---|---|---|---|---|
| | | | 1 | 181 |

| 1. CONTRACT NUMBER | 2. EFFECTIVE DATE | 3. SOLICITATION NUMBER | 4. REQUISITION/PROJECT NUMBER |
|---|---|---|---|
| -005 | See Block 15c | RFP PCC-0004 | N/A |

**5. ISSUED BY**   CODE  N/A

Federal Bureau of Prisons
320 First Street NW Room 500-6
Washington, DC 20534
Scott P. Stermer, Contracting Officer
(OMB #1103-0018 EXP 02/28/01)

**6. ADMINISTERED BY (If other than Item 5)**   CODE  N/A

Same Block 5

**ORIGINAL**

**7. NAME AND ADDRESS OF CONTRACTOR**   CODE

Wackenhut Corrections Corporation
4200 Wackenhut Drive
Palm Beach Gardens, FL 33410

**8. PAYMENT WILL BE MADE BY**

Federal Bureau of Prisons
Mid-Atlantic Region
Junction Business Park
10010 Junction Drive, Suite 100-N
Annapolis Junction, MD 20701
Regional Comptroller

| 9A. DUNS NUMBER | 9B. TAXPAYER'S IDENTIFICATION NO. | 10. SUBMIT INVOICES (4 copies unless otherwise specified) TO |
|---|---|---|
| | (b)(4) | [X] ITEM 5   [ ] ITEM 6   [ ] ITEM 8   [ ] OTHER (Specify) |

## 11. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | | X | I | CONTRACT CLAUSES | 11 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 40 | X | J | LIST OF ATTACHMENTS | 96 |
| X | D | PACKAGING AND MARKING | 1 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | | | | | |
| X | F | DELIVERIES OR PERFORMANCE | 4 | X | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | G | CONTRACT ADMINISTRATION DATA | 2 | X | | | 14 |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 3 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| | | EF DESCRIPTION | 3 | | M | EVALUATION FACTORS FOR AWARD | |

Contractor-Owned and Contractor-Operated correctional facility for an estimated population of 1,200 low security male District of Columbia (D.C.) sentenced felons.

**13. TOTAL AMOUNT OF CONTRACT**    $91,890,622.95 (FP01009T120M)

**14. CONTRACTOR'S AGREEMENT.** Contractor agrees to furnish and deliver the items or perform services to the extent stated in this document for the consideration stated. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

[X] A. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ FOUR COPIES TO THE ISSUING OFFICE. (Check if applicable)

B. SIGNATURE OF PERSON AUTHORIZED TO SIGN

C. NAME OF SIGNER
Wayne H. Calabrese

D. TITLE OF SIGNER
President

/22/2000

AUTHORIZED FOR LOCAL REPRODUCTION

**15. AWARD.** The Government hereby accepts your offer on the solicitation identified in Item 3 above as reflected in this award document. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

A. UNITED STATES OF AMERICA (Signature of Contracting Officer)

B. NAME OF CONTRACTING OFFICER
Scott P. Stermer, Contracting Officer

C. DATE
3/7/2000

OPTIONAL FORM 307 (9-97)
Prescribed by GSA - FAR (48 CFR) 53.215-1(c)

Contract #J1PCc-005 - Wackenhut Corrections, Corporation.

A.1    Items Incorporated by Reference

This contract incorporates by reference the following items of documentation:

    a.    Amendments #1 through #4;

    b.    Wackenhut Corrections, Corporation Technical Proposal dated January 28, 1999
        as amended and clarified through April 13, 1999;

    c.    Wackenhut Corrections, Corporation Offer and Other Documents dated
        January 28, 1999, as amended and clarified  through the Final Proposal Revision of
        April 13, 1999; and

    d.    Final Environmental Assessment, Finding of No Significant Impact (including
        Mitigation Measures) dated February, 2000.

In the event of a conflict between the contract terms (including the Statement of Work) and
Wackenhut Corrections, Corporation proposal, the contract terms shall be controlling.

A.2    The base period of the contract shall be for thirty-six (36) months and begin upon issuance
    of the Notice to Proceed (NTP).

A.3    The total amount of the contract as set forth in Block 13 of the Optional (OF) 307 is the
    maximum amount available.  The total available amount is:

    1.    The fixed price for providing all services for an average daily population up to
        1140 inmates during the 36 month base period: **$84,886,879.00**

    2.    The fixed incremental unit price (FIUP) will apply when the average daily
        population exceeds 1140 inmates during a monthly payment period.  The FIUP is
        applied to a maximum of 262,800 inmate days during the 36 month base period:
          (b)(4)

    3.    The maximum five (5) percent award fee.  For the purposes of this document, the
        amount applied to the maximum price of the above amounts added together. Total:
        **$4,375,743.95**

Contract #J1PCc-005 - Wackenhut Corrections, Corporation.

A.4     **The total available amount as set forth in Block 13 of the OF 307 does not obligate the Government to pay this amount.  Contract Payment will be in accordance with the following:**

▸     **Monthly Contract Payment:**                          **$2.357.968.86**
        (See Contract Section G.2, Payment Schedule)

▸     **Fixed Incremental Unit Price:**                       (b)(4)
        (See Contract Section G.2, Payment Schedule)

▸     **Award Fee:** Up to a maximum five (5) percent of the total payment received for the period rated. (See Contract Section H.3, Award Fee)

A.5     Wackenhut Corrections Corporation. Small Business Subcontracting Plan, dated January 28 , 1999 is hereby incorporated.

# PART I - THE SCHEDULE

## SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS

### B.1 SERVICES AND PRICES/COSTS

CONTRACTOR-OWNED/CONTRACTOR-OPERATED CORRECTIONAL
FACILITY WITHIN 300 MILES OF THE UNITED STATES CAPITOL
BUILDING, WASHINGTON, D.C.

(a)  Offeror will provide, by the terms and conditions
identified in this Request for Proposal (RFP) and any
resulting contract, all necessary personnel, equipment,
materials, supplies, and services (except as may be
furnished by the Government as specifically identified
within the RFP) and do all things necessary for, or
incident to, the management and operation of
comprehensive corrections services.

These comprehensive corrections services will serve a
population principally consisting of District of
Columbia sentenced felons.

Award resulting from this RFP will be of the Fixed
Price contract type for services incorporating an
Award-Fee provision.  At the sole discretion of the
Government an Award-Fee may be issued to the contractor
in recognition of superior quality performance. (See
Section H.3 for additional information)

The period of performance for any contract which the
Government may award under the terms and conditions of
this RFP will be for a three-year base period, with
seven one-year options to extend.  Potentially, the
contract could have a 10 year contract period.

(b)  PRICING INSTRUCTIONS

The Government will evaluate price according to the
Price evaluation factor in Section M.5 of the
solicitation.

For purposes of this solicitation, offerors must submit
an offer for the total three-year base period
requirement and each option period. Prices submitted on
a single year basis will not be considered for award.

**B.1 (Continued)**

Pursuant to Federal Acquisition Regulation (FAR) 52.217-5, Evaluation of Options, the Government's evaluation of price shall be inclusive of options.

For each performance year of the multiyear base period, the Government will notify the contractor that funds are available for performance no later than the first day of the following program year. If the contractor is not notified funds are available, cancellation of the contract will occur within 60 days of the following program year.

Accordingly, program years two and three of the base period are subject to cancellation in the event funds are not available. The cancellation ceilings for these program years are as follows:

Program Year 2 -    of the Total Base Period Price

(b)(4)

Program Year 3 -    of the Total Base Period Price

Offerors should carefully consider and give particular attention to the multiyear features of this solicitation. Any cancellation and related contractor claim for costs will be according to FAR 52.217-2, Cancellation Under Multiyear Contracts (See Section I of the solicitation) and the cancellation ceilings set forth above.

(c)  <u>PRICING SCHEDULE</u>

For purposes of price evaluation and according to the above instructions, offerors must enter their proposed prices on the attached Pricing Schedules as provided below.

➤ **Three Year Base Period** - For the base period, offerors must submit one fixed price. The price will be for providing all services as required by the RFP for an Average Daily Inmate Population (equivalent to 95 % of designated bed space) as stated in the individual schedules. Monthly payment shall be based upon the contractor's fixed price divided by 36 (the number of months within the performance period).

B.1 (Continued)

- **Fixed Incremental Unit Price** - Offerors must submit an incremental unit price which will apply only when the when the total number of inmate days, in a monthly payment period, exceeds 95% of the designated bed space. Population will not exceed 115% of the designated bed space. (See Section G.2)

- **Option Periods** - Offerors must follow the directions provided above for each option period. Monthly payment will be based upon the contractor's fixed price divided by 12 (the number of months within the an option performance period).



Wackenhut Corrections - April 13, 1999
BOP RFP #PCC-0004-BAPO
11.B.1          Page 1

## Pricing Schedule

### 1200 Low Security Male Inmates

| Performance Period | | Fixed Price Operation | Incremental Unit Price Per Inmate Per Day |
|---|---|---|---|
| BASE PERIOD: | NTP - Month 36 | | |
| OPTION PERIOD 1: | Month 37 - Month 48 | | |
| OPTION PERIOD 2: | Month 49 - Month 60 | | |
| OPTION PERIOD 3: | Month 61 - Month 72 | | |
| OPTION PERIOD 4: | Month 73 - Month 84 | (b)(4) | |
| OPTION PERIOD 5: | Month 85 - Month 96 | | |
| OPTION PERIOD 6: | Month 97 - Month 108 | | |
| OPTION PERIOD 7: | Month 109 - Month 120 | | |

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.   EXPLANATION OF STATEMENT OF WORK TERMS . . . . . . . . . 2

III.  OBJECTIVE . . . . . . . . . . . . . . . . . . . . . . . 5
      A.  Performance Requirements . . . . . . . . . . . . . . 5
      B.  Contract Compliance . . . . . . . . . . . . . . . . 6
      C.  General Administration . . . . . . . . . . . . . . . 7
      D.  Fiscal Management . . . . . . . . . . . . . . . . . 9
      E.  Personnel . . . . . . . . . . . . . . . . . . . . . 10
      F.  Training and Staff Development . . . . . . . . . . . 17
      G.  Case Records . . . . . . . . . . . . . . . . . . . . 19
      H.  Information Systems and Research . . . . . . . . . . 19
      I.  Physical Plant . . . . . . . . . . . . . . . . . . . 22
      J.  Security and Control . . . . . . . . . . . . . . . . 25
      K.  Safety and Emergency Procedures . . . . . . . . . . 29
      L.  Discipline . . . . . . . . . . . . . . . . . . . . . 30
      M.  Inmate Rights . . . . . . . . . . . . . . . . . . . 30
      N.  Reception and Orientation . . . . . . . . . . . . . 31
      O.  Classification . . . . . . . . . . . . . . . . . . . 32
      P.  Health/Mental Health Care . . . . . . . . . . . . . 32
      Q.  Social Services . . . . . . . . . . . . . . . . . . 36
      R.  Work and Correctional Industries . . . . . . . . . . 36
      S.  Academic and Vocational Education . . . . . . . . . 37
      T.  Recreation and Activities . . . . . . . . . . . . . 38
      U.  Telephone . . . . . . . . . . . . . . . . . . . . . 38

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    I.    INTRODUCTION

2    The National Capital Revitalization and Self-Government
3    Improvement Act of 1997 mandates that the Bureau of Prisons house
4    a portion of the District of Columbia sentenced felon population
5    in private contract facilities.

