IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEITH MATHIS, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GEO GROUP, INC., <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 1:07-cv-01155-RMU

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT GEO GROUP, INC.'S MOTION TO DISMISS AND MOTION TO
TRANSFER**

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER GEO**

The question currently before the court, in part, involves the application of the government contacts exception to the District of Columbia's long-arm statute. The government contacts exception precludes a court from considering a defendant's contacts with the federal government when attempting to determine whether a cause of action arose out of business transacted in the District of Columbia. Plaintiffs contend that the exception does not apply because GEO was transacting business in the District of Columbia through a series of contacts with the federal government. This contention is incorrect.[1]

The concerns encompassed in the government contacts exception go beyond the First Amendment issues set forth in Plaintiffs' brief. Instead,

[t]he underlying objectives of the governmental contacts exception are twofold.

---

[1] GEO would also note that it does not maintain offices in the District of Columbia. See Carrillo Dec. at ¶ 3 (attached hereto as Exhibit 1)

> First, ... protecting the important First Amendment right to petition the national government for the redress of grievances which [would be] impermissibly burdened by a "long arm" statute that permitted such contacts, standing alone, to subject a non-resident to the jurisdiction of local courts. Second, ... absent the government contacts exception, subsection 423(a)(1) would effectively transform the district of Columbia into a national judicial forum whose courts would rapidly be inundated with lawsuits.

*AGS International Services SA v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 79-80 (D.D.C. 2004) (*quoting Nat'l Coal Ass'n v. Clark*, 603 F. Supp. 668, 671 (D.D.C. 1984)). GEO's contacts with the Bureau of Prisons in the District of Columbia implicate both these concerns.

Plaintiffs contend that GEO's attempts to obtain business from various federal agencies do not implicate First Amendment concerns. Pls'. Br. at 10. This is incorrect. The United States Court of Appeals for the District of Columbia has held that "every person or group engaged ... in trying to persuade Congressional action is exercising the First Amendment right of petition." *Liberty Lobby, Inc. v. Person*, 390 F.2d 489, 491 (D.C. Cir. 1967). This right is not solely limited to attempts to persuade Congress, it "extends to administrative agencies and to the courts." *Doe v. McMillan*, 566 F.2d 713, 718 (D.C. Cir. 1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978). Thus, based upon *Liberty Lobby* and *McMillan*, GEO's attempts to persuade federal agencies to award contracts to GEO constitutes a petition of the government protected by the First Amendment.

Consistent with this view, attempts to petition the government for a party's pecuniary interest have been recognized as falling within the government contact doctrine. This concept was first recognized by the D.C. Circuit in *Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983). In *Naartex*, two defendants, American National Resources Company and Michigan Wisconsin Pipeline Company, maintained an office in the District of Columbia and allegedly

2

"made personal appearances before the Interior Department ... to influence government action" with respect to the lease of a parcel of land. *Id.* at 787. The D.C. Circuit held that these attempts to influence the Interior Department "undoubtedly qualify as exercises in petitioning the government." As a result, these contacts were exempted from consideration in the court's personal jurisdiction analysis. *Id.*

Additionally, in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C. Ct. App. 1976), the District of Columbia Court of Appeals, sitting *en banc*, determined that contacts with federal agencies in pursuit of pecuniary goals are covered by the government contact exception. In *Lockwood*, the defendant was assisting the plaintiff in obtaining a grant from the Environmental Protection Agency. *Id.* at 809. The Court held that "the visits by certain of appellees' personnel to the District of Columbia to consult with officials of the EPA concerning the possibility of a grant [do not] constitute the transaction of business here. This is so because of the long-standing and still vital doctrine that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Id.* at 813. Thus, a party's contacts with federal officials, even if related to pecuniary interest, fall within the government contacts exception and cannot be used to establish personal jurisdiction.

