**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, <u>et al.</u>, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP, INC., <u>et al.</u>, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY</u>

On the grounds set forth below, Plaintiffs Keith Mathis, *et al*., respectfully move the Court for leave to file a four-page Sur-reply addressing a new argument that GEO raised for the first time in its Reply brief:  that exercising jurisdiction over Defendant GEO Group, Inc. ("GEO") would convert the District of Columbia Circuit into a "national judicial forum" for prisoner lawsuits.  *See* Reply Memorandum of Points and Authorities in Support of Defendant GEO Group, Inc.'s Motion to Dismiss and Motion to Transfer ("GEO Reply") at 1–5.

1.       On July 26, 2007, GEO moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2), alleging that GEO's business transactions in D.C. related to the GEO Contract are protected by the "government contacts" exception to D.C.'s long-arm statute. In the alternative, GEO argued that this case should be transferred to the Eastern District of North Carolina.  Plaintiffs filed an opposition demonstrating that the government contacts exception does not apply in this case because no First Amendment interest is implicated, and that venue is proper in the District of Columbia.

2.       GEO's Reply raised for the first time the argument that permitting this case to go forward in D.C. would convert the District of Columbia Circuit into a "national

judicial forum" for federal prisoner lawsuits.  If the Court entertains this new argument when evaluating GEO's motions to dismiss or transfer, it would be appropriate to afford the Plaintiffs an opportunity to respond to this argument in a Sur-reply.

       3.      Courts in this District may allow parties to file a sur-reply in response to new arguments raised in a reply brief, or may decline to entertain the new argument.  *Flynn v. Veazey Const. Corp.*, 310 F. Supp.2d 186, 189 (D.D.C. 2004) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.")

       Accordingly, Plaintiffs respectfully request that the Court grant them leave to file a Sur-reply.  A copy of Plaintiffs' four-page Sur-reply is attached as Exhibit 1 to this motion.  A Rule 7(m) Statement and proposed Order also are attached.

Dated: August 31, 2007                Respectfully submitted,

                              /s/ Ivy A. Lange

Donald L. Kahl (DC Bar # 489472)        Anthony N. Herman (DC Bar # 424643)
Philip Fornaci (DC Bar # 434824)         Donald J. Ridings Jr. (DC Bar # 466808)
Deborah Golden (DC Bar # 470578)       Danielle Estrada (DC Bar # 494517)
Ivy A. Lange (DC Bar # 488147)           COVINGTON & BURLING LLP
WASHINGTON LAWYERS' COMMITTEE FOR   1201 Pennsylvania Avenue N.W.
  CIVIL RIGHTS AND URBAN AFFAIRS      Washington, D.C.  20004
11 Dupont Circle N.W.                202.662.6000 (ph)
Suite 400                        202.778.6000 (fax)
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)

                             *Counsel for Plaintiffs*

## <u>LOCAL RULE 7(m) STATEMENT</u>

Counsel for Defendants the Federal Bureau of Prisons and Harley Lappin do not consent to this motion.  Counsel for Plaintiffs left telephone messages with counsel for Defendant GEO seeking their position on this motion, but had not received a response by the time this motion was filed.


DATED:  August 31, 2007                             Respectfully Submitted,


                                                     /s/ Ivy A. Lange
Donald L. Kahl (DC Bar # 489472)          Anthony N. Herman (DC Bar # 424643)
Philip Fornaci (DC Bar # 434824)          Donald J. Ridings Jr. (DC Bar # 466808)
Deborah Golden (DC Bar # 470578)          Danielle Estrada (DC Bar # 494517)
Ivy A. Lange (DC Bar # 488147)            COVINGTON & BURLING LLP
WASHINGTON LAWYERS' COMMITTEE FOR         1201 Pennsylvania Avenue N.W.
   CIVIL RIGHTS AND URBAN AFFAIRS         Washington, D.C.  20004
11 Dupont Circle N.W.                     202.662.6000 (ph)
Suite 400                                 202.778.6000 (fax)
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)
                                          *Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KEITH MATHIS, <u>et al.</u>,                    )
                                              )
                          *Plaintiffs*,        )
                                              )
              v.                              )    Case No. 1:07-cv-01155-RMU
                                              )
GEO GROUP, INC., <u>et al.</u>,                 )
                                              )
                          *Defendants*.        )
                                              )

<u>**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY**</u>

<u>**EXHIBIT 1**</u>

**Sur-reply in Further Opposition to GEO Group, Inc.'s Motion to Dismiss and
Motion to Transfer**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, <u>et al.</u>, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP, INC., <u>et al.</u>, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**<u>SUR-REPLY IN FURTHER OPPOSITION TO GEO GROUP, INC.'S</u>**
**<u>MOTION TO DISMISS AND MOTION TO TRANSFER</u>**

In its reply brief, GEO argued for the first time that exercising jurisdiction over GEO and allowing this case to go forward in the District of Columbia would transform the District of Columbia Circuit into a "national judicial forum" for lawsuits filed by prisoners in Federal private prison facilities. Reply Memorandum of Points and Authorities in Support of Defendant GEO Group, Inc.'s Motion to Dismiss and Motion to Transfer ("GEO Reply") at 5.

GEO's "floodgates" argument is misplaced. The very features that make this litigation appropriate for resolution in D.C. are not present in other prisoner cases that originate in other jurisdictions. This case has a unique and inextricable link to the District.

<u>First</u>, all the Named Plaintiffs were convicted of <u>D.C. Code</u> violations and were sentenced by <u>D.C. courts</u>. This Court has previously made clear that D.C. has a legitimate interest in the "treatment of prisoners sentenced within its borders, many of whom are undoubtedly its citizens." *Jackson v. District of Columbia.* 89 F. Supp. 2d 48, 53 (D.D.C. 2004). The cases that GEO relies on in support of its "national judicial forum" argument are therefore inapposite. *Cf., e.g., Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) (contacts involved regulatory proceedings about oil and gas leases located in Wyoming); *AGS*

*International Services v. Newmont USA Ltd.*, 346 F. Supp. 2d 64 (D.D.C. 2004) (case involving alleged interference by non-D.C., American companies with a Peruvian company's contract to provide food services to miners in Peru); *Environmental Research International v. Lockwood Greene Engineers*, 355 A.2d 808 (D.C. Ct. App. 1976) (contacts involved provision of consulting services to a non-D.C. corporation negotiating with another non-D.C. corporation over matters unrelated to D.C.).

Second, the Named Plaintiffs in this case include persons who currently reside in the District. This fact distinguishes this case from prisoner cases originating in other jurisdictions or brought by prisoners at other federal or private penal institutions who seek redress for individual grievances.

Third, as a condition of entering into the Rivers Contract for the purpose of housing D.C. offenders, GEO expressly agreed to comply with D.C. law. Rivers Contract, Statement of Work at 7. This fact further distinguishes this case from the run-of-the-mill cases brought in this and other courts against operators of private prisons who have contracted to house prisoners from jurisdictions outside of the District of Columbia.

Fourth, GEO's argument in this Court that "GEO's contacts with a federal agency touch a uniquely governmental function: the housing of prisoners," and should therefore be excluded from the jurisdictional analysis, GEO Reply at 4, cannot be squared with the position previously advanced in other cases involving the Rivers facility, and should not be credited. In another medical conditions case, for example, GEO's counsel recently told the Fourth Circuit that employees at Rivers "were not performing a traditional public function exclusively reserved to the government." Brief of Appellants at 23, *Holly v. Scott*, No. 05-6287 (4th Cir.) (discussing "color of law" analysis with respect to GEO employees), attached as Exhibit A to the Declaration

of Deborah M. Golden. While this Court need not resolve this issue at this early stage of the litigation, we submit that for the purpose of ascertaining jurisdiction, the Court should give no weight to GEO's flexible and dueling characterizations of its commercial relationship with the BOP—which is based of course in the District.

