# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, REON HOLLOWAY, DAVID ROGERS, BENJAMIN HAMILTON, CARL BUTLER, HAROLD ROBINSON, CHARLES LEWIS, JOHN DOE, JOHN ROE, and JIMMIE FOWLER, individually and on behalf of others similarly situated, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 07-1155 (RMU) |
| GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the UNITED STATES BUREAU OF PRISONS, ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

Defendants the Bureau of Prisons and Harley Lappin in his official capacity as BOP Director hereby move the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) to dismiss plaintiffs' Complaint, or in the alternative, to transfer plaintiffs' Complaint to the Eastern District of North Carolina, for the reasons set forth in the accompanying Memorandum in support of this motion.

Dated: September 18, 2007

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW, Room 7218
Washington, D.C.  20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, REON HOLLOWAY, DAVID ROGERS, BENJAMIN HAMILTON, CARL BUTLER, HAROLD ROBINSON, CHARLES LEWIS, JOHN DOE, JOHN ROE, and JIMMIE FOWLER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the UNITED STATES BUREAU OF PRISONS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-1155 (RMU)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ........................................................................................1

BACKGROUND ......................................................................................... 3

STANDARD OF REVIEW ...........................................................................5

ARGUMENT ..............................................................................................7

I.     THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY
       FOR DAMAGES CLAIMS ALLEGING VIOLATIONS OF SECTION 504
       OF THE REHABILITATION ACT ......................................................7

II.    PLAINTIFFS FAIL TO STATE A REHABILITATION ACT CLAIM
       AGAINST FEDERAL DEFENDANTS .................................................9

       A.     Plaintiffs Fail To Allege Facts That Could Establish That The BOP Contract
              With Geo Group Qualifies As Federal Financial Assistance Within The
              Meaning Of The Rehabilitation Act ......................................... 9

       B.     Plaintiffs Fail To Allege Facts That Could Establish Discrimination Solely By
              Reason Of Disability .............................................................12

III.   PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM
       AGAINST FEDERAL DEFENDANTS .............................................. 14

       A.     Plaintiffs State No Eighth Amendment Claim Against Federal Defendants
              Based On The BOP's Contractual Relationship With A Private Prison
              Because The Private Prison Is Not A Government Actor .......................14

       B.     Even If Geo Group Or Rivers Employees Are Government Actors That
              Can Violate The Eighth Amendment, Plaintiffs' Asserted Claim Of Supervisor
              Liability Against Federal Defendants Is Not Cognizable .........................17

       C.     Plaintiffs Cite No BOP Policy Or Custom As The Cause Of Alleged
              Eighth Amendment Violations At Rivers .............................................19

IV.    THERE IS NO ARTICLE III CASE OR CONTROVERSY WITH RESPECT TO

PLAINTIFFS WHO ARE NO LONGER AT RIVERS YET SEEK INJUNCTIVE AND DECLARATORY RELIEF ................................................................................ 21

    A.    Former Rivers Inmates Who Were Released Or Transferred Before The Complaint Was Filed Lack Standing To Pursue Equitable Relief ........................... 22

    B.    The Equitable Claims Of Former Rivers Inmates Who Were Released Or Transferred Before Or After The Complaint Was Filed Are Moot ......................... 23

V.    IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS AGAINST FEDERAL DEFENDANTS, THESE CLAIMS SHOULD BE TRANSFERRED ........... 26

CONCLUSION ..................................................................................................................... 29

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

Aiken v. Nixon, 236 F. Supp. 2d 211 (N.D.N.Y. 2002) ...........................................................12

Albra v. City of Fort Lauderdale, No. 06-14544, 2007 WL 1213230 (11th Cir. Apr. 25, 2007) .13

Alexander v. Choate, 469 U.S. 287 (1985) ....................................................................13

Allison v. Howard Univ., 209 F. Supp. 2d 55 (D.D.C. 2002) ........................................10

Aviles v. United States, 696 F.Supp. 217 (E.D. La. 1988) ...........................................22

Baker v. Dist. of Columbia, 326 F.3d 1302 (D.C. Cir. 2003) ..................................14, 18

Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939 (D.C. Cir. 2005) .......................22, 24

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ................................................ 6

Bertrand v. Maram, No. 06-3705, 2007 WL 2092551 (7th Cir. July 24, 2007) ...........................25-26

Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971) ...............14

Blum v. Yaretsky, 457 U.S. 991 (1982) ....................................................................16

Cannon v. United States, 645 F.2d 1128 (D.C. Cir. 1981) .............................................15

Cercpac v. Health & Hosp. Corp., 147 F.3d 165 (2d Cir. 1998) ....................................13

City of Canton v. Harris, 489 U.S. 378 (1989) .......................................................17, 20

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) ....................................................22, 23

Collins v. City of Harker Heights, 503 U.S. 115 (1992) ................................................18

Commonwealth of Va. v. Reno, 955 F. Supp. 571 (E.D. Va. 1997) ...................................... 3

County of Riverside v. McLaughlin, 500 U.S. 44 (1991) .................................................26

Cruz v. Farquharson, 252 F.3d 530 (1st Cir. 2001) ....................................................26

Dage v. Leavitt, No. 04-0221, 2007 WL 81961 (D.D.C. Jan. 9, 2007) ...........................13

Dep't of Army v. Blue Fox, Inc., 525 U.S. 255 (1999) ...................................................7

DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990) .........................11

Dorsey v. United States Dep't of Labor, 41 F.3d 1551 (D.C. Cir. 1994)......................................7, 8

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) ...................................6

Elizabeth M. v. Montenez, 458 F.3d 779 (8th Cir. 2006) .........................................................26

Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,
    No. 04-56791, 2007 WL 2325079 (9th Cir. Aug. 16, 2007) ..............................................25

Estelle v. Gamble, 429 U.S. 97 (1976) ...............................................................................14

Farmer v. Moritsugu, 163 F.3d 610 (D.C. Cir. 1998) ...............................................................15

FDIC v. Meyer, 510 U.S. 471 (1994) .............................................................................7, 9

Gerstein v. Pugh, 420 U.S. 103 (1975) ..............................................................................26

Giacobbi v. Bierman, 780 F. Supp. 33 (D.D.C. 1992)..............................................................11

Green v. Branson, 108 F.3d 1296 (10th Cir. 1997) .................................................................24

Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) ........................................................................16

Honig v. Doe, 484 U.S. 305 (1988)...................................................................................22

Huskey v. Quinlan, 785 F. Supp. 4 (D.D.C. 1992) ..............................................................28, 29

In re Scott, 709 F.2d 717 (D.C. Cir. 1983) ..........................................................................27

Isenbarger v. Farmer, 463 F. Supp. 2d 13 (D.D.C. 2006) ..........................................................6

Jackson v. City of Chicago, 414 F.3d 806 (7th Cir. 2005) ..........................................................10

Joyner v. Dist. of Columbia, 267 F. Supp. 2d 15 (D.D.C. 2003) ...................................................29

Karst Envtl. Educ. & Protection, Inc. v. EPA, 475 F.3d 1291 (D.C. Cir. 2007) .........................22

Kentucky v. Graham, 473 U.S. 159 (1985) ..........................................................................17

LaFaut v. Smith, 834 F.2d 389 (4th Cir. 1987) ............................................................24

Lane v. Pena, 518 U.S. 187 (1996) ....................................................................7, 8

Lentz v. Eli Lilly & Co., 464 F. Supp. 2d 35 (D.D.C. 2006) ........................................27

Leskinen v. Utz Quality Foods, Inc., 30 F. Supp. 2d 530 (D. Md. 1998) ........................11

Logue v. United States, 412 U.S. 521 (1973) ...........................................................15

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ....................................................16

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)..................................................22

Martin v. Sargent, 780 F.2d 1334 (8th Cir. 1985) ..................................................24, 25

McBryde v. Comm. to Review, 264 F.3d 52 (D.C. Cir. 2001) ......................................23

McKinnon v. Talladega County, 745 F.2d 1360 (11th Cir. 1984) ..................................24

Melton v. Dallas Area Rapid Transit, 391 F.3d 669 (5th Cir. 2004) ..............................10

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ................................................18

Murphy v. Hunt, 455 U.S. 478 (1982) ...............................................................23, 25

Nolley v. County of Erie, 776 F. Supp. 715 (W.D.N.Y. 1991) ......................................11

O'Guinn v. Lovelock Corr. Ctr., No. 06-15972, 2007 WL 2482149 (9th Cir. Sept. 5, 2007) ......10

Olmstead v. L.C. by Zimring, 527 U.S. 581 (1999) ....................................................13

Phillips v. Fed. Bur. of Prisons, 271 F. Supp. 2d 97 (D.D.C. 2003) ..............................15

Piper Aircraft, Co. v. Reyno, 454 U.S. 235 (1981) ....................................................27

Powell v. Barrett, No. 05-16734, 2007 WL 2386610 (11th Cir. Aug. 23, 2007) ..................24

Powers-Bunce v. Dist. of Columbia, 479 F. Supp. 2d 146 (D.D.C. 2007) ......................18

Qassim v. Bush, 466 F.3d 1073 (D.C. Cir. 2006) ......................................................24

Qutb v. Ramsey, 285 F. Supp. 2d 33 (D.D.C. 2003) ..................................................18

Reed v. Dist. of Columbia, 474 F. Supp. 2d 163 (D.D.C. 2007) ......................................17

Rendell-Baker v. Kohn, 457 U.S. 830 (1982) ..........................................................16

Risley v. Hawk, 108 F.3d 1396 (D.C. Cir. 1997) .......................................................24

Rogers v. Fed. Bur. of Prisons, 257 F. Supp. 2d 147 (D.D.C. 2003) ..............................28

Rogers v. Johnson-Norman, 466 F. Supp. 2d 162 (D.D.C. 2006) ....................................6

Role Models America, Inc. v. Harvey, 459 F. Supp. 2d 28 (D.D.C. 2006) .......................5

Rosales v. United States, 477 F. Supp. 2d 213 (D.D.C. 2007) ......................................27

R.S. v. Dist. of Columbia, 292 F. Supp. 2d 23 (D.D.C. 2003) ......................................12

Scott v. Dist. of Columbia, 139 F.3d 940 (D.C. Cir. 1998) ....................................24, 25

Shirk v. Barton, No. 07-0356, 2007 WL 2570426 (D.D.C. Sept. 6, 2007) ..............6, 10

Simmat v. United States Bur. of Prisons, 413 F.3d 1225 (10th Cir. 2005) .....................15

Simpson v. Reynolds Metals Co., 629 F.2d 1226, 1244 (7th Cir. 1980) .......................11

Skinner v. United States, No. 05-2237, 2007 WL 744737 (D.D.C. Mar. 6, 2007) .......28-29

Smart v. Good, 21 F. Supp. 2d 309 (S.D.N.Y. 1998) ................................................28

Starnes v. McGuire, 512 F.2d 918 (D.C. Cir. 1974) (en banc) ............................27, 28, 29

Stern v. Fed. Bur. of Prisons, No. 07-00564, 2007 WL 1555830 (D.D.C. Mar. 22, 2007) ...........28

Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571 (D.C. Cir. 2003) ................7

United States v. Sherwood, 312 U.S. 584 (1941) .......................................................7

United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980) .........................23-24, 25

Vill. of Bensenville v. FAA, 457 F.3d 52 (D.C. Cir. 2006) ....................................16, 22

Young v. Director, Bur. of Prisons, 367 F.2d 331 (D.C. Cir. 1966) .............................27

Zakiya v. United States, 267 F. Supp. 2d 47 (D.D.C. 2003) ........................................28

