# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, *et al.*,                )
                                        )
                *Plaintiffs*,    )
                                        )
    v.                                 )    Case No. 1:07-cv-01155-RMU
                                        )
GEO GROUP INC., *et al.*,              )
                                        )
               *Defendants.*    )
                                        )

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, by counsel, hereby respectfully move the Court for an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of (1) a class of former, current and future prisoners in the custody of the Federal Bureau of Prisons ("BOP"), and incarcerated at the Rivers Correctional Institution ("Rivers"), who, during their incarceration at Rivers, depend on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care, and (2) a sub-class of former, current, and future disabled prisoners in the custody of the BOP and incarcerated at Rivers, who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failures to adequately diagnose, monitor, treat and/or accommodate their disabilities.

As discussed in the accompanying memorandum, this action meets the requirements for class certification under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, and the interests of justice would best be served by adjudication of the proposed class members' claims in a single action.

Respectfully submitted,


_____s/ Danielle M. Estrada_____

Donald L. Kahl (DC Bar # 489472)          Anthony Herman (DC Bar # 424643)
Philip Fornaci (DC Bar # 434824)          Donald J. Ridings Jr. (DC Bar # 466808)
Deborah Golden (DC Bar # 470578)          Danielle M. Estrada (DC Bar # 494517)
Ivy A. Lange (DC Bar # 488147)            COVINGTON & BURLING LLP
WASHINGTON LAWYERS' COMMITTEE FOR         1201 Pennsylvania Avenue N.W.
   CIVIL RIGHTS AND URBAN AFFAIRS         Washington, D.C.  20004
11 Dupont Circle N.W.                     202.662.6000 (ph)
Suite 400                                 202.778.6000 (fax)
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)


                                          *Counsel for Plaintiffs*


   September 25, 2007

## <u>LOCAL RULE 7(m) STATEMENT</u>

Counsel for Plaintiffs attempted to contact counsel for Defendants seeking their

position on this matter, but had not receive a response by the time this motion was filed.

Respectfully submitted,

 

 

_____s/ Danielle M. Estrada_____

| | |
|---|---|
| Donald L. Kahl (DC Bar # 489472) | Anthony Herman (DC Bar # 424643) |
| Philip Fornaci (DC Bar # 434824) | Donald J. Ridings Jr. (DC Bar # 466808) |
| Deborah Golden (DC Bar # 470578) | Danielle M. Estrada (DC Bar # 494517) |
| Ivy A. Lange (DC Bar # 488147) | COVINGTON & BURLING LLP |
| WASHINGTON LAWYERS' COMMITTEE FOR | 1201 Pennsylvania Avenue N.W. |
|   CIVIL RIGHTS AND URBAN AFFAIRS | Washington, D.C.  20004 |
| 11 Dupont Circle N.W. | 202.662.6000 (ph) |
| Suite 400 | 202.778.6000 (fax) |
| Washington, D.C.  20036 | |
| 202.319.1000 (ph) | |
| 202.319.1010 (fax) | |

_Counsel for Plaintiffs_

September 25, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEITH MATHIS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Donald L. Kahl (DC Bar # 489472)
Philip Fornaci (DC Bar # 434824)
Deborah Golden (DC Bar # 470578)
Ivy A. Lange (DC Bar # 488147)
WASHINGTON LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle N.W.
Suite 400
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)

Anthony Herman (DC Bar # 424643)
Donald J. Ridings Jr. (DC Bar # 466808)
Danielle M. Estrada (DC Bar # 494517)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C.  20004
202.662.6000 (ph)
202.778.6000 (fax)

*Counsel for Plaintiffs*

September 25, 2007

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 7

    A.    THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF
    RULE 23(A)............................................................................................... 8

        1.    The Class and Sub-Class are so numerous that joinder is
        impractical................................................................................... 9

        2.    Questions of law and fact are common to the Class and Sub-Class. ........ 10

        3.    The claims of the Named Plaintiffs are typical of the claims of the
        Class and Sub-Class. ................................................................... 13

        4.    Named Plaintiffs and their counsel will fairly and adequately
        protect the interests of the Class and Sub-Class. ...................................... 14

    B.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B). ................. 16

        1.    Inconsistent adjudications and incompatible conduct could result if
        prosecution of separate actions occurs....................................................... 16

        2.    Plaintiffs' class claims for injunctive and declaratory relief also
        satisfy the requirements of Rule 23(b)(2). ................................................. 17

        3.    Common questions of law and fact predominate in this case and a
        class action is a superior method of adjudicating Plaintiffs' claims......... 19

CONCLUSION..................................................................................................... 21

Plaintiffs respectfully submit this Memorandum in support of their Motion for Class Certification.  Class certification is proper because the proposed class and sub-class meet all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1)(A), (b)(2), and (b)(3).