6    The Bureau of Prisons has proceeded to comply with this mandate
7    by identifying the appropriate populations to fulfill the
8    requirement from the overall District of Columbia sentenced felon
9    population.

10   The attached SOW identifies the technical and programmatic
11   details for a low security adult male population.

1

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

II. EXPLANATION OF STATEMENT OF WORK TERMS

ACA - American Correctional Association. The private, nonprofit organization that administers the only national accreditation program for all components of adult and juvenile corrections. Its purpose is to promote improvement in the management of correctional agencies through the administration of a voluntary accreditation program and the ongoing development and revision of relevant, useful standards.

BOP - Federal Bureau of Prisons.

BOPDOCS - The electronic document management system for the BOP containing policy, regulations and directives.

CO - Contracting Officer. The Government employee, by virtue of a Contracting Officer's Warrant, empowered to negotiate, award, administer, cancel or terminate contracts on behalf of the United States Government.

Contract Award - The date the CO awards the contract. For the purposes of the contract, the date the CO signs the Standard Form (SF) 33, Solicitation, Offer and Award or the SF 26, Contract Award.

COR - Contracting Officer's Representative. The Government employee designated in writing by the CO authorized to perform certain limited functions on behalf of the CO. The extent of COR responsibilities are outlined in Section G of the contract and the COR Designation Letter, a copy of which will be provided to the contractor subsequent to contract award.

COTR - Contracting Officer's Technical Representative. Government staff designated in writing by the CO who assist the COR in the performance of duties. The extent of COTR responsibilities are delineated in writing by the CO and will be provided to the contractor subsequent to award.

Credentials - Documents providing primary source verification including education, training, licensure, experience, board certification and qualifications of an employee.

DC - District of Columbia.

DCDOC - District of Columbia Department of Corrections.

2

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  DOJ - Department of Justice.

2  DHO - Discipline Hearing Officer. The Government-trained
3  contractor employee responsible for conducting discipline
4  hearings.

5  Emergency - Any significant disruption of normal institution
6  procedure, policy or activity including but not limited to:
7  inmate disturbances; work or food strike; food borne illness;
8  escape; fire; natural disaster; or other serious incident.

9  FBI - Federal Bureau of Investigation.

10  Former Inmate - A person who has been found guilty of committing
11  a felony or misdemeanor for whom less then one year has elapsed
12  since release from custody or any type of supervision.

13  HSU - Health Services Unit. The organizational unit providing
14  routine and emergency health care. The HSU is the designated
15  part of the institution delivering care to inmates on an
16  ambulatory or observation basis.

17  Inmate - An individual confined under the auspices and authority
18  of the BOP or under supervision of a Federal court.

19  Inmate Records - Information concerning an inmate's personal,
20  criminal and medical history, behavior and activities while in
21  custody. This may include, but is not limited to: detainers;
22  personal property receipts; visitor lists; photographs;
23  fingerprints; disciplinary infractions and actions taken;
24  grievance reports; work assignments; program participation;
25  miscellaneous correspondence; forms prescribed by Government
26  policy, etc.

27  JCAHO - Joint Commission on Accreditation of Health Care
28  Organizations.

29  Lethal Force - The force a person uses with the purpose of
30  causing/or which they know, or should know, would create a
31  substantial risk of causing death or serious bodily harm.

32  NTP - Notice to Proceed. The written official notice signed by
33  the CO which authorizes the contractor to proceed with the
34  contract. The contractor shall begin accepting inmates within 30
35  days after issuance of the NTP.

3

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  OAR - Operational Availability Rate.  The monthly rate for
2  computer services/resource components which is a percentage
3  calculated by dividing the accumulated monthly down time hours by
4  the total number of hours of operation for a given month.

5  Prime Contractor - The entity to which the Government has awarded
6  the contract.

7  Professional Staff - Staff employed in the Medical, Educational,
8  Religious and Psychological disciplines.

9  P.S. - Program Statement.  A BOP written directive that
10  establishes policy in a given area.

11  Safety Equipment - Including but not limited to fire fighting
12  equipment (e.g., chemical extinguishers, hoses, nozzles, water
13  supplies, alarm systems, portable breathing devices, gas masks,
14  fans, first aid kits, stretchers) and alarm systems.

15  Sensitive Information - Any information which could affect the
16  national interest, law enforcement activities, the conduct of
17  Federal programs or the privacy to which individuals are entitled
18  under Section 552a of Title 5, U.S.C.

19  SENTRY - The BOP's on-line, real time data base system, used
20  primarily for maintaining information about Federal inmates.  It
21  contains information about sentencing, work assignments,
22  admission/release status and other special assignments for
23  monitoring inmate status.  The SENTRY system also includes
24  property management and other modules which address most aspects
25  of incarceration.

26  Subcontract - Any agreement entered into by the prime contractor
27  with another entity to provide services and supplies to
28  accomplish performance of the contract.

29  USMS - United States Marshals Service.

30  Warden - The contractor's official, regardless of title (e.g.,
31  Chief Executive Officer (CEO) or Facility Administrator) who has
32  ultimate responsibility for the overall management and operation
33  of the institution.

34  Additional definitions are contained in the ACA Standards for
35  Adult Correctional Institutions.

4

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    III. OBJECTIVE

2    A.  Performance Requirements

3    This SOW sets forth the contract performance requirements for the
4    comprehensive management and operation of a contractor-owned/
5    contractor-operated corrections facility for a low security adult
6    male population.

7    Housing facilities shall be provided to accommodate at least
8    1,200 low security beds at a single site.  In addition, the
9    institution shall include a special housing unit (segregation)
10   with a capacity of at least 10% of the institution's rated
11   capacity.

12   The contractor shall ensure that the institution is operated in a
13   manner consistent with the mission of the BOP.  It is the mission
14   of the BOP to protect society by confining offenders in the
15   controlled environments of prison and community-based facilities
16   that are safe, humane, cost-efficient, and appropriately secure,
17   and that provide work and other self-improvement opportunities to
18   assist offenders in becoming law-abiding citizens.

     The institution shall be located within a 300 mile radius of the
20   United States Capitol, Washington, D.C.

21   Contract performance shall be for a three-year base period with 7
22   one-year options, exercised unilaterally by the Government, for a
23   potential term of ten years.

24   Within 365 days following contract award, the contractor shall
25   notify the CO it is ready to accept inmates and assume full
26   responsibility for the operation, maintenance and security of the
27   institution.

28   It is essential that the contractor be fully prepared to accept
29   responsibility for performing the requirements of the contract,
30   thus ensuring the safety and security of the community.
31   Therefore, the BOP will perform numerous assessments to ensure
32   contract compliance prior to issuance of the NTP (See Contract
33   F.2).

34   Unless otherwise specified, all plans, policies and procedures,
35   including those identified in the ACA standards, shall be
36   developed by the contractor and submitted in writing to the CO

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    for review and concurrence prior to issuance of the NTP.  Once
2    concurrence has been granted, these plans, policies and
3    procedures shall not be modified without the prior written
4    acknowledgment of the CO.

5    If the BOP determines the contractor is capable of accepting
6    inmates, the NTP will be issued.  The contractor shall begin
7    accepting inmates within 30 days after issuance of the NTP.

8    It is anticipated that the BOP will predominantly designate
9    individuals committed as DC sentenced felons to the institution.
10   However, the BOP may designate any inmate within its custody
11   utilizing the same designation criteria as used at other BOP
12   facilities.  P.S. 5100.06, Security Designation and Custody
13   Classification Manual, outlines the procedures for designating
14   inmates.

15   Designations to the institution are anticipated to occur at an
16   estimated rate of 40 inmates per week.  The estimated weekly
17   designation of 40 inmates to the institution will result in the
18   population meeting the 1,200 bed requirement in 30 weeks.  The
19   institution designation schedule of 40 inmates per week is an
20   estimate only.  Actual designations will depend upon many
21   factors, including but not limited to, the contractor's ability
22   to provide services in accordance with the SOW; the sentencing of
23   offenders by the DC and Federal Courts; the designation of
24   offenders by the BOP.

25   Unless otherwise indicated, the contractor shall furnish all
26   personnel, management, equipment, supplies and services necessary
27   for performance of all aspects of the contract.

28   Unless explicitly stated otherwise, the contractor is responsible
29   for all costs associated with and incurred as part of providing
30   the services outlined in this contract.

31   B.  Contract Compliance

32   All services and programs shall comply with the SOW; the U.S.
33   Constitution; all applicable Federal, state and local laws and
34   regulations; applicable Presidential Executive Orders (E.O.); all
35   applicable case law, consent decrees, and Court Orders.  Should a
36   conflict exist between any of the aforementioned standards, the
37   most stringent shall apply.  When a conflict exists and a
38   conclusion cannot be made as to which standard is more stringent,

6

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  the CO shall determine the appropriate standard. The contractor
2  shall comply with and implement any applicable changes to BOP
3  policy, DOJ regulations, Congressional mandate, Federal law, DC
4  law, or E.O. Should the Government invoke such changes the
5  contractor retains its rights and remedies under the terms and
6  conditions of the contract.

7  The BOP reserves its rights to conduct announced and unannounced
8  inspections of any aspect of contract performance at any time and
9  by any method in order to assess contract compliance.

10  C. General Administration

11  Unless otherwise specified by the CO, the contractor is required
12  to perform in accordance with the most current edition of the ACA
13  <u>Standards for Adult Correctional Institutions</u> and <u>Standards</u>
14  <u>Supplement</u>.

15  The contractor shall obtain ACA accreditation within 24 months of
16  NTP and shall maintain continual compliance with the above
17  referenced ACA standards and supplements during performance of
18  the contract, unless otherwise specified by the BOP. Once full
    accreditation has been obtained, the contractor shall maintain
    this accreditation throughout the life of the contract, inclusive
21  of any option year exercised. Failure to perform in accordance
22  with contract requirements and to obtain ACA accreditation within
23  24 months of NTP will, at a minimum, result in a reduction of the
24  contract price.

25  Accomplishment of some ACA standards is augmented by BOP policy
26  and/or procedure. In these instances, the SOW identifies and
27  provides direction for the enhanced requirements.

28  The contractor is responsible for a Quality Control Program (QCP)
29  which ensures all requirements of this SOW are achieved. The
30  specific requirements for the QCP are detailed in Section J,
31  Attachments 2, 3, and 4 of the contract.

32  Several sections of this SOW require the contractor to maintain a
33  system of records identical to the BOP's. The contractor shall
34  not establish a separate system of records without prior written
35  concurrence by the CO. This requirement is necessary to maintain
36  consistency of inmate records as inmates transfer throughout the
37  BOP.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   All records related to contract performance shall be retained in
2   a retrievable format for the duration of the contract.  Except as
3   otherwise expressly provided in this SOW, the contractor shall,
4   upon request of the CO or upon completion or termination of the
5   resulting contract, transmit to the Government any records
6   related to the performance of the contract.