The authority cited by Plaintiffs in support of their argument cannot sustain the weight Plaintiffs place upon them. *World Wide Minerals. Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98 (D.D.C. 2000), and *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992), are both distinguishable because the contacts at issue in these cases involved meetings with the representatives of foreign governments and meetings at foreign embassies. *See World Wide Minerals*, 116 F. Supp. 2d at 106 ("Therefore, under the government contacts exception, this

court excludes from consideration meetings with governmental officials in the District of Columbia, and the signing of the bi-lateral agreement on uranium. However, the alleged meetings at the Republic of Kazakhstan Embassy will be considered."); *Dooley*, 786 F. Supp. at 75 & n.9 ("In addition, many of the individual defendants' contacts with the District do not fall under the government contacts exception because they involve meetings either with Ambassador Bandar, defendant Basil, or with the British Embassy or Chancery."). In this case, there are no allegations that Plaintiffs' alleged injuries arose out of meetings held by GEO with foreign representatives or conducted meetings at foreign embassies. Thus, these cases are irrelevant to the matter currently before the court.

Similarly, *Ramamurti v. Rolls-Royce, Ltd.*, 454 F. Supp. 407 (D.D.C. 1978), is inapplicable to the analysis of this matter. In *Ramamurti*, the District Court's determination of the applicability of the government contacts exception was based upon "the government acting in a proprietary, rather than governmental capacity." *Id.* at 412. *See Hughes v. A.H. Robins Co.*, 6190 A.2d 1140, 1150 n.17 (D.C. 1985). As Rolls-Royce's "contacts with federal agencies [did not] touch uniquely governmental functions of the United States" the governmental contacts exception did not apply to those contacts. *Id.* However, in this case, GEO's contacts with a federal agency touch a uniquely government function: the housing of prisoners. *District of Columbia v. Totten*, 5 F.2d 374, 376 (D.C. Cir. 1925) ("Unquestionably the authorities agree that the conduct of a prison for the retention of criminals who prey upon society generally is the performance of a governmental function, in which the public generally is concerned, and in which the police power of the state is exercised."). Thus, *Ramamurti* does not control in this matter.

Exercising personal jurisdiction over GEO on the basis of its government contact would also run afoul of the government contacts exception's purpose of preventing the District of Columbia from becoming a national judicial forum. "The manifold respects in which the Federal Government touches business concerns . . . are common knowledge." *Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142, 143 (D.C. Cir. 1945). Requiring every party who attempts to obtain business from the federal government to submit to the jurisdiction of District of Columbia court would eviscerate any limits on the reach of the District's courts.

This is exactly the type of result the government contacts exception was created to prevent. Thus, the Court should not consider GEO's contacts with federal agencies its jurisdictional analysis.

## II.    TRANSFERRING THIS MATTER TO THE EASTERN DISTRICT OF NORTH CAROLINA IS IN THE INTEREST OF JUSTICE

As discussed more thoroughly in the memorandum in support of GEO's Motion to Dismiss, if this action is to be adjudicated, it should be heard in North Carolina. In response, Plaintiffs have made the improbable argument that Plaintiffs' claims for inadequate medical care while incarcerated in North Carolina did not arise in North Carolina; cited cases which are readily distinguishable from the case before the court; and misstated the holdings of several cases which are binding upon this Court.

### A.    THE PRACTICAL REALITIES OF PRISONER TRANSPORT NEGATE ANY IMPACT OF THE PLAINTIFFS' CHOICE OF FORUM

The determination of whether this action should remain in the District of Columbia or be transferred to the Eastern District of North Carolina begins and ends at the prison doors. While a plaintiff's choice of forum is typically afforded deference, the practical realities of producing incarcerated parties and witnesses at court proceedings overwhelm the benefit of according a

plaintiff the benefit of his choice of forum. As a result, "transferring the action to the district wherein the prisoner is incarcerated serves the interest of justice." *Rogers v. Federal Bureau of Prisons*, 257 F. Supp. 2d 147, 148 (D.D.C. 2003).