Fifth, and finally, as alleged in the Complaint, GEO's contacts with the District are not limited to its extensive communications directed at the BOP. Before they were incarcerated at Rivers, several Named Plaintiffs and many members of the class received medical treatment from private providers in and around the District of Columbia, including through the D.C. Jail. (Compl. ¶¶ 11, 12, 15, 16, 17.) Plaintiffs will seek discovery into GEO's contacts with these health providers, and into the steps—if any—that GEO took to ensure that medication, physical therapy, mental health services, and other treatment regimens that began in the District of Columbia were continued at Rivers. GEO's dealings with the Plaintiffs' prior health care providers in the District of Columbia are among the acts or omissions that give rise to Plaintiffs' claims in this case.

## **CONCLUSION**

There is accordingly no reason to decline jurisdiction over this case out of a concern that retaining venue over this quintessentially D.C.-focused case would open the floodgates to a deluge of prisoner litigation, simply because the BOP is headquartered in D.C. It is instead the District of Columbia's paramount local interest in adjudicating this uniquely situated case, coupled with the D.C. residents' choice of forum—and not the location of the BOP alone—that makes D.C. the proper forum for this case. For this reason and for the reasons set forth in Plaintiffs' Memorandum of Points and Authorities in Opposition to GEO Group, Inc.'s Motion to Dismiss and Motion to Transfer, the Court should deny GEO's motions to dismiss or to transfer venue.

Respectfully submitted,


  /s/ Ivy A. Lange

Donald L. Kahl (DC Bar # 489472)                    Anthony N. Herman (DC Bar # 424643)

Philip Fornaci (DC Bar # 434824)                      Donald J. Ridings Jr. (DC Bar # 466808)

Deborah Golden (DC Bar # 470578)                  Danielle Estrada (DC Bar # 494517)

Ivy A. Lange (DC Bar # 488147)                       COVINGTON & BURLING LLP

WASHINGTON LAWYERS' COMMITTEE FOR       1201 Pennsylvania Avenue N.W.

   CIVIL RIGHTS AND URBAN AFFAIRS             Washington, D.C.  20004

11 Dupont Circle N.W.                               202.662.6000 (ph)

Suite 400                                       202.778.6000 (fax)

Washington, D.C.  20036

202.319.1000 (ph)

202.319.1010 (fax)


*Counsel for Plaintiffs*

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, et al.,                    )
                                         )
                    Plaintiffs,          )
                                         )
        v.                               )    Case No. 1:07-cv-01155-RMU
                                         )
GEO GROUP, INC., et al.,                 )
                                         )
                    Defendants.          )
                                         )

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY**

**EXHIBIT A to EXHIBIT 2**

**Appellants' Brief in *Holly v. Scott***

RECORD NO. 05-6287

In The

# United States Court of Appeals

### For The Fourth Circuit

## RICKY LEE HOLLY,

*Plaintiff – Appellee,*

v.

## WILLIE SCOTT; GADDY LASSITER,

*Defendants – Appellants.*

# ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

_____

## BRIEF OF APPELLANTS

_____

Mark A. Davis
WOMBLE CARLYLE
  SANDRIDGE & RICE, PLLC
Post Office Box 831
Raleigh, North Carolina 27602
(919) 755-2100

*Counsel for Appellants*

RECEIVED
2005 APR 11  PM 2: 41
U.S. COURT OF APPEALS
FOURTH CIRCUIT

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ..................................................... 1

STATEMENT OF ISSUES ..................................................................... 1

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF THE FACTS .............................................................. 2

SUMMARY OF ARGUMENT ............................................................... 2

ARGUMENT .......................................................................................... 3

    STANDARD OF REVIEW ............................................................... 3

I.    EMPLOYEES OF PRIVATE PRISONS ARE NOT SUBJECT
    TO LIABILITY ON A *BIVENS* THEORY ................................... 3

    A.    The Supreme Court's *Bivens* Jurisprudence Over The
    Past 25 Years Mandates The Conclusion That Plaintiff Is
    Not Entitled To A *Bivens* Remedy On These Facts ................... 3

    B.    The District Court's Analysis Of This Issue Is
    Inconsistent With The Supreme Court's Decisions
    Interpreting *Bivens* Over The Last 25 Years ............................ 14

II.    EVEN ASSUMING ARGUENDO THAT PRIVATE
    EMPLOYEES COULD BE LIABLE ON A BIVENS CLAIM
    UNDER SOME CIRCUMSTANCES, NO SUCH LIABILITY
    EXISTS IN THE PRESENT CASE BECAUSE
    DEFENDANTS DID NOT ACT UNDER COLOR OF
    FEDERAL LAW .............................................................................. 19

A.    Public Functions Test.................................................................. 22

B.    Symbiotic Relationship Test ...................................................... 27

C.    Nexus Test................................................................................ 29

CONCLUSION ......................................................................................... 34

REQUEST FOR ORAL ARGUMENT ................................................... 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF CITATIONS

**PAGE(S)**

## CASES

*Blum v. Yaretsky,*
    457 U.S. 991, 102 S. Ct. 2777 (1982)......................................................... 29

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
    403 U.S. 388 (1971)......................................................................... *passim*

*Burton v. Wilmington Parking Authority,*
    365 U.S. 715, 81 S. Ct. 856 (1961)........................................................27-28

*Bush v. Lucas,*
    452 U.S. 367, 103 S. Ct. 2404 (1983)..................................................... 8, 9

*Byrd v. Moseley,*
    942 F. Supp. 642 (D.D.C. 1996)............................................................. 18

*Carlson v. Green,*
    446 U.S. 14, 100 S. Ct. 1468 (1980)................................................ 14, 15, 16

*Castaneda v. INS,*
    23 F.3d 1576 (10th Cir. 1994) ................................................................. 3

*Chappell v. Wallace,*
    462 U.S. 296, 103 S. Ct. 2362 (1983)........................................................ 8

*Correctional Services Corp. v. Malesko,*
    534 U.S. 61, 122 S. Ct. 515 (2001)...................................................... *passim*

*Cunningham v. Southlake Center for Mental Health,*
    924 F.2d 106 (7th Cir. 1991)................................................................. 18

*Dachman v. Shalala,*
    950 F. Supp. 708 (D. Md. 1997)........................................................17-18, 19

*FDIC v. Meyer*,
    510 U.S. 471, 114 S. Ct. 996 (1994)................................................................ 8

*Fletcher v. Rhode Island Hospital Trust National Bank*,
    496 F.2d 927 (1st Cir.), *cert. denied*,
    419 U.S. 1001, 95 S. Ct. 320 (1974)........................................................... 11

*Hall v. Clinton*,
    235 F.3d 202 (4th Cir. 2000), *cert. denied*,
    532 U.S. 995, 121 S. Ct. 1656 (2001)....................................................... 8, 11

*Hicks v. Southern Maryland Health Systems Agency*,
    737 F.2d 399 (4th Cir. 1984) ................................................................... 28

*In Re Stauffer Chemical Company of Wyoming*,
    1980 U.S. Dist. Lexis 17390 (D. Wy. June 20, 1980)................................. 11

*Jensen v. Johnson County Youth Baseball League*,
    838 F. Supp. 1437 (D. Kan. 1993)............................................................... 4

*Judicial Watch, Inc. v. Rossotti*,
    317 F.3d 401 (4th Cir.), *cert. denied*,
    540 U.S. 825, 124 S. Ct. 179 (2003)........................................................... 8

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922, 102 S. Ct. 2744 (1982).................................................. *passim*

*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972).................................................................................. 21

*Morast v. Lance*,
    807 F.2d 926 (11th Cir. 1987) .................................................................. 33

*Nwanze v. Phillip Morris, Inc.*,
    100 F. Supp. 2d 215 (S.D.N.Y. 2000), *aff'd*,
    2001 WL 409450 (2d Cir.), *cert. denied*,
    534 U.S. 962, 122 S. Ct. 369 (2001)..................................................... 17, 18

*Peoples v. CCA Detention Center*,
    2004 WL 74317 (D. Kan. 2004)........................................................ 4, 13, 14

*Rendell-Baker v. Kohn,*
        457 U.S. 830, 102 S. Ct. 2764 (1982)................................................. 22, 26, 29

*Richardson v. McKnight,*
        521 U.S. 399, 117 S. Ct. 2100 (1997)..................................................... *passim*

*Rodriguez-Garcia v. Davila,*
        904 F.2d 90 (1st Cir. 1990).................................................................. 22, 29