<u>Zeidman v. J. Ray McDermott & Co., Inc.</u>, 651 F.2d 1030 (5th Cir. 1981) ..................................25

## STATUTES

28 U.S.C. § 1346 ...............................................................................................................15

28 U.S.C. § 1391(e) ..........................................................................................................27

28 U.S.C. § 1404(a) ....................................................................................................26-27

29 U.S.C. § 793 ................................................................................................................11

29 U.S.C. § 794 .............................................................................................................1, 8

29 U.S.C. § 794a .........................................................................................................1, 8, 9

42 U.S.C. § 1983 .............................................................................................14, 17, 18, 19

National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"),
    Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37 ..............................................3

D.C. Code § 24-101 .......................................................................................................3, 19

## LEGISLATIVE MATERIALS

143 Cong. Rec. S8386-02, S8388 (daily ed. July 31, 1997) (statement of Sen. Hatch) .................3

S. Rep. No. 106-409 (2000) ...............................................................................................3

# INTRODUCTION

In this action, plaintiffs raise two claims against federal defendants the Federal Bureau of Prisons ("BOP") and Harley Lappin in his official capacity as BOP Director. First, plaintiffs allege, on behalf of a putative class of past, current, and future prisoners at Rivers Correctional Institution ("Rivers") in Winton, North Carolina, that federal defendants have violated plaintiffs' Eighth Amendment rights through the provision of inadequate medical care at Rivers. Second, plaintiffs allege, on behalf of a putative subclass of Rivers prisoners with disabilities, that federal defendants have discriminated against them based on their disabilities in violation of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs seek only injunctive relief for their Eighth Amendment claim. For the alleged Rehabilitation Act violation, they seek declaratory and injunctive relief as well as compensatory damages pursuant to 29 U.S.C. § 794a.[1]

This Court should dismiss plaintiffs' Rehabilitation Act claim against federal defendants. Insofar as plaintiffs seek damages under the Rehabilitation Act, this Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity for such claims. In addition, plaintiffs have failed to state a claim for any type of relief from federal defendants under the Rehabilitation Act because they provide no basis for concluding that federal defendants have provided "financial assistance" to Rivers within the meaning of the Act, nor that those plaintiffs who allege they are disabled received different treatment because of their disability.

Plaintiffs' Eighth Amendment claim against federal defendants must also be dismissed

---

[1]Plaintiffs' Complaint raises two additional claims, alleging negligence and breach of contract, against codefendant Geo Group, Inc. Because these claims do not involve federal defendants, federal defendants have not sought to dismiss those claims, and this memorandum will not address them.

for failure to state a claim.  Plaintiffs' assertion that the BOP had constructive knowledge of inadequate medical care at Rivers does not form a basis for BOP liability for the actions or omissions of Geo Group under any recognized legal framework.  Congress has required the BOP to house at least fifty percent of D.C. felony offenders in private prisons.  In order to fulfill this statutory mandate, the BOP entered into a contract with Geo Group that sets forth in detail Geo Group's obligations with respect to, among other things, the provision of medical care to inmates.  Because Geo Group is an independent contractor, the BOP is simply not in a position to micromanage day-to-day operations at Rivers, and plaintiffs cite no legal authority that would place such an obligation on the BOP.  Even if Geo Group were considered an agent of the BOP, plaintiffs point to no BOP policy or custom that could plausibly be viewed as causing Rivers employees to violate the Eighth Amendment.  To the contrary, plaintiffs merely quote those contractual provisions that obligate Rivers to provide adequate medical care.

Moreover, there is no Article III case or controversy with respect to the claims for declaratory or injunctive relief of seven of the ten plaintiffs named in the Complaint because they are no longer incarcerated at Rivers, and their claims are therefore moot.  In addition, five of these seven plaintiffs, who were released or transferred before the Complaint was filed, lack standing to pursue any equitable claims.

This Court should therefore dismiss all claims against federal defendants.  In the alternative, this Court should transfer this case to the Eastern District of North Carolina, where the incidents giving rise to plaintiffs' lawsuit took place, and where most of the relevant witnesses – including currently incarcerated inmates who are not easily transported to this District – and records are located.

## BACKGROUND

In 1997, as part of the National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"), Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37, Congress decided to overhaul the District of Columbia ("D.C.")'s criminal justice system, which one senator referred to as "broken." See 143 Cong. Rec. S8386-02, S8388 (daily ed. July 31, 1997) (statement of Sen. Hatch). A primary goal of the Revitalization Act was to close D.C.'s Lorton Correctional Complex, whose facilities had been deemed in a 1996 congressional study to be in a "deplorable" condition. See 111 Stat. at 734 (providing that Lorton would be closed no later than December 31, 2001); Commonwealth of Va. v. Reno, 955 F. Supp. 571, 575 & n.10 (E.D. Va. 1997) (describing the history of Lorton and citing the 1996 congressional study, together with numerous newspaper articles chronicling such problems as "inmate escapes, official corruption, and drug smuggling" at the institution). The Act amended D.C. Code § 24-101 to provide that the federal government, rather than D.C., would henceforth be responsible for coordinating the imprisonment of individuals convicted of felonies under the D.C. Code. Specifically, the BOP was given the responsibility of "designat[ing]" such individuals "to a penal or correctional facility operated or contracted for by the [BOP], for such term of imprisonment as the court may direct." D.C. Code § 24-101(a). Congress further required that, by September 30, 2003, the BOP house "[a]t least 50 percent of the D.C. sentenced felony population" in "private contract facilities." Id. § 24-101(c)(1)(B). This provision was meant to address the fact that operations costs had made the D.C. corrections system "among the most expensive in the country." S. Rep. No. 106-409, at 20 (2000) (reporting, however, that anticipated savings from the use of contract facilities had not been realized during the previous three years).

Pursuant to its obligation under this statutory provision, the BOP initiated a competitive bidding process by issuing a Request for Proposals, and entered into a contract with Geo Group, Inc. ("Geo Group"), in 2000 to house D.C. Code felony offenders at Rivers Correctional Institution ("Rivers"), in Winton, North Carolina. Compl. ¶¶ 30-31. The terms of this contract require that, before receiving a Notice to Proceed from the BOP, Geo Group would have to develop plans, policies, and procedures that comply with the standards set forth by the private nonprofit American Correctional Association ("ACA"), and submit them to the BOP for review and concurrence. Statement of Work, at 5-6.[2] Geo Group was also required to obtain ACA accreditation. Id. at 7. The contract also states that "[a]ll services and programs" that Geo Group provides at Rivers "shall comply with the [Statement of Work]; the U.S. Constitution; all applicable Federal, state and local laws and regulations; applicable Presidential Executive Orders (E.O.); all applicable case law, consent decrees, and Court Orders." Id. at 6.

The contract specifically requires that Rivers "comply with the requirements of the Architectural Barriers Act of 1968, and the Rehabilitation Act of 1973 as amended." Id. at 23. The Rivers site and building must also meet the federal "standards for institution accessibility by physically handicapped persons," which were included as an attachment to the contract. Id.

In regard to health care, the contract requires Geo Group to "provide all essential health services while meeting the applicable standards and levels of quality established by the ACA and

_____

[2]Plaintiffs's Complaint, ¶ 35, quotes excerpts from this contract, and plaintiffs attached a copy of the contract to their memorandum in opposition to Geo Group's motion to dismiss or transfer. See Pls.' Opp. to Geo Group, Inc.'s Motion to Dismiss and Motion to Transfer, ex. 1. The contract is comprised of a Contract Award form setting forth the specific financial terms of the contract, together with a Statement of Work, setting forth Geo Group's general obligations under the contract.

the designated BOP ambulatory health care accreditation provider, JCAHO[3]." Id. at 32-33. Geo Group is further obligated to "adhere to all applicable Federal, state and local laws and regulations governing the delivery of health services and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery of health services to the inmate population." Id. at 33. The contract also requires Geo Group to maintain JCAHO accreditation, and to provide a standard of health care delivery that is "commensurate to the level of care available in the community," in accord with various BOP directives and manuals. Id. Geo Group must "furnish prescription eyeglasses to any inmate who requires them." Id. at 36.

On June 28, 2007, plaintiffs filed their Complaint in this action. Other than citing the BOP's statutory obligations and certain provisions in its contract with Geo Group, the Complaint does not reference any policies or actions of the BOP or BOP officials.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the court must dismiss any claim over which it lacks subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the law presumes that any claim lies outside this limited jurisdiction, and "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Role Models America, Inc. v. Harvey, 459 F. Supp. 2d 28, 33-34 (D.D.C. 2006). The factual allegations in a plaintiff's complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," and material other than these allegations may be considered

---

[3]The JCAHO standards are established by the private nonprofit Joint Commission, formerly the Joint Commission on Accreditation of Healthcare Organizations, a nationally recognized healthcare accreditation authority.

in determining whether subject matter jurisdiction exists, "so long as [the court] still accepts the factual allegations in the complaint as true." <u>Isenbarger v. Farmer</u>, 463 F. Supp. 2d 13, 18 (D.D.C. 2006).

Under Fed. R. Civ. P. 12(b)(6), the court's decision whether to dismiss for failure to state a claim upon which relief may be granted is based on "the legal sufficiency of the complaint." <u>Shirk v. Barton</u>, No. 07-0356, 2007 WL 2570426, at *2 (D.D.C. Sept. 6, 2007). The Supreme Court has recently revised the applicable 12(b)(6) standard. <u>See id.</u> Following <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), while the complaint need not provide "detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 1964-65. The alleged facts must "state a claim for relief that is plausible on its face" rather than merely "conceivable." <u>Id.</u> at 1974.

In determining whether dismissal is warranted for failure to state a claim, a court may consider "'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" <u>Rogers v. Johnson-Norman</u>, 466 F. Supp. 2d 162, 165 n.3 (D.D.C. 2006) (quoting <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997)). "[T]he court must treat the complaint's factual allegations . . . as true and draw all reasonable inferences therefrom in the plaintiff's favor," but "the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." <u>Shirk</u>, 2007 WL 2570426, at *2.

-6-

**ARGUMENT**

**I.    THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY FOR DAMAGES CLAIMS ALLEGING VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

Insofar as plaintiffs seek damages against federal defendants for alleged violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, their claim is barred by sovereign immunity.  "Absent waiver, the doctrine of sovereign immunity shields the federal government from suit." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (citing FDIC v. Meyer, 510 U.S. 471, 474 (1994)).  The Supreme Court has held that any waiver of sovereign immunity "must be 'unequivocally expressed in the statutory text' and 'strictly construed, in terms of its scope, in favor of the sovereign.'"  Id. (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  Because the United States' consent to be sued is a jurisdictional prerequisite, the express terms of this consent "'define [a] court's jurisdiction.'"  Id. (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Accordingly, the Supreme Court has recognized that "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  Lane v. Pena, 518 U.S. 187, 192 (1996).  In other words, the availability of monetary damages must be expressed in the statutory text.  Id.

It is settled law in this Circuit that, because nothing in the text of the Rehabilitation Act authorizes an award of monetary damages for violates of Section 504, the United States has not waived sovereign immunity for such claims.  See Dorsey v. United States Dep't of Labor, 41 F.3d 1551, 1555 (D.C. Cir. 1994).  Section 504 of the Rehabilitation Act prohibits discrimination against any "otherwise qualified individual with a disability" in programs and activities that

"receiv[e] Federal financial assistance" or that are "conducted by any Executive agency." 29 U.S.C. § 794(a). In <u>Dorsey</u>, the D.C. Circuit held that, even assuming that the plaintiff was an otherwise qualified individual with a disability, and that he had been discriminated against in violation of the Act, sovereign immunity barred the plaintiff from recovering damages from the Department of Labor. <u>Id.</u> at 1554-55. The <u>Dorsey</u> plaintiff sought damages based on the Department of Labor's provision of financial assistance to the Job Corps program.[4] In support of his claim, the <u>Dorsey</u> plaintiff invoked the Rehabilitation Act provision stating that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance." 29 U.S.C. § 794a(a)(2). However, the court held that, even if a private right of action for damages can be inferred from this language, no such claim can be brought against the federal government because neither Title VI nor the Rehabilitation Act contain "any explicit language . . . waiving the government's sovereign immunity" for damages claims. <u>Dorsey</u>, 41 F.3d at 1555 ("While private rights of action may be implied, waivers of sovereign immunity may not.").