## INTRODUCTION

The Plaintiffs brought this lawsuit to remedy the grossly inadequate medical care at the Rivers Correctional Institution, a private, for-profit prison that is operated by Defendant GEO Group, Inc. ("GEO").  Rivers is under the direction of Defendants the Federal Bureau of Prisons ("BOP"), and BOP Director Harley Lappin.  The ten Named Plaintiffs -- all D.C. Code felony offenders sentenced to incarceration at the Rivers facility -- seek to represent a class of past, present, and future prisoners at the Rivers who, like the Named Plaintiffs, have been injured, or are at risk of being injured, as a consequence of the dysfunctional organizations, systems, policies, and practices that govern the provision of medical care at Rivers.  In addition, Named Plaintiffs Holloway, Rogers, Butler, Robinson, Doe, and Roe seek to represent a sub-class of prisoners who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failures to adequately diagnose, monitor, treat, or accommodate their disabilities.

Lawsuits that seek to remedy systemic and persistent unlawful conditions of confinement within a penal institution are particularly well-suited to class action treatment.  Courts frequently certify classes in lawsuits -- such as this one -- that challenge prison policies and practices governing the delivery of medical care and that raise claims under the Eighth Amendment to the United States Constitution and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (affirming certification of class of prisoners and parolees with mobility, vision, hearing, developmental, and learning

disabilities); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1237 (D. Colo. 1999) (noting certification of

class of state prisoners with various disabilities claiming that the prison system failed to provide

them access to programs in violation of the Americans with Disabilities Act ("ADA") and the

Rehabilitation Act); *Clark v. California*, No. C96-1486, 1998 WL 242688, at *1 (N.D. Cal. May

11, 1998) (noting certification of class of all California state prisoners with developmental

disabilities claiming disability-based discrimination); *Raines v. State of Florida*, 987 F. Supp.

1416, 1420-21 (N.D. Fla. 1997) (noting certification of class of all Florida state prisoners with

physical or mental disabilities not provided with a job or work assignment because of their

disability);. *Franklin v. Barry*, F. Supp. 21, 30 (D.D.C. 1995) (certifying class of Hispanic

prisoners in D.C. correctional institutions who alleged systemic violations, including Eighth

Amendment claims for Constitutionally inadequate medical care); *Clarkson v. Coughlin*, 145

F.R.D. 339, 347-48 (S.D.N.Y. 1993) (certifying class of deaf and hard of hearing prisoners

claiming disability-based discrimination).

       Here, the proposed class of more than 1300 prisoners easily satisfies the Rule

23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and

also meets the requirements for certification under Rule 23(b).  Accordingly, the Court should

certify this case as a class action.

## **BACKGROUND**

       This suit was filed on June 27, 2007 by ten prisoners and former prisoners in the

custody of the BOP who are currently incarcerated or have been incarcerated at GEO's Rivers

facility.  Compl. ¶ 8, 10-19.  Plaintiffs seek to compel the Defendants to provide Constitutionally

adequate medical care to all Rivers inmates, *see* Compl. ¶ 69, and adequately to diagnose,

monitor, treat, or accommodate the medical conditions of all Rivers inmates with disabilities.

Plaintiffs assert claims under the Eighth Amendment, Section 504 of the Rehabilitation Act, 29

U.S.C. § 794, GEO's contract with the BOP to operate Rivers, and the common law.  Compl. ¶¶ 62 - 89.

Until 2001, persons convicted of a felony violation of the District of Columbia Code (the "D.C. Code") were generally incarcerated at prison facilities operated by or for the District of Columbia, and located in or near the District.  *See* Compl. ¶ 27.  In 1997, as part of the District of Columbia Revitalization Act, Congress mandated that all D.C. Code felony offenders be committed to the custody of the BOP and housed in a BOP-supervised institution.  *Id.* ¶ 28. Congress directed that at least half of these offenders must be housed in private, for-profit contract facilities that are subject to the oversight and control of the BOP.  *Id.* ¶ 29.

After that law was adopted, the BOP contracted with GEO to house D.C. Code violators at Rivers (the "GEO Contract").  *Id.* ¶ 31.  Pursuant to the GEO Contract, it agreed to house, under BOP supervision and control, low-security, male, D.C. Code felony offenders at the Rivers facility.  *Id.* ¶ 32.  As part of the GEO Contract, GEO agreed to assume responsibility to provide "all essential health services" for the D.C. Code felony offenders who were transferred to the Rivers facility.  *Id.* ¶ 35(a).  Since the Rivers facility opened in 2001, the BOP has sent thousands of D.C. Code felony offenders to Rivers.  *Id.*  Rivers currently houses approximately 1,300 persons, the vast majority of whom are D.C. Code felony offenders.  *See* Compl. ¶ 32.

It is well known to Defendants that the population of persons incarcerated in federal prisons suffer from a full spectrum of medical problems found in the general population, such as fractures, abdominal pains, and infections, as well as chronic diseases such as asthma, hypertension, epilepsy, diabetes, tuberculosis, and HIV.  Compl. ¶ 37.  These problems are magnified at Rivers, because, as Defendants also know, the prisoner population is generally older than typical prison populations and therefore suffers from a higher incidence of health problems

than the general prison population across the country. Compl. ¶ 37. Despite this knowledge,

Defendants have acted with deliberate indifference to the medical needs of all Rivers inmates,

and have perpetuated a health care delivery system best characterized as a "systemic failure." *Id.*

¶ 38.