7   The contractor shall protect, defend, indemnify, save and hold
8   harmless the United States Government, the BOP and its employees
9   or agents, from and against any and all claims, demands,
10  expenses, causes of action, judgments and liability arising out
11  of, or in connection with, any negligent or intentional acts or
12  omissions of the contractor, its agents, subcontractors,
13  employees, assignees or any one for whom the contractor may be
14  responsible.  The contractor shall also be liable for any and all
15  costs, expenses and attorneys fees incurred as a result of any
16  such claim, demand, cause of action, judgment or liability,
17  including those costs, expenses and attorneys fees incurred by
18  the United States Government, the BOP and its employees or
19  agents.  The contractor's liability shall not be limited by any
20  clause or limits of insurance set forth in the resulting
21  contract.

23  In awarding the contract, the Government does not assume any
     liability to third parties, nor will the Government reimburse the
24  contractor for its liabilities to third parties, with respect to
25  loss due to death, bodily injury, or damage to property resulting
26  in any way from the performance of the contract or any
27  subcontract under this contract.

28  The contractor shall be responsible for all litigation, including
29  the cost of litigation, brought against it, its employees or
30  agents for alleged acts or omissions.

31  The CO shall be notified in writing by the contractor of all
32  litigation pertaining to this contract and provided copies of
33  said litigation within five working days of the filing.  The
34  contractor shall cooperate with Government legal staff and/or the
35  United States Attorney regarding any requests pertaining to
36  Federal or contractor litigation.

37  Policies and procedures shall be developed which ensure a
38  positive relationship is maintained with all levels of Federal,
39  state, and local governments.  Procedures shall include a

8

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1. tracking system which ensures all Congressional/Judicial
2. inquiries and program recommendations are responded to in a
3. timely and accurate manner. All Judicial/Congressional
4. inquiries and contractor responses, specifically related to an
5. inmate, shall be made part of the inmate's central file.

6. The CO shall be notified when a request is made for inmate or
7. employee interviews or facility visits by any representative of
8. the media as defined by P.S. 1480.03, Contact with News Media.
9. The contractor shall coordinate all public information related
10. issues with the CO and clear, in advance, all press statements
11. and releases.

12. The contractor shall ensure its employees agree to use
13. appropriate disclaimers clearly stating the employees' opinions
14. do not necessarily reflect the position of the BOP or DOJ in any
15. public presentations they make or articles they write that relate
16. to any aspect of contract performance or prison operations.

17. D. Fiscal Management

18. The commissary shall be operated by the contractor as a privilege
    to inmates. Any revenues earned in excess of those needed for
    commissary operations shall be used solely to benefit inmates in
21. accordance with P.S. 4500.04, Trust Fund/Warehouse/Laundry
22. Manual, Chapter 4504. The commissary shall make available gender
23. specific items for purchase that are not required to be furnished
24. by the contractor. Inmates shall have the opportunity to
25. purchase from the commissary at least once a week. The
26. contractor shall ensure that inmates spend no more on purchases
27. than the BOP spending limit excluding those items listed in P.S.
28. 4500.04, Trust Fund/Warehouse/Laundry Manual, Chapter 4526. The
29. contractor shall maintain an inventory of items stocked in the
30. commissary and ensure that no prohibited items in accordance with
31. P.S. 4500.04, Trust Fund/Warehouse/Laundry Manual, Chapter 4522
32. are stocked. The commissary inventory shall be provided to the
33. CO upon request. The sales price for commissary items shall be
34. computed in accordance with P.S. 4500.04, Trust Fund/Warehouse/
35. Laundry Manual, Chapter 4523.

36. Inmates are permitted to receive funds from outside sources
37. (e.g., from family, friends, bank accounts). Either outside
38. funds or those generated from work may be used to pay for
39. products and services from the commissary.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  Procedures shall be established for transfer of inmate funds upon
2  release from the institution, transfer to another institution or
3  when an inmate requests a funds transfer to an outside source.
4  Transfer of inmate funds shall occur within five working days
5  upon release from the institution, transfer to another
6  institution or when an inmate requests a funds transfer to an
7  outside source.  The contractor shall be responsible for
8  maintenance of inmate accounts including, but not limited to,
9  posting inmate pay, Financial Responsibility Program (in
10  accordance with P.S. 2011.06, Financial Responsibility Program,
11  Inmate, Processing Payments, and P.S. 5380.05, Financial
12  Responsibility Program, Inmate) Cost of Incarceration Fee (in
13  accordance with P.S. 2011.07, Cost of Incarceration Fee,
14  Accounting For, and P.S. 5380.03, Cost of Incarceration Fee).

15  E.  Personnel

16  It is essential that all contractor personnel meet the highest
17  standards of professionalism and personal integrity.

18  The contractor shall make a *bona fide* offer of employment, on a
19  right of first refusal basis, to qualified DCDOC employees who
20  apply as a result of being impacted by an agency-wide reduction-
21  in-force (RIF) as a result of The National Capital Revitalization
22  and Self-Government Improvement Act of 1997.  The only conditions
23  for employment are that applicants meet the minimum requirements
24  identified within the contract.  All such employees hired by the
25  contractor shall be offered positions at salaries and benefits
26  comparable to their latest DCDOC position.

27  The contractor shall develop written standards of conduct, to
28  include those standards outlined in Section J, Attachment 6.
29  These standards shall be maintained as a part of the contractor's
30  Personnel Policy Manual.  The contractor, its employees and
31  volunteers are expected to adhere to standards of employee
32  conduct and integrity while both on and off duty.  The contractor
33  shall follow procedures in Section J, Attachment 6 in the
34  reporting and investigation of standards of conduct violation(s).

35  Prior to employees entering on duty (EOD) at the institution, the
36  contractor shall ensure the following steps are completed for
37  each applicant as noted below:

38      1.  A pre-employment interview.

10

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

2.  Law enforcement agency checks covering the past five years.
3.  Employment vouchering for the last five years.
4.  Employment Eligibility Verification (DOJ-INS Form I-9).
5.  Credit check. (For employment purposes as described in the Fair Credit Reporting Act).
6.  FBI Name and Fingerprint forms completed.
7.  National Crime Information Center (NCIC) check.
8.  National Law Enforcement Telecommunications (NLETS) check.
9.  Conditional Offer of Employment.
10. Urinalysis.
11. Questionnaire for Public Trust Positions (SF-85P or approved equivalent) - all applicants receiving conditional offer.
12. Supplemental Questionnaire for Selected Positions (OPM Form 85P-S or approved equivalent).
13. Notify CO of scheduled EOD and Limited Background Investigation (LBI) initiation.

Contractor responsibilities subsequent to EOD:

14. Notification to CO of actual EOD within 24 hours.
15. Receipt and review of LBI report.
16. Notification to CO of decision regarding employment.

The contractor shall utilize the Pre-employment Interview Questionnaire and Guidelines of Acceptability (Guidelines) for job applicants as noted in Step 1 above (Guidelines will be made available to the contractor after contract award). There may be occasions where a job applicant's past behavior is unacceptable as defined by the Guidelines, but the contractor still desires to select the applicant. In this case, the contractor shall request the Guidelines be waived. This waiver request shall be submitted to the CO in writing and include: 1) the details and circumstances surrounding the applicant's behavior which is outside the Guidelines; 2) the reason(s) why the applicant should receive further consideration; and, 3) the availability of other suitable applicants.

The contractor shall fingerprint all applicants using BOP supplied forms. Completed fingerprint forms and the SF 85P and SF 85P-S (or equivalents) with original signatures and dates

11

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1 shall be submitted to the CO for each applicant offered
2 conditional employment. The BOP will initiate the National
3 Agency Check which includes the FBI name and fingerprint check.
4 The BOP will ordinarily advise the Warden or designee of the
5 results of name and fingerprint checks within 90 working days of
6 submission to the FBI.

7 The contractor shall complete Steps 1 - 6 on each prospective
8 employee prior to submitting information required by Steps 7 and
9 8 to the CO for completion.

10 The Warden or designee shall be the contractor's liaison for the
11 processing of data required for the BOP to conduct NCIC/NLETS,
12 name and fingerprint checks. The information listed below shall
13 be provided for each on-site applicant, to include subcontractor
14 personnel and volunteers: full name (with aliases, maiden name
15 if applicable, or other names used); date of birth; gender; place
16 of birth; social security number and race. Included with this
17 information, the Warden or designee shall certify Steps 1 - 6
18 above have been accomplished with satisfactory results for each
19 applicant.

The BOP may require additional information to process NCIC/NLETS
and name checks, therefore, the contractor's employment
22 application document shall contain information regarding
23 applicant height; weight; eye and hair color; markings, scars and
24 tattoos; citizenship; driver's license number and State of issue;
25 and current address.

26 The contractor shall keep the BOP apprised of the volume of
27 applicants. The BOP will ordinarily advise the Warden or
28 designee of the results of applicant NCIC/NLETS checks within
29 seven working days following receipt of accurate and complete
30 NCIC/NLETS data from the contractor.

31 Based upon the Warden's certification and the results of the
32 NCIC/NLETS, the BOP will grant conditional approval for the
33 applicant to work under the terms of this contract. Upon receipt
34 of this approval, the contractor may grant the applicant a
35 conditional offer of employment. The contractor shall provide
36 the CO with advance written notification of all employees'
37 scheduled EOD. Written notification of all on-site employees
38 actual EOD shall be provided to the CO within 24 hours of an
39 employee reporting to work.

12

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1. All applicants who are offered conditional employment by the
2. contractor shall be subject to urinalysis testing in accordance
3. with P.S. 3735.02, Drug free Workplace, Section 13. If the test
4. result is positive, the applicant shall be prohibited from
5. working with Federal inmates. All applicants who have been
6. offered conditional employment by the contractor shall complete
7. the SF 85P or approved equivalent. Additionally, those employees
8. who will be authorized to carry weapons in the course of their
9. employment under this contract shall complete the SF 85P-S or
10. approved equivalent. The contractor shall ensure that all
11. employees who will be issued or authorized to carry firearms meet
12. all requisite requirements for possessing a firearm.
13. Accordingly, pursuant to 18 U.S.C. 922(g)(9), employees who have
14. been convicted of a misdemeanor crime of domestic violence are
15. not authorized to carry or use a firearm under performance of
16. this contract. The information contained on the contractor
17. developed form will become part of the background investigation
18. for these selected positions.

19. The contractor shall ensure a LBI check, as prescribed in the
20. Scope and Coverage of a Limited Background Investigation (Section
21. J, Attachment 7) is requested and all appropriate information
22. received, by the contractor-designated entity responsible for
23. completing the LBI, prior to an employee's EOD.

24. Within one year of each on-site employee's EOD, the contractor
25. shall receive, review, identify and resolve derogatory
26. information contained on the LBI results using the Adjudication
27. Standards for Resolving Limited Background Investigations and
28. Periodic Reinvestigations, outlined in Section J, Attachment 8 of
29. the contract. The contractor shall make a determination
30. regarding the employee's suitability for employment under this
31. contract. Investigations with little or no derogatory information
32. will be reviewed and forwarded to the CO within 90 days of the
33. investigation completion date. Investigations requiring
34. resolution of derogatory information will be forwarded within 180
35. days of the investigation completion date. Extended adjudication
36. time frames may be requested from the CO on a case-by-case basis.

37. In the event the LBI identifies derogatory information, the
38. contractor's determination regarding the retention of an employee
39. shall be in writing and forwarded by the Warden to the CO with
40. copies of the information obtained in Steps 1 - 5, 12 and 15.
41. There may be occasions where derogatory information contained in
42. the employee's LBI is unacceptable as defined by the

13

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  Acceptability Standards, but the contractor still desires to
2  retain the employee. In such cases, the contractor shall submit
3  a written request for waiver of the Acceptability Standards to
4  the CO which includes the details and circumstances surrounding
5  the employee's behavior and the reason(s) why the employee should
6  be retained.