Plaintiffs claim that the Court of Appeals decision in *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974) (en banc) stands for the proposition that "GEO's argument about inconvenience on behalf of its litigation opponents should be given no weight, and the Court has held that this argument can be disregarded if a prisoner chooses the District of Columbia as his forum." Pls'. Br. at 16. This assertion misstates the Court of Appeals' holding in *Starnes*. The Court of Appeals actual holding in Starnes was:

> Petitioner also notes that the Board has its offices in the District of Columbia, that most hearing examiners are members of the Board and are based in Washington, and that the main Board files are here. From this he argues that the Board cannot be inconvenienced by suit in this district; and that, because plaintiff's choice of forum is normally to be preferred, transfer is not proper if the plaintiff is the only person inconvenienced by the forum.
>
> The essential element in this argument is the concept that the difficulties of transferring a prisoner to this district for hearing are an inconvenience only to the prisoner, and that he should be able to force the court to ignore such inconveniences. We believe, however, that the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered, and one that the prisoner cannot eliminate by stating his preference for this forum.

*Starnes*, 512 F.2d at 927-28. *Starnes* does not stand for the proposition put forward by Plaintiffs, but instead the absolute opposite: a prisoner's choice of forum does not require the court to ignore the practical realities of transferring a prisoner from North Carolina to the District of Columbia.

*Starnes* provides additional grounds in support of the transfer of this action. The court in *Starnes* held:

> [m]any prisoner petitions will potentially involve testimony by the prisoner as to events in which he participated. The burdens and dangers involved in transporting a prisoner across long distances are, in our opinion, a significant inconvenience to the Bureau of Prisons and will normally justify transfer.

*Id.* at 930-31. *Starnes,* goes on to state "[i]n some cases the claim will require testimony or files most easily obtained at or near the place of incarceration. In such cases, the district in which the institution is located will ordinarily be the more convenient forum." *Id.* at 931. A thorough review of *Starnes* indicates that instead of supporting Plaintiffs' argument, it is directly contrary to Plaintiffs' arguments and supports transfer to North Carolina

Plaintiffs citation of *Young v. Director, United States Bureau of Prisons,* 367 F.2d 331 (D.C. Cir. 1966) is equally misleading. Plaintiffs assert that the Young court "specifically noted that it might have reached a different result with respect to transfer if the plaintiffs had established a connection with the District of Columbia." Pls'. Br. at 15 n.1. However, a complete reading of the footnote and the main text of the opinion indicate that the court's concern was with the District's distance from the place of the inmate's incarceration, not a potential plaintiff's connection with the District of Columbia.

After discussing the implications of the federal venue statute and its prior decision in *Hurley v. Reed,* 288 F.2d 844 (D.C. Cir. 1961), the Court of Appeals stated

> [i]n light of the 1962 amendment to the venue statute, we hold that Hurley does not preclude transfer to the district of confinement pursuant to 28 U.S.C. § 1404(a) and that, absent extraordinary circumstances which we need not today delineate, such actions should ordinarily be transferred as a matter of course.
>
> There are several reasons why we consider this course to be 'in the interest of justice.' First, transfer [to the district of confinement] accords with the Congressional purpose underlying the 1962 amendment to 28 U.S.C. § 1391. [FN 7] Second, transfer [to the district of confinement] is practically desirable since, if an evidentiary hearing is necessary to resolve disputed issues of material fact, the inmate will be readily available. Third, transfer [to the district of confinement] will discourage duplicitous litigation and will relieve the courts of this jurisdiction from the unnecessarily onerous task of deciding cases brought 'by a prisoner incarcerated far away from Washington, D.C. and based on events alleged to have

taken place in distant parts of the country.' Hereafter, if such cases are instituted in this jurisdiction, the pleadings are to be preliminarily examined to determine whether any compelling reason requires the matter to be litigated here. If no such reason appears, transfer of the case to the district of confinement would be in order. [FN 8] While there may be exceptional circumstances which would warrant retention of jurisdiction, it seems to us that such cases would be rare.

> FN7. Congress found that no sound reason required all actions against federal officials to be litigated exclusively in the District of Columbia and expressed the view that the more liberal venue provisions would materially reduce congestion in the District Court for the District of Columbia which is 'already heavily burdened' and where 'substantial delays are incurred.'