*Sarro v. Cornell Corrections, Inc.,*
        248 F. Supp. 2d 52 (D.R.I. 2003) ..................................................... 24, 25, 26

*Sarro v. Donald Wyatt Detention Center,*
        2001 WL 210265 (D.R.I. 2001)........................................................... 24

*Scheideman v. Shawnee County Bd. of County Comm'rs,*
        895 F. Supp. 279 (D. Kan. 1995)........................................................... 3

*Schweiker v. Chilicky,*
        487 U.S. 412, 108 S. Ct. 2460 (1988)......................................... 8, 9, 12, 13

*Sosa v. Alvarez-Machain,*
        124 S. Ct. 2739 (2004) ..................................................................... 7, 8

*Stevens v. Morrison-Knudsen,*
        576 F. Supp. 516 (D. Md. 1983), *aff'd,*
        755 F.2d 375 (4th Cir. 1985)............................................................. *passim*

*Stuart Circle Hospital Corp. v. Aetna Health Management,*
        995 F.2d 500 (4th Cir. 1993) ................................................................. 3

*Sutton v. Providence St. Joseph Medical Center,*
        192 F.3d 826 (9th Cir. 1999) ........................................................... 20

*United States v. Stanley,*
        483 U.S. 669, 107 S. Ct. 3054 (1987)...................................................... 8, 9

*Wagner v. Metropolitan Nashville Airport Authority,*
        772 F.2d 227 (6th Cir. 1985) ............................................................ 10

*Woodall v. Partilla,*
    581 F. Supp. 1066 (N. D. Ill. 1984) ................................................................. 19

*Zerilli v. Evening News Association,*
    628 F.2d 217 (D.C. Cir. 1980) ........................................................................ 12

*Zimbelman v. Savage,*
    228 F.3d 367 (4th Cir. 2000) ............................................................................ 8

## STATUTES

28 U.S.C. § 1992(b) ....................................................................................... 1, 2

42 U.S.C. § 1983 ........................................................................... 10, 17, 18, 19

N.C. Gen. Stat. § 1D-15 ...................................................................................... 7

## RULES

Fed. R. App. P. 5(a) ........................................................................................ 1, 2

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 33

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
Richmond, VA

5 January 2005

No. 04-362     Holly v. Scott

**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER**
**ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION**

ONLY ONE FORM NEED BE COMPLETED FOR A PARTY EVEN IF THE PARTY IS REPRESENTED BY
MORE THAN ONE ATTORNEY.  DISCLOSURES MUST BE FILED ON BEHALF OF INDIVIDUAL PARTIES
AS WELL AS CORPORATE PARTIES.  DISCLOSURES ARE REQUIRED FROM AMICUS CURIAE ONLY IF
AMICUS IS A CORPORATION.  COUNSEL HAS A CONTINUING DUTY TO UPDATE THIS
INFORMATION.  PLEASE FILE AN ORIGINAL AND THREE COPIES OF THIS FORM.

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Willie Scott and Gaddy Lassiter_____     who are     ___Appellants_____.
(name of party/amicus)                                              (appellant/appellee/amicus)

make the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ( ) YES    ( ) NO

2.    Does party/amicus have any parent corporations?     ( ) YES    (X) NO

      If yes, identify all parent corporations, including grand-parent and great-grandparent corporations:

3.    Is 10 percent or more of the stock of a party/amicus owned by a publicly held corporation or other publicly
      held entity?  ( ) YES    (X) NO

      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest
      in the outcome of the litigation (Local Rule 26.1(b))?   (X) YES    ( ) NO

      If yes, identify entity and nature of interest:

      (1)  The GEO Group, Inc. (ownership interest in employer of named Defendants);
      (2)  Wackenhut Corporation (assumed responsibility for liabilities of GEO Group, Inc., formerly
           Wackenhut Corrections Corporation, up to certain date); and
      (3)  AIG Insurance Group (insurer for named Defendants' employer).

5.    Is the party a trade association?     ( ) YES    (X) NO

      If yes, identify all members of the association, their percent corporations, and any publicly held companies
      that own 10 percent or more of a member's stock:

_____            ___1/5/04_____
(signature)                                              (date)

RALEIGH 495765v1

FILED
JAN 1 0 2005
U.S. Court of Appeals
Fourth Circuit

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Jurisdiction in this Court is based upon 28 U.S.C. § 1992(b) and Rule 5(a) of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES

1.    Whether the District Court erred in failing to grant Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the ground that Defendants cannot be liable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)?

## STATEMENT OF THE CASE

Plaintiff filed this *pro se Bivens* action alleging a deprivation of his constitutional rights during his incarceration at Rivers Correctional Center ("Rivers").  On October 15, 2003, the District Court entered a frivolity order allowing this action to go forward but raising the question of whether it possessed subject matter jurisdiction over this case in light of the fact that Rivers is a privately owned and operated facility.  Defendants subsequently filed a Motion to Dismiss this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  (J.A. at 17)  On September 20, 2004, the District Court entered an order denying Defendants' Motion to Dismiss.  (*Id.* at 19)  Defendants

1

subsequently filed a Motion for Certification of Order for Immediate Appeal pursuant to 28 U.S.C. § 1992(b) of the Rules of Civil Procedure. (*Id.* at 32) On December 13, 2004, the District Court entered an Order granting the Motion for Certification. (*Id.* at 36). Defendants subsequently filed a petition for permission to appeal to this Court pursuant to Rule 5(a) of the Federal Appellate Procedure. (*Id.* at 37) On February 25, 2005, this Court entered an Order granting Defendants permission to take an immediate appeal. (*Id.* at 42)

## STATEMENT OF THE FACTS

Plaintiff is an inmate incarcerated at Rivers, a private prison owned by the GEO Group, Inc. (hereinafter "the GEO")[1] which has contracted with the United States Bureau of Prisons ("BOP") to operate several prison facilities. As such, Wackenhut is a private, independent contractor rather than a federal entity. The only two named Defendants in this action are Willie Scott and Gaddy Lassiter, two individuals employed by Rivers. (*Id.* at 7). In his Complaint, Plaintiff alleges that he did not receive adequate medical care during his incarceration. (*Id.* at 7).

## SUMMARY OF ARGUMENT

Defendants respectfully submit that the district court's order denying Defendants' Motion to Dismiss should be reversed based on the ground that

---

[1] The prior owner of Rivers was Wackenhut Corrections Corporation.

employees of a private prison such as Defendants are not subject to liability under a *Bivens* theory in that they are not federal officers and they did not act under color of federal law.

## ARGUMENT

## STANDARD OF REVIEW

In reviewing the district court's ruling on a motion to dismiss, this Court utilizes a *de novo* standard of review. *See Stuart Circle Hospital Corp. v. Aetna Health Management*, 995 F.2d 500 (4th Cir. 1993).

## I.    EMPLOYEES OF PRIVATE PRISONS ARE NOT SUBJECT TO LIABILITY ON A *BIVENS* THEORY.

### A.    The Supreme Court's *Bivens* Jurisprudence Over The Past 25 Years Mandates The Conclusion That Plaintiff Is Not Entitled To A *Bivens* Remedy On These Facts.

It is axiomatic that federal courts can only exercise jurisdiction over cases where they have received specific authorization to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Likewise, courts must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995). A plaintiff has the burden of showing that a court possesses

jurisdiction over a case. *Peoples v. CCA Detention Center*, 2004 WL 74317 (D.

Kan. 2004) (citing *Jensen v. Johnson County Youth Baseball League*, 838 F. Supp.

1437, 1439-40 (D. Kan. 1993)).

In the present case, Plaintiff has not alleged that Defendants were

employees or agents of the federal government. Nor could he have made such an

allegation since it is undisputed that the Defendants are simply employees of the

GEO – a private independent contractor.

Recently, the United States Supreme Court held that no *Bivens* cause of

action can exist against private entities acting under color of federal law. In

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515 (2001), the

plaintiff attempted to assert a *Bivens* action against a private entity which

contracted with the BOP. In *Malesko*, the plaintiff suffered a heart attack after

being forced by the defendant's employee to walk five sets of stairs despite the

facility's knowledge that he suffered from a heart condition. The plaintiff

contended that *Bivens* should be extended to confer a right of action for damages

against private entities acting under color of law and that a federal remedy must be

recognized wherever there has been an alleged constitutional deprivation --

regardless of the existence of alternative remedies to the victim.