In <u>Lane v. Pena</u>, the Supreme Court followed similar reasoning when holding that sovereign immunity also bars Rehabilitation Act claims for damages against Executive agencies relating to programs and activities that they conduct. 518 U.S. at 197. The Court in <u>Lane</u> emphasized that "when it comes to an award of money damages, sovereign immunity places the Federal Government on an entirely different footing" than private defendants, who have been

---

[4]Plaintiffs contend in their Complaint that BOP's liability under the Rehabilitation Act is similarly based on its provision of financial assistance to Rivers programs and activities. Compl. ¶ 74.

held liable for damages in similar cases. Id. at 196. Indeed, the Court has elsewhere recognized that "special factors counsel[] hesitation in the creation of a damages remedy" against federal agencies, due to the "potentially enormous financial burden" such a remedy would entail, and that decisions involving federal fiscal policy "are not [the Court's] to make." FDIC v. Meyer, 510 U.S. at 472 (1994) (internal quotation omitted). Both D.C. Circuit and Supreme Court precedent therefore require the conclusion that sovereign immunity bars monetary damages claims against the federal government for an alleged violation of Section 504 of the Rehabilitation Act. Accordingly, this Court must dismiss plaintiffs' damages claim against federal defendants for lack of subject matter jurisdiction.

## II.    PLAINTIFFS FAIL TO STATE A REHABILITATION ACT CLAIM AGAINST FEDERAL DEFENDANTS

### A.    Plaintiffs Fail To Allege Facts That Could Establish That The BOP Contract With Geo Group Qualifies As Federal Financial Assistance Within The Meaning Of The Rehabilitation Act

Even if the Court determines that it has jurisdiction over plaintiffs' Rehabilitation Act damages claims, these claims, as well as plaintiffs' claims for equitable relief under the Act, should nevertheless be dismissed because plaintiffs fail to assert any basis on which the BOP contract with Geo Group might be considered "federal financial assistance" within the meaning of the Rehabilitation Act. As indicated above, the Rehabilitation Act applies to providers and recipients of Federal financial assistance. See 29 U.S.C. § 794a(a)(2). In order to state a claim under this provision of the Rehabilitation Act, a plaintiff must allege that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal

financial assistance." <u>O'Guinn v. Lovelock Corr. Ctr.</u>, No. 06-15972, 2007 WL 2482149, at *3

(9th Cir. Sept. 5, 2007) (internal quotation omitted); <u>accord</u> <u>Allison v. Howard Univ.</u>, 209 F.

Supp. 2d 55, 62-63 (D.D.C. 2002) (citing these elements as required to establish a prima facie

case); <u>see also</u> <u>Jackson v. City of Chicago</u>, 414 F.3d 806, 810 n.2 (7th Cir. 2005) ("[T]o make out

a prima facie case under the Rehabilitation Act . . . a plaintiff must . . . show[] that she was

involved in a program which received federal financial assistance."); <u>Melton v. Dallas Area</u>

<u>Rapid Transit</u>, 391 F.3d 669, 676 n.8 (5th Cir. 2004) ("The prima facie case of discrimination

under the Rehabilitation Act . . . requir[es] a plaintiff to allege: (1) the existence of a program or

activity . . . which receives federal financial assistance; (2) the plaintiff is an intended beneficiary

of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the

reason of her handicap has been excluded from participation in, been denied benefits from, or

otherwise has been subject to discrimination under such program or activity." (emphasis

omitted)).

    While plaintiffs' Complaint alleges that the BOP "provid[es] funding and financial

assistance" to Geo Group and to Rivers programs and activities, Compl. ¶ 74, this bare assertion

is insufficient to state a viable claim. <u>Shirk</u>, 2007 WL 2570426, at *2 ("[T]he court need not

accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast

as factual allegations."). As plaintiffs assert, the financial relationship between the BOP and Geo

Group results from a contract under which Geo Group has committed to house D.C. felony

offenders in exchange for a specified amount of money. However, an allegation that an entity

has "a contract with the federal government is not equivalent to an allegation that [the entity]

received federal financial assistance because the term 'financial assistance' contemplates grants,

loans or subsidies without reciprocal services or benefits." <u>Leskinen v. Utz Quality Foods, Inc.,</u> 30 F. Supp. 2d 530, 534 (D. Md. 1998). In other words, as courts that have considered the issue agree, only federal assistance in the form of outright subsidies, and not a contract involving compensatory payments for services, can render the contracting parties subject to section 504 Rehabilitation Act claims. <u>See id.</u> (collecting cases).[5]

For example, under facts strikingly similar to those presented here, one court has held that a county holding center did not receive "Federal financial assistance" through its contract to house federal prisoners, and was therefore not subject to suit under the Rehabilitation Act, because "[p]ayment of fair market value for services rendered does not constitute a subsidy," and plaintiff had offered no evidence that the amount the county received through the contract exceeded market rates. <u>Nolley v. County of Erie</u>, 776 F. Supp. 715, 743 (W.D.N.Y. 1991). Furthermore, in <u>DeVargas v. Mason & Hanger-Silas Mason Co.</u>, 911 F.2d 1377, 1382 (10th Cir. 1990), the Tenth Circuit held that a contract with the government, even one with terms favorable to the nongovernment party, does not constitute financial assistance within the meaning of the Act unless the government intended to provide a subsidy. <u>Id.</u> at 1382. The court concluded that the evidence in the case before it did not support such an intent where the government had

_____

[5]Indeed, the Rehabilitation Act addresses the obligations of federal contractors in a different statutory provision, section 503 of the Act, codified at 29 U.S.C. § 793. That provision requires those who enter into contracts with the federal government to comply with certain requirements regarding their employment of individuals with disabilities. <u>Id.</u> § 793(a). Section 503 provides for administrative enforcement by the Department of Labor ("DOL"), and courts have held this administrative remedy to be the exclusive remedy available for violation of that provision. <u>See, e.g.</u>, <u>Simpson v. Reynolds Metals Co.</u>, 629 F.2d 1226, 1244 (7th Cir. 1980) (no private right of action under section 503); <u>Giacobbi v. Bierman</u>, 780 F. Supp. 33, 42 (D.D.C. 1992) (no remedy available for plaintiff challenging promptness of DOL investigation). This structure further demonstrates that Congress regarded entering into a contract as distinct from providing "Federal financial assistance."

performed a study showing it would save money through the contract and the contract was awarded through a competitive bidding process.  Id.  Where the government simply seeks to pay an independent contractor in order to carry out a particular task, and is not thereby attempting to provide assistance over and above simple payment-for-service, the government is not subject to suit under the Rehabilitation Act.

Here, as described above, the contract between the BOP and Geo Group was signed following a competitive bidding process initiated by the BOP's issuance of a Request for Proposals, in response to a statute through which Congress signified its recognition that private correctional facilities provide an economical alternative to government-run institutions.  It is plaintiffs' burden to assert facts that would support a conclusion that the contract provides Geo Group with anything more than it bargained for in the competitive bidding process.  Because the Complaint fails to set forth a viable assertion that any Geo Group activities receive Federal financial assistance, plaintiffs fail to state a Rehabilitation Act claim.

**B.**     **Plaintiffs Fail To Allege Facts That Could Establish Discrimination Solely By Reason Of Disability**

Plaintiffs also fail to state a viable Rehabilitation Act claim because although the Complaint alleges that individuals with disabilities at Rivers were denied physical therapy and mental health treatment, as well as previously-prescribed medications, special diets, and assistive devices, there are no facts in the Complaint suggesting that these alleged deprivations resulted from discrimination solely by reason of disability.  As indicated above, such an allegation is a required element of a Rehabilitation Act claim.  See R.S. v. Dist. of Columbia, 292 F. Supp. 2d 23, 28 (D.D.C. 2003) ("To state a claim under Section 504 of the Rehabilitation Act, 'a plaintiff

must show that he or she was discriminated against solely by reason of his [or her] handicap.'");
see also Albra v. City of Fort Lauderdale, No. 06-14544, 2007 WL 1213230, at *4 (11th Cir.
Apr. 25, 2007) (holding plaintiff had failed to state a claim when he "failed to allege . . . that he
was denied services because of his HIV status"). Essentially this element requires an allegation
that the Rehabilitation Act plaintiff was treated differently because of a disability. See Aiken v.
Nixon, 236 F. Supp. 2d 211, 225 (N.D.N.Y. 2002) (holding plaintiffs failed to state a
Rehabilitation Act claim where they "challenge a general state policy that is applicable to all . . . ,
and . . . do not allege that this policy differentiates in its applicability based upon a disability").

　　　　Here, to the contrary, the Complaint asserts that all Rivers inmates face similar
difficulties in obtaining medical treatment, whether they have a disability or not. In effect, the
Complaint's Rehabilitation Act claim mirrors its Eighth Amendment claim, asserting that the
medical care provided to disabled individuals at Rivers is inadequate. However, the
Rehabilitation Act "do[es] not guarantee any particular level of medical care for disabled
persons, nor assure maintenance of service previously provided." Cercpac v. Health & Hosp.
Corp., 147 F.3d 165, 168 (2d Cir. 1998). The purpose of the Rehabilitation Act "'is to guarantee
that individuals with disabilities receive evenhanded treatment relative to those persons without
disabilities.'" Dage v. Leavitt, No. 04-0221, 2007 WL 81961, at *8 (D.D.C. Jan. 9, 2007)
(quoting Olmstead v. L.C. by Zimring, 527 U.S. 581, 620 (1999)). The Act requires meaningful
access to benefits at whatever level they currently exist; it does not guarantee equal results from
these benefits. See Alexander v. Choate, 469 U.S. 287, 301, 304 (1985). Thus, in Alexander, the
Supreme Court held that a plaintiff alleging that a state had impermissibly reduced the number of
inpatient hospital days covered under its Medicaid program from 20 to 14 had failed to state a

-13-

Rehabilitation Act claim.  Id. at 299  (observing that the Rehabilitation Act does not require that "the benefit being offered [be altered] simply to meet the reality that the handicapped have greater medical needs").

Because in this case plaintiffs do not claim that disabled inmates at Rivers are treated differently than other inmates in regard to the provision of medical care, they fail to state a claim that they have been discriminated against based on disability in violation of the Rehabilitation Act.

## III.    PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST FEDERAL DEFENDANTS

Plaintiffs' Complaint also fails to state a claim that corresponds with any legal theory under which federal defendants could be held responsible for the Eighth Amendment violations it alleges occurred at Rivers, a facility operated by a private contractor.  Plaintiffs' allegations against federal defendants must therefore be dismissed under Rule 12(b)(6).

### A.    Plaintiffs State No Eighth Amendment Claim Against Federal Defendants Based On The BOP's Contractual Relationship With A Private Prison Because The Private Prison Is Not A Government Actor

In order to state a cognizable claim under the Eighth Amendment for inadequate medical treatment in prison, "a prisoner must allege acts or omissions" by a government actor that are "sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A claim brought pursuant to 42 U.S.C. § 1983 against individual employees of state prisons acting under color of state law must allege that the defendant officials "had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk."  Baker v. Dist. of

-14-

Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). The same standard applies in damages claim against employees of federal prisons pursuant to Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971), assuming that the defendant employees are not entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 614 (D.C. Cir. 1998).