   In their Complaint, Plaintiffs provide several examples of Defendants'

dysfunctional organizations, systems, policies, and practices, which affect all class members.

The Complaint alleges that:

- The health care staffing at Rivers is wholly insufficient to care for 1,300-plus residents, and lacks training and supervision. *Id.* ¶ 38(a). The Complaint describes the "lone medical doctor who treats and supervises the care of all the prisoners at Rivers [who] also maintains a full-time medical practice in a local community;" the sole "part-time dentist on staff;" the "one part-time psychologist who attends to prisoners at Rivers on an irregular basis;" the absence of "trained dental assistants" and "physical therapist[s];" and the "severe staffing shortage" that has persistently characterized the facility's medical program. *Id.*

- Class members suffer from grossly inadequate access to health care. *Id.* ¶ 38(b). The Class faces "substantial delays and regular denials of treatment when they want to see a primary physician; when they need a referral to see a specialist; when they need to be transported to a specialist for examination after obtaining a referral; when they need to obtain medical testing; and when they need treatment." *Id.* When they do receive medical attention from the part-time doctor at Rivers, members of the Class "are frequently denied care for complex, multi-symptom ailments on the arbitrary ground that the doctor will not treat more than one condition per appointment." *Id.* Class members' access to mental health care services is also severely limited. *Id.* The facility does not offer physical therapy at all. *Id.*

- Rivers medical staff routinely refuses to refer prisoners to outside health care providers, even in situations where the prisoner's health conditions far exceed the therapeutic capabilities of Defendants or their facilities, and where treatment would be a necessary component of Defendants' obligation to provide legally mandated care. *Id.* ¶ 38(c).

- The medical staff routinely fails to provide proper medications and arbitrarily discontinues the use of certain prescription drugs. *Id.* ¶ 38(d). At Rivers, such determinations regarding medication regimens, and the composition of those regimens, are often made based on the cost of the medications to GEO rather than in the best interests of the patient. *Id*

- The medication distribution system is dysfunctional at Rivers and contributes to unnecessary delays in the Class members' receipt of medications and prescription drugs. *Id.* ¶ 38(e). Because medications are most frequently distributed in a single pill line -- outside, in all weather -- sick, disabled, and elderly Class members wait outdoors for periods as long as 60 to 90 minutes to receive a single dose of needed medicines. *Id.*

- The medical staff at Rivers fails adequately to administer and supervise a "chronic care" program and other medical rotations designed to help prisoners manage illnesses such as diabetes, heart disease, hypertension, hepatitis, and HIV. *Id.* ¶ 38(f).

- There are no established protocols that are followed for containing or treating infectious diseases. *Id.* ¶ 38(g). Outbreaks of Methicillin-resistant Staphylococcus aureus ("MRSA"), a highly contagious staphylococcus infection, have been widespread at Rivers, but the medical staff has offered no appropriate medical response. *Id.* Class members' complaints are often disregarded entirely. Some prisoners have been instructed to apply hot compresses or "shower with Dial soap" to rid themselves of the boils that persistently reappear when this condition is not properly treated. *Id.*

5

- Rivers lacks proper quality control procedures with respect to health care provided at the facility. *Id.* ¶ 38(h). Proper monitoring, recordkeeping, and assessment of the delivery of medical care is lacking at the facility. *Id.*

- The Rivers administrative grievance system often does not provide timely or adequate responses to complaints about medical, dental, or mental health care. *Id.* ¶ 38(i). By erecting arbitrary obstacles to filing grievances, and at times through threats and acts of retribution, Rivers staff has effectively discouraged and in some cases foreclosed meaningful access to the grievance process. *Id.*

These systemic deficiencies have caused and continue to cause injury to prisoners at Rivers. The allegations of the Named Plaintiffs are typical of and exemplify the effect of these dysfunctional organizations, systems, policies, and practices on members of the Class. For example, the Complaint alleges that Messrs Mathis, Hamilton, Robinson, Lewis, Doe, and Roe have suffered serious injury when Rivers staff have refused to treat their medical conditions, despite repeated pleas for medical care. Compl. ¶¶ 10, 13, 15-16. Messrs Holloway, Rogers, Butler, Robinson, and Lewis consistently have been denied physical therapy, even though such therapy has been called for by their medical providers and, in at least one case, by the sentencing judge. *Id.* ¶¶ 11-12, 14-16. Messrs Lewis, Doe, Roe, Fowler have received inadequate medical attention and monitoring of their chronic conditions, which increased their daily pain and suffering, as well as their risk of serious and potentially life-threatening complications from chronic conditions. *Id.* ¶¶ 16-19. Messrs Holloway, Hamilton, Butler, Lewis, Doe, Roe, and Fowler have been denied prescription medication that was previously part of their medical regimen and instructed to purchase over-the-counter drugs to replace their medically necessary

6

prescription medication, without regard to the medical consequences and without patient

consultation.  *Id.* ¶¶ 11, 13-14, 16-19.