7  The BOP will be the final approval authority for all contractor
8  staff who work with Federal inmates under the terms of this
9  contract. No individual who is under supervision or jurisdiction
10 of any parole, probation or correctional authority shall be
11 employed under this contract. Persons with previous misdemeanor
12 criminal convictions or a felony conviction, who are not under
13 supervision, may be considered for employment; however, the BOP
14 shall be the approval authority in all such cases. The BOP may
15 give consideration to such factors as criminal history, time
16 elapsed since conviction(s) and subsequent adjustment in the
17 community.

18 The contractor shall ensure all employees are reinvestigated
19 periodically, as prescribed in the Scope and Coverage of a
20 Periodic Reinvestigation in Section J, Attachment 8 of the
21 contract. Employees will be required to complete required
   investigative forms and fingerprint cards for submission to the
   BOP. The BOP will initiate the National Agency Check, which
24 includes the name and fingerprint checks. Upon receipt, review,
25 and resolution of any derogatory information contained in the
26 reinvestigation report, the Warden shall forward to the CO a
27 written determination regarding the employee's continued
28 employment under this contract. A copy of the reinvestigation
29 report shall be attached to the Warden's written request.

30 Should the institution staff turnover rate exceed an acceptable
31 level, as determined by the CO, or repetitive NCIC/NLETS or
32 fingerprint checks are necessary due to contractor error, the
33 actual cost of processing the NCIC/NLETS, name and fingerprint
34 checks shall be withheld from amounts due the contractor.

35 The contractor shall ensure all employment practices are in
36 compliance with U.S. Department of Labor requirements in addition
37 to applicable state and local requirements.

38 In the absence of a collective bargaining agreement, the
39 contractor shall enter into a written employment agreement with

14

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  each employee assigned to work within the institution.  This
2  agreement shall provide that, in recognition of the public safety
3  requirements for uninterrupted services in the institution and in
4  return for adequate consideration, including an employee
5  grievance procedure, the employee agrees not to strike or
6  otherwise interrupt normal operations at the institution without
7  giving 10 days advance written notice.

8  The contractor shall ensure that a contingency plan covering work
9  actions or strikes is included as a part of its Personnel Policy
10  Manual.

11  In the event the contractor negotiates collective bargaining
12  agreements applicable to the work force under the contract, the
13  contractor shall use its best efforts to ensure such agreements
14  contain provisions designed to assure continuity of services.
15  All such agreements entered into during the contract period of
16  performance should provide that grievances and disputes involving
17  the interpretation or application of the agreement will be
18  settled without resorting to strike, lockout or other
19  interruption of normal operations.

20  For this purpose, each collective bargaining agreement should
21  provide an effective grievance procedure with arbitration as its
22  final step, unless the parties mutually agree upon some other
23  method of assuring continuity of operations.  As part of such
24  agreements, management and labor should agree to cooperate fully
25  with the Federal Mediation and Conciliation Service.  The
26  contractor shall include the substance of this requirement in any
27  subcontracts for protective services.

28  All personnel files shall be available to the CO upon request.
29  Personnel files (e.g., background checks, verification of
30  training, experience, and professional credentials) shall be kept
31  current and maintained for the duration of the contract.

32  Personnel requirements of this contract shall apply to all
33  on-site subcontractor personnel and volunteers.

34  The following essential personnel and respective minimum
35  qualification requirements are considered critical for
36  performance of this contract.

15

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   Project Coordinator - Knowledge and experience within the
2   last five years in planning and executing large, complex,
3   projects similar in nature to the requirements of this
4   contract.

5   Warden(s) - Knowledge of program objectives, policies,
6   procedures and requirements for managing a secure
7   correctional facility.  A minimum of 10 years experience in
8   corrections or related field with experience in the
9   management of a correctional facility at the Associate
10  Warden level or above.

11  Associate Warden(s) - Knowledge of program objectives,
12  policies, procedures and requirements for managing a
13  correctional facility.  A minimum of 10 years experience in
14  corrections or related field with experience in the field of
15  corrections at the level of mid-management.

16  Within 15 days of contract award, the contractor shall submit a
17  written request to the CO for conditional employment approval of
18  the Project Coordinator.  Within 180 days of contract award, the
19  contractor shall submit a written request to the CO for
20  conditional employment approval of the Warden(s) and Associate
21  Warden(s).

22  The essential personnel listed below are commonly referred to as
23  department heads.  Minimum qualification requirements for the
24  following essential personnel are: knowledge of program
25  objectives, policies, procedures and duties specific to the
26  position; a minimum of five years of supervisory/management
27  experience in a field directly related to the specific duties of
28  the position.
29
30      Case Management Coordinator
31      Chief Correctional Supervisor
32      Administrator, Religious Services
33      Correctional Shift Supervisors
34      Computer Services Manager
35      Facility Manager/Administrator
36      Food Service Administrator
37      Inmate Systems/Records Office Manager
38      Medical Services Administrator
39      Quality Control Specialist

16

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1      Safety/Environmental Specialist

2      The Administrator, Religious Services shall be certified by the
3      American Correctional Chaplains Association (ACCA) or meet
4      certification standards established by ACCA.

5      Daily correctional staff assignment rosters which reflect both
6      scheduled and actual assignments, by shift and for each post,
7      shall be maintained.

8      The number and type of staff described in the contractor's
9      staffing plan accepted in the resulting contract shall be
10     maintained as the minimally acceptable staff compliment
11     throughout the term of the contract.  Any and all requests to
12     reduce staffing levels or staff utilization shall be submitted in
13     writing to the CO for approval prior to implementation.

14     F.  Training and Staff Development

15     Upon the contractor's written request to the CO, the Government
16     will provide the following initial specialized training at the
17     contractor's facility, on a one-time basis, at no cost to the
       contractor:

19     1.  Records Office Training (Records Office Staff)
20         a.   Movement Coordination Training - 8 hours
21         b.   Maintenance, Retirement and Disposal of Inmate Files -
22              8 hours

23     2.  Correctional Programs (Affected Staff)
24         a.   Case Management/Central Inmate Monitoring - 40 hours
25         b.   Disciplinary Procedures - 24 hours
26         c.   Disciplinary Hearing Officer Training - 80 hours
27              (mandatory, as described in Section J of the SOW)

28     3.  Other
29         a.   SENTRY Training - Inmate Systems; Education;
30              Correctional Services; Financial Management;
31              Correctional Programs, Health Services; Other staff -
32              (40 hours)

17

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1      b.  Human Resource Management (24 hours) - For contractor's
2          human resource management staff. To include background
3          investigation issues.

4      c.  Self-Study Courses
5          1.  Judgment and Commitment File Training
6          2.  Detainer/Writs/Interstate Agreement on Detainers
7              Training
8          3.  SENTRY General Use Technical Reference Manual
9          4.  Receiving and Discharge Training
10         5.  Inmate Funds Management Training
11         6.  Mail Management Training
12         7.  Population Accountability Training
13         8.  New Mail Room Officer's Self Study Course and
14             Survival Skills Training
15         9.  New Receiving and Discharge Officer's Self Study
16             Course and Survival Skills Training
17        10.  Central Inmate Monitoring Certification
18             Correspondence Course

19  The contractor may request, at its expense, additional training
20  to supplement the initial BOP provided training.

21  The contractor shall develop and implement a comprehensive staff
22  training program addressing the institution's sexual
23  abuse/assault prevention and intervention program. Written
24  policy, procedure, and practice shall provide that all staff
25  receive such training prior to entry on duty and on an annual
26  basis as part of the institution's in-service training plan.
27  Pre-service and in-service training shall be augmented with
28  specialized training for appropriate staff (e.g., case managers,
29  counselors, psychology services, chaplaincy, correctional
30  officers, investigatory officials, health/mental health care,
31  etc.)
32
33  The contractor shall provide disturbance control training to the
34  appropriate staff. Certified disturbance control instructors
35  shall be used to conduct training in disturbance control
36  procedures. Certification shall be from a CO-approved Federal,
37  state or county training academy or program. The use and
38  carrying of weapons for training shall meet all Federal, state
39  and local laws and regulations.

18

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    G.   Case Records

2    All inmate files (e.g., central files, medical files and judgment
3    and commitment files) are to be prepared, maintained, retired and
4    disposed of in accordance with the BOP format.  Policy and
5    procedures shall be developed to ensure the confidentiality and
6    security of all inmate files (e.g., judgment and commitment
7    files, central files, U.S. Parole Commission mini-files) in
8    accordance with P.S. 5800.07, <u>Inmate Systems Management Manual</u>,
9    P.S. 5800.11, <u>Central File, Privacy Folder and Parole Mini-Files)</u>
10   and in accordance with all applicable Federal provisions (e.g., 5
11   U.S.C. 552 and 552a).

12   The contractor shall interact with other agencies to satisfy
13   outstanding inmate obligations including, but not limited to:  1)
14   processing of Federal and state writs; 2) administration of the
15   Interstate Agreement on detainers; 3) detainer inquiries; 4)
16   lodging and removal of detainers; and 5) coordination of
17   transfer/inmate movement in and out of the institution in
18   accordance with P.S. 5800.07, <u>Inmate Systems Management Manual</u>,
19   Chapter 8; P.S. 5130.05, <u>Detainers and the Interstate Agreement</u>
20   <u>on Detainers</u>; P.S. 5875.08, <u>Transfers of Inmates to State Agents</u>
21   <u>for Production on State Writs</u>; and, P.S. 5800.08, <u>Receiving and</u>
     <u>Discharge Manual</u>.

23   The contractor shall:  1) maintain inmate judgment and commitment
24   files; 2) maintain file accountability and security; 3) respond
25   to inmate inquiries; 4) respond to outside requests for
26   information; 5) verify release methods and dates prior to an
27   inmate's release; and other related functions.

28   The contractor shall comply with the Privacy Act of 1974,
29   (5 U.S.C. 552a) and 28 CFR, Parts 16 and 513.

30   No inmate shall be admitted to, or released from, institution
31   custody without prior BOP approval.

32   H.  Information Systems and Research

33   The BOP's Information System environment includes mainframe,
34   local area network (LAN) and wide area network (WAN) components.

35   The BOP's mainframe software environment exists in an internally-

19

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  developed application named SENTRY which is used to support
2  institution operations.  The contractor shall provide and
3  maintain hardware and software to access SENTRY, in the manner
4  referenced in this SOW, to operate the institution.

5  The technical hardware environment in which computer services are
6  to be performed consists of IBM-compatible Personal Computers
7  (PCS) operating on a LAN.  In addition to providing for the
8  inter-connection of PC workstations, the LAN also provides
9  connections to a BOP centralized gateway which connects to an
10 IBM-compatible mainframe computer located in a DOJ data center.

11 All network operating system hardware not furnished by the
12 Government must remain compatible with BOP equipment throughout
13 the life of the contract.

14 Contractor provided hardware and software necessary to
15 participate in the BOP's information system environment is
16 provided at Section J, Attachment 15.

17 All network operating system software, applications software and
18 configurations not furnished by the Government shall be the same
   release, version and configuration currently specified by the CO
   throughout the life of the contract.  The contractor shall adhere
21 to P.S. 1237.10, Network Standards and its associated Technical
22 Reference Manual (TRM).