> FN8. Of course, were the district court to find that some other district would best suit 'the convenience of parties and witnesses' or 'the interest of justice' in a given case today's decision would not preclude a transfer to such court. Similarly, because of its unique relationship to the District of Columbia, different considerations may well apply to actions instituted by inmates of the Lorton Reformatory, Lorton, Virginia.

*Young*, 367 F.2d at 332-33 (citations omitted). Instead of weighing against transfer to the district of North Carolina, *Young* weighs heavily for transfer to North Carolina. In *Young*, a case where the Court of Appeals upheld the transfer, the plaintiffs were incarcerated in Lewisburg, Pennsylvania, *see id.* at 332, approximately 180 miles away from the District of Columbia. Similarly, Plaintiffs in the current case are incarcerated approximately 209 miles away from the District of Columbia.

Additionally, transferring this action to North Carolina will support all three factors set forth in *Young*: transferring this action will reduce the caseload for the District Court for the District of Columbia, will transfer the case to a judicial district in which the inmates are readily available; and will relieve the District Court of the District of Columbia from the burden of deciding a case by prisoners incarcerated far away from Washington, D.C. and based on events alleged to have taken place in distant parts of the country.

The single sentence devoted to Lorton Reformatory in *Young* does not change the focus of the Court's opinion. As Lorton, Virginia is a mere 18 miles from the District of Columbia Lorton's inmates were readily available to the courts in the District of Columbia. Additionally, deciding cases brought by Lorton inmates did not require the court to decide a case by a prisoner incarcerated far away from Washington, D.C. and based on events alleged to have taken place in distant parts of the country.

### B.  RETAINING VENUE IN THE DISTRICT OF COLUMBIA WOULD INCONVENIENCE WITNESSES AND THE INMATE POPULATION OF RIVERS CORRECTIONAL INSTITUTION

Plaintiffs further misstate GEO's arguments with respect to the convenience of witnesses. GEO has not conceded that the District of Columbia is a convenient forum for those witnesses who are parties, employees of parties, or experts. Instead, GEO has indicated that these individuals could likely be compelled to appear to testify. GEO Br. at 8.

Contrary to Plaintiffs' assertion, GEO has explicitly argued that there would, be great inconvenience to the staff and inmates at Rivers Correctional Institution if they were required to attend hearings or a trial in the District of Columbia.[2] GEO Br. at 9. As the Rivers medical staff will undoubtedly be required to testify in this matter, travel to and from the District of Columbia would substantially inconvenience these individuals, and would result in a reduced number of staff to attend to the medical needs of the inmates at Rivers. As Plaintiffs have alleged that the medical staff at Rivers is already "grossly inadequate to meet the significant and documented medical, dental and mental health needs of the men at Rivers[,]" Compl. ¶ 38(a), an allegation GEO strongly denies, Plaintiffs cannot now contend that it would be in the interest of justice to require the medical staff to travel to the District of Columbia to testify in hearings or at trial.

---

[2] Plaintiffs have touched on the fact that all parties are represented by D.C. Counsel. Pls'. Br. at 16. This point is generally irrelevant to the consideration of GEO's motion to transfer. *See McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40-41 (D.D.C. 2003).

Additionally, the administration, monitoring, and oversight of the Rivers Contract are handled by individuals located at Rivers Correctional Institution. *See* Martin Dec. ¶¶ 7-9 (attached hereto as Exhibit 2). Therefore, it would be more convenient for these individuals to appear in a court in North Carolina.

## C.    THE DISTRICT OF COLUMBIA DOES NOT HAVE A SUBSTANTIALLY GREATER INTERESTS IN ADJUDICATING THIS MATTER THAN NORTH CAROLINA

Plaintiffs claim that *Jackson v. District of Columbia*, 89 F. Supp. 2d 48, 53 (D.D.C. 2000), *vacated in part*, 254 F.3d 262 (2001) established that D.C. District Courts have a substantial interest in the treatment of prisoners sentenced within their borders. Once again, a complete review of the court's holding demonstrates that Plaintiffs' have inaccurately stated the court's holding.