4

The Supreme Court rejected these arguments.  The Court began its analysis by noting that it had "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one." *Id.* at 67 n.3, 122 S. Ct. at 519, n.3. The Court emphasized that *Bivens* was designed to deter individual <u>federal</u> officers from committing constitutional violations . . . ." *Id.* at 71, 122 S. Ct. at 521.  (emphasis added)    The Court further emphasized that the rationale underlying *Bivens* was to provide a remedy to an aggrieved party where none would otherwise exist, stating the following:

> [We are not] confronted with a situation in which claimants in respondent's shoes lack effective remedies. . . .  For example, federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities.  This case demonstrates as much, since respondent's complaint . . . arguably alleged no more than a quintessential claim of negligence.

*Id.* at 72-73, 122 S. Ct. at 522.  The Supreme Court noted the irony of the fact that while the plaintiff's allegations were essentially those of simple negligence, the lower court – by construing the claim as a *Bivens* claim – erected a higher standard of care ("deliberate indifference") than that which the plaintiff would had to prove in order to prevail on a simple negligence theory.  *Id.*  The Court then contrasted the facts in *Malesko* with those in *Bivens*, stating as follows:

> This also makes respondent's situation altogether different from *Bivens*, in which we found alternative state tort remedies to be inconsistent or even hostile to a remedy inferred from the Fourth Amendment. When a federal officer appears at the door and requests entry, one cannot always be expected to resist. Yet lack of resistance alone might foreclose a cause of action in trespass or privacy. Therefore, we reasoned in *Bivens* that other than an implied constitutional tort remedy, there remained ... but the alternative of resistance, which may amount to a crime. Such logic does not apply to respondent, whose claim of negligence or deliberate indifference requires no resistance to official action, and whose lack of alternative tort remedies was due solely to strategic choice.

*Id.* at 73-74, 122 S. Ct. at 523. The Supreme Court further noted the availability to inmates in private prisons of remedial mechanisms promulgated by the Bureau of Prisons - which included suits for injunctive relief in federal court as well as the filing of grievances through the Bureau of Prisons Administrative Remedy Program. *See id.* at 72-74, 122 S. Ct. at 522-23 ("Federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in government facilities."). The Supreme Court concluded that – like in the present case – the plaintiff in *Malesko* was "not a plaintiff in search of a remedy as in *Bivens* ..." *Id.* at 74, 122 S. Ct. at 523. The *Malesko* Court concluded that "[t]he caution toward extending *Bivens* remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here." *Id.*

6

As in *Malesko*, the Plaintiff in the present case is essentially claiming that Defendants were negligent in the provision of medical services to him. Under North Carolina law, Plaintiff would clearly have a common law remedy to assert such a negligence claim. Moreover, if an inmate bringing such a suit could show malicious, willful, or wanton conduct on the part of the defendant, he would also be entitled to recover punitive damages. *See* N.C. Gen. Stat. § 1D-15.

Plaintiff has not attempted to show how a remedy under *Bivens* would exceed his remedy under North Carolina law. Furthermore, as noted above, in order to recover under a *Bivens* theory, Plaintiff would have to show "deliberate indifference" on the part of the defendant – a much higher standard than that required to show mere common law negligence.

Furthermore, with regard to the deterrence function of *Bivens*, the threat of a lawsuit seeking remedies under state law would serve the same deterrent as the threat of a lawsuit under *Bivens*. Thus, the deterrence goal articulated in *Bivens* is insufficient to permit an expansion of *Bivens* in this context.

It is axiomatic that the creation of damages remedies in civil cases is a legislative function. It would be improper to construe *Bivens* as authorizing federal courts to engage in lawmaking as opposed to leaving such decisions to Congress. In *Sosa v. Alvarez-Machain*, 124 S. Ct. 2739 (2004), the Court held that the creation of "a private right of action is better left to legislative judgment."

7

*Id.* at 2762-3, 2764.  As noted in Justice Scalia's concurrence, *Bivens* is "a relic of

the heady days in which this Court assumed common-law powers to create causes

of action."  Justice Scalia further stated that "[w]hile *Bivens* stands, the ground

supporting it has eroded.  For the past 25 years, we have consistently refused to

extend *Bivens* liability to any new context."  *Id.* at 2772 (Scalia, J., concurring).

See *e.g. Bush v. Lucas*, 452 U.S. 367, 373-374, 103 S. Ct. 2404 (1983); *Schweiker*

*v. Chilicky*, 487 U.S. 412, 420-421, 108 S. Ct. 2460 (1988); *Chappell v. Wallace*,

462 U.S. 296, 304, 103 S. Ct. 2362 (1983); *United States v. Stanley*, 483 U.S. 669,

681, 107 S. Ct. 3054 (1987); *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996 (1994);

*Malesko, supra.*

　　This Court has likewise demonstrated a reluctance to extend *Bivens*.  *See*

*Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401 (4th Cir.), *cert. denied*, 540 U.S.

825, 124 S. Ct. 179 (2003); *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000), *cert.*

*denied*, 532 U.S. 995, 121 S. Ct. 1656 (2001); *Zimbelman v. Savage*, 228 F.3d 367

(4th Cir. 2000).

　　Had Congress intended for the *Bivens* remedy to be expanded so as to

encompass claims against employees of a private prison, it could easily have done

so.  By virtue of its failure to do so in the years since private prisons have become

operational, the logical inference is that Congress never intended for *Bivens* to be

8

expanded in this fashion. Thus, because Plaintiff has ample remedies under state law, no *Bivens* claim should be implied to exist against the individual Defendants.

Other cases decided by the Supreme Court counseling hesitation in extending *Bivens* are also instructive. In *Schweiker, supra*, the Court ruled that "[t]he absence of statutory relief for constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." 487 U.S. at 421-22, 108 S. Ct. at 2467. Similarly, the Court rejected the notion that a *Bivens* remedy should be implied simply for want of any other means of challenging a constitutional deprivation in federal court. *Id.* at 425, 108 S. Ct. at 2468-69. *See also Stanley*, 483 U.S. at 683, 107 S. Ct. at 3054 ("[I]t is irrelevant . . . whether the laws currently on the books afford [the plaintiff] . . . an adequate federal remedy for his injuries."). The Supreme Court has also recognized "Congress' institutional competence in crafting appropriate relief for aggrieved federal employees as a special factor counseling hesitation in the creation of a new remedy." *Bush*, 462 U.S. at 380, 103 S. Ct. at 2404.

The unavailability of a *Bivens* remedy against employees of a private prison such as Defendants is further underscored by the Supreme Court's decision in *Richardson v. McKnight*, 521 U.S. 399, 117 S. Ct. 2100 (1997). In *Richardson*,

9

the Supreme Court held that employees of a private prison (which had contracted with the government to house inmates) were not entitled to qualified immunity from suits under 42 U.S.C. § 1983.

Defendants submit that it is logically inconsistent to assert that, on the one hand, employees of a private prison are not entitled to qualified immunity (which is available to every public employee) but that, on the other hand, those same private employees are nevertheless subject to liability under *Bivens* (which lies only against public employees).  Stated differently, if employees of a private prison are not sufficiently akin to federal officers for purposes of qualified immunity, they are likewise insufficiently analogous to federal officers for purposes of a *Bivens* claim.  Plaintiff cannot articulate any valid reason for creating the anomaly of having private prison guards subject to *Bivens* liability (on the theory that they act under color of law) yet – at the same time - not be entitled to qualified immunity (which is available to every governmental officer sued for conduct committed while acting under color of law).  Neither law nor logic supports such an anomalous result.