Outside the context of § 1983 and Bivens, courts have held that federal prison inmates may bring Eighth Amendment claims for injunctive relief against the BOP and BOP officials in order to require them to perform their nondiscretionary duty to provide adequate medical care in federal prisons. E.g., Simmat v. United States Bur. of Prisons, 413 F.3d 1225, 1235 (10th Cir. 2005). However, no court, as far as federal defendants are aware, has issued a similar holding in regard to private prisons, operated not by the BOP but by a private company as an independent contractor. The federal government's hiring of independent contractors to house federal inmates is nothing new. Over thirty years ago, in Logue v. United States, 412 U.S. 521 (1973), the Supreme Court addressed the status of a county jail that housed federal inmates pursuant to a contract with the BOP, which in turn had statutory authority to enter into such contracts. Id. at 522 & n.2. The Court in Logue concluded that Congress, by granting the BOP such authority, "rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." Id. at 529. While the contract at issue in Logue "specif[ied] standards of treatment for federal prisoners," it gave the BOP "no authority to physically supervise the conduct of the jail's employees," other than through limited inspections. Id. at 530. The Court therefore held that the county jail was an independent contractor within the meaning of an exception to the Federal Tort Claims Act, 28 U.S.C. § 1346,

-15-

and therefore BOP was not liable for damages based on actions of county jail employees.  Id. at

532; accord Cannon v. United States, 645 F.2d 1128, 1134 (D.C. Cir. 1981); Phillips v. Fed. Bur.

of Prisons, 271 F. Supp. 2d 97, 100 (D.D.C. 2003).

 In the context of constitutional claims seeking equitable relief, the independent contractor

concept is relevant to the fundamental principle that, in order to hold that an action violates an

individual's constitutional rights, that action must somehow be considered a government action.

See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (holding that "the conduct allegedly

causing the deprivation of a federal right" must be "fairly attributable" to the government); Vill.

of Bensenville v. FAA, 457 F.3d 52, 64 (D.C. Cir. 2006) ("'[A] State normally can be held

responsible for a private decision only when it has exercised coercive power or has provided such

significant encouragement, either overt or covert, that the choice must in law be deemed to be

that of the State.'" (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982))).  Here, as the Fourth

Circuit has recognized, codefendant Geo Group, Inc., which owns and operates Rivers, is "a

wholly private corporation in which the federal government has no stake other than a contractual

relationship."  Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006).  "Acts of . . . private contractors

do not become acts of the government by reason of their significant or even total engagement in

performing public contracts."  Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)  The Fourth

Circuit accordingly held that the actions of individual Geo Group employees at Rivers were not

"fairly attributable" to the federal government, and that the plaintiff therefore had no cognizable

Bivens claim for damages for an alleged Eighth Amendment violation against Geo Group

employees.  Holly, 434 F.3d at 291.  If Geo Group employees at Rivers cannot violate the Eighth

Amendment because they are not government actors, it  follows that the BOP cannot be held to

-16-

have violated the Eighth Amendment based on the actions of these private parties.

> **B.     Even If Geo Group Employees Are Government Actors That Can Violate The Eighth Amendment, Plaintiffs' Asserted Claim Of Supervisor Liability Against Federal Defendants Is Not Cognizable**

Even if Geo Group or its employees are held to be government actors subject to constitutional constraints, plaintiffs still have not stated a cognizable claim against federal defendants, the BOP and Harley Lappin.  Plaintiffs' Complaint appears to hinge its theory of federal defendant liability on the idea that federal defendants "should have known" that Rivers provides inadequate medical care.  However, it is well established that constructive knowledge is insufficient to establish an Eighth Amendment violation on the part of a governmental entity. Such a concept ignores the fundamental requirement that the government actor must <u>cause</u> the alleged injury in order for it to have committed a constitutional violation.  See <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) (requiring a "direct causal link" between the government's action and the alleged constitutional deprivation).

Through their invocation of a constructive knowledge standard, plaintiffs appear to assert a claim of "supervisor liability" against federal defendants.  However, the concept of supervisor liability is limited to claims brought against a supervising employee in his individual capacity. See <u>Reed v. Dist. of Columbia</u>, 474 F. Supp. 2d 163, 168 (D.D.C. 2007) ("A supervisor can be held liable for a constitutional violation only if a plaintiff can demonstrate: (1) a grave risk of harm; (2) the supervisor's actual or constructive knowledge of that risk; and (3) the supervisor's failure to take available measures to address the risk.").[6]  In the context of claims under 42

---

[6] The fact that the Complaint names Harley Lappin in his official capacity as BOP Director as a defendant does not change this analysis.  An official-capacity suit is, "in all respects other than name, to be treated as a suit against the [governmental] agency."  <u>Kentucky v.</u>

-17-

U.S.C. § 1983, government entities, as opposed to individual government employees in supervisor roles, are not held liable under a "supervisor" standard even when the actual wrongdoer is a government employee rather than an independent contractor.

Rather, the concept of municipal liability has been developed in that context as providing the appropriate standard for imposing liability on an entity for constitutional violations of its employees or agents. Explaining this concept, the Supreme Court has stated that "[t]he city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer" because "the constitutional deprivation was attributable to a municipal policy or custom." Collins v. City of Harker Heights, 503 U.S. 115, 122-23 (1992); see also Powers-Bunce v. Dist. of Columbia, 479 F. Supp. 2d 146, 155 (D.D.C. 2007) ("It is well settled that a municipality like the District of Columbia is not liable for the unconstitutional conduct of its employees based on *respondeat superior* or vicarious liability; it can be held liable only if it maintains a policy that causes a constitutional violation."); accord Qutb v. Ramsey, 285 F. Supp. 2d 33, 44 (D.D.C. 2003).

The D.C. Circuit has applied the concept of municipal liability to Eighth Amendment claims brought under § 1983. Baker, 326 F.3d at 1306. In order to conclude that a municipality acted with deliberate indifference under this theory, an additional step, beyond what is required to establish an individual's Eighth Amendment violation, is necessary. In order for such a claim to be cognizable, the complaint must "state[] a claim that a custom or policy of the municipality caused the [Eighth Amendment] violation." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The plaintiff must allege an "affirmative link," such that the policy was the

Graham, 473 U.S. 159, 166 (1985).

"moving force behind the constitutional violation." Id. (internal quotation and citation omitted).

Federal defendants are not subject to suit under § 1983. However, to the extent federal defendants do have a constitutional obligation with respect to the conduct of Geo Group employees at Rivers, this obligation should be viewed as akin to that of a municipality in regard to the conduct of its employees or agents, and federal defendants' liability should be limited to instances where a BOP policy or custom caused the alleged constitutional violations.

### C.    Plaintiffs Cite No BOP Policy Or Custom As The Cause Of Alleged Eighth Amendment Violations At Rivers

Even if plaintiffs' Complaint can be construed as alleging a theory of BOP liability similar to the municipal liability recognized in this Circuit as a viable claim under § 1983, the Complaint fails to cite any BOP policy or custom that could conceivably have caused the Eighth Amendment violations that, plaintiffs allege, occurred. The Complaint does cite a statute enacted by Congress requiring the BOP to "house at least half of D.C. Code felony offenders in private, for-profit contract facilities." Compl. ¶ 29; see D.C. Code § 24-101. The Complaint further alleges that the BOP entered into a contract with Geo Group, following the issuance of a Request for Proposals, through which Geo Group would house D.C. Code felony offenders at Rivers. Compl. ¶¶ 31-32. The Complaint also lists a number of obligations that are imposed on Geo Group through its contract with the BOP. See Compl. ¶ 35. For example, the Complaint alleges that Geo Group is contractually required to "provide 'all essential health services' and . . . adhere to 'the U.S. Constitution,'" and that Geo Group must "establish the necessary quality controls to ensure all policies and procedures . . . promote orderly and efficient delivery and management of health services to the inmate population." Id. ¶ 35(a). According to the Complaint, the contract

also requires Geo Group to submit Rivers policies and procedures to the BOP for "'review and concurrence,'" id. ¶ 35(c), and that Geo Group obtain BOP approval for proposed personnel hires, id. ¶ 35(d). In addition, the Complaint indicates that the contract requires Geo Group to allow BOP to conduct inspections and to maintain "an on-site BOP representative" to monitor Geo Group's adherence to contract requirements. Id. ¶ 35(e)-(f), (g).

Plaintiffs cannot state a viable claim that federal defendants have acted with deliberate indifference simply by virtue of the fact that the BOP has complied with D.C. law, as enacted by Congress, requiring the use of private contract facilities to house a certain number of D.C. inmates, nor that the BOP granted a contract to Geo Group to conduct this activity. Nor can plaintiffs plausibly allege that the contract between the BOP and Geo Group, which places obligations on Geo Group with respect to its provision of health care services to inmates, qualifies as a BOP policy or custom that might have caused Geo Group's alleged failure to provide adequate health care. As recognized by the Supreme Court, any such allegation would simply make no sense. See City of Canton, 489 U.S. at 386-87 (observing that "[i]t is difficult to see what constitutional guarantees are violated by . . . a policy" that requires the city jailer to "have [a person needing medical care] taken to a hospital for medical treatment, with permission of his supervisor" (internal quotation omitted)).

The policies and customs that the Complaint does cite as problematic are policies and customs – apparently informal and unwritten – of Geo Group and Rivers, not of the BOP. See, e.g., Compl. ¶ 37(a) (alleging Rivers' inadequate staffing), (d) (alleging Rivers' routine confiscation of incoming inmates' prescription medications), (e) (alleging Rivers' routine use of a "pill line" to distribute medications in a manner that causes inmates to be exposed to harsh

weather and to miss meals). Plaintiffs' Complaint does not allege that federal defendants are responsible for imposing these alleged policies nor that they endorsed these policies after they were developed or implemented. In sum, there is simply no allegation in the Complaint that a custom or policy of the BOP caused the alleged Eighth Amendment violations at Rivers. Even assuming these violations occurred, therefore, the Complaint, even when liberally construed, fails to state an Eighth Amendment claim against federal defendants.

## IV.   THERE IS NO ARTICLE III CASE OR CONTROVERSY WITH RESPECT TO PLAINTIFFS WHO ARE NO LONGER AT RIVERS YET SEEK INJUNCTIVE AND DECLARATORY RELIEF

Seven of the ten plaintiffs in this case are no longer current inmates at Rivers nor is there any reasonable expectation that they will return. Insofar as these plaintiffs seek declaratory and injunctive relief for federal defendants' alleged Rehabilitation Act and Eighth Amendment violations, their claims must be dismissed for failure to present an actual case or controversy redressable by this Court. At the time this Complaint was filed, five of these individuals – Carl Butler, Charles Lewis, John Doe, John Roe, and Jimmie Fowler – were no longer inmates at Rivers. Compl. ¶¶ 14, 16-19.[7] In the approximately two months since then, two additional plaintiffs – Reon Holloway and Harold Robinson – have been released from Rivers. See Decl. of James R. Schluter, ¶ 3(b), (f) (attached to this memorandum as Exhibit 1). The five who were not at Rivers at the time of filing lack standing to pursue equitable relief, and the equitable claims of all seven of these individuals are now moot.

---

[7]The Complaint refers to John Doe and John Roe by pseudonyms, as permitted by the Court's order of June 28, 2007, temporarily granting leave to proceed under pseudonym. However, the Complaint, ¶¶ 17-18, expressly states that these individuals were not at Rivers at the time the Complaint was filed.