## **ARGUMENT**

Rule 23(c)(1) requires courts to determine whether an action may be maintained

as a class action "as soon as practicable after the commencement of an action."  Fed. R. Civ. P.

23(c)(1).  Consistent with Rule 23(c), the Local Rules of this Court direct that a motion for class

certification be filed within 90 days of the date of the filing of a class complaint, unless the Court

instructs otherwise.  *See* LCvR 23.1.

In assessing a class certification motion, the Court should accept the allegations

contained in the Complaint as true, while considering matters beyond the pleadings in order to

ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide

basis.  *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).  A determination

whether an action may be granted class status is based solely on whether the requirements of

Rule 23 are met, without regard to the perceived merits of the case.  *See Eisen v. Carlisle &

Jacquelin*, 417 U.S. 156, 178 (1974).  A court should not conduct a "preliminary inquiry into the

merits" of the action.  *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

The test under Rule 23 is "not designed to be a particularly stringent test," and

simply requires that plaintiffs establish that the "general outlines of the membership of the class

are determinable at the outset of the litigation."  *Pigford v. Glickman*, 182 F.R.D. 341, 346

(D.D.C. 1998) (quoting 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760).  The

proposed class must be "sufficiently discrete and identifiable so as to make management of the

class administratively feasible."  *Disability Rights Council of Greater Wash. v. Wash. Metro.

Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006).

In this case, the Named Plaintiffs seek to certify a class of persons comprising former, current, and future prisoners of Rivers who, during their incarceration at Rivers, depend on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care ("the Class"). Six of the Named Plaintiffs also seek to certify a sub-class of disabled persons comprised of all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants' failures adequately to diagnose, monitor, treat or accommodate their disabilities. ("the Sub-Class"). All Class members meeting these definitions are easily identifiable using records maintained in the ordinary course of business by the BOP in the District of Colombia, and by GEO.[1]  Records of prisoners who are transferred to other BOP facilities are moved with the prisoner to the new BOP facility. *Id.* ¶ 4. This "general outline of the membership of the class" is all the law requires at this stage of the proceeding. Because the Defendants possess records sufficient to identify current and former Rivers prisoners who are members of the Class and Sub-Class, the proposed Class and Sub-Class are sufficiently discrete and identifiable that management of the Class and Sub-Class will be "administratively feasible."

## A.     THE PROPOSED CLASS AND SUB-CLASS SATISFY THE PREREQUISITES OF RULE 23(A).

Plaintiffs must satisfy the four requirements of Rule 23(a) and, in addition, the requirements of at least one of the three subsections of Rule 23(b). *See* Fed. R. Civ. P. 23; *Bynum v. District of Columbia*, 217 F.R.D. 43, 45 (D.D.C. 2003). Because Plaintiffs satisfy all of these requirements, class certification is appropriate.

---

[1] Defendant GEO submitted a declaration of the records custodian for Rivers with its recent Motion to Dismiss, which explained that records of each Rivers prisoner are maintained until the prisoner completes his parole and supervised release. *See* Ex 1, ¶¶ 3, 5 to GEO's Mot. to Dismiss [Dkt No. 4].

Plaintiffs satisfy the requirements of Rule 23(a) because: (1) the class is too numerous for joinder in that it includes thousands of current and former Rivers prisoners who have depended on Rivers' medical organizations, systems, policies, and practices for medical care, and an unknown number of future prisoners who are subject to sentencing and transfer to this facility; (2) the Class members' claims under the Eighth Amendment, Rehabilitation Act, GEO contract, and common law raise common questions of law and fact; (3) the Named Plaintiffs' claims are typical of those of the class; and (4) the Named Plaintiffs will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a).

### 1. The Class and Sub-Class are so numerous that joinder is impractical.

The proposed Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Class consists of all past, present, and future Rivers prisoners who depend, or have depended, on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care. While the number of Class members is not precisely known, it is almost certainly likely to number in the thousands. The BOP has sent thousands of D.C. Code felony offenders to Rivers since the facility opened in 2001. *See* Compl. ¶ 32. Rivers currently houses more than 1,300 persons, the vast majority of whom are D.C. Code felony offenders. *Id*.

Likewise the proposed Sub-Class satisfies the numerosity requirement. The Sub-Class includes all prisoners who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failures adequately to diagnose, monitor, treat or accommodate their disabilities. Compl. ¶ 51. Upon Plaintiffs' information and belief, a substantial percentage of the men at Rivers suffer from severe mental illnesses or physical impairments that substantially limit one or more major life activities. Compl. ¶ 53. Each of these prisoners is subject to the systemic deficiencies and conditions described in Plaintiffs'

Complaint, and is a member of the proposed Sub-Class. Compl. ¶ 54. There is no magic number needed to satisfy the numerosity requirement, *see Disability Rights Council*, 239 F.R.D. at 25 (citing *Franklin*, 909 F. Supp. at 30), but the size of the proposed Class and Sub-Class far exceeds the number of class members in other certified classes, and easily satisfies the relatively undemanding requirement of Rule 23(a)(1). *See Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996) ("[N]umerosity is generally satisfied by a proposed class of at least 40 members"), *rev'd in part on other grounds*, 139 F.3d 227 (D.C. Cir. 1998).