23 The contractor shall ensure that the inmate "automated system of
24 records" is compatible with standard BOP facility and operational
25 requirements.

26 Examples of the procedures for which the contractor shall use
27 SENTRY include, but are not limited to: admissions and releases;
28 inmate counts; medical data; inmate classification and
29 programming; education data; discipline data; the victim/witness
30 program; and, as directed by the BOP, sentence computations
31 including good time and United States Parole Commission actions.
32 The contractor has the option to use SENTRY for any other
33 procedures as approved by the CO.

34 The contractor shall adhere to P.S. 1237.11, Information Security
35 Programs which governs such areas as: security for and access to
36 sensitive information and systems; minimum personnel security
37 pre-requisites for computer system users and administrators; and

20

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  security and access to computer rooms, etc.  The contractor shall
2  monitor all security procedures to ensure compliance.

3  The contractor shall ensure fundamental information technology
4  resources (e.g., computer hardware, network and operating system
5  software and telecommunications facilities) used in performance
6  of this contract function properly and are maintained in good
7  operating condition.  A minimum OAR of 97% is required for all
8  such resource components.  The contractor shall ensure that such
9  resources shall be compatible with existing and planned BOP
10 equipment, systems and data exchange functions.

11 GroupWise shall be configured as a secondary domain to the BOP
12 primary domain and shall have no physical or logical connections
13 to any external mail system.  The contractor's network shall have
14 no physical or logical connectivity to any external systems
15 except the BOP WAN, unless specifically approved in advance by
16 the CO.

17 Advance approval from the CO shall be obtained for all proposed
18 research projects.  These include projects conducted by the
19 contractor, subcontractors, or any other party.  The CO shall be
   kept advised of the progress of all research projects, have total
   access to all documents, and be provided a copy of the final
22 report prior to any publication.

23 The contractor is required to participate in any research task
24 pursued by the BOP and shall gather and provide any information
25 requested.  Contractor participation is anticipated to be
26 primarily in the area of gathering and submitting statistical
27 information.  Research data shall be provided to the Government
28 through SENTRY and/or through the automated data entry facilities
29 of the BOP's General Retrieval System (GRS) or other means as
30 specified by the BOP.  The BOP will provide software for the GRS.
31
32 At the discretion and request of the CO, the contractor shall
33 distribute the Staff Prison Social Climate Survey to a sampling
34 of staff (ranging from 35 to 100 percent).  The Government shall
35 determine the survey sample.  The contractor shall allow staff to
36 complete the survey (generally 45 minutes) while in a paid
37 status, collect the surveys and provide them to the CO.

38 At the discretion of, and compensated by, the Government, an
39 independent evaluator, may interview and/or administer surveys to

21

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  staff and inmates.

2  I.  Physical Plant

3  The institution shall be designed, constructed, operated and
4  maintained to ensure that inmates are housed in a safe, secure,
5  and humane manner.  All equipment, supplies and services shall be
6  contractor furnished except as otherwise noted.

7  The contractor shall design, construct, operate and maintain the
8  entire physical plant in accordance with all applicable Federal,
9  state and local laws, regulations, guidelines, policies,
10  building, and zoning codes.  In the event of any conflict of
11  codes, regulations, or requirements between Federal, state and
12  local, the most stringent shall apply.  In the event there is
13  more than one reference to a safety, health or environmental
14  requirement in an applicable law, standard, code, regulation or
15  Government policy, the most stringent requirement shall apply.

16  As a minimum standard for populations of a low security level and
17  above, the contractor shall design and construct the institution
18  perimeter security fence, institution housing unit outer
.   walls/roofs/floors and egress doors and locks in accordance with
.   BOP design standards.  The BOP standards are provided in Section
21  J, Attachment 14).

22  The institution shall provide the appropriate mix of dorm and
23  celled housing commensurate with the security needs of the
24  District of Columbia low security population.

25  The contractor shall provide and maintain an electronic security
26  alarm system which will alert staff of any unauthorized access to
27  the institution secure perimeter.

28  The institution shall comply with 40 U.S.C. 619, which stipulates
29  compliance with nationally recognized codes and comply with the
30  latest edition in effect on the date of proposal submission of
31  one of the following codes:

32      (1)  The Uniform Building Code (UBC), with the State of
33           location's Amendments.
34      (2)  The Building Officials and Code Administrators (BOCA)
35           National Building Code (NBC).

●                    ●

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1        (3)  The Standard Building Code (SBC).

2     In the event the jurisdiction in which the institution is located
3     does not mandate use of UBC, BOCA NBC or SBC, then the
4     institution shall comply with the BOCA NBC.

5     Fire protection and life safety issues shall be governed by the
6     latest edition of the National Fire Protection Association (NFPA)
7     101, Code for Safety to Life from Fire in Buildings and
8     Structures and the applicable National Fire Codes (NFC).  Should
9     conflicts exist between the NBC and NFCs, the NFCs shall apply.

10    E.O. 12699, "Seismic Safety of Federal and Federally Assisted or
11    Regulated New Building Construction," requires all new Federally
12    owned or occupied buildings to comply with appropriate seismic
13    design and construction standards.  The seismic safety
14    requirements as set forth in either the 1991 International
15    Conference of Building Officials (ICBO), the UBC; the 1992 BOCA,
16    NBC (or the 1992 Amendments to the Southern Building Code
17    Congress) or SBC are the minimum standards.  Should the codes
18    applicable for the state in which the institution is located be
19    more stringent than the other codes set forth herein, the state
20    codes shall prevail.

21    The institution shall comply with the requirements of the
22    Architectural Barriers Act of 1968, and the Rehabilitation Act of
23    1973 as amended.  The standards for institution accessibility by
24    physically handicapped persons as set forth in Attachment 7 -
25    "Uniform Federal Accessibility Standards/Fed Std. - 795, 4/01/88
26    Edition" (UFAS) shall apply.  All areas of the institution site
27    and buildings shall meet these requirements.

28    Activities which are implemented, in whole or in part, with
29    Federal funds must comply with applicable legislation and
30    regulations established to protect the human or physical
31    environment and to ensure public opportunities for review.
32    Contractor shall remain in compliance with Federal statutes
33    during the performance of the contract, including but not limited
34    to the Clean Air Act, Clean Water Act, Endangered Species Act,
35    Resource Conservation and Recovery Act, and other applicable
36    laws, regulations, and requirements.

37    Contractor shall be responsible for and shall indemnify and hold
38    Government harmless for any and all spills, releases, emission,

23

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  and discharges of any toxic or hazardous substance, any
2  pollutant, or any waste, whether sudden or gradual, caused by or
3  arising under the performance of the contract or any substance,
4  material, equipment, or facility utilized therefor.  For the
5  purposes of any environmental statute or regulation, contractor
6  shall be considered the "operator" for any facility utilized in
7  the performance of the contract, and shall indemnify and hold the
8  Government harmless for the failure to adhere to any applicable
9  law or regulation established to protect the human or physical
10 environment.  Contractor shall be responsible in the same manner
11 as above regardless of whether activities leading to or causing a
12 spill, release, emission or discharge is performed by contractor,
13 its agent or designee, an inmate, visitor, or any third party.

14 If the contractor spills or releases any substance into the
15 environment, the contractor shall immediately report the incident
16 to the CO.  The liability for the spill or release of such
17 substances rests solely with the contractor and its agent.

18 A safety program shall be maintained and in compliance with all
19 applicable Federal, state and local laws, statutes, regulations
20 and codes.  The contractor shall comply with the requirements of
   the Occupational Safety and Health Act of 1970 and all codes and
   regulations associated with 29 CFR 1910 and 1926.

23 
24 Fire Alarm Systems and Equipment - All fire detection,
25 communication, alarm, annunciation, suppression and related
26 equipment shall be operated, inspected, maintained and tested in
27 accordance with the most current edition of the applicable
28 National Electric Codes and Life Safety Codes.

29 The contractor shall provide outside lighting sufficient to
30 illuminate the entire institution and secure perimeter with at
31 least 1.5 candle power per square foot.

32 Final, completed, design/construction documents shall be
33 submitted to the CO by the contractor in accordance with the date
34 identified within the contractor's construction schedule.  The
35 construction schedule shall be updated to reflect current
36 progress and submitted to the CO on a monthly basis.  BOP staff
37 will make periodic visits during construction to verify
38 contractor progress and compliance with contract requirements.
39 As-built drawings and current drawings of the buildings and site
40 utilities shall be maintained in a secure location during

24

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

construction and contract performance. These updates shall be provided to the CO within 30 days of any changes made. Site utilities include, but are not limited to: water and sewer lines; gas lines; tunnels; steam lines; chilled water lines; recording layouts; elevations; modifications; additions; etc. Two copies of the As-built drawings shall be provided to the CO in AUTOCAD release 14.0 on a CD-ROM no later than 180 days after issuance of the NTP.

Promptly after the occurrence of any physical damage to the institution (including disturbances), the contractor shall report such damage to the CO. It shall be the responsibility of the contractor to repair such damage, to rebuild or restore the institution consistent with the master design and construction specifications for the facility at no cost to the Federal Government. Any deviation from the original design and construction specifications shall require the prior concurrence of the CO.

The BOP anticipates a nominal number of BOP staff will be on-site to monitor contract performance and manage other BOP interests associated with operation of the private facility. With BOP concurrence, the contractor shall designate approximately 2,500 square footage of administrative office space for BOP staff operations. BOP office space shall be climate controlled and located consistent with the administrative office space for contractor staff. The contractor shall be responsible for all maintenance and costs associated with space designated for BOP staff.

The contractor shall provide no less than 10 parking spaces reserved for Government use.

J.   Security and Control

At least one inmate count every 24 hours shall be a stand-up count. SENTRY shall be used for reporting all counts. All counts shall be documented in separate logs and maintained in the inmate housing unit, control center and shift supervisor's office for a minimum of 30 days.

Policy and procedures for the maintenance and security of keys and locking mechanisms shall be developed. The procedures shall include, but are not limited to: method of inspection to expose

25

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  compromised locks or locking mechanisms and method of replacement
2  for all damaged keys and/or locks; a preventive maintenance
3  schedule for servicing locks and locking mechanisms and method of
4  logging all work performed on locks and locking mechanisms;
5  policy for restricting security keys from 24-hour issue or
6  removal from the institution; and method of issuing emergency
7  keys.  Emergency keys shall be available for ALL areas of the
8  institution to which emergency access or egress may be necessary.
9  The procedures shall include the notification of CO in the event
10 any keys or mechanisms are compromised.

11 Staff responsible for lock maintenance shall receive training and
12 be certified from a CO-approved training program specializing in
13 the operation of locks and locking mechanisms.

14 The contractor shall provide constant armed perimeter
15 surveillance of the facility.  Surveillance may be provided via a
16 minimum of two motorized security patrols or a system of towers.

17 The contractor shall implement policy and procedures which
18 prohibit inmates from approaching within 20 feet of the alarmed
19 secure perimeter fence.

21 Policy and procedures shall require that controlled tools and
   equipment be classified by security risk and those most likely to
22 be used in an escape or as a weapon be issued to inmates only
23 under direct staff supervision.