The court in *Jackson* found that the interests of the transferee and transferor districts had essentially the same level of interest in hearing the case. "Virginia certainly has an interest in providing the forum for a case that addresses its government's policies. The District of Columbia, however, has a similar interest: the treatment of prisoners sentenced within its borders, many of whom undoubtedly are its citizens." *Id.* Thus, *Jackson* does not stand for the proposition that the District of Columbia has a "strong," "substantial," or "paramount" interest, Pls'. Br. at 20, in adjudicating this matter, instead, this Court and the District of Columbia has, at best, an interest that is similar to the interest of the courts in North Carolina.

## CONCLUSION

Plaintiffs' position is that the District of Columbia's long arm statute applies to this matter because GEO sought business from various federal agencies. This position is contrary to established precedent in this circuit which precludes consideration of such contacts in a

jurisdictional analysis.    Absent these contacts, Plaintiffs' have not established personal jurisdiction over GEO.

Additionally, in the event the Court determines not to dismiss this action, it should be transferred to North Carolina for further proceedings.  Binding precedent in this circuit indicates that, absent exceptional circumstances, the practical realities of prisoner transfer requires the transfer of actions such as this to the district of confinement.  Thus, in the event this matter is not dismissed, it should be transferred to the Eastern District of North Carolina.

Dated August 20 , 2007                Respectfully submitted,


/s/ Deborah J. Israel
Deborah J. Israel, Esq. (DC Bar No. 430841)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC  20005
(202) 857-4466 (Telephone)
(202) 261-0034 (Facsimile)
*Counsel for GEO Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2007, a true and correct copy of the foregoing *GEO Group, Inc.'s Reply Memorandum of Points and Authorities in Support of Defendant GEO Group, Inc.'s Motion to Dismiss and Motion to Transfer* has been served via CM/ECF on the following:

> Danielle M. Estrada
> Anthony Herman
> Donald J. Ridings, Jr.
> Covington & Burling LLP
> 1201 Pennsylvania Avenue, NW
> Washington, DC  20004
> *Attorney for Plaintiffs*
>
> Karen L. Melnik
> U.S. Attorney's Office
> 535 Fourth Street, NW
> Room E4112
> Washington, DC  20550

/s/ Deborah J. Israel
Deborah J. Israel

**EXHIBIT 1**

**Declaration of Louis Carrillo**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-01155-RMU |
| | ) |
| GEO GROUP, INC., <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF LOUIS CARRILLO

I, Louis Carrillo, under penalty of perjury, hereby declare as follows:

1.      I am over 18 years of age, competent to testify, and give this declaration of my own personal knowledge for use in the above captioned matter.

2.      I am employed as Vice President Corporate Counsel by The GEO Group, Inc. ("GEO").

3.      GEO does not maintain a business presence in Washington, D.C.  GEO does not maintain a physical office in Washington, D.C..

4.      When necessary, representatives of GEO will travel to Washington, D.C. to meet with members of Congress and representatives of administrative agencies to discuss issues relevant to GEO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8 · 20 · 07___

_____
Louis Carrillo

# EXHIBIT 1

# Declaration of Louis Carrillo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-01155-RMU |
| | ) |
| GEO GROUP, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

DECLARATION OF LOUIS CARRILLO

I, Louis Carrillo, under penalty of perjury, hereby declare as follows:

1.    I am over 18 years of age, competent to testify, and give this declaration of my own personal knowledge for use in the above captioned matter.

2.    I am employed as Vice President Corporate Counsel by The GEO Group, Inc. ("GEO").

3.    GEO does not maintain a business presence in Washington, D.C. GEO does not maintain a physical office in Washington, D.C..

4.    When necessary, representatives of GEO will travel to Washington, D.C. to meet with members of Congress and representatives of administrative agencies to discuss issues relevant to GEO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8 · 20 · 07___

_____
Louis Carrillo