Accordingly, private employees such as Defendants are not subject to liability under *Bivens*.  *See Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227, 230 (6th Cir. 1985) (dismissal of *Bivens* action against airport

employee was proper where plaintiff failed to allege that individual defendant was federal employee); *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927, 932 (1st Cir.), *cert. denied*, 419 U.S. 1001, 95 S. Ct. 320 (1974) (no cause of action exists under *Bivens* against private parties acting under color of federal law or custom); *In Re Stauffer Chemical Company of Wyoming*, 1980 U.S. Dist. Lexis 17390 (D.Wy. June 20, 1980) (independent contractors are not governmental employees subject to damages claims under *Bivens*).

This Court has employed a three-part test in order to determine whether a new *Bivens* remedy should be created. Under this test, a court may fashion a new *Bivens* remedy only if it determines that (1) there are no special factors counseling hesitation in the absence of affirmative action by Congress; (2) Congress has not already provided an exclusive statutory remedy; and (3) there is no explicit congressional declaration that money damages not be awarded. *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000).

In the present case, special factors warrant hesitation in the absence of affirmative action by Congress. The first such factor is that Defendants are private parties rather than government officials. The District of Maryland – in an opinion affirmed *per curiam* by this Court – stated the following on this issue in declining to fashion a new *Bivens* remedy:

11

> <u>If there were ever a case where special factors exist</u>
> <u>which counsel hesitation, this is it.  First, as noted, [the</u>
> <u>defendant] is a private party.  Whether or not the remedy</u>
> <u>is available against a private party, this is assuredly a</u>
> <u>factor to be considered by a court in determining whether</u>
> <u>to extend the *Bivens* doctrine and impose liability.</u>

*Stevens v. Morrison-Knudsen*, 576 F. Supp. 516, 521 (D. Md. 1983), *aff'd*, 755 F.2d 375 (4th Cir. 1985) (emphasis added).  *See also Zerilli v. Evening News Association*, 628 F.2d 217, 223-24 (D.C. Cir. 1980) ("[E]ven if private parties might be liable under *Bivens* in certain circumstances, <u>we believe that a defendant's private status should at least 'counsel hesitation' in the creation of *Bivens* liability</u>, for the primary purpose of the *Bivens* doctrine is to remedy abuses by those who act as agents for the sovereign.") (emphasis added).

The Supreme Court has also recognized as a special factor counseling hesitation the fact that congressional silence on the creation of such a remedy may have been intentional.  In *Schweiker, supra*, the Court stated as follows on this issue.

> In sum, the concept of special factors counselling
> hesitation in the absence of affirmative action by
> Congress has proved to include an appropriate judicial
> deference to indications that congressional inaction has
> not been inadvertent.  When the design of a Government
> program suggests that Congress has provided what it
> considers  adequate  remedial  mechanisms  for
> constitutional violations that may occur in the course of
> its administration, we have not created additional *Bivens*
> remedies.

*Schweiker*, 487 U.S. at 423, 108 S. Ct. at 2468. This reasoning applies equally to the present case. Congress has approved a system by which the BOP contracts with independent contractors such as the GEO to house inmates. It has further allowed for the existence of the remedies referenced by the Supreme Court in *Malesko*, suggesting that Congress considers these to be "adequate remedial mechanisms" as contemplated in *Schweiker*.

Defendants respectfully submit that the decision of the court in *Peoples v. CCA Detention Center*, 2004 WL 74317 (D. Kan. 2004) correctly analyzes this precise issue and that its reasoning should be adopted by this Court. In *Peoples*, an inmate in a private prison brought a *Bivens* claim alleging that prison employees had violated his constitutional rights by failing to protect him from an assault by other inmates. The court held that a *Bivens* remedy did not exist on that set of facts. In its opinion, this Court stated as follows:

> [T]his Court's reading of *Malesko* is that if other remedies are available – including state negligence actions – the Supreme Court would not extend *Bivens* to private employees of government contractors. This Court cannot ignore *Malesko's* statement that where a state remedy is available, the Supreme Court will not imply a new *Bivens* action. . . . Because plaintiff has a state court remedy, the Court will not imply a *Bivens* action. The Court therefore lacks subject matter jurisdiction and the case is dismissed.

13

*Id.* at *7 (emphasis added).  For the reasons set out above, Defendants contend that this reasoning is consistent with *Malesko* and the Supreme Court's other cases interpreting *Bivens* over the past few decades.

### B.    The District Court's Analysis Of This Issue Is Inconsistent With The Supreme Court's Decisions Interpreting *Bivens* Over The Last 25 Years.

Defendants respectfully submit that Judge Flanagan erred in her analysis of the viability of a *Bivens* claim in this context.  In her order, she relies heavily on the decision in *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468 (1980).  In *Carlson*, the Court, per Justice Brennan, held that an inmate at a <u>federal</u> prison could bring a *Bivens* claim for injuries sustained during his incarceration. Defendants submit that her reliance on *Carlson* is inapposite for several reasons. First, at the beginning of its analysis, the Court noted that the existence of a Bivens remedy would not exist in cases presenting "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 18, 100 S. Ct. at 1471.

As discussed above, the fact that the facility in the present case is private rather than federal is a factor that counsels hesitation in expanding the *Bivens* remedy to this set of facts.  Furthermore, as noted above, the ability of private prisons to house inmates is based on a contractual arrangement between the BOP and independent contractors such as the GEO.  This contractual relationship

14

occurred with the approval of Congress. In authorizing this arrangement, Congress had the full power to allocate the burdens and remedies any way it chose concerning liability to inmates for acts occurring within these facilities. The absence of any statutory provisions expressly authorizing the extension of a *Bivens* remedy in this context demonstrates that Congress elected <u>not</u> to expand *Bivens* liability in this fashion. Thus, this case presents the very type of special fact counseling hesitation contemplated by the Supreme Court in *Carlson*.

Second, the Court in *Carlson* responded to concerns that the existence of a *Bivens* remedy might inhibit the efforts of prison officials to perform their official duties by expressly noting that the entitlement of prison employees to qualified immunity would provide adequate protection to them. *Id.* at 19, 100 S. Ct. at 1472. However, as noted above, under *Richardson* <u>employees of private prisons are not entitled to qualified immunity</u>. Thus, this safeguard on the adverse effects stemming from an extension of *Bivens* as relied upon by the Supreme Court in *Carlson* is simply not present here.

Third, Judge Flangan notes that in *Carlson* the Supreme Court allowed the existence of a Bivens remedy despite the availability of a claim under the Federal Tort Claims Act ("FTCA"). However, the Court noted that the Congressional comments to the FTCA <u>expressly stated</u> that the FTCA remedy "should be viewed as a *counterpart* to the *Bivens* case. . . ." *Id.* at 20, 100 S. Ct. at 1472. Conversely,

15

there is an utter lack of indication from Congress that the availability of *Bivens*

relief in the present context was intended.

Fourth, the Supreme Court in *Carlson* noted that the FTCA remedy was not

sufficient to fully compensate inmates because of the unavailability of punitive

damages under the FDCA.   *Id.* at 21-22, 100 S. Ct. at 1473.   Conversely, as

referenced above, under the law of North Carolina (as is presumably true with

every state) a plaintiff would be entitled to recover punitive damages based on a

showing of intentional tortuous conduct or willful and wanton negligence.

Likewise, while the *Carlson* court noted the unavailability of a jury trial in an

FTCA claim, Plaintiff's state court remedies in North Carolina would include the

right to a jury trial.   *Id.* at 22, 100 S. Ct. at 1473-74.

Judge Flanagan's order also states that the *Bivens* court rejected the

argument that money damages against federal agents should be available only by

an action in tort under state law.   However, Defendants respectfully submit that

her reliance on this ground is incorrect for two reasons.   First, as *Malesko* makes

clear, inmates in private prisons have available – in addition to remedies under

state law – a variety of federal remedies unavailable to inmates in federal prisons.

Second, in *Bivens*, the Supreme Court's reference to the perceived

inadequacy of a state law remedy was largely influenced by the unavailability of a

state court remedy under the facts of that case. The Court in *Bivens* characterized

16

the inmate's state tort remedies in that case as "inconsistent or even hostile" to a remedy under the Constitution. *Bivens*, 483 U.S. at 394, 91 S. Ct. at 2003. Conversely, in the present case, an adequate tort remedy in North Carolina is readily available to an inmate of a private prison – far more so than was the case when *Bivens* was decided 34 years ago.