**A.    Former Rivers Inmates Who Were Released Or Transferred Before The Complaint Was Filed Lack Standing To Pursue Equitable Relief**

Under Article III, section 2 of the Constitution, federal court jurisdiction is limited to "'actual, ongoing controversies.'"  Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 950 (D.C. Cir. 2005) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)).  In this regard, a fundamental prerequisite to suit is that each plaintiff have standing to pursue the alleged claim.  The standing requirement "consists of three elements: (1) an 'injury in fact' that is (2) ' fairly . . . trace[able] to the challenged action of the defendant,' and (3) 'likely. . . redress[able] by a favorable decision.'"  Karst Envtl. Educ. & Protection, Inc. v. EPA, 475 F.3d 1291, 1294-95 (D.C. Cir. 2007) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "The redressability inquiry poses a simple question: 'If plaintiffs secured the relief they sought, would it redress their injury'?"  Vill. of Bensenville, 457 F.3d at 69 (internal quotation omitted).

An injury is not redressable by injunctive relief that would require a change of the conditions that allegedly caused the injury if a plaintiff is no longer subject to those conditions.  See City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983) (holding that a plaintiff claiming a past injury had no standing to seek declaratory relief because the plaintiff's "assertion that he may again be subject to an illegal chokehold" was too speculative to "create the actual controversy that must exist for a declaratory judgment to be entered").  Redressability focuses only on the plaintiff himself; an interest in preventing a similar harm to others is insufficient.  See Aviles v. United States, 696 F.Supp. 217, 221 (E.D. La. 1988) (holding a plaintiff lacked standing to seek equitable relief under the Rehabilitation Act where he would not benefit personally from an injunction, even if others with disabilities would benefit).

-22-

With respect to two plaintiffs who were transferred to other facilities before the Complaint was filed, the Complaint alleges that they "face[] the possibility of returning to Rivers," citing "federal requirements that a certain number of D.C. prisoners be held in private facilities." Compl. ¶¶ 14, 19. A mere "possibility" that this might occur, without more, is insufficient to establish standing. See City of Los Angeles, 461 U.S. at 109 ("If [plaintiff] has made no showing that he is realistically threatened by a repetition of his experience . . . , then he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice."). The five plaintiffs no longer at Rivers at the time the Complaint was filed cannot benefit from any declaratory or injunctive relief a court might grant; they therefore lack standing to pursue any equitable claims.

**B.    The Equitable Claims Of Former Rivers Inmates Who Were Released Or Transferred Before Or After The Complaint Was Filed Are Moot**

Redressability remains a concern after a suit is filed. "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Comm. to Review, 264 F.3d 52, 55 (D.C. Cir. 2001). Mootness, like standing, can deprive a court of jurisdiction with respect to a particular form of relief independently of other relief that may be sought. Id.

In regard to prison inmates' claims concerning the conditions of their confinement, it is well established that claims for declaratory or injunctive relief become moot when the inmate is released or transferred to another facility because the inmate no longer has "'a legally cognizable interest in the outcome.'" Murphy v. Hunt, 455 U.S. 478, 481 (1982) (quoting United States

-23-

Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980)); see Qassim v. Bush, 466 F.3d 1073,

1077 & n.4 (D.C. Cir. 2006) (citing D.C. Circuit cases that have "repeatedly held" that a

prisoner's release or transfer moots any claims for equitable relief); Scott v. Dist. of Columbia,

139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison

moots any claim he might have for equitable relief arising out of the conditions of his

confinement in that prison.");  Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (same); see

also Powell v. Barrett, No. 05-16734, 2007 WL 2386610, at n.27 (11th Cir. Aug. 23, 2007)

(inmate's equitable claims must be dismissed after his release rendered them moot); Green v.

Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (a claim for declaratory relief was moot where

the plaintiff was "no longer a prisoner within the control of the" defendants and "the entry of a

declaratory judgment in [the plaintiff]'s favor would . . . have no effect on the defendants'

behavior towards him"); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's

claim for [declaratory and] injunctive  relief to improve prison conditions is moot if he or she is

no longer subject to those conditions.").  The Fourth Circuit has specifically held that a plaintiff's

Rehabilitation Act claim, seeking declaratory and injunctive relief for alleged discrimination in

the provision of his basic needs during his eight-month incarceration at a particular facility,

became moot when the plaintiff was transferred to another facility.  LaFaut v. Smith, 834 F.2d

389, 395 (4th Cir. 1987).

  An exception to the mootness doctrine in some instances allows an otherwise moot claim

to be litigated where "'(1) the challenged action [is] in its duration too short to be fully litigated

prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same

complaining party [will] be subjected to the same action again.'"  Beethoven.com LLC, 394 F.3d

at 950 (quoting <u>Murphy</u>, 455 U.S. at 482). "[A] mere physical or theoretical possibility" is

insufficient to satisfy the test; [r]ather, . . . there must be a 'reasonable expectation' or a

'demonstrated probability' that the same controversy will recur involving the same complaining

party." <u>Murphy</u>, 455 U.S. at 482. That exception does not apply here. The fact cited by

plaintiffs, Compl. ¶¶ 14, 19, that the BOP is required by statute to utilize some private facilities is

insufficient to establish a "reasonable expectation" that these particular plaintiffs will return to

this particular facility; rather, the "possibility" that plaintiffs allege is nothing more than sheer

speculation. <u>See</u> <u>McKinnon v. Talladega County</u>, 745 F.2d 1360, 1363 (11th Cir. 1984)

(rejecting a transferred plaintiff's argument that "there is no assurance that he will not be

returned to the jail"); <u>see also</u> <u>Scott</u>, 139 F.3d at 941 (recognizing that cases holding that transfer

moots an inmate's claim regarding prison conditions "do not distinguish between intra- and inter-

jurisdiction transfers of inmates"); <u>Martin</u>, 780 F.2d at 1337 (holding a claim moot when the

prisoner was transferred to a different facility within the same prison system).

    Although plaintiffs characterize their Complaint as a class action, no class has yet been

certified. Indeed, plaintiffs have not yet moved for class certification. Pre-certification mootness

generally requires dismissal. <u>See</u> <u>Geraghty</u>, 445 U.S. at 398 (mootness can be avoided where

class certification occurs "*prior to* expiration of the named plaintiff's personal claim" (emphasis

added)); <u>Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital</u>

<u>Advisors</u>, No. 04-56791, 2007 WL 2325079 (9th Cir. Aug. 16, 2007) ("'[A] suit brought as a

class action must as a general rule be dismissed for mootness when the personal claims of the

named plaintiffs are [moot] and no class has properly been certified.'" (quoting <u>Zeidman v. J.</u>

<u>Ray McDermott & Co., Inc.</u>, 651 F.2d 1030, 1045 (5th Cir. 1981))); <u>Bertrand v. Maram</u>, No. 06-

3705, 2007 WL 2092551, at *2 (7th Cir. July 24, 2007) (same); Cruz v. Farquharson, 252 F.3d 530, 533-34 (1st Cir. 2001) (same).

In the limited circumstance involving allegations of unconstitutional treatment during pretrial detention, the Supreme Court has allowed claims to proceed as class actions even when the named plaintiffs' claims became moot prior to class certification because of the "inherently transitory" nature of these claims. See County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991); Gerstein v. Pugh, 420 U.S. 103, 111 n.11 (1975). While pretrial detention may qualify as a transitory circumstance, postconviction incarceration is almost by definition distinguishable. Plaintiffs allege that the conditions they complain of are present at Rivers on an ongoing basis. There is no reason to believe that Rivers inmates generally serve such short sentences that they could not proceed in litigation at least to the stage of moving for class certification before their release or transfer. See Elizabeth M. v. Montenez, 458 F.3d 779, 785 (8th Cir. 2006) (holding that "the district court abused its discretion by including present and former residents in a single, essentially unmanageable class"). Indeed, the contrary is shown by the fact that three plaintiffs named in the Complaint here remain at Rivers. The other seven plaintiffs should be barred from seeking equitable relief because their claims are moot.

## V.    IF THE COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS AGAINST FEDERAL DEFENDANTS, THESE CLAIMS SHOULD BE TRANSFERRED

If plaintiffs' Rehabilitation Act or Eighth Amendment claims against federal defendants survive the jurisdictional and 12(b)(6) challenges raised above, these claims should be transferred to the Eastern District of North Carolina, where Rivers is located. As codefendant Geo Group has argued, the relevant factors warrant transfer under the circumstances of this case. Under 28

U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." There is no question that plaintiffs could have filed this case in the Eastern District of North Carolina. See 28 U.S.C. § 1391(e). Thus, even if venue is appropriate in this district, plaintiffs' case is subject to transfer if "particular circumstances . . . render the transferor forum inappropriate by reference to the considerations" listed in § 1404(a). Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974) (en banc). The D.C. Circuit has recognized that "petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally[] will tend to involve factors that make transfer to the place of incarceration appropriate." Id. at 926. In such circumstances, transfers are warranted "'as a matter of course.'" Id. (quoting Young v. Director, Bur. of Prisons, 367 F.2d 331, 332 (D.C. Cir. 1966)).

Here, although Rivers inmates were originally sentenced in D.C., transfer is warranted as well based on the particular circumstances involved. "In deciding whether transfer is warranted, courts should consider the convenience of the parties and witnesses, as well as the 'interests of justice.'" Rosales v. United States, 477 F. Supp. 2d 213, 215 (D.D.C. 2007). While the party seeking transfer bears the burden of establishing that transfer is appropriate, the Court "has 'broad discretion' to order transfer under this standard." Id. (quoting In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983)).

A plaintiff's choice of forum has been considered a relevant factor in this analysis. E.g., Lentz v. Eli Lilly & Co., 464 F. Supp. 2d 35, 37 (D.D.C. 2006). However, under the circumstances here, plaintiffs' choice of this District deserves little deference in light of other relevant factors. A court "may give substantially less deference [to a plaintiff's forum choice]

-27-

when the forum preferred by the plaintiff is not his home forum." Stern v. Fed. Bur. of Prisons, No. 07-00564, 2007 WL 1555830, at *1 (D.D.C. Mar. 22, 2007) (citing Piper Aircraft, Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). The home forum for incarcerated plaintiffs "for purposes of venue is the place of . . . incarceration." Id. (citing Starnes, 512 F.2d at 925 n.7). The fact that some of the plaintiffs named in the Complaint are no longer at Rivers should have little bearing on this question; as discussed above, those plaintiffs either lack standing to pursue their claims for injunctive relief, or these claims are now moot.

The nature of plaintiffs' claims determines the type of evidence that will be involved in this case, which in turn weighs in favor of transfer. Through their Eighth Amendment and Rehabilitation Act claims, Plaintiffs challenge the conditions of their confinement. Thus, these challenges necessarily involve circumstances that exist on location at Rivers. Cf. Smart v. Good, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (contrasting an inmate's challenge to "the legitimacy of her conviction and sentence" with a challenge to "the conditions of her confinement"). Even if plaintiffs' Complaint could be interpreted as pointing to a BOP policy or custom as the cause of the violations they allege, any relevant BOP policy or custom affected plaintiffs only through its implementation at Rivers. See Stern, No. 07-00564, 2007 WL 1555830, at *2 (holding that, "because the implementation of the national policy [of which plaintiffs complained] occurred in Butner, North Carolina, venue is more appropriate there"); accord Zakiya v. United States, 267 F. Supp. 2d 47, 58-59 (D.D.C. 2003); Huskey v. Quinlan, 785 F. Supp. 4, 7 (D.D.C. 1992).