Finally, joinder of the proposed Class and Sub-Class members as individual plaintiffs is impracticable, both because of the sheer size of the Class and Sub-Class and because of the inherently transient nature of prisoners in the federal system. As one court explained, the "size of the [prisoner] class is unstable in that it is subject constantly to fluctuations . . . . [that] can be ascribed both to the addition of new prisoners . . . and to the withdrawal of prisoners from the class" by means of transfers, releases and other means of departure from the facility. *Adderly v. Wainwright*, 46 F.R.D. 97, 98 (M.D. Fla. 1968), *quoted in* 8 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 25:4, at 525 n.1 (4th ed. 2007). As a consequence, it will be far more efficient to litigate the claims presented here as a class action rather than as a case with thousands of individual plaintiffs.

### 2. Questions of law and fact are common to the Class and Sub-Class.

The commonality requirement "is met when there is at least <u>one issue</u>, the resolution of which will affect all or a significant number of the putative class members." *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000) (citations and quotations omitted, emphasis added). Because the commonality requirement may be satisfied by a single common issue, courts have noted that it is "often easily met." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002). Not only is the threshold for commonality low, but

10

for class actions that like this one "seek[] injunctive and declaratory relief" the commonality requirement is almost always met, because they "'by their very nature' present common questions of law and fact." *Disability Rights Council*, 239 F.R.D. at 26 (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, § 1763, at 226).

This case presents not one but <u>many</u> common issues of fact and law whose resolution will affect the claims of all members of the proposed Class, including:

a.  whether Defendants provide systemically inadequate medical, mental health, and dental care to the Class members;

b.  whether Defendants have been deliberately indifferent to the serious medical, mental health, and dental needs of the Class members;

c.  whether Defendants have placed Class members at unreasonable risk of developing serious medical, mental health, and dental problems;

d.  whether Defendants have violated Class members' rights to be free of cruel and unusual punishment under the Eighth Amendment;

e.  whether Defendants provide medical, mental health, and dental care that is comparable or substantially equivalent to the care provided to other federal prisoners and the community at large; and

f.  whether the inadequacies in the provision of medical, mental health, and dental care at Rivers arise from Defendants' arbitrary efforts to reduce costs and, in the case of GEO, to boost profits.

*See* Compl. ¶ 43.

In addition to these and other issues that are common to all Class members, the Complaint also raises a number of common issues of fact and law that the Sub-Class shares, including:

a.  whether Defendants systemically exclude Sub-Class members from access to, participation in, and the benefits of, any program, service, facility, or activity at Rivers solely by reason of their disabilities;

b.  whether Defendants systematically deny access to, participation in, and the benefits of, any part of Rivers or its programs, services, facilities, or activities to Sub-Class members solely by reason of their disabilities;

c.  whether Defendants have subjected Sub-Class members to discrimination solely by reason of their disabilities; and

d.  whether Defendants have violated Section 504 of the Rehabilitation Act.

*See* Compl. ¶ 54.

Moreover, each member of the Class and Sub-Class has a common interest in preventing the recurrence of the wrongful conduct alleged. *Id.*; *see also Inmates of Attica Correctional Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (holding that the challenged pattern or practice is of common interest to the class because each class member "ha[s] a common interest in preventing the recurrence of the objectionable conduct").

The organizations, systems, policies, and practices at issue here are precisely the type of standardized institutional treatment that is appropriate for a class action. *See Armstrong*, 275 F.3d at 868 (affirming certification of class of all California state prisoners and parolees with mobility, vision, hearing, developmental, and learning disabilities in a lawsuit claiming that the policies and practices for parole proceedings violated the ADA and the Rehabilitation Act);

*Disability Rights Council*, 239 F.R.D. at 26 (certifying class of disabled transit riders who alleged that defendants' system of providing services to disabled persons violated the ADA and the Rehabilitation Act); *Franklin*, 909 F. Supp. at 30 (certifying class of Hispanic prisoners in D.C. correctional institutions who alleged systemic Eighth Amendment violations for Constitutionally inadequate medical care).

Here, as in *Disability Rights Council*, the Class and Sub-Class claims "are not so much that the plaintiffs have suffered targeted, personalized" injury and discrimination based on disability, but rather that they have each been injured and subjected to discrimination based on disability "via systems-level violations" of the Eighth Amendment and Rehabilitation Act. *Disability Rights Council*, 239 F.R.D. at 26.

### 3. The claims of the Named Plaintiffs are typical of the claims of the Class and Sub-Class.

Plaintiffs readily meet the typicality requirement. The requirement is satisfied where "the class representatives have suffered injuries in the same general fashion as absent class members," *Thomas v. Christopher*, 169 F.R.D. 224, 238 (D.D.C. 1996), *rev'd in part on other grounds sub nom.*, *Thomas v. Albright*, 139 F.3d 227, 236 (D.C. Cir. 1998), or where the class representatives "challenge a general practice . . . which give[s] rise to the claims of all class members."  *Streicher v. Prescott*, 103 F.R.D. 559, 561 (D.D.C. 1984).  *See also Disability Rights Council*, 239 F.R.D. at 27 (same).