24 The contractor is responsible for the movement/transportation of
25 all inmates designated to the institution within a 300 mile
26 radius of the contract facility.  Examples of circumstances
27 requiring inmate movement/transportation include, but are not
28 limited to: outside medical care; funeral and bedside trips;
29 transfer or movement to/from other Government facilities; and
30 airlift sites.  The contractor's transportation procedures shall
31 ensure staff and inmate security and safety.  The contractor
32 shall utilize restraint equipment identical to the BOP's when
33 one-for-one equipment exchange is required (e.g., airlifts).

34
35 Contractor developed procedures regarding clothing for inmates
36 transferred from the institution to other Government facilities
37 shall incorporate the following conditions: khaki shirts and
38 pants allowing for use of restroom facilities while in
39 restraints; no hard sole or hard toe shoes; and, transportation

26

DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK
Request for Proposal PCC-0004

1   clothing must be kept separate from regular institution clothing.
2   Transportation clothing collected from inmates transferred to the
3   institution may be laundered, stored and reused.  However,
4   sufficient and appropriate transfer clothing shall be available
5   at all times and the contractor shall not rely on the clothing
6   collected from transferred inmates to meet the needs of supplying
7   transportation clothing.

8   Policies and procedures for collecting, analyzing and
9   disseminating intelligence information regarding issues affecting
10  safety, security and the orderly running of the institution shall
11  be developed.  Examples of such information would include, but
12  are not limited to: gang affiliations; domestic terrorist groups;
13  tracking of inmates having advanced skills in areas of concern
14  (locksmiths, gunsmiths, explosives, computers, etc.); narcotics
15  trafficking; mail and correspondence; inmate financial
16  information; inmate telephone calls; visiting room activity; and
17  actions of high profile inmates.  The contractor shall share all
18  intelligence information it obtains with the BOP.

19  The contractor shall submit to the CO a proposed inventory of
20  intervention equipment (e.g., weapons, munitions, chemical
    agents, electronics/stun technology, etc.) intended for use
    during performance of this contract.  The intervention equipment
23  inventory must be approved by the CO prior to issuance of the
24  NTP.  Any proposed revision to the approved intervention
25  equipment inventory must be submitted in writing to the CO for
26  approval prior to implementation.  P.S. 5500.09, Correctional
27  Services Manual contains guidance regarding current BOP standards
28  for intervention equipment.

29  The contractor shall obtain the appropriate authority from state
30  or local law enforcement agencies to use force as necessary,
31  (consistent with applicable policies of the Federal government)
32  to maintain the security of the institution.  The use of force by
33  the contractor shall at all times be consistent with all
34  applicable policies of the Federal government.  (All use of
35  lethal force by the contractor or any other authority shall be in
36  compliance with P.S. 5558.12, Firearms and Badges and P.S.
37  5568.04, After Action Reporting and Review.)

38  All use of less-lethal force by the contractor or any other
39  authority shall be in compliance with P.S. 5566.05, Use of Force
40  and Application of Restraints on Inmates.

27

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   The contractor shall make provisions for obtaining arrest
2   authority from local and/or state law enforcement agencies such
3   that an officer or employee of the contractor may:

4       (1)  make arrests on or off facility property without
5            warrant for the following violations regardless of
6            where the violation may occur: assaulting officers,
7            escape, attempted escape and assisting escape;

8       (2)  make arrests on facility property without warrant for
9            the following violations: theft, depredation of
10           property, contraband, mutiny and/or riot, and trespass;
11           and;

12      (3)  arrest without warrant for any other offense committed
13           on institution property if necessary to safeguard
14           security, good order or Government property;

15  if such officer or employee of the contractor has reasonable
16  grounds to believe that the arrested person is guilty of such
17  offense and if there is likelihood of such person's escaping
18  before an arrest warrant can be obtained.  If the arrested person
19  is a fugitive from custody, such prisoner shall be returned to
20  custody.

21  The contractor shall comply with the policy and procedures for
22  establishment of a sexual abuse/assault program as contained in
23  P.S. 5324.04, Sexual Abuse/Assault Prevention and Intervention
24  Program.

25  The contractor shall report all criminal activity related to the
26  performance of this contract.  The contractor shall report
27  criminal activity to the appropriate law enforcement
28  investigative agency (e.g., BOP, FBI, USMS, state, and local
29  authorities).

30  The contractor shall immediately report all serious incidents to
31  the CO.  Serious incidents include, but are not limited to the
32  following:  activation of disturbance control team(s);
33  disturbances (including gang activities, group demonstrations,
34  food boycotts, work strikes, work-place violence, civil
35  disturbances/protests); staff use of force including use of
36  lethal and less-lethal force (includes inmates in restraints more
37  than eight hours); assaults on staff/inmates resulting in

28

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  injuries requiring medical attention (does not include routine
2  medical evaluation after the incident); fights resulting in
3  injuries requiring medical attention; fires; full or partial
4  lockdown of the institution; escape; weapons discharge; suicide
5  attempts; deaths; hunger strikes; adverse incidents that attract
6  unusual interest or significant publicity; adverse weather
7  impacting security of the institution (e.g., fence damage, power
8  outages, severe flooding); bomb threats; central inmate
9  monitoring cases admitted to a community hospital; witness
10  security cases taken outside the institution; significant
11  environmental problems that impact institution operations;
12  transportation accidents (airlift, bus, etc.) resulting in
13  injuries, death or property damage; and sexual assaults.

14  Immediately following CO notification, the contractor shall
15  report any serious incident using WAN Form 583, <u>Report of</u>
16  <u>Incident</u> completed in accordance with P.S. 5500.09, <u>Correctional</u>
17  <u>Services Manual</u>.

18  The BOP may investigate any incident pertaining to performance of
19  this contract.  The contractor shall cooperate with the
20  Government on all such investigations.

21  The contractor shall maintain a urine surveillance program which
22  complies with P.S. 6060.05, <u>Urine Surveillance to Detect and</u>
23  <u>Deter Illegal Drug Use.</u>  A laboratory certified by the National
24  Institute of Drug Abuse of the Department of Health and Human
25  Services shall be utilized to test urine samples.

26  The contractor's contraband control procedures shall include
27  frequent pat searches of inmates and the use of supervised walk-
28  through and hand-held metal detectors at all compound gates and
29  entrances to housing units.

30  K.  Safety and Emergency Procedures

31  The contractor shall submit an institution emergency plan to be
32  fully operational prior to issuance of the NTP.  The plan shall
33  receive the concurrence of the CO prior to implementation and
34  shall not be modified without the written concurrence of the CO.

35  The contractor shall have written agreements with appropriate
36  state and local authorities that provide for notification and

29

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   requests for assistance in the event of incidents that may have
2   an adverse impact on the community.

3   The emergency plan shall include provisions for two or more
4   disturbance control teams.  Protective clothing and equipment for
5   each team member and 30% of all additional institution staff,
6   shall be provided by the contractor and maintained in a secure
7   location outside the secure perimeter of the low security
8   institution.

9   Any decision by the BOP or other Federal agencies to provide
10  and/or direct emergency assistance at the institution will be at
11  the discretion of the Federal agencies.  The contractor shall
12  reimburse the Federal agency(ies) for any and all expenses
13  incurred as a result of providing such assistance.

14  The CO shall be notified immediately in the event of an escape.
15  Attempts to apprehend the escapee(s) shall be in accordance with
16  the Emergency Plan.  The contractor shall follow notification
17  practices and procedures as set forth in P.S. 5553.05,
18  Escapes/Deaths Notification and WAN Form 583, Report of Incident,
19  shall be submitted.

L.  Discipline

21  The contractor shall comply with the policy and procedures for
22  inmate discipline as contained in 28 CFR 541 and P.S. 5270.07,
23  Discipline and Special Housing Units.  The contractor's DHO and
24  alternate shall be trained and certified by the BOP prior to
25  acceptance of inmates.  All data regarding the discipline
26  incident report process shall be entered into SENTRY.

27  M.  Inmate Rights

28  The contractor shall stock and provide inmates with BOP
29  administrative remedy forms to accommodate any claims directly
30  related to BOP matters (e.g. sentence computation; designation
31  and transfer issues; prior custody).

32  The contractor shall ensure religious services program standards
33  as established by the Religious Freedom Restoration Act are
34  maintained.

30

DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK
Request for Proposal PCC-0004

1    N.   Reception and Orientation

2    The contractor shall comply with P.S. 5800.08, Receiving and
3    Discharge Manual, when entering inmate admission and release
4    data.

5    The search of inmates admitted to, or released from, low or
6    higher security institutions shall include a strip search
7    performed by contractor staff.  The search shall be conducted by
8    persons of the same gender, except in exigent circumstances.

9    Inmates shall be fingerprinted using Government supplied forms
10   and submitted to the FBI in accordance with P.S. 5040.04, FBI
11   Forms, Submission to the FBI, and P.S. 5800.08 Receiving and
12   Discharge Manual.

13   The intake process shall include, at a minimum, medical and
14   social screening prior to inmate release to the general
15   population.  Psychological screening shall be provided for each
16   inmate within 24 hours of arrival at the institution.

7    The contractor shall ensure all requirements related to P.S.
8    5180.04, Central Inmate Monitoring Manual are maintained.

19   In the event an inmate is transferred to or from a foreign
20   country,  28 CFR 527 and 18 U.S.C. 4100, et seq. shall be
21   followed.

22   The contractor is advised that P.S. 5580.05, Personal Property,
23   Inmate, provides procedures related to inmate property.  Property
24   of inmates transferred to other correctional facilities from the
25   institution shall meet the requirements of P.S. 5580.05, Personal
26   Property.  Property accompanying an inmate transferred from the
27   institution that is outside the scope of P.S. 5580.05 shall be
28   returned to the institution at the contractor's expense for
29   appropriate disposition(also at the contractor's expense).  All
30   inmate personal property shall be inventoried and a BOP Form 383,
31   Inmate Personal Property Form completed upon inmate admission and
32   discharge.

31

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    O.   Classification

2    The contractor shall ensure classification and program review of
3    inmates in accordance with the requirements contained in P.S.
4    5322.10, <u>Classification and Program Review of Inmates</u>, P.S.
5    5100.06, <u>Security Designation and Custody Classification Manual</u>
6    and 28 CFR 524 are accomplished.  In addition, the contractor
7    shall enter and keep current all required BOP SENTRY transactions
8    and written documentation related to the classification and
9    program review of inmates, progress reports and central inmate
10   monitoring system.  A system of records and review to ensure
11   compliance with P.S. 5100.06, <u>Security Designation and Custody</u>
12   <u>Classification Manual,</u> and related transactions shall be
13   developed and maintained.

14   The contractor shall follow all applicable provisions related to
15   the <u>Violent Crime Control and Law Enforcement Act of 1994</u> (P.L.
16   103-322), ensuring all notification requirements are
17   accomplished.

18   A financial responsibility system mandating inmates establish a
19   financial plan to meet legitimate financial obligations in
20   accordance with 28 CFR 505 (P.L. 102-395) and 545.10 shall be
21   developed and maintained.