Judge Flanagan's order also notes that state prisoners held in private correctional facilities under contract with the state may bring a claim under 42 U.S. § 1983 against individual officers for constitutional violations. However, in the present case, Plaintiff has not alleged that Defendants (or their employer) were acting under color of state law. Nor can Plaintiff show any contract between the GEO and the State of North Carolina since the GEO's contract was instead with the federal BOP.

Moreover, a § 1983 remedy is grounded in statutory law whereas the *Bivens* remedy is judicially created. Courts are on steadier ground in expanding the contours of remedies that derive from legislative mandates (such as § 1983) than they are in expanding judicially created remedies (in the absence of congressional authorization to do so). *See Malesko, supra.*

Judge Flanagan's order then cites *Nwanze v. Phillip Morris, Inc.*, 100 F. Supp. 2d 215 (S.D.N.Y. 2000), *aff'd*, 2001 WL 409450 (2d Cir.), *cert. denied*, 534 U.S. 962, 122 S. Ct. 369 (2001) and *Dachman v. Shalala*, 950 F.

17

Supp. 708 (D. Md. 1997) for the proposition that courts treat *Bivens* actions and §

1983 actions similarly. However, while it is true that courts are permitted to apply

the <u>substantive</u> law under § 1983 when addressing a properly brought *Bivens*

claim, the contours of a Bivens claim are distinct from those of a § 1983 claim.

Indeed, this is demonstrated by the *Nwanze* case itself. In *Nwanze*, the court

noted that private <u>entities</u> acting in concert with state actors in the violation of a

constitutional right can be liable under § 1983. *Malesko*, however, makes clear

that such an entity may <u>not</u> be held liable <u>under a *Bivens* theory</u>. Thus, Defendants

respectfully submit that it is incorrect to infer that a *Bivens* claim may lie in the

present action simply by analogizing to decisions under § 1983. Furthermore, it is

worth noting that a number of courts have held that 1983 liability could <u>not</u> exist

against private parties because the defendants did not act under color of law. *See*

*Cunningham v. Southlake Center for Mental Health*, 924 F.2d 106, 107-09 (7th

Cir. 1991) (discharge of employee was not under color of law for purposes of §

1983 based on failure to show joint action amounting to agreement between

private and public actors to violate plaintiff's constitutional rights; to decide

otherwise would be to "impos[e] on the State, its agencies or officials,

responsibility for conduct for which they cannot fairly be blamed"); *Byrd v.*

*Moseley*, 942 F. Supp. 642, 644-45 (D.D.C. 1996) (allegations in complaint did

not support finding that private actor's conduct was "fairly attributable" to state);

18

*Woodall v. Partilla,* 581 F. Supp. 1066, 1071-72 (N.D. Ill. 1984) (no liability under § 1983 could exist since private party merely acted as "complainant" in disciplinary process and did not act under color of law).

**II.    EVEN ASSUMING ARGUENDO THAT PRIVATE EMPLOYEES COULD BE LIABLE ON A BIVENS CLAIM UNDER SOME CIRCUMSTANCES, NO SUCH LIABILITY EXISTS IN THE PRESENT CASE BECAUSE DEFENDANTS DID NOT ACT UNDER COLOR OF FEDERAL LAW.**

For the reasons stated above, Defendants contend that liability on a *Bivens* claim cannot exist for private employees. However, even if it were somehow determined that such liability could exist under some conceivable circumstances, which is again expressly denied, Defendants submit that no such liability would be warranted in the present case because Defendants in this case did not act under color of federal law. *See Stevens v. Morrison-Knudsen,* 576 F. Supp. 516, 521-22 (D. Md. 1983), *aff'd,* 755 F.2d 375 (4th Cir. 1985) (even if court was to conclude that *Bivens* remedy was available, facts of case showed that challenged actions of defendants were not undertaken under color of federal law).

As an initial matter, and perhaps most basically, Plaintiff has not alleged that the Defendants were acting under color of federal law. Thus, a *Bivens* claim has not been adequately pled and on this ground alone dismissal of this action was proper. *See Dachman v. Shalala,* 950 F. Supp. 708, 710 (D. Md. 1997) (refusing

to allow motion to amend complaint to state a *Bivens* claim where plaintiff did not allege that the defendant sought to be added acted under color of federal law).

Furthermore, in addition to this pleading defect, Plaintiff would have no valid basis for contending that the named Defendants in the present case acted under color of federal law. To the extent that Plaintiff is attempting to argue that Defendants have personally acted in concert with federal officers, this contention is incorrect. The only named Defendants in this case are local employees of one specific facility owned by the GEO. Their job duties relate solely to the daily operations of that particular facility, Rivers. They were not involved in any way in the negotiation of any contracts between the GEO and the BOP.

Constitutional liability does not automatically attach to a private party performing a governmental function. "When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999). Rather, liability attaches to a private party performing a governmental function only when "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744 (1982).

The present Defendants cannot be considered federal actors under the two-pronged analysis articulated by the Supreme Court in *Lugar*. Under this analysis,

20

first, the deprivation must be caused by the exercise of a right or privilege created by the government or by a rule of conduct imposed by the government or by a person for whom the government is responsible. *Lugar*, 457 U.S. at 936, 102 S. Ct. at 2753. Second, the party charged with the deprivation must be a person who may fairly be said to be a government actor, because he is in fact a government official, because he has acted together with, or has obtained significant aid from, government officials, or because his conduct is otherwise chargeable to the government. *Id.* Where the conduct of a private party alleged to violate a constitutional right cannot be ascribed to a decision by a governmental entity, the conduct cannot be considered governmental action in satisfaction of the first part of this analysis. *Id.* at 937-38, 102 S. Ct. at 2753-54 (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 177 (1972)).

In the present case, Plaintiff cannot satisfy the first prong of *Lugar*. In *Lugar* the Supreme Court expressly held that the conduct of a private party cannot be considered governmental action unless the alleged violation can be ascribed to a governmental decision. Nowhere has Plaintiff alleged that the denial of medical care to him was caused by any decision on the part of the federal government. Plaintiff is likewise unable to satisfy the second prong of the *Lugar* analysis. Three tests have been enunciated for determining whether private conduct is

21

properly chargeable to the government: the "public functions test," the "symbiotic relationship test," and the "nexus" test. *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 96-99 (1st Cir. 1990). For the reasons set out below, Plaintiff cannot meet any of these tests.

A.    **Public Functions Test**

When analyzing the public functions test, the Supreme Court has explained that:

> [O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a [public function.] We have held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.

*Rodriguez-Garcia v. Davila*, 904 F.2d at 928 (quoting *Rendall-Baker v. Kohn*, 457 U.S. 830, 842 (1982)) (emphasis in original). The United States Supreme Court has expressly stated that "correctional functions have never been exclusively public . . ." *Richardson v. McKnight, supra*, 521 U.S. at 405, 117 S. Ct. at 2104 (emphasis added). In reaching this decision, the Court reviewed the history of private prisons in this country, observing that "correctional functions have never been exclusively public" and that private operation of jails dated back to the 18th century. *Id.* at 406, 117 S. Ct. at 2104. The Court noted that private contractors were heavily involved in prison management during the 19th century and that some states leased their entire prison systems to private entities, which took

22

complete control over prison management, including inmate discipline and labor. *Id.*

The Court in *Richardson* held that private prison guards perform their duties independently "with relatively less ongoing direct [governmental] supervision" than public prison guards. *Id.* at 409, 117 S. Ct. at 2106. The Court concluded that private prison employees "resemble those of other private firms and differ from government employees." The Court further recognized that "the guards' employer can operate like other private firms; it need not operate like a typical government department." *Id.* at 410-11, 117 S. Ct. at 2107.

Thus, the Supreme Court's opinion in *Richardson* demonstrates the key differences between public prison guards and private prison guards. Furthermore, it makes clear that over the past 200 years private entities have been heavily involved in the operation of prisons. Consequently, the private Defendants in the present case were not performing a traditional public function exclusively reserved to the government. As *Richardson* demonstrates, the delegation of the task of prison management to a private party does not satisfy the "public functions test" because the requisite "exclusivity" element is lacking. The mere performance of prison management tasks does not convert private prison employees into governmental officials acting under color of federal law.