Because all events relevant to plaintiffs' claims occurred at Rivers, the medical and other records and most witnesses are located there as well and are thus more accessible in the Eastern District of North Carolina. See Skinner v. United States, No. 05-2237, 2007 WL 744737, at *4

-28-

(D.D.C. Mar. 6, 2007) (observing "the likelihood that relevant medical records accompanied plaintiff to" place of current incarceration); <u>Joyner v. Dist. of Columbia</u>, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) ("In cases in which the plaintiff's claims will require testimony or files that are most easily obtained at or near the place of incarceration, 'the district in which the institution is located will ordinarily be the more convenient forum'" (quoting <u>Starnes</u>, 512 F.2d at 931)); <u>Rogers v. Fed. Bur. of Prisons</u>, 257 F. Supp. 2d 147, 148 (D.D.C. 2003). In particular, because plaintiffs themselves and other Rivers inmates are likely witnesses in this case, "the difficulty of transferring a prisoner, compared to the relative ease with which federal officials" and other nonincarcerated witnesses can travel to the district where the prison is located to give evidence, makes it "appropriate and efficient to have this suit heard in a District close [to] the [plaintiffs'] place of incarceration." <u>Huskey</u>, 785 F. Supp. at 7. The interests of justice therefore favor transfer of this action to the Eastern District of North Carolina.

## CONCLUSION

For the foregoing reasons, the claims against federal defendants should be dismissed in their entirety. In the alternative, any surviving claims should be transferred to the Eastern District of North Carolina.

Dated: September 18, 2007               Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General
                                          JEFFREY A. TAYLOR
                                          United States Attorney
                                          VINCENT M. GARVEY
                                          Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW, Room 7218
Washington, D.C.  20001
Telephone: (202) 616-8475 / Fax: (202) 616-8202
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

-30-

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, REON HOLLOWAY, DAVID ROGERS, BENJAMIN HAMILTON, CARL BUTLER, HAROLD ROBINSON, CHARLES LEWIS, JOHN DOE, JOHN ROE, and JIMMIE FOWLER, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the UNITED STATES BUREAU OF PRISONS, | ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 07-1155 (RMU)

## [Proposed] ORDER

Upon the Court's consideration of federal defendants' motion to dismiss, the opposition thereto, and the entire record in this case, it is, this _____ day of _____, 2007,

ORDERED that federal defendants' motion to dismiss is granted; and it is

FURTHER ORDERED that all claims asserted against federal defendants in the above-captioned case are hereby dismissed with prejudice.

_____
The Honorable Ricardo M. Urbina
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, ET AL.,           )
       Plaintiffs,           )
                    )
                    )
       v.           )    Civil No. 07-cv-01155-RMU
                    )
GEO GROUP, INC. ET AL.,           )
       Defendants.           )
                    )

## DECLARATION OF JAMES R. SCHLUTER

I, James R. Schluter, hereby make the following declaration:

1.    I am an Administrative Remedy Specialist for the Federal Bureau of Prisons, Office of General Counsel, in Washington, D.C.  I have been employed by the Bureau of Prisons since October 2, 1978, and in my current position since April 4, 2004.

2.    As Administrative Remedy Specialist, I have access to numerous records maintained in the ordinary course of business regarding federal prisoners, including those housed in private prisons under contract to the Bureau of Prisons.  This access includes, but is not limited to, computerized records maintained on the Bureau of Prisons database, known as SENTRY.

3.    On September 10, 2007, a SENTRY search was conducted regarding each Plaintiff identified in the above-captioned case.  The following provides the name and incarceration information of each Plaintiff:

    a.    Plaintiff Keith Mathis, register number 35973-007, is currently serving a three year sentence for a probation violation. See **Document A,** SENTRY Public Information Inmate Data for Keith Mathis.  He is currently housed at the Rivers Correctional Institution ("Rivers") in Winton, North Carolina.   He has been incarcerated at Rivers since March 8, 2006.  His projected release date is February 15, 2008. Id.

b.   Plaintiff Reon Holloway, register number 36620-007, was designated to Rivers on

December 7, 2005. See **Document B,** SENTRY Public Information Inmate Data

for Reon Holloway.  On August 10, 2007, Plaintiff was released via Good

Conduct Time available to him under 18 U.S.C. §3624(b). Id.

c.   Plaintiff David Rogers, register number 12648-007, was designated to Rivers on

March 14, 2006. See **Document C,** SENTRY Public Information Data for David

Rogers.  On September 6, 2007, he satisfied his federal sentence and remains in

BOP custody pending a court hearing. Id.

d.   Plaintiff Benjamin Hamilton, register number 32071-007, was designated to

Rivers on March 13, 2003, and is currently housed at this facility.  See

**Document D,** SENTRY Public Information Data for Benjamin Hamilton.  His

projected release date is January 31, 2020. Id.

e.   Plaintiff Carl Butler, register number 31298-007, was incarcerated at Rivers from

February 15, 2006 through May 24, 2007. See **Document E,** SENTRY Public

Information Data for Carl Butler.  On May 24, 2007, plaintiff was transferred

from Rivers to the Federal Correctional Institution (FCI) Petersburg, Virginia. Id.

His projected release date is January 10, 2008. Id.

f.   Plaintiff Harold Robinson, register number 03180-000, was incarcerated at Rivers

from February 17, 2005 through December 9, 2005, when he was released via

parole. See **Document F,** SENTRY Public Information Data for Harold

Robinson.  On September 13, 2006, Plaintiff was re-designated to Rivers for

violating parole. Id.   On August 21, 2007, he was released from Rivers via

parole. Id.

g.   Plaintiff Charles Lewis, register number 35334-007, was incarcerated at Rivers

from December 15, 2004 through February 8, 2006. See **Document G,** SENTRY

Public Information Data for Charles Lewis.    His actual satisfaction date from his

federal sentence was March 29, 2006. Id.

h.    Plaintiff Jimmie Fowler, register number 00472-000, was incarcerated at Rivers

from November 9, 2005 through February 15, 2007.  See **Document H,** SENTRY

Public Information Data for Jimmie Fowler.  On February 15, 2007, plaintiff was

transferred from Rivers to FCI Petersburg, Virginia. Id.  His projected release

date is July 13, 2009. Id.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given

under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 13th day of September 2007.

James R. Schluter
Administrative Remedy Specialist
Office of General Counsel
Federal Bureau of Prisons

DOCUMENT A

```
 BOPOL            *       PUBLIC INFORMATION              *      08-01-2007
PAGE 001          *           INMATE DATA                 *      09:57:12
                              AS OF 08-01-2007


REGNO..: 35973-007 NAME: MATHIS, KEITH
COMP NO: 010       ALL CURR COMPS(Y/N): Y  ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 252-358-5200   FAX: 252-358-5202
                                           RACE/SEX...: BLACK / MALE
FBI NUMBER.:                               DOB/AGE....:
PROJ REL MT: MANDATORY PAROLE              PAR ELIG DT: 02-14-2006
PROJ REL DT: 02-15-2008                    PAR HEAR DT: N/A
-------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL   ASSIGNMENT DESCRIPTION               START DATE/TIME STOP  DATE/TIME
RIV   A-DES      DESIGNATED, AT ASSIGNED FACIL  09-08-2006 1819 CURRENT
RIV   LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN  09-08-2006 1404 09-08-2006 1819
RIV   A-DES      DESIGNATED, AT ASSIGNED FACIL  08-23-2006 1728 09-08-2006 1404
RIV   LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN  08-23-2006 1224 08-23-2006 1728
RIV   A-DES      DESIGNATED, AT ASSIGNED FACIL  08-02-2006 1748 08-23-2006 1224
RIV   LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN  08-02-2006 1406 08-02-2006 1748
RIV   A-DES      DESIGNATED, AT ASSIGNED FACIL  07-21-2006 1142 08-02-2006 1406
RIV   LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN  07-19-2006 2026 07-21-2006 1142


G0002      MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU    Document 28-4    Filed 09/18/2007    Page 3 of 4

PUBLIC INFORMATION
INMATE DATA
AS OF 08-01-2007

REGNO..: 35973-007 NAME: MATHIS, KEITH
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 252-358-5200    FAX: 252-358-5202

| | | | | | | |
|---|---|---|---|---|---|---|
| RIV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-08-2006 | 1400 | 07-19-2006 | 2026 |
| 0-Q | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-08-2006 | 1400 | 03-08-2006 | 1400 |
| 0-Q | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-01-2006 | 1119 | 03-08-2006 | 1400 |
| CBR | ADMIN REL | ADMINISTRATIVE RELEASE | | | 03-01-2006 | 1119 | 03-01-2006 | 1119 |
| CBR | A-ADMIN | ADMINISTRATIVE ADMISSION | | | 03-01-2006 | 1109 | 03-01-2006 | 1119 |
| P05 | RELEASE 03 | RELEASED FROM IN-TRANSIT, MAR | 03-01-2006 | 1109 | 03-01-2006 | 1109 |
| P05 | A-ADMIT 09 | ADMITTED TO IN-TRANSIT, SEP | 09-15-2005 | 0530 | 03-01-2006 | 1109 |
| 0-Q | RELEASE | RELEASED FROM IN-TRANSIT FACL | 09-15-2005 | 0530 | 09-15-2005 | 0530 |
| 0-Q | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-18-2005 | 1032 | 09-15-2005 | 0530 |
| CBR | ADMIN REL | ADMINISTRATIVE RELEASE | | | 05-18-2005 | 1032 | 05-18-2005 | 1032 |
| CBR | A-UNCOMMIT | UNCOMMITTED PERSON | | | 05-04-2005 | 1657 | 05-18-2005 | 1032 |

G0002        MORE PAGES TO FOLLOW . . .

Case 1:07-cv-01155-RMU   Document 26-4   Filed 09/18/2007   Page 4 of 4

REGNO..: 35973-007 NAME: MATHIS, KEITH
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 252-358-5200   FAX: 252-358-5202
PRE-RELEASE PREPARATION DATE: 11-01-2007

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  02-15-2008 VIA MAND PAR

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F9533-98
JUDGE...........................: SHUKER
DATE SENTENCED/PROBATION IMPOSED: 05-04-1999
DATE PROBATION REVOKED..........: 01-12-2006
TYPE OF PROBATION REVOKED.......: REG
DATE WARRANT ISSUED.............: N/A

G0002      MORE PAGES TO FOLLOW . . .

DOCUMENT B

```
   BOPOL          *        PUBLIC INFORMATION        *      09-05-2007
   PAGE 001        *            INMATE DATA            *      12:27:05
                                AS OF 09-05-2007


   REGNO..: 36620-007 NAME: HOLLOWAY, REON
   COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
   FUNC...: DIS          RESP OF: RIV / GOOD CONDUCT TIME RELEASE
                         PHONE..: 252-358-5200    FAX: 252-358-5202
                                                  RACE/SEX...: BLACK / MALE
   FBI NUMBER.: ██████████             DOB/AGE....: ██████████
   ACTUAL RELEASE METH.: GCT REL
   ACTUAL RELEASE DATE.: 08-10-2007
   ---------------------------- ADMIT/RELEASE HISTORY ----------------------------
   FCL    ASSIGNMENT DESCRIPTION           START DATE/TIME STOP  DATE/TIME
   RIV    GCT REL    GOOD CONDUCT TIME REL (CCCA)  08-10-2007 0809 CURRENT
   RIV    A-REL CHNG ADMISSION FOR RELEASE CHANGE  08-10-2007 0808 08-10-2007 0809
   RIV    DC RETURN  DC BRDER RET TO DC DEPT OF COR 07-31-2007 0857 08-10-2007 0808
   RIV    A-DES      DESIGNATED, AT ASSIGNED FACIL  12-07-2005 1345 07-31-2007 0857
   0-G    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-13-2005 1314 12-07-2005 1345
   0-G    RELEASE    RELEASED FROM IN-TRANSIT FACL  12-07-2005 1345 12-07-2005 1345
   BOP    ADMIN REL  ADMINISTRATIVE RELEASE         10-13-2005 1314 10-13-2005 1314
   BOP    A-ADMIN    ADMINISTRATIVE ADMISSION       10-13-2005 1301 10-13-2005 1314


   G0002      MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU    Document 28-5    Filed 09/18/2007    Page 3 of 3

PUBLIC INFORMATION
INMATE DATA
AS OF 08-10-2007

```
REGNO..: 36620-007 NAME: HOLLOWAY, REON
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: RIV / GOOD CONDUCT TIME RELEASE
                      PHONE..: 252-358-5200    FAX: 252-358-5202
PRE-RELEASE PREPARATION DATE: 05-24-2007
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  08-10-2007 VIA GCT REL

----------------------PRIOR JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION..........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER..................: F5801-04
JUDGE..........................: CHRISTIAN
DATE SENTENCED/PROBATION IMPOSED: 09-02-2005
DATE COMMITTED.................: 11-09-2005
HOW COMMITTED..................: DC SUPERIOR COURT COMT
PROBATION IMPOSED..............: NO
```

G0002       MORE PAGES TO FOLLOW . . .