The Named Plaintiffs' claims are typical in both of these senses.  <u>First</u>, as discussed above, the Complaint alleges that the Named Plaintiffs have "suffered injuries in the same general fashion" as other members of the proposed Class -- including through substantial delays and regular denials of treatment, withheld medications and arbitrary discontinuation of prescription drugs, long periods spent in the Pill Line, and deficient and poorly managed

"chronic care" program.  Second, their injuries all flow from the same "general practice[s]" of the Defendants -- the use of flawed and inadequate organizations, systems, policies, and practices that result in the provision of uniformly inadequate and unlawful medical, dental, and mental health care.  *See* Compl. ¶ 38.

Because the organizations, systems, policies, and practices alleged in the Complaint apply equally to the Named Plaintiffs and to all the other members of the Class, and because the injuries suffered by the Named Plaintiffs stem from the same course of conduct that is alleged to have injured members of the class, the typicality requirement is satisfied.  *See Chang v. United States*, 217 F.R.D. 262, 272 (D.D.C. 2003) ("Typicality focuses on the similarity of the legal and remedial theories behind the claims of named representatives and those of the putative class."); *cf. Bynum*, 217 F.R.D. at 47 (focusing on whether the class representatives suffered a similar injury from the same course of conduct as that of the entire class).

### 4.    Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class and Sub-Class.

Named Plaintiffs are more than adequate class representatives.  "Two criteria for determining the adequacy of representation are generally recognized:  (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575-76 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg. Med. Prog., Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).  The Named Plaintiffs satisfy both of these requirements.

First, the interests of the Named Plaintiffs are aligned with the interests of the proposed Class as a whole.  Like every member of the Class who is now or may again be subject

to the unlawful conditions at Rivers, the Named Plaintiffs have an interest in seeing that the broken medical system at Rivers is fixed.  That interest is common to each and every member of the Class.

          <u>Second</u>, the Named Plaintiffs are represented by counsel who possess the necessary qualifications and experience to litigate the case effectively.  Lead counsel for the Plaintiffs is Covington & Burling LLP, a law firm with its principal office in the District of Columbia.  Covington & Burling has represented prisoners in other prison reform class action litigation including *Twelve John Does v. District of Columbia*, 117 F.3d 571, 576 (D.C. Cir. 1997) ("no real challenge to the general finding of the district judge that class counsel has performed at the highest level."); *Inmates of the Modular Facility v. District of Columbia*, No. 96-7094, 1996 WL 734195 (D.C. Cir. Nov. 25, 1996); and *Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia*, 968 F. Supp. 744 (D.D.C. 1997).

          In addition, serving as co-lead counsel to the class is the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("the Washington Lawyers' Committee").  The Washington Lawyers' Committee -- for nearly 40 years --  has been involved directly in the litigation of complex civil rights litigation, including prison reform litigation.  The Washington Lawyers' Committee has litigated numerous class actions in a variety of forums, including in this Court.  *See Disability Rights Council of Greater Wash. v. Wash. Metropolitan Area Transit Auth.*, 239 F.R.D. 9 (D.D.C. 2006); *Hubbard v. Postmaster General*, No. 03-CV-0162 (D.D.C. 2003); *Campbell v. National Railroad Passenger Corporation (Amtrak)*, No. 99-CV-02979 (D.D.C. 1999); *Johnson v. Reno (Federal Bureau of Investigation)*, No. 93-CV-0206 (D.D.C. 1993).  Further, the D.C. Prisoners' Project, which merged with the Washington Lawyers' Committee in 2006, has advocated for prison reform for D.C. prisoners since it was founded in

1989.  Since its inception, it has engaged in broad-based class action litigation for D.C. prisoners on issues of medical and mental health services, reducing overcrowding, and improving conditions at the D.C. Jail and the Correctional Treatment Facility.

**B.     PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B).**

Because all four of the requirements of Rule 23(a) are met, this case may proceed as a class action if the requirements of one of the three subsections of Rule 23(b) are also met. *See* Fed. R. Civ. P. 23(b).  In fact, all three are met.

**1.     Inconsistent adjudications and incompatible conduct could result if prosecution of separate actions occurs.**

Rule 23(b)(1)(A) provides that certification is appropriate if "the prosecution of separate actions by . . .  individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  Certification under Rule 23(b)(1)(A) is particularly "appropriate when [as here] the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class."  *Adair*, 209 F.R.D. at 11-12 (citing 5 Moore's Federal Practice § 23.41[4] (3d ed. 2000)).  Certification under Rule 23(b)(1)(A) is "common" in cases such as this one "in which the class seeks declaratory or injunctive relief against the government to provide unitary treatment to all members of a defined group." *Adair*, 209 F.R.D. at 12  (citation and internal quotations omitted).