22   The contractor shall develop policy and procedures concerning
23   victim and/or witness notification which meet the requirements
24   outlined in 28 CFR 551 and the <u>Victim and Witness Protection Act</u>
25   <u>of 1982.</u>

26   P.   Health/Mental Health Care

27   The contractor shall provide all essential health services while
28   meeting the applicable standards and levels of quality
29   established by the ACA and the designated BOP ambulatory health
30   care accreditation provider, JCAHO.  In addition, the contractor
31   shall adhere to all applicable Federal, state and local laws and
32   regulations governing the delivery of health services and
33   establish the necessary quality controls to ensure all policies
34   and procedures are designed and implemented in a manner to
35   promote orderly and efficient delivery and management of health
36   services to the inmate population.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  The contractor shall obtain full accreditation by JCAHO for the
2  institution within 24 months of NTP and shall maintain continual
3  compliance with applicable JCAHO standards during performance of
4  the contract. Once full accreditation has been obtained, the
5  contractor shall maintain this accreditation throughout the life
6  of the contract, inclusive of any option year exercised. The
7  contractor shall be responsible for all costs associated with
8  obtaining and maintaining full accreditation by JCAHO.

9  The provision of medical services commensurate to the level of
10 care available in the community is an essential component of
11 successful performance under the contract. The contractor is
12 referred to the following list of P.S's and TRM's as guides to
13 the BOP's standard of health care delivery:

14    P.S. 6000.05        "Health Services Manual (HSM)"
15    P.S. 6010.01        "Psychiatric Treatment and Medication,
16                         Administration Safeguards For"
17    P.S. 6080.01        "Autopsies, Authority to Order"
18    P.S. 6100.01        "Health Promotion and Disease Prevention
19                         for Inmates"
20    P.S. 6190.02        "Infectious Disease Management"
21    TRM  011-01         "Pharmacy Technical Reference Manual"
22    TRM  008.02         "Sentry Medical SMD/MDS Technical
23                         Reference Manual"
24    P.S. 5310.12        "Psychology Services Manual"
25    P.S. 5324.03        "Suicide Prevention Program Statement"
26    P.S. 5310.13        "Management of Mentally Ill inmates"
27    P.S. 5324.04        "Sexual Assault Prevention/Intervention
28                         Program"

29 Administration - Prior to issuance of NTP, the contractor shall
30 designate a health services Point of Contact (POC) who shall be
31 responsible for the delivery of health services under the
32 contract. The POC shall have full authority to act on behalf of
33 the contractor on all matters relating to the operation of the
34 health services portion of the contract. An alternate may be
35 designated; however, the contractor shall identify those times
36 when the alternate shall be the primary POC.

37 All health care services shall be provided within the HSU. For
38 cases of emergency and other medically necessary situations,
39 arrangements (i.e., subcontracts) shall be made with local health

33

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    care providers to obtain essential health services.

2    Services - The contractor shall have written plans and procedures
3    for providing urgent medical, health, mental health and dental
4    services.  The plan shall include, but is not limited to, the
5    following: (1) 24 hour a day, seven day a week emergency medical,
6    health, mental health and dental care; (2) initial health
7    screening; (3) health appraisal examination; (4) daily triaging
8    of complaints; (5) sick call procedures; (6) special medical
9    programs and services for, but not limited to, inmates with
10   chronic needs or requiring convalescent care; (7) mental health
11   and substance abuse services; (8) staffing/health care
12   specialists; (9) ancillary services - radiology, laboratory,
13   etc.; (10) dental services - routine and emergency; (11)
14   pharmaceutical services and supplies; (12) optometric services;
15   (13) health education; (14) medical diets; (15) infectious
16   diseases; and (16) quality control/peer reviews.

17   Infectious Disease - The contractor shall comply with all OSHA
18   regulations and BOP infectious disease requirements in the
19   delivery of health care services.  All inmates shall be screened
20   for Tuberculosis within 48 hours of intake and annually
21   thereafter.  Screening shall consist of either a PPD (Mantoux
22   method) or PA chest x-ray as clinically indicated.

23   Inmate Death - In the event an inmate death occurs, the
24   contractor shall immediately notify the CO and submit a written
25   report within 24 hours.  The contractor shall fingerprint (right
26   thumb or right index) the deceased and staff performing the
27   fingerprinting shall date and sign the fingerprint card to ensure
28   that positive identification has been made.  The fingerprint card
29   shall then be hand delivered to the CO.

30   Personal property of a deceased inmate shall be inventoried and
31   forwarded to the designated family member, the nearest of kin or
32   the Consular Officer of the inmate's country of birth.

33   If death is due to violence, an accident surrounded by unusual or
34   questionable circumstances, or is sudden and the deceased has not
35   been under immediate medical supervision, the contractor shall
36   notify the coroner of the local jurisdiction to request review of
37   the case, and if necessary, examination of the body.  The
38   contractor shall establish coroner notification procedures
39   outlining such issues as performance of an autopsy, who will

34

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  perform the autopsy, obtaining state-approved death certificates
2  and local transportation of the body. In the event an autopsy is
3  conducted, the contractor shall ensure the body is turned over to
4  the designated family member, the nearest of kin or the Consular
5  Officer of the offender's country of birth.

6  In the event the deceased inmate is indigent, the Government will
7  reimburse the contractor for reasonable burial costs as approved
8  in advance by the CO.

9  Medical Records - Consistency in content and format of medical
10  records of inmates transferring between the institution and other
11  Government facilities is a critical component of care for
12  inmates.

13  The contractor shall adhere to the HSM, Chapter 5, Sections 1
14  through 17 - Health Records, in preparing, formatting,
15  documenting, maintaining, releasing and all medicolegal aspects
16  of an inmate's medical record. The contractor is responsible for
17  supplying medical record folders, consistent with the
18  specification provided by the BOP, only for those inmates who are
19  new designations into the institution or in cases where
   transferred medical records cannot be located. The Government
   shall provide to the contractor all applicable Government forms
22  necessary to document an inmate's medical record.

23  The contractor shall adhere to HSM, Chapter 2, Section 3 -
24  Sensitive Medical Data\Medical Duty Status Reporting for the
25  reporting and accountability of medical data on all inmates
26  assigned to the institution. This includes utilizing the SMD/MDS
27  TRM on BOPDOCS.

28  Medical Transfers - Prior to admitting an inmate to an outside
29  medical facility for inpatient care, with the exception of
30  emergency cases, the contractor shall obtain pre-certification
31  approval of the BOP's Office of Medical Designations and
32  Transportation (OMDT). The contractor shall submit this request
33  for approval to OMDT via the BOP's SENTRY computer system using
34  the request procedures established in accordance with HSM,
35  Chapter 7. A copy shall also be sent to the CO.

36  In emergency cases, the contractor shall submit the above
37  mentioned request to OMDT within 24 hours of the inmate's
38  admission for inpatient care to an outside medical facility.

35

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

The contractor shall adhere to Chapter 7, Section 2 of the HSM regarding transfers and medical designations of inmates assigned to the institution.  Medical designation to BOP Medical Referral Centers or other Government facilities will be at the sole discretion of the BOP.  In order to transport an inmate, the patient must be in stable condition.

Other - The contractor shall furnish prescription eyeglasses to any inmate who requires them.

Q.  Social Services

Written procedures ensuring all inmates are considered for release to community-based programs consistent with 18 U.S.C. 3624 and P.S. 7310.03, Community Corrections Center Utilization and Transfer shall be established.

The contractor shall develop and administer a furlough program for eligible inmates consistent with the following statutory provisions: 18 U.S.C. 4082 and 3622 and 28 CFR 570.

Written procedures shall be developed which ensure that prior to release, inmates have adequate clothing, transportation to their release destination and are provided an appropriate gratuity.

No later than eleven months prior to projected release a final and specific release plan which includes a community-based program shall be formulated for each inmate.

R.  Work and Correctional Industries

Inmate labor shall be used in accordance with the inmate work plan developed by the contractor.  The inmate work plan may include work or program assignments for industrial, maintenance, custodial, service or other jobs.  The inmate work program shall not conflict with any other requirement of the contract and must comply with all applicable laws and regulations.

A contractor operated and managed industrial program providing productive opportunities for the inmate population to improve work habits and vocational skills is encouraged.

36

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  Inmates shall not be used to perform the responsibilities or
2  duties of an employee of the contractor. Appropriate safety/
3  protective clothing and equipment shall be provided to the inmate
4  population as appropriate. Inmates shall not be assigned work
5  considered hazardous or dangerous. This includes, but is not
6  limited to, areas or assignments requiring great heights, extreme
7  temperatures, use of toxic substances and unusual physical
8  demands.

9  As applicable, inmates shall be paid identical rates of pay as
10 those established by P.S. 5251.04, Inmate Work and Performance
11 Pay Program and 28 CFR 545.20.

12 S.  Academic and Vocational Education

13 The contractor shall develop an English-as-a-Second-Language
14 (ESL) program for limited English proficient inmates to improve
15 their oral and written English communication skills until the
16 inmate functions at the eighth grade equivalency level in
17 accordance with P.S. 5350.24, Section 6, English-as-a-Second
18 Language Program and as mandated by the Comprehensive Crime
19 Control Act of 1990.

20 The contractor shall ensure literacy programs and records are in
21 compliance with the Violent Crime Control and Law Enforcement Act
22 of 1994 and the Prison Litigation Reform Act of 1996 and are
23 consistent with procedures established by the BOP.

24 The contractor shall administer the Adult Basic Learning
25 Examination and the Spanish Assessment of Basic Education, Second
26 Edition, to measure eighth grade equivalency for all inmates for
27 proper program placement in accordance with P.S. 5310.15, Section
28 5a, Minimum Standards for Administration, Interpretation and Use
29 of Education Tests.

30 The contractor shall develop and make available to all inmates an
31 education program which addresses the subject of sexual
32 assault/sexual abuse. The content of the educational program
33 must include topics such as: recognizing behaviors that are
34 inappropriate, harassing, or assaultive; how to seek protection;
35 privacy rights; medical/psychological programs for victims of
36 abuse; how to make confidential reporting of sensitive issues to
37 institution staff, the BOP, or the OIG. The contractor shall
38 augment the educational program by distributing informational

37

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  posters and pamphlets to the inmate population.

2  A comprehensive parenting education program to promote and build
3  family relationships shall be made available for voluntary
4  attendance by the inmate population.

5  The contractor shall provide General Education Development (GED)
6  testing by becoming a GED testing center through the GED Testing
7  Service or by securing GED testing services through a local
8  provider.

9  The contractor shall utilize the SENTRY Education Data System
10  (EDS) to enter the required information pertaining to individual
11  inmate participation and progress in the institution education
12  program.  The contractor is referred to the SENTRY Education TRM
13  as a guide to the use of the SENTRY EDS.

14  T.  Recreation and Activities

15  The contractor shall comply with Section 611 of P.L. 104-208,
16  Title I, Section 101(a)(the Zimmer Amendment), which addresses
    use of recreational equipment and materials by Federal inmates.

18  The contractor shall ensure that correctional staff are assigned
19  in sufficient numbers to supervise all inmate recreation
20  activities.

21  U.  Telephone

22  The contractor shall provide a telephone system for inmates
23  capable of accommodating both debit and collect phone calls.  The
24  contractor shall establish procedures that permit inmates to make
25  telephone calls, including in cases of emergency or inmate
26  indigence.

27  All inmates, with the exception of inmates in the Special Housing
28  Unit or Control Unit, shall be allowed a minimum of 120 minutes
29  of collect calling per month unless telephone privileges have
30  been suspended as part of a disciplinary sanction.