In her Order, Judge Flanagan relies on *Sarro v. Cornell Corrections, Inc.*, 248 F. Supp. 2d 52 (D.R.I. 2003).  For the reasons set out below, Defendants respectfully submit that *Sarro* was wrongly decided and should not be followed by this Court.

In *Sarro*, a magistrate judge determined that employees of a private prison could not be held liable under *Bivens*.  *Sarro v. Donald Wyatt Detention Center*, 2001 WL 210265 (D.R.I. 2001).  The district judge declined to adopt the magistrate judge's decision, reaching a contrary result.  As an initial matter, that case is obviously not in any way binding on this Court.  Furthermore, however, for the reasons set out below, Defendants submit that *Sarro* was wrongly decided.

First, the *Sarro* court – after noting a split in First Circuit authority on the issue of whether private parties could be sued under *Bivens* – decided that it was bound to follow a more recent controlling case from the First Circuit which the *Sarro* court felt "appear[ed] to have implicitly recognized" that private parties could be liable under *Bivens* in some circumstances.  *Id.* at 58.

Second, the *Sarro* court incorrectly held that under the "public functions" test, private prison guards exercise "powers traditionally exclusively reserved to the government."  *Id.* at 60 (emphasis added).  Defendants respectfully contend that the court in *Sarro* erred by holding that the operation of a prison is a function

24

that has been exclusively performed by the government. This conclusion is simply inconsistent with Supreme Court precedent.

In *Richardson*, the Supreme Court expressly held that correctional functions have never been exclusively public and that indeed the private operation of prisons dated back as far as the 1700s. *Richardson*, 521 U.S. at 405, 117 S. Ct. at 2104. Indeed, the Court noted in *Richardson* that some states leased their entire prison systems to private entities during the 1800s, which in turn took complete control over prison management. Id. Moreover, the Supreme Court in *Richardson* expressly recognized that private prison employees "resemble those of other private firms and differ from government employees." *Id.* at 410, 117 S. Ct. at 2107 (emphasis added).

The court in *Sarro* inaccurately framed the issue as whether the decision to incarcerate an individual was within the exclusive province of the government. The formulation of the issue in this manner was improper because the conduct at issue both here and in *Sarro* involved decisionmaking in the day-to-day operation of a prison (as opposed to the decisionmaking concerning whether the inmate at issue should have been incarcerated in the first place). Given the Supreme Court's emphatic rejection in *Richardson* of the notion that the responsibility for maintaining a prison has exclusively been performed by the government over the

last few centuries, the *Sarro* court's ruling to the contrary was in error. For all of these reasons, Defendants submit that the district judge's decision in *Sarro* should not be followed by this Court.

Judge Flanagan's order then states that only the government has the authority to imprison a person convicted of a crime. However, as discussed above, Defendants respectfully submit that it is incorrect to phrase the issue in this manner. This action does not challenge the legality of the decision to convict or incarcerate Plaintiff. Rather, the <u>sole</u> issue in this lawsuit concerns the manner in which the individual defendants carried out their duties in maintaining a prison -- the very conduct which the Supreme Court emphasized in *Richardson* has never been an exclusively public function. The relevant inquiry is "not simply whether a private group is serving a public function" but rather "whether the function performed has been traditionally the exclusive prerogative of the [federal government]." *Rendell-Baker*, 457 U.S. at 842, 102 S. Ct. at 2772.

It is insufficient under *Lugar* and its progeny to argue that Defendants are deemed to have acted under color of federal law simply because without the federal government a private prison such as Rivers would not be able to operate. Indeed, the formulation of the issue in this fashion eviscerates the stringent test set out by the Supreme Court in *Lugar* for determining whether a defendant acts under

26

color of federal law.  Plaintiff has simply failed to make the requisite showing required by the Supreme Court on this issue.  Further, it is undisputed that no federal officers participated in the conduct giving rise to this action and that there was no profit sharing arrangement between the GEO and the federal government.

Judge Flanagan's order then suggests that a relevant circumstance to be considered is the role of the federal government in overseeing and monitoring private facilities contracting with the BOP.  However, in the present case, Plaintiff has not alleged that his denial of medical care was attributable to any policy of the BOP or the GEO.  Rather, he simply alleges that the individual Defendants did not properly respond to his request for medical assistance.  Thus, allegations of this type relate to the level of attentiveness of jail employees to one particular inmate regarding one particular matter as opposed to involving jail policy on a global level.

## B.    **Symbiotic Relationship Test**

Judge Flanagan's order does not address the "symbiotic relationship" test. Under this test, the acts of a private party are attributable to the government only if the government 'has so far insinuated itself into a position of interdependence with the [private party] that it must be recognized as a joint participant in the challenged activity . . ."  *Burton v. Wilmington Parking Authority*, 365 U.S. 715,

725, 81 S. Ct. 856, 861-62 (1961).  In essence, the test can be considered as a determination of whether the private entity is an alter ego of the government.

As stated above, GEO is simply an independent contractor and therefore receives payment pursuant to its contractual arrangement with the Bureau of Prisons.  The federal government therefore does not share in any profits made by GEO.  GEO is not financed by the federal government nor would any judgment entered against GEO employees be paid out of the federal treasury.  This is so because GEO– rather than the federal government – is charged with responsibility for the day-to-day activities at Rivers.  Furthermore, it is important to note that no federal officer participated in any way in the conduct which gives rise to Plaintiff's claims.  The sole wrongful conduct alleged in the Complaint relates to the acts of the named Defendants, all of whom are employees of GEO.  Thus, there is no interdependence between the federal government and Defendants in this case.  Accordingly, no "symbiotic relationship" exists for purposes of *Lugar*.  *See Hicks v. Southern Maryland Health Systems Agency*, 737 F.2d 399, 402 (4th Cir. 1984) (no symbiotic relationship existed under *Lugar* between private parties and government where plaintiffs did not show that government profited from termination of plaintiffs' employment).

28

### C.    Nexus Test

Judge Flanagan's order also does not reference the "nexus" test. Under this test, "the provision of services to a [governmental] entity does not establish [governmental] control, even where, as here, the private contractor's sole business is the performance of public contracts." *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 96-97 (1st Cir. 1990). The test requires that "'the challenged action of the regulated entity . . . may be fairly treated as that of the state itself . . . only when it can be said that the state is responsible for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777 (1982)) (emphasis added).

Under the "nexus" test, a finding of governmental action is appropriate only where the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S. Ct. 2764, 2771 (1982). In the present case, there is no assertion of any link whatsoever between Defendants and the federal government. The conduct Plaintiff complains of in his Complaint is alleged to have been committed solely by employees of GEO without any assistance or direction from federal employees.

29

Given the absence of such a connection between the federal government and the conduct of which Plaintiff complains, no "nexus" exists under *Lugar*.

Here, Plaintiff cannot show that a federal entity or official is responsible for the alleged actions of the private Defendants in this case. In his Complaint, Plaintiff simply alleges that two Rivers employees failed to adequately respond to his medical needs. There is no allegation that this failure resulted from any policy, custom, or directive of the Bureau of Prisons or from any other agency of the federal government. Thus, Plaintiff does not contend that the federal government engaged in any conduct sufficient to warrant the conclusion that the alleged constitutional deprivation at issue was the choice of the government. Accordingly, this Court should find that an insufficient nexus exists to support the conclusion that Defendants acted under color of federal law.

The decision by the district court – which was affirmed by this Court - in *Stevens v. Morrison-Knudsen Saudi Arabia Consortium*, 576 F. Supp. 516 (D. Md. 1983), *aff'd*, 755 F.2d 375 (4th Cir. 1985) is instructive. In *Stevens*, several employees attempted to assert a *Bivens* claim against their private employer for the alleged violation of their constitutional rights. The plaintiffs alleged that their employer could be sued under *Bivens* because it had contracted with the United States Army Corps of Engineers and that therefore its actions were taken "under color of federal law."

30

In applying the standards articulated by the Supreme Court, the court held that no liability under *Bivens* could exist based on the absence of state action. First, the Court noted that any public funds received by the employer were earned pursuant to its contract with the Corps and that the mere fact that the employer had entered into a contract with the Corps was "of little significance," acknowledging that "acts of a private contractor do not become acts of the government by reason of their significance or even total engagement in performing public contracts." *Id.* at 522.