DOCUMENT C

```
BOPOL                         *   PUBLIC INFORMATION          *      09-12-2007
PAGE 001               *            INMATE DATA               *      14:02:41
                                  AS OF 09-12-2007


REGNO..: 12648-007 NAME: ROGERS, DAVID
COMP NO: 020            ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS           RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 252-358-5200    FAX: 252-358-5202
                                               RACE/SEX...: BLACK / MALE
FBI NUMBER.: ██████████                        DOB/AGE....: ██████████
PROJ REL MT: UNKNOWN                           PAR ELIG DT:
PROJ REL DT: UNKNOWN                           PAR HEAR DT:
------------------------ ADMIT/RELEASE HISTORY --------------------------
FCL    ASSIGNMENT  DESCRIPTION             START DATE/TIME STOP  DATE/TIME
RIV    A-DES       DESIGNATED, AT ASSIGNED FACIL 03-14-2006 1250 CURRENT
S39    RELEASE     RELEASED FROM IN-TRANSIT FACL 03-14-2006 1250 03-14-2006 1250
S39    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 03-14-2006 0652 03-14-2006 1250
CUM    TRANSFER    TRANSFER                     03-14-2006 0652 03-14-2006 0652
CUM    A-DES       DESIGNATED, AT ASSIGNED FACIL 05-25-2005 1020 03-14-2006 0652
0-Q    RELEASE     RELEASED FROM IN-TRANSIT FACL 05-25-2005 1020 05-25-2005 1020
0-Q    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-28-2005 0905 05-25-2005 1020
CBR    ADMIN REL   ADMINISTRATIVE RELEASE       04-28-2005 0905 04-28-2005 0905

G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-6   Filed 09/18/2007   Page 3 of 4

```
                         PUBLIC INFORMATION                    09-12-2007
                              INMATE DATA                      14:02:41
                          AS OF 09-12-2007


REGNO..: 12648-007 NAME: ROGERS, DAVID
COMP NO: 020        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 252-358-5200    FAX: 252-358-5202
CBR    A-ADMIN     ADMINISTRATIVE ADMISSION        04-28-2005 0851 04-28-2005 0905
CDC    GCT REL     GOOD CONDUCT TIME RELEASE       11-05-2004 1530 04-28-2005 0851
CDC    A-DES       DESIGNATED, AT ASSIGNED FACIL   09-21-2004 2215 11-05-2004 1530
7-F    RELEASE     RELEASED FROM IN-TRANSIT FACL   09-21-2004 2215 09-21-2004 2215
7-F    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  09-21-2004 0858 09-21-2004 2215
DEV    FURL TRANS  FURL W/UNESCORTED TRF TO A CCC  09-21-2004 0858 09-21-2004 0858
DEV    A-DES       DESIGNATED, AT ASSIGNED FACIL   08-05-2004 1148 09-21-2004 0858
6-H    RELEASE     RELEASED FROM IN-TRANSIT FACL   08-05-2004 1148 08-05-2004 1148
6-H    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  08-05-2004 0809 08-05-2004 1148
CUM    TRANSFER    TRANSFER                        08-05-2004 0809 08-05-2004 0809
CUM    A-DES       DESIGNATED, AT ASSIGNED FACIL   05-03-2004 1740 08-05-2004 0809
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL   05-03-2004 1740 05-03-2004 1740
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  05-03-2004 0822 05-03-2004 1740


G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU    Document 28-6    Filed 09/18/2007    Page 4 of 4
```
                          PUBLIC INFORMATION                 09-12-2007
                             INMATE DATA                     14:02:41
                          AS OF 09-12-2007
```

```
REGNO..: 12648-007 NAME: ROGERS, DAVID
COMP NO: 020       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 252-358-5200   FAX: 252-358-5202
THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  UNKNOWN
```

```
---------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------
```

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F7525-04
JUDGE...........................: RIGSBY
DATE SENTENCED/PROBATION IMPOSED: 04-13-2005
DATE COMMITTED..................: 05-05-2005
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
```

```
            FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

# DOCUMENT D

```
BOPOL                           PUBLIC INFORMATION                    08-01-2007
PAGE 001          *               INMATE DATA              *          10:11:19
                                AS OF 08-01-2007

REGNO..: 32071-007 NAME: HAMILTON, BENJAMIN
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 252-358-5200   FAX: 252-358-5202
                                            RACE/SEX...: BLACK / MALE
FBI NUMBER.:  ████████           DOB/AGE....:  ████████
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 01-31-2020                      PAR HEAR DT: N/A
------------------------ ADMIT/RELEASE HISTORY ------------------------------
FCL    ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
RIV    A-DES      DESIGNATED, AT ASSIGNED FACIL  03-13-2003 1205 CURRENT
B20    RELEASE    RELEASED FROM IN-TRANSIT FACL  03-13-2003 1205 03-13-2003 1205
B20    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-13-2003 1023 03-13-2003 1023
PEM    HLD REMOVE HOLDOVER REMOVED              03-13-2003 1023 03-13-2003 1023
PEM    A-HLD      HOLDOVER, TEMPORARILY HOUSED   03-12-2003 1524 03-13-2003 1023
0-Q    RELEASE    RELEASED FROM IN-TRANSIT FACL  03-12-2003 1524 03-12-2003 1524
0-Q    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-11-2003 1156 03-12-2003 1524
CBR    ADMIN REL  ADMINISTRATIVE RELEASE         02-11-2003 1156 02-11-2003 1156

G0002          MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-7   Filed 09/18/2007   Page 3 of 4

```
                         PUBLIC INFORMATION
                            INMATE DATA
                          AS OF 08-01-2007


REGNO..: 32071-007 NAME: HAMILTON, BENJAMIN
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 252-358-5200    FAX: 252-358-5202
CBR   A-ADMIN    ADMINISTRATIVE ADMISSION      02-11-2003 1050 02-11-2003 1156




G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-7   Filed 09/18/2007   Page 4 of 4

REGNO..: 32071-007 NAME: HAMILTON, BENJAMIN
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: RIV / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 252-358-5200   FAX: 252-358-5202
PRE-RELEASE PREPARATION DATE: 07-31-2019

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-31-2020 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

COURT OF JURISDICTION..........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER..................: F5695-02
JUDGE..........................: ALPRIN
DATE SENTENCED/PROBATION IMPOSED: 01-24-2003
DATE COMMITTED.................: 02-25-2003
HOW COMMITTED..................: DC SUPERIOR COURT COMT
PROBATION IMPOSED..............: NO

G0002      MORE PAGES TO FOLLOW . . .

DOCUMENT E

```
  BOPOL           *              PUBLIC INFORMATION          *      08-01-2007
  PAGE 001        *       .          INMATE DATA             *      10:12:47
                                   AS OF 08-01-2007


REGNO..: 31298-007 NAME: BUTLER, CARL
COMP NO: 010           ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS           RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                       PHONE..: 804-504-7200    FAX: 804-504-7204
                                                RACE/SEX...: BLACK / MALE
FBI NUMBER.:██████████                          DOB/AGE....: ████████████
PROJ REL MT: GOOD CONDUCT TIME RELEASE          PAR ELIG DT: N/A
PROJ REL DT: 01-10-2008                         PAR HEAR DT: N/A
--------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL    ASSIGNMENT DESCRIPTION           START DATE/TIME STOP  DATE/TIME
PEM    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-24-2007 0906 CURRENT
8-A    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-24-2007 0906 05-24-2007 0906
8-A    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-24-2007 0639 05-24-2007 0906
RIV    TRANSFER   TRANSFER                       05-24-2007 0639 05-24-2007 0639
RIV    A-DES      DESIGNATED, AT ASSIGNED FACIL 04-09-2007 1230 05-24-2007 0639
8-A    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-09-2007 1230 04-09-2007 1230
8-A    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-09-2007 0854 04-09-2007 1230
RIV    STATE WRIT RELEASE ON STATE WRIT          04-09-2007 0854 04-09-2007 1230


G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-8   Filed 09/18/2007   Page 3 of 4

REGNO..: 31298-007 NAME: BUTLER, CARL
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 804-504-7200    FAX: 804-504-7204

| | | | | | | |
|---|---|---|---|---|---|---|
| RIV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 06-02-2006 | 1046 | 04-09-2007 | 0854 |
| RIV | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 06-02-2006 | 0550 | 06-02-2006 | 1046 |
| RIV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-15-2006 | 1350 | 06-02-2006 | 0550 |
| 0-J | RELEASE | RELEASED FROM IN-TRANSIT FACL | 02-15-2006 | 1350 | 02-15-2006 | 1350 |
| 0-J | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 02-15-2006 | 0907 | 02-15-2006 | 1350 |
| BUT | FED WRIT | RELEASE ON FEDERAL WRIT | 02-15-2006 | 0907 | 02-15-2006 | 0908 |
| BUT | A-DES | DESIGNATED, AT ASSIGNED FACIL | 01-11-2006 | 1325 | 02-15-2006 | 0907 |
| 8-A | RELEASE | RELEASED FROM IN-TRANSIT FACL | 01-11-2006 | 1325 | 01-11-2006 | 1325 |
| 8-A | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 01-11-2006 | 0730 | 01-11-2006 | 1325 |
| RIV | TRANSFER | TRANSFER | 01-11-2006 | 0730 | 01-11-2006 | 0730 |
| RIV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 01-05-2006 | 1338 | 01-11-2006 | 0730 |
| 8-A | RELEASE | RELEASED FROM IN-TRANSIT FACL | 01-05-2006 | 1338 | 01-05-2006 | 1338 |
| 8-A | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 01-05-2006 | 0730 | 01-05-2006 | 1338 |

G0002       MORE PAGES TO FOLLOW . . .

Case 1:07-cv-01155-RMU    Document 28-8    Filed 09/18/2007    Page 4 of 4

```
REGNO..: 31298-007 NAME: BUTLER, CARL
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 804-504-7200    FAX: 804-504-7204
PRE-RELEASE PREPARATION DATE: 07-25-2007


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-10-2008 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F2573-02C
JUDGE...........................: MOTLEY
DATE SENTENCED/PROBATION IMPOSED: 09-16-2003
DATE COMMITTED..................: 11-25-2003
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO

G0002     MORE PAGES TO FOLLOW . . .
```

DOCUMENT F

```
BOPOL              *        PUBLIC INFORMATION        *       09-05-2007
PAGE 001          *           INMATE DATA             *       13:29:07
                            AS OF 09-05-2007