Requiring the members of the Class to pursue their claims for injunctive relief as to the organizations, systems, policies, and practices that govern medical care at Rivers by filing multiple individual suits would not only be inefficient.  It also would create a risk that different courts might order divergent -- and potentially conflicting, -- declaratory and injunctive relief

addressing the same common set of policies and practices that is at issue in this lawsuit. Courts have recognized that where plaintiffs seek affirmative injunctive relief, as the Named Plaintiffs do here, the certification of a class protects against the risk not only of "inconsistent adjudications but also of incompatible conduct, that is, where a defendant is sued by different plaintiffs asking for different and incompatible affirmative relief." *Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982).

Rule 23(b)(1)(A) certification is frequently employed in prison litigation because "individual prosecution of the claims of unconstitutional conditions runs risks of varying results which would establish incompatible standards of conduct" for prison officials. *Brooks* v. *Ward*, 97 F.R.D. 529, 534 (W.D. N.C. 1983). Courts routinely have certified classes of prisoners under Rule 23(b)(1)(A) when the claims at issue alleged deprivation of Constitutional or statutory rights, as they do here. *See Ingles v. City of New York*, No. 01-CIV-8279 (DC), 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003) (granting class certification to a class of prisoners in the New York City jails pursuant to Rule 23(b)(1)(A)); *Franklin*, 909 F. Supp. at 31 (finding class certification appropriate under Rule 23(b)(1)(A) for a class of Hispanic prisoners alleging Constitutional violations including allegations of inadequate medical care); *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995) (noting certification, under 23(b)(1)(A), of class of mentally ill state prisoners challenging violations of their constitutional rights); *Brooks*, 97 F.R.D. at 534 (finding class certification appropriate under 23(b)(1)(A) and (b)(2) in prison conditions case).

      **2.**     **Plaintiffs' class claims for injunctive and declaratory relief also satisfy the requirements of Rule 23(b)(2).**

Rule 23(b)(2) is satisfied where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole." Fed R. Civ. P.

23(b)(2); *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994) (noting that Rule 23(b)(2)

"is almost automatically satisfied in actions primarily seeking injunctive relief"). To qualify for

certification under this Rule, (1) the Complaint must allege that Defendants have acted or have

refused to act on grounds generally applicable to the class the Named Plaintiffs seek to represent;

and (2) Named Plaintiffs must seek final injunctive relief or corresponding declaratory relief on

behalf of the class. *See Disability Rights Council*, 239 F.R.D. at 28 (citing 7AA Wright, Miller

& Kane, *Federal Practice and Procedure, Civil 3d* § 1775, at 43); *Bynum v. District of

Columbia*, 217 F.R.D. 43, 48 (D.D.C. 2003)).

The requirement for Rule 23(b)(2) is clearly satisfied. Defendants systemically

provide inadequate medical, mental health, and dental care to the Class members. Compl. ¶ 43.

The Complaint alleges that Defendants' actions reflect "a consistent pattern of activity that has

been established under a regulatory scheme that is common to all members of the Class." *Id.*

¶ 44. These actions have had, and continue to have, a direct effect on each Class member and

can only be remedied through the appropriate class-wide injunctive relief. Accordingly,

Plaintiffs seek systemic reform at Rivers through declaratory and injunctive relief against

Defendants' organizations, systems, policies, and practices. Because Plaintiffs squarely meet the

two requirements of Rule 23(b), certification is proper.

Rule 23(b)(2) was designed for civil rights cases like this one that seek to achieve

systemic reform through the use of declaratory or injunctive relief. *See* Fed. R. Civ. P 23(b)(2),

Advisory Comm. Nts. (1966); *Amchem Products, Inc.*, 521 U.S. at 614; *Armstrong*, 275 F.3d at

868; 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4.11 (4th ed. 2007); 8

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 25:20, at 550 (providing

history).  And class certification under Rule 23(b)(2) "is an especially appropriate vehicle for actions seeking prison reform." *Hassine v. Jeffes*, 846 F.2d 169, 180 (3d Cir. 1988), citing *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980).  *See also Bynum*, 217 F.R.D. 43; *Robbins v. Kleindienst*, 383 F. Supp. 239 (D.D.C. 1974); *Clarkson*, 145 F.R.D. at 346 (stating that Rule 23(b)(2) certifications "tend to be the norm" in prison condition cases); *accord Bishop v. Stoneman*, 508 F.2d 1224, 1226 (2d Cir. 1974) (noting appropriateness of class treatment of injunctive medical claims); *Dean v. Coughlin*, 107 F.R.D. 331, 333 (S.D.N.Y. 1985) (noting that class actions are well-suited in actions brought by prisoners because of the "fluid composition" of the prison population).