31  Inmates in the Special Housing Unit or Control Unit are entitled
32  to a minimum of one social call per month.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  The system shall prevent inmates from calling any telephone
2  number not included on the inmate's official telephone list.
3  This list shall be generated within five working days of the
4  inmate's arrival and contain up to 30 telephone numbers that the
5  inmate is authorized to call via debit or collect procedures,
6  except as otherwise authorized by the Warden for good cause.

7  The contractor shall ensure and document that any individual
8  placed on an inmate's telephone list receives notice that they
9  have been placed on such list.  The notice shall advise the
10  individual of the procedures for removal from the inmate's
11  telephone list.  The contractor shall ensure that the telephone
12  numbers of an inmate's crime victim or victims are not included
13  on the inmate's official telephone list.  The contractor shall
14  allow each inmate the opportunity to update their telephone list
15  up to three times per month, except as otherwise authorized by
16  the Warden for good cause.

17  If authorized to do so under applicable law, the contractor shall
18  monitor and record inmate telephone conversations.  If inmate
19  telephone conversations can be monitored under applicable law,
20  the contractor shall provide notice to inmates of the potential
21  for monitoring.  However, the contractor shall also provide
22  procedures for inmates to be able to place unmonitored telephone
23  calls to their attorneys of record.

24  Telephone rates shall not exceed the dominant carrier tariff rate
25  and shall conform to all applicable Federal, state and local
26  telephone regulations.

27  Any income received by the contractor from collect calls which is
28  in excess of expenses incurred, to include refunds/rebates from
29  carriers, shall offset the cost of this contract.  The contractor
30  shall provide the CO  with copies of any contracts between the
31  contractor and the inmate telephone system provider(s).  The
32  contractor shall provide the CO with all documentation in support
33  of any agreement that the contractor has regarding income,
34  refunds, rebates and other monetary or nonmonetary reimbursements
35  involving the inmate telephone system.  The contractor shall also
36  provide the CO with copies of all invoices and other
37  documentation of expenses incurred and income received in regards
38  to the inmate telephone system with its monthly request for
39  contract payment and apply the credit against the monthly
40  payment.  The CO shall also have total access to all telephone
41  operation records.

39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, *et al.*,                )
                                       )
                    *Plaintiffs,*      )
                                       )
        v.                             )    Case No. 1:07-cv-01155-RMU
                                       )
GEO GROUP INC., *et al.*,              )
                                       )
                    *Defendants.*      )
                                       )

PLAINTIFFS' OPPOSITION TO GEO GROUP, INC.'S
MOTION TO DISMISS AND MOTION TO TRANSFER

# EXHIBIT 2

# District of Columbia Department of Consumer & Regulatory Affairs online organization registration search results for GEO's Registered Agent

| DC HOME | ABOUT DC | RESIDENTS | BUSINESS | VISITORS | DC GOVERNMENT | Kid |
|---------|----------|-----------|----------|----------|---------------|-----|





**MAYOR**
**Adrian M. Fenty**

## Organization Information

DCRA HOME

SERVICES
Basic Business License
Business Resource Center
Building/Land Regs
Compliance/Enforcement
Organization Registration
Inspections
Land Plats
Licensing Center
Building Plan Review
  Status
Permits

INFORMATION

ONLINE SERVICE
  REQUESTS

# Online Organization Registration
### Search Registered Organizations

**Organization Details - Step** [1] [2] [3]

To view another organization from the search, select the **Return to Search Results** button below. You may also **print** the organization details, or start a **new search**. Use the **Back to Main Page button** to continue the registration process.

| Organization | | Registered Agent |
|---|---|---|

**Organization Name:** GEO GROUP, INC. (THE)

**State:** FL

**Status:** ACTIVE

**Initial Date of Registration:** 6/6/1996

**File No.:** 961865

**Organization Type:** FOREIGN BUSINESS CORPORATION

Registered Agent:
Corporation Service Company
1090 Vermont Ave., N.W.
Washington, DC 20005

| << Back to Main Page | < Return To Search Results | Print Results |
|---|---|---|
| New Search | | |

For more information, contact the BBL Info Center at (202) 442-4432 or Ask the Director .

Government of the District of Columbia
Citywide Call Center : (202) 727-1000
TTY/TDD Directory

Telephone Directory by Topic |
Agencies | DC Council | Search
| Elected Officials
Feedback | Translation |
Accessibility | Privacy & Security |
Terms & Conditions

John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEITH MATHIS, *et al.*,                          )
                                                 )
                          *Plaintiffs*,          )
                                                 )
          v.                                     )          Case No. 1:07-cv-01155-RMU
                                                 )
GEO GROUP INC., *et al.*,                        )
                                                 )
                          *Defendants.*          )
                                                 )

**PLAINTIFFS' OPPOSITION TO GEO GROUP, INC.'S**
**MOTION TO DISMISS AND MOTION TO TRANSFER**

# EXHIBIT 3

# Federal Court Management Statistics reports

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

## DISTRICT OF COLUMBIA

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 2,947 | 3,383 | 3,121 | 3,461 | 3,382 | 3,377 | | |
| | Terminations | | 3,458 | 3,305 | 3,365 | 3,101 | 3,159 | 3,291 | | |
| | Pending | | 4,114 | 4,634 | 4,422 | 4,656 | 4,338 | 4,151 | | |
| | % Change in Total Filings | Over Last Year | -12.9 | | | | | | 84 | - |
| | | Over Earlier Years | | -5.6 | -14.9 | -12.9 | -12.7 | | 69 | - |
| | Number of Judgeships | | 15 | 15 | 15 | 15 | 15 | 15 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 3.1 | 17.1 | 27.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 197 | 226 | 208 | 231 | 225 | 225 | 91 | - |
| | | Civil | 159 | 180 | 163 | 184 | 179 | 197 | 86 | - |
| | | Criminal Felony | 25 | 30 | 32 | 35 | 34 | 28 | 92 | - |
| | | Supervised Release Hearings** | 13 | 16 | 13 | 12 | 12 | | 73 | - |
| | Pending Cases | | 274 | 309 | 295 | 310 | 289 | 277 | 80 | - |
| | Weighted Filings** | | 239 | 272 | 261 | 280 | 271 | 284 | 88 | - |
| | Terminations | | 231 | 220 | 224 | 207 | 211 | 219 | 88 | - |
| | Trials Completed | | 7 | 10 | 15 | 15 | 12 | 12 | 93 | - |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.4 | 12.9 | 12.8 | 10.2 | 9.6 | 7.7 | 90 | - |
| | | Civil** | 10.2 | 10.8 | 10.3 | 10.5 | 10.5 | 9.8 | 56 | - |
| | From Filing to Trial** (Civil Only) | | 37.0 | 35.0 | 27.4 | 25.0 | 29.0 | 24.0 | 74 | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | 433 | 468 | 408 | 445 | 359 | 282 | | |
| | | Percentage | 15.1 | 14.1 | 12.8 | 12.7 | 11.1 | 8.6 | 83 | - |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.5 | 1.5 | 1.5 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 70.60 | 86.63 | 75.49 | 85.69 | 93.32 | 69.99 | | |
| | | Percent Not Selected or Challenged | 47.2 | 53.6 | 50.4 | 50.4 | 56.6 | 55.7 | 51.9 | |

### 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 2382 | 22 | 35 | 491 | 28 | 21 | 135 | 228 | 209 | 42 | 514 | 61 | 596 |
| Criminal* | 367 | 1 | 106 | 12 | 63 | 78 | 20 | 10 | 2 | 13 | 5 | 26 | 31 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

## NO. CAROLINA EASTERN

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 1,878 | 2,088 | 2,216 | 2,136 | 2,032 | 1,941 | | |
| | Terminations | | 2,085 | 2,008 | 2,021 | 1,917 | 1,915 | 1,896 | | |
| | Pending | | 1,836 | 1,986 | 1,950 | 1,775 | 1,569 | 1,435 | | |
| | % Change in Total Filings | Over Last Year | -10.1 | | | | | | 76 | 9 |
| | | Over Earlier Years | | -15.3 | -12.1 | -7.6 | -3.3 | | 57 | 5 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | 9.0 | 6.9 | 12.0 | 21.6 | 24.0 | 20.0 | | |
| **FILINGS** | Total | | 469 | 522 | 555 | 534 | 509 | 485 | 32 | 2 |
| | Civil | | 316 | 360 | 375 | 379 | 352 | 380 | 49 | 5 |
| | Criminal Felony | | 129 | 136 | 154 | 128 | 123 | 105 | 12 | 1 |
| | Supervised Release Hearings** | | 24 | 26 | 26 | 27 | 34 | - | 39 | 6 |
| **ACTIONS PER JUDGESHIP** | Pending Cases | | 459 | 497 | 488 | 444 | 392 | 359 | 24 | 1 |
| | Weighted Filings** | | 505 | 550 | 582 | 552 | 553 | 489 | 27 | 1 |
| | Terminations | | 521 | 502 | 505 | 479 | 479 | 474 | 24 | 1 |
| | Trials Completed | | 18 | 18 | 17 | 13 | 19 | 19 | 50 | 5 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 8.5 | 8.3 | 7.7 | 7.6 | 7.5 | 7.0 | 41 | 5 |
| | | Civil** | 12.5 | 11.7 | 10.8 | 10.2 | 9.5 | 9.3 | 82 | 9 |
| | From Filing to Trial** (Civil Only) | | 22.0 | 23.0 | 20.8 | - | 28.0 | 23.0 | 33 | 5 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 61 | 52 | 33 | 30 | 42 | 40 | 34 | 4 |
| | | Percentage | 4.7 | 3.5 | 2.4 | 2.3 | 3.6 | 3.7 | | |
| | Average Number of Felony Defendants Filed Per Case | | 1.3 | 1.2 | 1.2 | 1.2 | 1.3 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 35.95 | 29.75 | 28.91 | 28.98 | 28.27 | 28.04 | | |
| | | Percent Not Selected or Challenged | 21.7 | 20.0 | 12.7 | 13.9 | 21.0 | 11.2 | | |

### 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 1264 | 195 | 48 | 425 | 43 | 22 | 22 | 155 | 87 | 49 | 171 | - | 47 |
| Criminal* | 516 | - | 159 | 29 | 181 | 42 | 24 | 8 | 14 | 30 | 5 | 6 | 18 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

http://www.uscourts.gov/cgi-bin/cmsd2006.pl

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEITH MATHIS, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-01155-RMU |
| | ) |
| GEO GROUP INC., *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**<u>ORDER</u>**

Upon consideration of the Motion to Dismiss and Motion to Transfer filed by Defendant GEO Group, Inc. ("GEO") and the memorandum of points and authorities filed in support thereof, the opposition thereto, and any reply in support thereof:

IT IS HEREBY ORDERED that GEO's Motion to Dismiss and Motion to Transfer are DENIED.

Date: _____

_____
The Honorable Ricardo M. Urbina
United States District Judge

<u>Copies to:</u>

Anthony Herman, Esq.
Donald J. Ridings, Jr., Esq.
Danielle M. Estrada, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington D.C. 20004
*Counsel for Plaintiffs*

Deborah J. Israel, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
*Counsel for Defendant GEO Group, Inc.*

Karen L. Melnik
U.S. Attorney's Office
555 Fourth Street, N.W.
Room E4112
Washington, D.C. 20530
*Counsel for Defendants Federal Bureau of Prisons and Harley Lappin*