In response to the plaintiff's argument that the Corps regulated and supervised the defendant's performance of the contract, the court held that "this fact is likewise of little significance when considered in terms of the particular acts challenged as unconstitutional." *Id.* The court observed that the specific acts challenged by the plaintiff as unconstitutional were not directed or regulated by the Corps but rather were undertaken by the defendants on their own and that the Corps had nothing to do with the defendant's decision to terminate the plaintiff's employment. *Id.*

Likewise, in the present case, the specific action (or inaction) complained of by Plaintiff in his Complaint is not alleged to have been taken by Defendants in accordance with any directives from the Bureau of Prisons. As the *Stevens* court stated:

31

> The general supervisory role of the [government] in connection with this . . . is not sufficient to transform defendants' private acts into those undertaken under color of federal law. (citation omitted) . . . [T]he decisions about which plaintiffs complain were made by concededly parties. (citation omitted) Responsibility for a private decision can be attributed to the government only when the latter has exercised coercive power or has provided such significant encouragement that the action of the private party must in law be deemed to be that of the government itself. (citation omitted) Evidence of that sort is not present here.

*Id.* at 522-23.

The court in *Stevens* further considered whether the defendant was performing a traditionally public function. The court answered this question in the negative, holding that "state action cannot be found merely because the private entity performs a function which serves the public." The court further noted that the plaintiff's argument – if adopted – would result in an unwarranted extension of the *Bivens* doctrine to the effect that virtually every private company performing a contract with the federal government which benefited the public would become a state actor. *Id.* at 523.

Finally, the *Stevens* court found that no symbiotic relationship existed between the defendant and the government. The court held that their relationship was essentially the same as that of any other similar company performing a government contract. *Id.*

32

Each of the factors addressed by the court in *Stevens* apply in the present case. Plaintiff simply cannot show the presence of state action, which would warrant the extension of *Bivens* liability on this set of facts. Accordingly, even if *Bivens* liability could exist against private employees under some conceivable circumstances, which is again expressly denied, such liability does not exist in the present case.

The decision in *Morast v. Lance*, 807 F.2d 926 (11th Cir. 1987) is also illustrative. In that case, an employee brought a *Bivens* action in connection with his termination. The employee alleged that his private employer had acted under color of law in terminating him. The court rejected this argument, ruling that the government had played no part in the defendants' decision to fire the employee. *Id.* at 931.

Likewise, in the present case, the federal government played no part in the decisions made by the GEO employees named as Defendants concerning the provision of medical care to Plaintiff. Therefore, Plaintiff's allegations concern the acts – or failure to act – of private employees who were making their own decisions. Even taking Plaintiff's allegations as true for purposes of Rule 12(b)(6), he simply has not alleged any wrongdoing attributable in any way to the federal government. Accordingly, Defendants cannot be said to have acted under color of federal law under *Lugar*.

## CONCLUSION

The imposition of liability under *Bivens* against Defendants in the present action would be inconsistent both with the approach taken by the Supreme Court over the past 25 years regarding the extension of *Bivens* and with the Supreme Court's jurisprudence regarding the circumstances under which the actions of a private individual are deemed to have been taken under color of federal law. Based on the foregoing, Defendants respectfully submit that Judge Flanagan's order should be reversed.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully submit that an oral argument of this case is warranted. This is a case of first impression in any circuit court in this nation. Defendants respectfully submit that an oral argument would aid this court's decisional process.

This, the 11th day of April 2005.

Mark A. Davis
North Carolina State Bar No. 18142
Womble Carlyle Sandridge & Rice
*A Professional Limited Liability Company*
Post Office Box 831
Raleigh, North Carolina 27602
Telephone No.: (919) 755-2100

**Counsel for Appellants**

34

## CERTIFICATE OF COMPLIANCE

This Brief of Appellants has been prepared using:

MicroSoft Word;

Times New Roman;

14 Point Type Space.

EXCLUSIVE of the Corporate Disclosure Statement, Table of Contents; Table of Citations; the Request for Oral Argument; the Certificate of Filing and Service, this Brief of Appellants contains 7,844 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the Brief and/or a copy of the word or line print-out.

This, the 11th day of April 2005.

Mark A. Davis
Counsel for Appellants

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 11th day of April 2005, I filed with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit, via hand delivery, the required number of copies of this Brief of Appellants and Joint Appendix, and I further certify that I served, via U.S. mail, the required number of copies of the foregoing upon:

J. Phillip Griffin, Esquire
North Carolina Prisoner Legal Services, Inc.
Post Office Box 25397
Raleigh, North Carolina 27611

Counsel for Appellants

The necessary filing and service upon Counsel were performed in accordance with the instructions given me by counsel in this case.

THE LEX GROUP
1108 East Main Street
Suite 1400
Richmond, VA 23219

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, <u>et al.</u>, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP, INC., <u>et al.</u>, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

<u>**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY**</u>

<u>**EXHIBIT 2**</u>

**Declaration of Deborah M. Golden**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KEITH MATHIS, *et al.*,              )
                                     )
                     *Plaintiffs,*   )
                                     )
        v.                           )    Case No. 1:07-cv-01155-RMU
                                     )
GEO GROUP INC., *et al.*,            )
                                     )
                     *Defendants.*   )
                                     )

**DECLARATION OF DEBORAH M. GOLDEN**

Deborah M. Golden, under penalty of perjury, hereby declares as follows:

1.      I am an attorney with the Washington Lawyers' Committee for Civil

Rights and Urban Affairs, co-counsel for Plaintiffs Keith Mathis *et al.* in this matter. I am

licensed to practice law in the District of Columbia, and am a member in good standing of the

bar of the United States District Court for the District of Columbia. I submit this Declaration in

support of Plaintiffs' Sur-reply in Further Opposition to Geo Group, Inc.'s Motion to Dismiss

and Motion to Transfer.

2.      Attached as Exhibit A to this Declaration is a true and correct copy of the

opening brief filed by Willie Scott and Gaddy Lassiter (Defendants-Appellants and employees of

the GEO Group, Inc.) in *Holly* v. *Scott*, Case No. 05-6287 in the Court of Appeals for the Fourth

Circuit on April 11, 2005 ("the Brief"). The attached file-stamped copy of the Brief was

obtained from Phillip Griffin, counsel for Ricky Lee Holly, the Plaintiff-Appellee in that matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of August, 2007 in Washington, D.C.

*Deborah M. Golden*
Deborah M. Golden

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**<u>ORDER</u>**

UPON CONSIDERATION of Plaintiffs' Motion for Leave to File a Sur-reply, any

opposition thereto, and the entire record herein; it is hereby

ORDERED that the Motion for Leave to File a Sur-reply is GRANTED.

Date: _____

_____
The Honorable Ricardo M. Urbina
United States District Judge

<u>Copies to</u>:

Anthony Herman
Covington & Burling, LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004-2494
*Counsel for Plaintiffs*

Danielle M. Estrada
Covington & Burling, LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Plaintiffs*

Donald Lee Kahl
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, NW

Suite 400
Washington, DC 20036
*Counsel for Plaintiffs*

Ivy Ann Lange
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
*Counsel for Plaintiffs*

Philip J. Fornaci
D.C. Prisoners' Legal Services Project
2639 Connecticut Avenue, NW
Suite 225
Washington, DC 20008
*Counsel for Plaintiffs*

Donald J. Ridings, Jr., Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington D.C. 20004
*Counsel for Plaintiffs*

Deborah J. Israel, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, N.W., 7th Floor
Washington, D.C. 20005
*Counsel for Defendant GEO Group, Inc.*

Karen Melnick, Esq.
U.S. Attorney's Office
555 Fourth Street, NW
Room E4112
Washington, DC 20530
*Counsel for Defendants Federal Bureau of Prisons and Harley Lappin*

Kathryn Wyer, Esq.
U.S. Department of Justice
P.O. Box 883
Washington, DC 20044
*Counsel for Defendants Federal Bureau of Prisons and Harley Lappin*