REGNO..: 03180-000 NAME: ROBINSON, HAROLD GREGORY
COMP NO: 050        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: RIV / PAROLE FROM PAR COM OR CT
                    PHONE..: 252-358-5200    FAX: 252-358-5202
                                         RACE/SEX...: BLACK / MALE
FBI NUMBER.: ███████████              DOB/AGE....: ███████████
ACTUAL RELEASE METH.: PAROLE
ACTUAL RELEASE DATE.: 08-21-2007
----------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL    ASSIGNMENT  DESCRIPTION              START DATE/TIME STOP  DATE/TIME
RIV    PAROLE      PAROLE FROM PAR COM OR CT 08-21-2007 0948 CURRENT
RIV    A-DES       DESIGNATED, AT ASSIGNED FACIL 02-15-2007 0844 08-21-2007 0948
RIV    LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN 02-15-2007 0552 02-15-2007 0844
RIV    A-DES       DESIGNATED, AT ASSIGNED FACIL 02-12-2007 1802 02-15-2007 0552
RIV    LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN 02-12-2007 1410 02-12-2007 1802
RIV    A-DES       DESIGNATED, AT ASSIGNED FACIL 09-13-2006 1355 02-12-2007 1410
9-L    RELEASE     RELEASED FROM IN-TRANSIT FACL 09-13-2006 1355 09-13-2006 1355
9-L    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-01-2006 1538 09-13-2006 1355

G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-9   Filed 09/18/2007   Page 3 of 4

```
REGNO..: 03180-000 NAME: ROBINSON, HAROLD GREGORY
COMP NO: 050        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: RIV / PAROLE FROM PAR COM OR CT
                   PHONE..: 252-358-5200    FAX: 252-358-5202
DSC    ADMIN REL  ADMINISTRATIVE RELEASE       09-01-2006 1438 09-01-2006 1438
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION     09-01-2006 1432 09-01-2006 1438
RIV    PAROLE     PAROLE FROM PAR COM OR CT    12-09-2005 1115 09-01-2006 1432
RIV    A-DES      DESIGNATED, AT ASSIGNED FACIL 02-17-2005 1345 12-09-2005 1115
B20    RELEASE    RELEASED FROM IN-TRANSIT FACL 02-17-2005 1345 02-17-2005 1345
B20    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-17-2005 1120 02-17-2005 1345
PEM    HLD REMOVE HOLDOVER REMOVED             02-17-2005 1120 02-17-2005 1120
PEM    A-HLD      HOLDOVER, TEMPORARILY HOUSED 02-16-2005 1455 02-17-2005 1120
3-W    RELEASE    RELEASED FROM IN-TRANSIT FACL 02-16-2005 1455 02-16-2005 1455
3-W    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-03-2005 1129 02-16-2005 1455
MXR    ADMIN REL  ADMINISTRATIVE RELEASE       02-03-2005 1129 02-03-2005 1129
MXR    A-ADMIN    ADMINISTRATIVE ADMISSION     02-03-2005 1123 02-03-2005 1129
RIV    PAROLE     PAROLE FROM PAR COM OR CT    11-09-2004 0905 02-03-2005 1123


G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU    Document 28-9    Filed 09/18/2007    Page 4 of 4

REGNO..: 03180-000 NAME: ROBINSON, HAROLD GREGORY
COMP NO: 050          ALL CURR COMPS(Y/N): Y    ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: RIV / PAROLE FROM PAR COM OR CT
                      PHONE..: 252-358-5200      FAX: 252-358-5202
PRE-RELEASE PREPARATION DATE: 07-11-2007


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  08-21-2007 VIA PAROLE

-----------------------PRIOR JUDGMENT/WARRANT NO: 060 ----------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F-5579-84,2067-85
JUDGE...........................: GREEN
DATE SENTENCED/PROBATION IMPOSED: 07-16-1985
DATE WARRANT ISSUED.............: 06-12-2006
DATE WARRANT EXECUTED...........: 06-22-2006
DATE COMMITTED..................: 06-22-2006

G0002      MORE PAGES TO FOLLOW . . .

DOCUMENT G

```
BOPOL           *        PUBLIC INFORMATION          *       08-16-2007
PAGE 001        *           INMATE DATA              *       14:31:05
                            AS OF 08-16-2007
```

```
REGNO..: 35334-007 NAME: LEWIS, CHARLES
COMP NO: 010       ALL CURR COMPS(Y/N): Y  ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: P07 / ADMITTED TO IN-TRANSIT, MAR
                   PHONE..: N/A              FAX: N/A
                                             RACE/SEX...: BLACK / MALE
FBI NUMBER.: ███████████           DOB/AGE....: ████████████
ACTUAL RELEASE METH.: EXP SPLIT
ACTUAL RELEASE DATE.: 03-29-2006
```

```
------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL     ASSIGNMENT  DESCRIPTION              START DATE/TIME STOP  DATE/TIME
P07     A-ADMIT 03  ADMITTED TO IN-TRANSIT, MAR  03-28-2007 0530 CURRENT
9-L     RELEASE     RELEASED FROM IN-TRANSIT FACL 03-28-2007 0530 03-28-2007 0530
9-L     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 11-28-2006 1039 03-28-2007 0530
DSC     ADMIN REL   ADMINISTRATIVE RELEASE       11-28-2006 0939 11-28-2006 0939
DSC     A-ADMIN     ADMINISTRATIVE ADMISSION     11-27-2006 1338 11-28-2006 0939
CDC     EXP SPLIT   EXPIRATION OF SPLIT SENTENCE 03-29-2006 0505 11-27-2006 1338
CDC     A-DES       DESIGNATED, AT ASSIGNED FACIL 02-08-2006 2200 03-29-2006 0505
8-A     RELEASE     RELEASED FROM IN-TRANSIT FACL 02-08-2006 2200 02-08-2006 2200
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-10   Filed 09/18/2007   Page 3 of 4

```
REGNO..: 35334-007 NAME: LEWIS, CHARLES
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: P07 / ADMITTED TO IN-TRANSIT, MAR
                    PHONE..: N/A           FAX: N/A
8-A    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 02-08-2006 1115 02-08-2006 2200
RIV    FURL TRANS   FURL W/UNESCORTED TRF TO A CCC 02-08-2006 1115 02-08-2006 1115
RIV    A-DES        DESIGNATED, AT ASSIGNED FACIL  12-15-2004 1356 02-08-2006 1115
0-G    RELEASE      RELEASED FROM IN-TRANSIT FACL  12-15-2004 1356 12-15-2004 1356
0-G    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 11-24-2004 0729 12-15-2004 1356
BOP    ADMIN REL    ADMINISTRATIVE RELEASE         11-24-2004 0729 11-24-2004 0729
BOP    A-ADMIN      ADMINISTRATIVE ADMISSION       11-24-2004 0709 11-24-2004 0729
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU    Document 28-10    Filed 09/18/2007    Page 4 of 4

REGNO..: 35334-007 NAME: LEWIS, CHARLES
COMP NO: 010           ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS           RESP OF: P07 / ADMITTED TO IN-TRANSIT, MAR
                       PHONE..: N/A              FAX: N/A
PRE-RELEASE PREPARATION DATE: 02-05-2006


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  03-29-2006 VIA EXP SPLIT

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F2637-04
JUDGE...........................: CHRISTIAN
DATE SENTENCED/PROBATION IMPOSED: 10-18-2004
DATE COMMITTED..................: 12-02-2004
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: YES

G0002      MORE PAGES TO FOLLOW . . .

# DOCUMENT H

```
BOPOL                           PUBLIC INFORMATION                      09-10-2007
PAGE 001             *              INMATE DATA                 *       08:15:42
                                 AS OF 09-10-2007


REGNO..: 00472-000 NAME: FOWLER, JIMMIE E
COMP NO: 060       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 804-504-7200   FAX: 804-504-7204
                                           RACE/SEX...: BLACK / MALE
   FBI NUMBER.: ██████████            DOB/AGE....: ██████████████
   PROJ REL MT: GOOD CONDUCT TIME RELEASE   PAR ELIG DT: N/A
   PROJ REL DT: 07-13-2009                  PAR HEAR DT: N/A
------------------------------ ADMIT/RELEASE HISTORY ------------------------------
   FCL   ASSIGNMENT   DESCRIPTION              START DATE/TIME  STOP  DATE/TIME
   PEM   A-DES        DESIGNATED, AT ASSIGNED FACIL  02-15-2007 1143  CURRENT
   8-A   RELEASE      RELEASED FROM IN-TRANSIT FACL  02-15-2007 1143  02-15-2007 1143
   8-A   A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 02-15-2007 0713  02-15-2007 1143
   RIV   TRANSFER     TRANSFER                       02-15-2007 0713  02-15-2007 0713
   RIV   A-DES        DESIGNATED, AT ASSIGNED FACIL  11-09-2005 1426  02-15-2007 0713
   8-A   RELEASE      RELEASED FROM IN-TRANSIT FACL  11-09-2005 1426  11-09-2005 1426
   8-A   A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 11-09-2005 1424  11-09-2005 1426
   CBR   TRANSFER     TRANSFER                       11-09-2005 1424  11-09-2005 1424

   G0002          MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-01155-RMU   Document 28-11   Filed 09/18/2007   Page 3 of 4

```
REGNO..: 00472-000 NAME: FOWLER, JIMMIE E
COMP NO: 060          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 804-504-7200     FAX: 804-504-7204
CBR   A-ADMIN     ADMINISTRATIVE ADMISSION         10-27-2005 1033 11-09-2005 1424
3-W   RELEASE     RELEASED FROM IN-TRANSIT FACL    10-27-2005 1033 10-27-2005 1033
3-W   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   10-07-2005 1541 10-27-2005 1033
MXR   ADMIN REL   ADMINISTRATIVE RELEASE           10-07-2005 1541 10-07-2005 1541
MXR   A-ADMIN     ADMINISTRATIVE ADMISSION         10-07-2005 1020 10-07-2005 1541
CDC   MAND PAR    MANDATORY PAROLE                 07-28-2003 1530 11-21-2003 0610
CDC   A-DES       DESIGNATED, AT ASSIGNED FACIL    07-28-2003 1530 11-21-2003 0610
0-X   RELEASE     RELEASED FROM IN-TRANSIT FACL    12-02-2003 1240 12-02-2003 1240
0-X   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   11-21-2003 0602 12-02-2003 1240
CDC   ADMIN REL   ADMINISTRATIVE RELEASE           11-21-2003 0602 11-21-2003 0602
CDC   A-REL CHNG  ADMISSION FOR RELEASE CHANGE     11-21-2003 0600 11-21-2003 0602
CDC   MAND PAR    MANDATORY PAROLE                 11-21-2003 0559 11-21-2003 0600
CDC   A-DES       DESIGNATED, AT ASSIGNED FACIL    07-28-2003 1526 11-21-2003 0559


G0002        MORE PAGES TO FOLLOW . . .
```

REGNO..: 00472-000 NAME: FOWLER, JIMMIE E
COMP NO: 060       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: PEM / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 804-504-7200   FAX: 804-504-7204
PRE-RELEASE PREPARATION DATE: 02-16-2009


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  07-13-2009 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 050 ---------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F3661-83 B,D
JUDGE...........................: GRAAE
DATE SENTENCED/PROBATION IMPOSED: 06-30-1988
DATE WARRANT ISSUED.............: 06-06-2005
DATE WARRANT EXECUTED...........: 06-17-2005
DATE COMMITTED..................: 10-20-2005

G0002       MORE PAGES TO FOLLOW . . .