> **3.    Common questions of law and fact predominate in this case and a class action is a superior method of adjudicating Plaintiffs' claims.**

Because certification is proper under both Rule 23(b)(1)(A) and Rule 23(b)(2), the Court need not decide whether certification would also be appropriate under Rule 23(b)(3).  This Court has held that, "[w]hen either subsection (b)(1) or (b)(2) is applicable, . . . b(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation."  *Adair v. England*, 209 F.R.D. 5, 11-12 (D.D.C. 2002) (Urbina, J.) (quoting *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995)); *see also Eubanks v. Billington,* 110 F.3d 87, 91-96 (D.C. Cir. 1997) (reaching same result); *In re A.H. Robins Co.,* 880 F.2d 709, 728 (4th Cir. 1989) (stating that certification should be made under (b)(1) if action may also qualify under (b)(3)), *overruled on other grounds, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).  Consistent with this case law, Named Plaintiffs request that the Court certify the proposed Class and Sub-Class under both Rule 23(b)(1)(A) and (b)(2).

Should the Court reach this issue, however, Rule 23(b)(3) certification is also proper because "the questions of law or fact common to the members of the class predominate

over any questions affecting only individual members, and … a class action is superior to other methods for the fair and efficient adjudication of the controversy."[2]

a)      **The common issues of law and fact are predominant.**

"The predominance inquiry implicates the commonality requirement of Rule 23(a)(2)." *In re Vitamins Antitrust Litig.,* 209 F.R.D. 251, 262 (D.D.C. 2002).  In general, plaintiffs satisfy the predominance test where "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual positions." *Id.* (quoting *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 691 (D. Minn. 1995)).

The proposed Class and Sub-Class satisfy the predominance inquiry because the liability of Defendants will turn on issues of law and fact common to the members of the proposed classes rather than on the circumstances of individual class members.  *See supra* at 12 - 14; Compl. ¶¶ 40-61.  Plaintiffs have alleged that as a consequence of Defendants' organizations, systems, policies, and practices, Defendants have violated Class members' rights to be free of cruel and unusual punishment under the Eighth Amendment and discrimination under Section 504 of the Rehabilitation Act.  The Defendants' liability to the proposed Class and Sub-Class will accordingly turn on a resolution of these common questions rather than on any determinations specific to individual class members.

---

[2] Should the Court certify the proposed Class and Sub-Class under Rule 23(b)(3), it should additionally order that notice be provided to the Class and Sub-Class pursuant to Fed. R. Civ. P. 23(d).  Plaintiffs suggest that it is most efficient for the Court to postpone any determination of the specific requirements for notice until it decides whether certification under Rule 23(b)(1)(A) and Rule 23(b)(2) is more appropriate in this case, as Plaintiffs believe.

b)    **A class action would be the most efficient way to manage the claims of the Class and Sub-Class members.**

The proposed class satisfies the superiority requirement because a class action would be the most efficient way to manage the claims of the Rivers prisoners.  This case is analogous to *Lewis v. National Football League*, 146 F.R.D. 5 (D.D.C. 1992).  In *Lewis*, the court concluded that the superiority of a class action lawsuit "cannot seriously be questioned" because there were approximately 250 plaintiffs, "each of whom would have to conduct extensive and expensive discovery" if she were to bring her own case.  146 F.R.D. at 12.  The court added that "250 separate trials would certainly be a waste of judicial resources."  *Id. See also In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 31 (D.D.C. 2001) (class action is superior where a significant number of individual lawsuits would otherwise be filed).

The same concerns exist here -- but to a much larger degree.  The proposed Class numbers over 1,300 persons.  The Sub-Class is likewise large.  Therefore, the costs to the parties and the judicial system would be significantly reduced if these claims are resolved on a class basis.

## **CONCLUSION**

Because the proposed class meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and also qualifies for certification under all three subsections of Rule 23(b), Plaintiffs respectfully request that the Court certify this case as a class action.

Dated: September 25, 2007                          Respectfully submitted,


                                                   _____ s/ Danielle M. Estrada _____
Donald L. Kahl (DC Bar # 489472)                   Anthony Herman (DC Bar # 424643)
Philip Fornaci (DC Bar # 434824)                   Donald J. Ridings Jr. (DC Bar # 466808)
Deborah Golden (DC Bar # 470578)                   Danielle M. Estrada (DC Bar # 494517)
Ivy A. Lange (DC Bar # 488147)                     COVINGTON & BURLING LLP
WASHINGTON LAWYERS' COMMITTEE FOR                  1201 Pennsylvania Avenue N.W.
   CIVIL RIGHTS AND URBAN AFFAIRS                   Washington, D.C.  20004
11 Dupont Circle N.W.                              202.662.6000 (ph)
Suite 400                                          202.778.6000 (fax)
Washington, D.C.  20036
202.319.1000 (ph)
202.319.1010 (fax)
                                                   *Counsel for Plaintiffs*

22

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEITH MATHIS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01155-RMU |
| | ) | |
| GEO GROUP INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion for Class

Certification.  Upon consideration of the motion, any opposition thereto, and the entire

record herein, it is hereby

ORDERED that Plaintiffs' Motion for Class Certification should be

GRANTED.

ORDERED this _____ day of _____, 2007.


_____
Ricardo M. Urbina,
United States District Judge