IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, *et al.*,  )
)
      Plaintiffs,  )
)
v.  )     Case No. 1:07-cv-01155-RMU
)
GEO GROUP, INC., *et al.*,  )
)
      Defendants.  )
)

## DEFENDANT GEO GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

STATEMENT OF THE CASE ................................................................................ 1

STATEMENT OF THE FACTS ............................................................................. 3

ARGUMENT ........................................................................................................ 6

I.   THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY THE
CLASS BECAUSE PLAINTIFFS FAILED TO PRESENT ANY EVIDENCE
SHOWING ACTUAL COMPLIANCE WITH RULE 23 ............................................. 6

    A.   PLAINTIFFS' CLAIMS ARE POORLY SUITED FOR A CLASS
ACTION BECAUSE OF THE INDIVIDUALIZED NATURE OF THE
HARMS AT ISSUE ............................................................................. 7

        1.   AN EIGHTH AMENDMENT CLAIM REQUIRES A SHOWING
THAT AN INDIVIDUAL WAS SUFFERING FROM A
SERIOUS MEDICAL NEED OR WAS EXPOSED TO A
SUFFICIENTLY IMMINENT RISK OF HARM ......................................... 7

        2.   REHABILITATION ACT CLAIMS REQUIRE AN INQUIRY
INTO THE PARTICULAR CONDITION OF THE CLAIMANT,
THE PROGRAMS TO WHICH THEY SOUGHT ACCESS, AND
THE STATE OF MIND OF THE DEFENDANT ....................................... 9

        3.   THE NEGLIGENCE CLAIM IN THIS ACTION WILL
REQUIRE AN EXAMINATION OF THE NATIONWIDE
STANDARD FOR EACH CLAIM AS WELL AS THE
QUALIFICATIONS OF EACH MEDICAL PROVIDER AT
RIVERS ..................................................................................... 10

        4.   THE BREACH OF CONTRACT CLAIM IN THIS ACTION
WILL REQUIRE AN EXAMINATION OF THE
REQUIREMENTS OF GEO'S CONTRACT WITH THE
BUREAU OF PRISONS FOR EACH CONDITION IDENTIFIED
BY A POTENTIAL CLASS MEMBER .................................................. 12

    B.   PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT SATISFY
THE REQUIREMENTS OF RULE 23 ...................................................... 12

II.   THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY THE
CLASS IN THIS ACTION BECAUSE PLAINTIFFS FAILED TO MEET THE
REQUIREMENTS OF RULE 23(a) .......................................................... 13

    A.   THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION BECAUSE THE PROPOSED CLASS IS NOT
SUFFICIENTLY DEFINED ............................................................... 14

ii

      1.     THE PROPOSED CLASS AND SUB-CLASS ARE
              INSUFFICIENTLY DEFINED BECAUSE THEY ARE
              IMPERMISSIBLY OVERBROAD ........................................................ 15

      2.     THE PROPOSED CLASS IS INSUFFICIENTLY DEFINED
              BECAUSE THE COURT MUST UNDERTAKE A FACT-
              INTENSIVE INQUIRY TO DETERMINE WHETHER AN
              INDIVIDUAL IS A MEMBER OF THE CLASS ................................... 17

  B.     PLAINTIFFS FAILED TO SHOW THAT THE PROPOSED CLASS IS
          SO NUMEROUS AS TO PRECLUDE JOINDER OF ALL MEMBERS ........ 18

  C.     PLAINTIFFS FAILED TO SHOW THAT THERE ARE QUESTIONS
          OF LAW OR FACT COMMON TO THE CLASS ........................................... 20

  D.     PLAINTIFFS FAILED TO SATISFY THEIR BURDEN THAT THE
          CLAIMS OR DEFENSES OF THE REPRESENTATIVE PARTIES
          ARE TYPICAL OF THE CLAIMS OR DEFENSES OF THE CLASS ........... 25

  E.     PLAINTIFFS FAILED TO SHOW THAT THE REPRESENTATIVE
          PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE
          INTERESTS OF THE CLASS ....................................................................... 28

      1.     THE REPRESENTATIVE PARTIES WILL NOT FAIRLY AND
              ADEQUATELY REPRESENT THE PROPOSED CLASS
              BECAUSE THEIR INTERESTS ARE NOT ALIGNED WITH
              THE INTERESTS OF ALL CLASS MEMBERS ................................... 29

III. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY
BECAUSE THE PROPOSED CLASS DOES NOT MEET THE
REQUIREMENTS SET FORTH IN RULE 23(b) .......................................................... 32

  A.     PLAINTIFFS HAVE FAILED TO SATISFY THE REQUIREMENTS
          TO HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO
          RULE 23(b)(1)(A .......................................................................................... 32

  B.     PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS TO
          HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO
          RULE 23(b)(2b) ............................................................................................ 34

      1.     THIS MATTER SHOULD NOT BE CERTIFIED AS A RULE
              23(B)(2) CLASS ACTION BECAUSE CLAIMS FOR
              MONETARY RELIEF PREDOMINATE OVER CLAIMS FOR
              INJUNCTIVE RELIEF ......................................................................... 35

      2.     GEO HAS NOT ACTED IN A MANNER WHICH IS COMMON
              TO ALL MEMBERS OF THE CLASS AND SUB-CLASS ................... 36

      3.     PLAINTIFFS CANNOT SEEK FINAL INJUNCTIVE RELIEF
              WHICH IS APPLICABLE TO THE CLASS AS A WHOLE ................. 37

C.  PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS TO
HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO
RULE 23(b)(3) ............................................................................................ 40

1.  INDIVIDUAL ISSUES PREDOMINATE OVER ANY ISSUES
WHICH ARE COMMON TO THE CLASS ............................................ 40

2.  CLASS CERTIFICATION IS NOT A SUPERIOR WAY TO
RESOLVE THESE ISSUES BECAUSE OF THE
INDIVIDUALIZED NATURE OF THE CLAIMS ................................. 43

CONCLUSION ........................................................................................................ 44

## STATEMENT OF THE CASE

Plaintiffs filed this action in the United States District Court for the District of Columbia on behalf of themselves and others similarly situated seeking injunctive, declaratory, and monetary relief based upon claims of negligence, breach of contract, a violation of the Eighth Amendment, and a violation of the Rehabilitation Act. Plaintiffs named GEO Group, Inc. ("GEO"), the Bureau of Prisons ("BOP"), and the Director of the Bureau of Prisons Harley Lappin ("Lappin") (Lappin and BOP may be referred to collectively as "Federal Defendants") as Defendants in this action.

Plaintiffs seek injunctive, declaratory, and monetary relief for these alleged violations. Plaintiffs seek an injunction which would "preliminarily and permanently enjoin Defendants, their agents, employees and all persons acting in concert with them, from subjecting the named Plaintiffs and any member of the Class or Sub-Class to the organizations, systems, policies, practices, and institutional conditions that have caused and continue to cause the delivery of constitutionally inadequate and unlawful medical, dental, and mental health services at Rivers." (Compl. at 47.) Plaintiffs also seek declarations from this Court that GEO's organizations, systems, policies, practices, and conditions violate the Plaintiffs and Class Members' Eighth Amendment rights; violate the rights of the Sub-Class Plaintiffs and Sub-Class under Section 504 of the Rehabilitation Act; constitute actionable negligence; and constitute a breach of a contractual duty owed to Plaintiffs, the class, and Sub-Class pursuant to the contract between GEO and BOP. (Compl. at 46-48.) Plaintiffs also seek monetary damages, including punitive damages, for their claim of negligence, breach of contract, and a violation of the Rehabilitation Act. (Compl. at 48.)

1

GEO filed a Motion to Dismiss and alternative Motion to Transfer on July 25, 2007. This Motion is currently pending before the Court.

The Federal Defendants filed a Motion to Dismiss and alternative Motion to Transfer on September 18, 2007. Plaintiffs have recently submitted their Memorandum of Points and Authorities in Opposition to the Federal Defendants' Motions.

On September 25, 2007, Plaintiffs filed a Motion for Class Certification which sought to certify a single class regarding their claims of an Eighth Amendment violation, negligence, and breach of contract. Plaintiffs' define the proposed class as

> Former, current and future prisoners in the custody of the Federal Bureau of Prisons ("BOP"), and incarcerated at the Rivers Correctional Institution ("Rivers"), who, during their incarceration at Rivers, depend on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care.

(Pls.' Mot. for Class Certification at 1.)

Plaintiffs' also propose a sub-class comprised of individuals who claim a violation of the provisions of the Rehabilitation Act. Plaintiffs define the proposed sub-class as

> Former, current, and future disabled prisoners in the custody of the BOP and incarcerated at Rivers, who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failure to adequately diagnose, monitor, treat and/or accommodate their disabilities.

(Pls.' Mot. for Class Certification at 1.)

Plaintiffs' Motion for Class Certification asks for the Class and Sub-Class to be certified pursuant to Rules 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. (Pls.' Mot. for Class Certification at 1.) Plaintiffs' supporting memorandum also requests that "[s]hould the court reach this issue," the Class and Sub-Class should also be certified under Rule 23(b)(3).

## STATEMENT OF THE FACTS

Plaintiffs are a group of current, former, and potential future inmates of Rivers Correctional Institution ("Rivers") in Winton, North Carolina. (Compl. ¶ 8.) Plaintiffs claim that they received, or if incarcerated at Rivers would receive, inadequate medical care for a variety of ailments.

- Plaintiff Keith Mathis ("Mathis") alleges that GEO harmed him by delaying urgent dental care and failing to treat an infection. (Compl. ¶ 10.)

- Plaintiff Reon Holloway ("Holloway"), who is no longer incarcerated at Rivers, claims that GEO harmed him by inadequately treating his partial paralysis, seizures, and leg pain. (Compl. ¶ 11.)

- Plaintiff David Rogers ("Rogers") claims that GEO harmed him by providing inadequate physical therapy for his paraplegia and denying Rogers his prescribed medication. (Compl. ¶ 12.)

- Plaintiff Benjamin Hamilton ("Hamilton") claims GEO harmed him by failing to provide appropriate and timely treatment for Methicillin-resistant Staphylococcus Aureus ("MRSA"). (Compl. ¶ 13.)

- Plaintiff Carl Butler ("Butler"), who is no longer incarcerated at Rivers, claims GEO harmed by altering his pain medication, failing to provide psychological counseling, and requiring Butler to wait in line with other inmates to obtain his medication. (Compl. ¶ 14.)

- Plaintiff Harold Robinson ("Robinson"), who is no longer incarcerated at Rivers, claims GEO harmed him by inadequately treating his back injury. (Compl. ¶ 15.)

- Plaintiff Charles Lewis ("Lewis"), who is no longer incarcerated at Rivers, claims GEO harmed him by confiscating various medical implements and failing to adequately maintain his prescription medication. (Compl. ¶ 16.)

- Plaintiff Doe, who is no longer incarcerated at Rivers, claims that GEO harmed him by failing to provide him with proper medication for HIV, diabetes, hypertension, hepatitis C, and a history of stroke. (Compl. ¶ 17.) Plaintiff Doe also complains that GEO caused him to miss meals because he was required to wait in line with other inmates to receive his medication. (Compl. ¶ 17.)

- Plaintiff Roe, who is no longer incarcerated at Rivers, claims that GEO harmed him by providing inadequate access to a mental health professional and altering his prescribed

3

psychotropic medications. (Compl. ¶ 18.) Roe also makes a general complaint that GEO failed to treat unidentified chronic physical conditions. (Compl. ¶ 18.)

- Plaintiff Fowler, who is no longer incarcerated at Rivers, claims that GEO harmed him by failing to provide him with adequate medication for his diabetes and blood pressure and a requiring him to submit a sick call request in order to conduct tests on his blood sugar levels. (Compl. ¶ 19.)

Plaintiffs claim that these experiences are representative of harms suffered by Rivers inmates who "suffer from the full spectrum of routine medical problems found in the general population, such as fractures, abdominal pains, and infections, as well as chronic diseases such as asthma, hypertension, epilepsy, diabetes, tuberculosis, and HIV." (Compl. ¶ 37.)

The Plaintiffs allege Rivers harms inmates through a "systemic failure of the Rivers health care delivery system" including, but not limited to, insufficient staffing, training, and supervision; inadequate access to health care; denial of qualified medical services outside Rivers; failure to provide proper medications; arbitrary discontinuation of prescription drugs; a faulty medication distribution system; a failure to provide care for chronic conditions; failure to contain or treat infectious diseases; failure of quality controls; failure to maintain the integrity of medical records; and a failure to provide a meaningful grievance process. (Compl. ¶ 38.) The Plaintiffs allege that the "systemic failure" is a result of "GEO's aggressive efforts to cut costs and boost profits[.]" (Compl. ¶ 7.)

### The Rehabilitation Act Sub-Class

Plaintiffs Holloway, Rogers, Butler, Robinson, Doe, and Roe ("Sub-Class Plaintiffs") have asked the Court to certify a class action pursuant to Section 504 Rehabilitation Act on behalf of themselves and others similarly situated. The Sub-Class Plaintiffs claim that "[a]s a result of their confinement at Rivers, members of the Sub-Class, including Sub-Class Plaintiffs, have been, are, or will be subjected to violations of their legal rights" as described in the

Complaint. (Compl. ¶ 51.) The Sub-Class Plaintiffs seek to bring a Rehabilitation Act claim "on behalf of all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants' failures to adequately diagnose, monitor, treat and/or accommodate their serious medical conditions in violation of Section 504 of the Rehabilitation Act." (Compl. ¶ 51.)

Sub-Class Plaintiffs claim that Defendants discriminate against prisoners with disabilities by refusing to add ramps to common areas; building an inadequate number of common area bathrooms accessible to persons with disabilities; placing tables in the dining hall and classroom in a manner that prevents access by prisoners with disabilities; failing to provide exercise and other therapeutic equipment accessible to and appropriate for persons with disabilities; failing to install internal doors that can be opened by persons with disabilities; and failing to provide adequate mental health services and treatment to prisoners with disabilities. (Compl. ¶ 6.)

As a result of these discriminatory practices, Sub-Class Plaintiffs allege that they cannot participate in a broad range of programs including "substance abuse programs, educational programs, vocational programs, recreation activities, dining hall and other meals, yard time, visitation, discipline, telephone, emergency procedures and other programs and activities for which they are otherwise qualified...." (Compl. ¶ 77.)

Sub-Class Plaintiffs claim that GEO's discriminatory actions stem from "GEO's aggressive efforts to cut costs and boost profits[.]" (Compl. ¶ 7.)

## ARGUMENT

**I.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY THE CLASS BECAUSE PLAINTIFFS FAILED TO PRESENT ANY EVIDENCE SHOWING ACTUAL COMPLIANCE WITH RULE 23**

The determination of whether a party has met the requirements of Rule 23 is not, as Plaintiffs propose, a perfunctory exercise where an inmate's desire for class certification is automatically granted by a deferential court. Instead, a class action may only be certified "if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (emphasis added). As the party moving for class certification, Plaintiffs bear the burden of showing that the elements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).

The Supreme Court described the rigorous analysis that the trial court must engage in as:

> generally involv[ing] considerations that are 'enmeshed in the factual and legal issues comprising the plaintiffs' cause of action.' Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.... [A]ctual, not presumed, conformance with Rule 23(a) remains, however, indispensable.

*Id.* at 160, 102 S. Ct. at 2372 (citations omitted). As the Supreme Court indicated, a trial court cannot disregard the merits of the case when considering the issue of class certification. In fact, a trial court must consider the merits, not to determine if the plaintiff has a viable claim, but instead to determine if the plaintiff has satisfied the elements of Rule 23. *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 72 (S.D.N.Y. 2006). ("In order to pass muster, plaintiffs-who have the burden of proof at class certification-must make 'some showing' [that the class

comports with Rule 23]. That showing may take the form of, for example, expert opinions, evidence (by document, affidavit, live testimony, or otherwise), or the uncontested allegations of the complaint.")

## A. PLAINTIFFS' CLAIMS ARE POORLY SUITED FOR A CLASS ACTION BECAUSE OF THE INDIVIDUALIZED NATURE OF THE HARMS AT ISSUE

The Court must consider the elements of Plaintiffs' claims of negligence, breach of contract, a violation of the Eighth Amendment, and a violation of the Rehabilitation Act because those claims lay the foundation for Plaintiffs' ability to satisfy the requirements of Rule 23. Each claim requires various individualized showings which preclude certification of the matter as a class action.

### 1. AN EIGHTH AMENDMENT CLAIM REQUIRES A SHOWING THAT AN INDIVIDUAL WAS SUFFERING FROM A SERIOUS MEDICAL NEED OR WAS EXPOSED TO A SUFFICIENTLY IMMINENT RISK OF HARM

Plaintiffs attempt to bring an Eighth Amendment claim on the basis of alleged "systemic failures" of the health care delivery system at Rivers. While the "systemic failures" standard for an Eighth Amendment violation has been adopted in some judicial circuits, *see Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Eng v. Smith*, 849 F.2d 80, 82 (2nd Cir. 1988); *Anderson v. City of Atlanta*, 778 F.2d 678, 686-87 (11th Cir. 1985), it has not been adopted in this Circuit.

The Court of Appeals for the District of Columbia, when given the opportunity to adopt the "systemic deficiencies" standard for inmate medical care, has declined to do so. In *Franklin v. District of Columbia*, 960 F. Supp. 394, 428 (D.D.C. 1997), the District Court adopted the *Ramos* standard, holding that "[i]n class actions challenging the entire system of health care, deliberate indifference to inmates' health needs may be shown by proving repeated examples of

negligent acts which disclose a pattern of conduct by the prison medical staff or by proving there are such systemic and gross deficiencies in staffing, facilities, equipment or procedures that the inmate population is effectively denied access to adequate medical care." *Id.* at 428 (quoting *Ramos*, 639 F.2d at 575). As a result, the District Court found there was a systemic failure in staffing to attend to the needs of Hispanic inmates. *See id. at* 428-431.

In vacating the District Court proceedings, the Court of Appeals declined to adopt the *Ramos* standard. Instead, the Court of Appeals relied upon its own precedent in holding that a failure to ensure that policies and procedures are followed does not necessarily amount to a constitutional violation. "'[I]t is hard to see how imperfect enforcement of a ... policy can, alone, satisfy *Helling*'s subjective element. That the District even had such a policy militates against a finding of deliberate indifference.'" *Franklin v. District of Columbia*, 163 F.3d 625, 636 (D.C. Cir. 1998) (quoting *Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998)), *rehearing denied*, 168 F.3d 1360 (1999). In short, the party seeking to show that a defendant violated an inmate's Eighth Amendment rights must demonstrate "that the authorities were 'knowingly and unreasonably disregarding an objectively intolerable risk of harm' to the plaintiff's safety." *Scott*, 139 F.3d at 943, *reh'g denied*, 168 F.3d 1360 (1999).

Plaintiffs must show that GEO has a policy or custom of being "deliberate indifference to an inmate's serious medical needs." *Inmates of Occoquan v. Barry*, 844 F.2d 828, 837 (D.C. Cir. 1988); *Warren v. District of Columbia*, 353 F.3d. 36, 38 (D.C. Cir. 2004). This standard requires an inspection of the treatment of each inmate. "It will not do to assert that there are 'deficiencies' in the prison. Nor will it do to invoke the standards of professional organizations as showing failings of purportedly constitutional significance." *Inmates of Occoquan*, 844 F.2d at 837. Each inmate must show that he was suffering from a serious medical condition and that,

8

as a result of a policy or custom, GEO was deliberately indifferent to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Cox v. District of Columbia*, 834 F.Supp. 439, 441 (D.D.C. 1992). Negligence or medical malpractice is insufficient to demonstrate as Eighth Amendment violation. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292.

While an inmate need not wait to bring an Eighth Amendment claim until after he is harmed, mere speculation of some sort of injury in the future is insufficient to establish standing. In order to seek relief for an Eighth Amendment violation which has yet to occur, the inmate must demonstrate that the "condition of confinement ... is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). Thus, in order to have standing to bring an Eighth Amendment claim based upon a future harm, the inmate must demonstrate that the alleged future injury is "sufficiently imminent". *Id.* at 34, 113 S. Ct. at 2481.

> **2.    REHABILITATION ACT CLAIMS REQUIRE AN INQUIRY INTO THE PARTICULAR CONDITION OF THE CLAIMANT, THE PROGRAMS TO WHICH THEY SOUGHT ACCESS, AND THE STATE OF MIND OF THE DEFENDANT**

A claim of a Rehabilitation Act violation requires that the Court conduct a thorough inquiry into the condition of the individual raising the claim as well as the nature of the program in which the individual claims he was prohibited from participating. As explained by the Federal Defendants in their Motion to Dismiss, a Rehabilitation Act plaintiff must demonstrate that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability, and (4) the program

receives federal financial assistance." (Memo. in Supp. of Fed. Defs'. Mot. to Dismiss at 9-10 (citing cases).)

3.    **THE NEGLIGENCE CLAIM IN THIS ACTION WILL REQUIRE AN EXAMINATION OF THE NATIONWIDE STANDARD FOR EACH CLAIM AS WELL AS THE QUALIFICATIONS OF EACH MEDICAL PROVIDER AT RIVERS**

While Plaintiffs claim a broad range of negligent acts on the part of Defendants, these acts can be broken down into two broad areas: medical malpractice and negligent hiring, retention, and supervision. These two claims are poorly suited for class treatment as the Court must make inquiries on the individual level to determine whether a Plaintiff has a right to recover.

Under District of Columbia law,[1] those who provide health care services to inmates "owe the same standard of care to prisoners as physicians owe to private patients generally." *District of Columbia v. Mitchell*, 533 A.2d 629, 648 (D.C. 1987).

> In a medical malpractice action, the plaintiff carries the burden of establishing, through expert testimony, "the applicable standard of care, deviation from that standard, and a causal relationship between the deviation and the injury." In the District of Columbia, the applicable standard of care in a medical malpractice action is "a national standard, not just a local custom." In order to establish a national standard, "the plaintiff must establish through expert testimony the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances."

*Nwaneri v. Sandidge*, 931 A.2d 466, 470 (D.C. 2007) (Citations omitted).

Therefore, Plaintiffs will have to show the applicable standard of care for the "full spectrum of routine medical problems found in the general population, such as fractures, abdominal pains, and infections, as well as chronic diseases such as asthma, hypertension, epilepsy, diabetes, tuberculosis, and HIV." (Compl. ¶ 37.) Plaintiffs will then have to show that

---

[1] GEO assumes for the purposes of this Memorandum only that District of Columbia law governs the state law claims at issue in this matter. Additional briefing will be necessary on the choice of law issues in this case.

GEO somehow deviated from the standard of care for each of these medical conditions, and that the deviation was the proximate cause of injury for each inmate. These individual-level inquiries will require the Court to expend a great amount of time and resources.

Claims of negligent hiring, training, and supervision also require a fact-specific inquiry into the actions of the employer with respect to the particular employee at issue.

> The cause of action for negligent supervision, derived from this standard negligence tort, recognizes that an employer owes specific duties to third persons based on the conduct of its employees:
>
> One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment.

*Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007) (citing *Fleming v. Bronfin*, 80 A.2d 915, 917 (D.C. 1951)). *See Schecter v. Merchs. Home Delivery, Inc.*, 892 A.2d 415 (D.C. 2006) (applying the *Fleming* standard to a claim of negligent hiring, training, and supervision).

These claims will require a fact-intensive inquiry into the qualifications of all individuals who currently provide health care to inmates at Rivers or have provided health care to inmates at Rivers in the past. After determining the qualifications for each position within the Rivers health care delivery system, the qualifications for the individuals in these positions will need to be compared to the "national standard" for individuals who hold similar positions. The Court also must conduct an inquiry into the manner in which GEO supervised the performance of each individual and how any failure to supervise caused harm to each individual class member.

4.   **THE BREACH OF CONTRACT CLAIM IN THIS ACTION WILL REQUIRE AN EXAMINATION OF THE REQUIREMENTS OF GEO'S CONTRACT WITH THE BUREAU OF PRISONS FOR EACH CONDITION IDENTIFIED BY A POTENTIAL CLASS MEMBER**

Plaintiffs vague breach of contract claim will also require a fact-specific inquiry prior to resolution. While the question of whether Rivers inmates were intended third-party beneficiaries to the contract between GEO and River can be resolved on a class wide basis, whether the terms of the contract were breached with respect to each individual third-party beneficiary cannot. Plaintiffs allege that "GEO has breached and continues to breach its express and implied contractual obligations to the Plaintiffs, Class, and Sub-Class by failing to provide adequate health care." (Compl. ¶ 86.) As with Plaintiffs' other claims, in order to resolve the vague allegation that GEO has failed to provide adequate health care, the Court will need to look at the care provided to each individual class member and then compare it to the standard of care required by the terms of the contract. Thus, this claim is not well suited for class determination.

B.   **PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT SATISFY THE REQUIREMENTS OF RULE 23**

The Court should not certify this action as a class action because Plaintiffs have failed to meet their burden of proof. Instead of providing affirmative evidence, or even a verified Complaint, Plaintiffs rely solely on the conclusory allegations of their Complaint to satisfy the elements of Rule 23. The cases relied upon by Plaintiffs demonstrate that their superficial treatment of these issues is insufficient to satisfy Rule 23:

- In *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), the "plaintiffs provided overwhelming evidence of discrimination against the named plaintiffs as well as other, individually identified class members." *Id.* at 864.

12

- In *Clarkson v. Coughlin*, 145 F.R.D. 339 (S.D.N.Y. 1993), the court noted that it denied the plaintiffs' prior motion for class certification because "the record lacked sufficient evidence regarding the numerosity of" class members. *Id.* at 346. The court found that the plaintiffs remedied this defect by presenting deposition testimony of corrections administrators regarding the number of individuals who would fit into the applicable class. *See id.* at 347-48.

- In *Clark v. State of California,* 1988 WL 242688 (N.D. Cal. 1998), the "Plaintiffs ... submitted declarations and depositions from eleven inmates attesting to the injuries alleged in the complaint. They have also submitted the declarations of two experts ... indicating that there are at least 1,500 developmentally disabled prisoners scattered throughout the CDC system, and that CDC does not have a systematic method of identifying these inmates in order to provide them with assistance and protection." *Id.* at *6.

- In *Franklin v. Barry*, 909 F. Supp. 21 (D.D.C. 1995), the court certified a class part because "a listing of all Hispanic prisoners incarcerated in D.C. institutions" was provided to the plaintiffs during pre-certification discovery. *Id.* at 29.

In this case, Plaintiffs have not provided any evidentiary support for their motion for class certification beyond the conclusory allegations contained in the Complaint. Plaintiffs simply ask the Court to presume that they have complied with the requirements of Rule 23 without showing any actual compliance. The Supreme Court's holding in *Falcon* requires the Court to find that Plaintiffs have not satisfied the burden imposed upon them by Rule 23. Thus, the Court should not certify the Class.

## II.     THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY THE CLASS IN THIS ACTION BECAUSE PLAINTIFFS FAILED TO MEET THE REQUIREMENTS OF RULE 23(a)

To certify a class, a court must determine if the requirements of Rule 23(a) have been satisfied. Rule 23(a) mandates that a class may only be certified if the moving party demonstrates that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

## A.    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR CLASS CERTIFICATION BECAUSE THE PROPOSED CLASS IS NOT SUFFICIENTLY DEFINED

The overbreath of Plaintiffs' proposed Class and Sub-Class definitions precludes the Court from granting certification under Rule 23(a). Certification is inappropriate because the broadly drawn Class would include numerous individuals without standing. Additionally, the overbroad definitions would require the Court to conduct individualized inquires to determine whether an inmate is part of the Class or Sub-Class. Thus, the Court should not certify the proposed Class and Sub-Class.

> The party moving for class certification must adequately define the proposed class.
>
> The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. It is not designed to be a particularly stringent test but plaintiffs must at least be able to establish that "the general outlines of the membership of the class are determinable at the outset of the litigation." In other words, the class must be sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member.

*Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998). *Id.*

If a court cannot easily determine the membership of a class, the court "'cannot determine whether the representation is adequate, and the [defendant] does not know how to defend.'" *Falcon*, 457 U.S. at 161, 102 S. Ct. at 2372 (quoting *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1226 (5th Cir. 1974) (Cabot, J., concurring)). The most significant problem with certifying an imprecisely defined class is "the potential unfairness to the class members bound by the judgment if the framing of the class is overbroad." *Id.*

In other words, at the class certification stage, the Court is charged with protecting the interests of unrepresented class members. In exercising this responsibility, the Court must avoid the erroneous assumption "that all will be well for surely the plaintiff will win and manna will fall on all members of the class." *Id.*

Here, Plaintiffs have failed to define the proposed Class and Sub-Class sufficiently because (1) the proposed Class and Sub-Class definitions are impermissibly overbroad; and (2) the Court will have to undertake a fact-intensive inquiry prior to determining whether an individual is a member of the Class and Sub-Class.

1. **THE PROPOSED CLASS AND SUB-CLASS ARE INSUFFICIENTLY DEFINED BECAUSE THEY ARE IMPERMISSIBLY OVERBROAD**

The Court should deny Plaintiffs' Motion for Class Certification because the proposed Class and Sub-Class would include many individuals who do not have standing. First, former Rivers inmates do not have standing to seek injunctive relief in this matter. Second, potential future inmates do not have standing to seek monetary relief as they have not yet suffered a cognizable injury. Third, current inmates who have not sought out health care have not suffered an injury and therefore lacks standing.

A class need not be exact, but it cannot be vague and amorphous. This is particularly relevant when dealing with the issue of standing for class members. "[T]he definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right." *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982). *See Arnold v. Postmaster Gen.*, 667 F. Supp. 6, 14 (D.D.C. 1987) ("To join the class each class member must have standing...."), *rev'd on other grounds*, 863 F.2d 994 (D.C. Cir. 1988); *Kister v. Ohio Bd. of Regents*, 365 F. Supp. 27 (S.D. Ohio, 1973), *aff'd*, 414 U.S. 1117, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974); *Lamb v. Hamblin*, 57 F.R.D. 58, 60 (D. Minn. 1972) ("Even this definition is too broad, however, as those who 'will have' service terminated are unidentifiable and lack standing to bring suit in their own right."); *Thomas v. Clarke*, 54 F.R.D. 245, 249 (D. Minn. 1971) ("In order

to be a member of a class it is necessary that each individual have standing to bring the suit in his own right."); *Pacific Inter-Club Yacht Ass'n. v. Morris*, 197 F. Supp. 218 (N.D. Cal. 1960) ("Banding together a group of individuals who could not invoke the jurisdiction of this Court does not cloak the group with rights not granted to the several individuals. Plaintiff may not bring this suit on behalf of its individual members under Rule 23 of the Federal Rules of Civil Procedure ... for the Rules do not enlarge the jurisdiction of this Court (Federal Rules of Civil Procedure, Rule 82).").

In order to establish standing, a plaintiff must demonstrate that (1) "he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, nor conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000).

In this case, Plaintiffs' proposed Class and Sub-Class include individuals who lack the necessary standing to bring an action on their own. Namely, Plaintiffs' proposed Class includes former inmates at Rivers and seeks "injunctive and declaratory relief with respect to the Class as a whole." (Compl. ¶ 49.) Once an inmate has been transferred or released from a correctional institution, they no longer have standing to seek injunctive relief against their former place of incarceration. *See Maydak v. United States*, 98 Fed. Appx. 1, 3-4 (D.C. Cir. 2004); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997). Thus, the named Plaintiffs, Class members, and Sub-Class members who were, or during the course of this litigation become, former inmates of Rivers cannot obtain the injunctive relief sought in this action.

The Class and Sub-Class definitions are flawed because they do not restrict the individuals who may be part of the Class. Future inmates have not suffered an injury at the

hands of Defendants and therefore cannot seek monetary damages. For the same reason, the Court should not include in the Class inmates who have not sought or do not wish to receive medical care while at Rivers. Similarly, the Sub-Class should not include those inmates who have not or do not wish to participate in the various programs offered by Rivers.

Therefore, because the proposed class is drawn so broadly as to include those without standing, the Court should be deny Plaintiff's Motion for Class Certification.

2.  **THE PROPOSED CLASS IS INSUFFICIENTLY DEFINED BECAUSE THE COURT MUST UNDERTAKE A FACT-INTENSIVE INQUIRY TO DETERMINE WHETHER AN INDIVIDUAL IS A MEMBER OF THE CLASS**

A plaintiff must clearly define a class to ensure that it is "administratively feasible for the court to determine whether a particular individual is a member." *Bynum v. District of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003). It is administratively feasible for a court to determine whether a particular individual is a member of the class if "by looking at the class definition, counsel and putative class member can easily ascertain whether they are members of the class." *Pigford*, 182 F.R.D. at 346. If the court must "hold a series of individualized causation hearings to determine which" inmates are members of the class, the plaintiffs have failed to clearly define the class. *Bynum*, 214 F.R.D. at 32.

In this case, the Court cannot determine which inmates are class members without the expenditure of a large amount of judicial resources. Instead, the Court would have to hold an evidentiary hearing for each potential class member to determine whether the individual belongs in the Class. Plaintiffs' proposed Class includes all individuals who depended, currently depend, or may depend on GEO for their medical care. As a matter of law, this includes all individuals who have ever been incarcerated at Rivers. *See Estelle*, 429 U.S. at 103, 97 S.Ct. at 290. Plaintiffs' definition of the Class and Sub-Class is both incomplete and over inclusive.

Therefore, the Court will have to take it upon itself to determine whether an inmate has standing to be among those who may seek relief under a particular cause of action in this case.

For example, in order to determine which potential class members ("PCM") may join the class to seek declaratory and injunctive relief for a violation of their Eighth Amendment rights, the Court would have to resolve the following questions of law and fact:

The Court would have to make detailed, PCM-specific, inquiries into the location where a PCM is incarcerated, whether the PCM ever sought medical care while at RCI, whether the medical care sought was for a condition which qualifies as a serious medical need, and whether the claim is barred by either the statute of limitations or the doctrines of issue or claim preclusion. As a result, the Court should not certify this class because the Plaintiffs failed to present an adequately defined class which the Court can readily identify without the expenditure of a large amount of judicial resources.

## B.  PLAINTIFFS FAILED TO SHOW THAT THE PROPOSED CLASS IS SO NUMEROUS AS TO PRECLUDE JOINDER OF ALL MEMBERS

Plaintiffs based their attempt to satisfy Rule 23's numerosity requirement upon a false assumption. Specifically, Plaintiffs contend that simply because there are a large number of District of Columbia Code offenders incarcerated at Rivers, it is "almost certainly likely" (Pls.' Mem. for Class Certification at 9) that there are a substantial number of individuals who have suffered harm at the hands of Defendants. While the exact number of members of a class need not be identified, *Pigford*, 182 F.R.D. at 347, a Court should not certify a class when a plaintiff presents only conjecture and speculation to establish numerosity. *See Kinsey v. Legg, Mason & Co.*, 60 F.R.D. 91, 100 (D.D.C. 1973), *overruled on other grounds*, 557 F.2d 830 (D.C. Cir. 1977) (citations omitted). A bare allegation of numerosity founded upon mere conjecture as to the size of the class does not satisfy the requirements of Rule 23(a)(1). *See Pigford*, 182 F.R.D.

341, 347 (D.D.C. 1998) ("Mere conjecture, without more, is insufficient to establish numerosity....").

Typically, Courts in this District require a plaintiff to show affirmatively that a sufficiently large class exists. *See Franklin v. Barry*, 909 F. Supp. at 30 ("Based upon the information produced by the defendants during discovery, the plaintiffs have shown that the class would consist of approximately 200 persons."); *Barnes v. District of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007) ("Plaintiffs have submitted affidavits from almost forty individuals who claim to have been over detained, and from thirty who claim to have been strip searched."); *Bynum*, 214 F.R.D. at 33 ("defendant has provided evidence indicating that at least ninety-three persons fall within the definition of plaintiffs' proposed class."). In fact, Plaintiffs cite a number of cases that require a plaintiff to affirmatively show that the numerosity requirement is satisfied. *See Clarkson*, 145 F.R.D. 339; *Clark*, 1988 WL 242688; *Franklin v. Barry*, 909 F. Supp. 21; *Armstrong*, 275 F.3d 849.

The only evidence Plaintiffs provided to support their Motion for Class Certification is that out of the "thousands of D.C. Code felony offenders" (Pls'. Mot. for Class Cert. at 9) incarcerated at Rivers since it opened, ten inmates, the named plaintiffs, are dissatisfied with their medical care. Plaintiffs claim that they "almost certainly likely" satisfied the numerosity requirement based on the unverified claims of ten inmates. Yet these unsupported claims do not rise above the level of conjecture and speculation. Therefore, the Court should not certify the Class because these claims do not satisfy the numerosity requirement of Rule 23(a)(1).

Plaintiffs provide no evidence regarding (1) the number of inmates who have sought medical care while at Rivers; (2) the number of inmates at Rivers who have conditions which would constitute serious medical needs; (3) the number of inmates at Rivers who have serious

medical needs who sought health care at Rivers; or (4) the number of inmates at Rivers who have serious medical needs, sought health care, and have been harmed by the medical care offered at Rivers.

Similarly, Plaintiffs fail to provide evidence of the number of potential Sub-Class members harmed by GEO. Plaintiffs present no evidence regarding (1) the number of inmates who desire to participate in the programs, services, facilities, and activities at Rivers; (2) the number of inmates at Rivers who are disabled within the meaning of the Rehabilitation Act; (3) the number of inmates at Rivers who are disabled within the meaning of the Rehabilitation Act and desire to participate in the programs, services, facilities, and activities at Rivers; (4) the number of inmates at Rivers who are disabled within the meaning of the Rehabilitation Act and desire to participate in the programs, services, facilities, and activities at Rivers but who are unable to participate in the programs, services, facilities, and activities due to discrimination; or (5) the number of inmates at Rivers who are disabled within the meaning of the Rehabilitation Act and desire to participate in the programs, services, facilities, and activities at Rivers but who are unable to participate in the programs, services, facilities, and activities because Rivers discriminated against them solely on the basis of their disability.

Thus, the Court should not certify the Class and Sub-Class because Plaintiffs have failed to establish Rule 23(a)'s numerosity requirement.

## C.    PLAINTIFFS FAILED TO SHOW THAT THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS

Just as the broad nature of Plaintiffs' claims preclude a finding of numerosity, they also preclude a finder of commonality. In order for a class to be certified, the party seeking certification must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A party satisfies this test by showing "there is at least one issue, the

resolution of which will affect all or a significant number of putative class members."

*Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000).

A party must show that the class shares a common narrow question of law or fact to satisfy Rule 23(a)(2).

- In *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005), the district court found that a common question of law or fact existed where plaintiffs alleged that "the common question is whether defendant impermissibly forces plaintiff and class members to sleep on the floor, and the common legal question is whether defendant's conduct was wrongful." *Id.* at 400. The Court held that "[b]ecause the plaintiffs' allegations that they were required to sleep on the jail floor presents a question of fact common to all class members, and because all class members share the legal claim that the alleged injury amounts to a deprivation of their federally protected rights by a LASD policy or custom, the Court finds that the commonality element is met." *Id.*

- In *Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005), plaintiffs sought to certify a class based upon alleged violations stemming from defendant's policy that all new inmates were strip-searched upon arriving at the jail. The Court held that "the representative parties and the members of the proposed class base their Fourth Amendment unreasonable search claims upon the unconstitutionality of the jail change-out procedure. That is, the named plaintiffs and the putative class members have the same legal claims based upon the same official procedure. Accordingly, the commonality requirement is met." *Id.* at 172.

- In *Dodge v. County of Orange*, 226 F.R.D. 177 (S.D.N.Y. 2005), the district court was faced with a challenge to a jail strip-search policy. The court held "there is in fact one issue that is both common to the claims of every proposed class member and central to each of their claims: the existence or non-existence of a policy at the OCCF of strip searching each and every new pre-trial detainee upon arrival at the jail, regardless of the existence of individualized reasonable suspicion that the new arrival was carrying contraband, based on the nature of the crime charged, the circumstances of the arrest, and the particular characteristics of the arrestee. All the members of the *Dodge* class contend that such a policy existed at the time they were admitted to the jail; all the members of the class claim that any such policy is patently illegal under Second Circuit jurisprudence; and all the members of the class claim that they were searched pursuant to the policy, which was uniformly applied to every arriving detainee. That is what the named plaintiffs allege in the *Dodge* complaint; that is what the other members of the proposed class allege. *Id.* at 180-81.

In cases where a court has certified an inmate class, the plaintiffs pointed to a distinct policy or procedure which was equally applicable to each class member. In this case, Plaintiffs

do not point to a specific policy of GEO which violates the Eighth Amendment, constitutes corporate negligence, or violates the contract between GEO and BOP.

Plaintiffs allege that the following issues of law or fact are common to the Class:

a.  whether Defendants provide systemically inadequate medical, mental health, and dental care to the Class members;

b.  whether Defendants have been deliberately indifferent to the serious medical, mental health, and dental needs of the Class members;

c.  whether Defendants have placed Class members at unreasonable risk of developing serious medical, mental health, and dental problems;

d.  whether Defendants have violated Class members' rights to be free of cruel and unusual punishment under the Eighth Amendment;

e.  whether Defendants provide medical, mental health, and dental care that is comparable or substantially equivalent to the care provided to other federal prisoners and the community at large; and

f.  whether the inadequacies in the provision of medical, mental health, and dental care at Rivers arise from Defendants' arbitrary efforts to reduce costs and, in the case of GEO, to boost profits.

(Mot. for Class Certification at 11.)

These questions of fact or law are overly broad, going well beyond the bounds of the well defined questions of law or fact necessary to satisfy Rule 23(a)'s commonality requirement. In essence, Plaintiffs argue that common issues of law and fact exist because Defendants committed a vast and varied array of wrongs. Certifying a class based on such vague claims of common questions of law and fact would functionally remove Rule 23(a)(2) from Rule 23.

Plaintiffs rely on *Franklin v. Barry*, 909 F. Supp. at 30, to support their claim that a broad assertion of systemic failures can support a finding of commonality. (Mot. for Class Certification at 13). According to Plaintiffs, the *Franklin* court certified a "class of Hispanic

prisoners in D.C. correctional institution who alleged systemic Eighth Amendment violations for constitutionally inadequate medical care." (Mot. for Class Certification at 13).

However, *Franklin* did not address a situation of systemically inadequate medical care, but instead *Franklin* turned on the issue of "the lack of Spanish-speaking staff and translators" which allegedly deprived the plaintiffs of a variety of prison services which included medical care. *Id.* at 25. Additionally, in finding that the commonality requirement was met, the district court did not look to medical complaints, but instead looked to the "allegations that Hispanic prisoners are discriminated against because of their race." *Id.* The Court also found that "[c]ommon questions of law and fact arise, to a varying degree based upon the inmates' English fluency, from the lack of Spanish-language translators." *Id.* Thus, the holding in *Franklin* does not support Plaintiffs' claim that commonality can be established through an allegation of systemic failures in a prison medical system.

Further, plaintiffs hoping to show commonality must point to discrete issues common to the class. In *JB ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999), the Tenth Circuit Court of Appeals was faced with determining whether "systemic failures in [New Mexico's] child welfare delivery system deny all members of the class access to legally-mandated services." The Tenth Circuit, affirming the district court's ruling that class certification was improper, held

> Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of "systematic failures." We refuse to hold, as a matter of law, that *any* allegation of a systematic violation of various laws automatically meets Rule 23(a)(2).

*Id.*

As in this case, the plaintiffs in *Valdez* asked the court to certify a class based on a vast and varied array of complaints. Although the *Valdez* plaintiffs all sought relief under the same cause of action, the Tenth Circuit found that commonality did not exist holding that

> [e]ven if this were sufficient to establish a common legal question as to the named plaintiffs, plaintiffs have not shown that it is common to all putative class members under their proposed class definition. Plaintiffs sought to certify a class of *all* children in state custody who "have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support." [Citation omitted.] This broad definition would include not just children whom New Mexico improperly denied assistance, but also children who actually receive all services required under the ADA and Rehabilitation Act. Children receiving appropriate services have no claim under these statues. Thus, the district court correctly stated that "there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members."

*Id.* Just as with the proposed class in *Valdez*, Plaintiffs in this case have failed to identify one statutory or constitutional claim common to all named Plaintiffs and the members of the Class and Sub-Class.

In order to establish commonality in this case, Plaintiffs would need to show that a GEO policy or procedure was the cause of the alleged harms in this action. *See Warren*, 353 F.3d at 38. They have failed to do so, instead, relying on claims of "systematic failures" which are too amorphous to form the basis of a finding of commonality. Therefore, Plaintiffs have failed to show commonality. Thus, the Court should not certify the Class.

Plaintiffs' proposed Sub-Class also lacks a discrete issue common to the sub-class because Plaintiffs have again alleged a broad range of discriminatory acts on the part of GEO. Specifically, Plaintiffs allege the following common questions of law or fact exist:

> a.   whether Defendants systemically exclude Sub-Class members from access to, participation in, and the benefits of, any program, service, facility, or activity at Rivers solely by reason of their disabilities;

     b.     whether Defendants systemically deny access to, participation in, and the benefits of, any part of Rivers, or its programs, services, facilities, or activities to Sub-Class members solely by reason of their disabilities; and

     c.     whether Defendants have subjected Sub-Class members to discrimination solely by reason of their disabilities; and

     d.     whether Defendants have violated Section 504 of the Rehabilitation Act.

(Mot. for Class Certification at 12.)

The allegations contained in the Complaint betray Plaintiffs' ability to establish common questions of law or fact. Plaintiffs identified a list of at least 10 programs, services, facilities, or activities to which Sub-Class Plaintiffs have allegedly been denied access. (Compl. ¶ 77.) Additionally, Plaintiffs put forth at least half a dozen distinct ways in which GEO discriminates against Sub-Class Plaintiffs. (Compl. ¶ 6.) Sub-Class Plaintiffs failed to present any evidence of a discriminatory action common to all Sub-Class members. Thus, the Court should not certify the proposed Sub-Class.

### D.   PLAINTIFFS FAILED TO SATISFY THEIR BURDEN THAT THE CLAIMS OR DEFENSES OF THE REPRESENTATIVE PARTIES ARE TYPICAL OF THE CLAIMS OR DEFENSES OF THE CLASS

Plaintiffs fail to show typicality because there is no one course of events to which all class members were subjected and the class members will make different legal arguments to demonstrate GEO's liability. Rule 23(a)(3) requires that the claims of the proposed class representatives "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *Coleman*, 196 F.R.D. 198.

To show typicality, the moving party must show that "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford*, 182 F.R.D. at 349. The named plaintiffs must make a "specific presentation identifying the questions of law or fact that were common to the claims of [the class representative] and of the members of the class he sought to represent." *Falcon*, 457 U.S. at 158, 102 S. Ct. at 2371. If a plaintiff fails to show typicality, a court may use Rule 23(a)(3) "to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright and Miller, *Federal Practice and Procedure* § 1764 at 275.

In this case, the named Plaintiffs "fail to establish a claim typical to each other, let alone a class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Plaintiffs' allegations of a violation of the Eighth Amendment, negligence, and breach of contract cover a vast array of medical issues. *See supra*, at 2-3.

These vast and divergent factual and legal issues described by the named Plaintiffs do not arise from a similar course of events. While all the claims are made under the umbrella of claims of negligence, breach of contract and the Eighth Amendment, the legal and factual issues particular to each Plaintiff differ greatly. For each named Plaintiff or class member, the Court will have to determine whether the alleged individual ailment constitutes a serious medical need, whether Defendants had the requisite state of mind to be deliberately indifferent, the applicable standard of care for each individual condition, and the requirements of the BOP's contract with GEO regarding medical care for each particular condition.

26

When compared to other cases in which Courts in this District have found typicality, Plaintiffs have not satisfied the requirements of Rule 23(a)(3). In this regard, the following cases are instructive:

- "In the present case, the claims of the named plaintiffs are founded upon the same legal theory as those of other plaintiffs – that defendant violated Section 1983 when it held them in custody after their scheduled release date.... Additionally, the alleged injuries suffered by the named plaintiffs arise from the same conduct that gave rise to the claims of the other class members, namely, defendant's failure to release them by midnight of their scheduled date of release." *Bynum*, 214 F.R.D. at 35.

- "Each [plaintiff and proposed class member] was subjected to a strip search without any individualized finding of reasonable suspicion and after he or she had become entitled to release by virtue of a court appearance. Therefore, all named plaintiffs and putative class members advance the same legal theory based on the same set of facts, namely, that their constitutional rights were violated by being subjected to a strip-search after they were entitled to release, and without individualized finding of suspicion." *Bynum*, 217 F.R.D. at 47.

- "[T]he claims of all class members arise from the USA's alleged dismantling of its civil rights office and its subsequent failure to process discrimination complaints, the same event, practice and course of conduct that give rise to the claims of the four hundred and one representative plaintiffs." *Pigford*, 182 F.R.D. at 349.

- "Each plaintiff pursues the same legal theory, with no real variation, and they all allege generally similar facts, with variations only in the length of over detention or number of cited strip searches." *Barnes*, 242 F.R.D. at 122.

- "All members of the class were subject to identical restraints. Although they may not have suffered identical damages, that is of little consequence to the typicality determination when the common issue of liability is shared." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 9 (D.D.C. 1992).

- "The plaintiffs claims stem from the defendant's unlawful price-fixing conspiracies with respect to choline chloride and vitamin products – this theory of an overarching conspiracy to fix prices and allocate the market in violation of antitrust laws will be common to all class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002).

When compared to the cases cited above – in which the court found that the plaintiffs raised discrete issues that were typical to the class – Plaintiffs' claim of typicality fails. There is no singular event or policy which resulted in Plaintiffs alleged injuries. Further, Plaintiffs

presented no evidence that would establish that the claims of Plaintiffs were typical to the claims of the absent class members.

In addition, Plaintiffs presented no evidence of one event or policy which resulted in a violation of the Rehabilitation Act. Instead, Plaintiffs identified a list of at least ten programs, services, facilities, or activities to which Sub-Class Plaintiffs have allegedly been denied access. (Compl. ¶ 77.) Additionally, Plaintiffs identified at least six ways that GEO discriminates against Sub-Class Plaintiffs. (Compl. ¶ 6.)

Plaintiffs made only ambiguous reference as to how the Sub-Class Plaintiffs have been discriminated against, making it difficult to determine what events gave rise to each representative's claim. In fact, the Complaint fails to explain how GEO discriminates against Plaintiffs Robinson, Doe, and Roe. At the very least, Plaintiffs could have indicated what events were typical to their own claims. They failed to do so. As the Complaint and Motion for Certification do not indicate how Plaintiffs themselves have been harmed, these vague allegations cannot be sufficient to satisfy the typicality requirement.

### E.    PLAINTIFFS FAILED TO SHOW THAT THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

Plaintiffs are not adequate Class and Sub-Class representatives because their own interests differ from the interests of the Class and Sub-Class members. The final requirement in Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to satisfy this test, the moving party must show that "(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously

prosecute the interest of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

1.    **THE REPRESENTATIVE PARTIES WILL NOT FAIRLY AND ADEQUATELY REPRESENT THE PROPOSED CLASS BECAUSE THEIR INTERESTS ARE NOT ALIGNED WITH THE INTERESTS OF ALL CLASS MEMBERS**

The named Plaintiffs have conflicting interests among themselves because at least seven of the named Plaintiffs are no longer incarcerated at Rivers and therefore lack standing to pursue injunctive relief. Thus, by seeking certification for a single class comprised of past, present, and future Rivers inmates, the Plaintiffs created a situation where they cannot adequately represent the class. Additionally, as a single class exists to vindicate claims of an Eighth Amendment violation, negligence, and breach of contract there is an inherent conflict between those class members who may raise one but not all claims. Because of these conflicts, the proposed representatives cannot fairly and adequately represent the class.

A class representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S. Ct. 2925, 2930, 41 L.Ed.2d 706 (1974). As a result, the Court must examine the interests of the named plaintiffs "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products*, 521 U.S. at 625, 117 S. Ct. at 2250.

The conflict in this case is best illustrated by *Stuart v. Winter*, 87 F.R.D. 760 (D. Miss. 1980). In *Stuart*, eighteen current and former inmates brought a class action suit on behalf of current and future inmates at various county jails in Mississippi. *Id.* at 763. The *Stuart* plaintiffs sought "declaratory and injunctive relief, damages, attorney fees and costs" for alleged violations

of their rights under the "first, sixth and eighth amendments as well as the Equal Protection and Due Process Clauses of the fourteenth amendment to the United States Constitution." *Id.*

The district court denied class certification for, among other reasons, inadequate representation of the absent class members. The Court reasoned that the class representatives did not adequately represent the class because eight of the named plaintiffs – less than half of all the named plaintiffs – were no longer incarcerated in the county jail that was the subject of the lawsuit. *See id.* at 769. When the eight inmates were transferred from the county jail they were no longer "entitled to injunctive and declaratory relief. These [eight inmates] have only individual claims for monetary damages." *Id.* As a result, the court found the named plaintiffs did not inadequately represent the absent class members because "...there is no assurance that inmates confined presently or in the future in county jails will have their dominant interest in eliminating unconstitutional jail conditions and practices pressed with the same vigor as the claims of the representative plaintiffs for large damages are likely to be." *Id.* at 769-770.

The proposed class representatives in this case are similarly situated. Plaintiffs Butler, Holloway, Robinson, Lewis, Doe, Roe, and Fowler are no longer incarcerated at Rivers (Mem. in Supp. of Fed. Defs. Mot. To Dismiss at 21.) and, therefore, lack standing to seek injunctive and declaratory relief. *See Maydak*, 98 Fed. Appx. at 3-4; *Risley*, 108 F.3d at 1397. In other words, a majority of the Class Representatives lack standing and have no cognizable interest in ensuring class members receive the injunctive relief sought to remedy the alleged violations of the Eighth Amendment. Because the majority of the class representatives lack an interest in obtaining the most meaningful method of relief for the majority of the class members, they cannot adequately represent the interest of the Class as a whole. *See Phillips v. Klassen*, 502 F.2d 362, 366 (D.C. Cir. 1974). To hold otherwise would be a violation of the due process rights of the absent class

members. *See id.* ("Unless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs.").

Additionally, Plaintiffs do not adequately represent the Class because there is a conflict of interests between the named Plaintiffs, who all seek recovery for a violation of their Eighth Amendment rights, and the portion of the Class who only seeks recovery for negligence or breach of contract. The Complaint asserts that the named Plaintiffs and the Class have been harmed as a result of GEO's deliberate indifference to their serious medical needs (Compl. ¶¶ 62-69), GEO's negligence (Compl. ¶¶ 80-83), and GEO's breach of their contractual duties to the Plaintiffs, the Class, and the Sub-Class (Compl. ¶¶ 84-89). The standard for a violation of an inmate's Eighth Amendment rights is more rigorous than the standard required to establish a claim of negligence. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. While Plaintiffs have not divulged an estimate of the number of class members who have only been subjected to negligence or a breach of a contractual duty, and therefore only seek monetary relief, it is reasonable to assume that out of the purported class of thousands there will be a significant number of individuals. None of the proposed class representatives represent the interests of the class members seeking relief for only negligence or breach of contract.

Thus, the Court should not certify the class because Plaintiffs fail to meet the necessary requirements to be certified as class representatives. The interests of the majority of the named Plaintiffs – who may only seek monetary relief – conflict with the interests of many of the Class members – whose primary relief is injunctive relief. Additionally, none of the named Plaintiffs represent those individuals seeking relief for negligence or breach of contract.

### III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO CERTIFY BECAUSE THE PROPOSED CLASS DOES NOT MEET THE REQUIREMENTS SET FORTH IN RULE 23(b)

After satisfying all of the requirements of Rule 23(a), a party seeking class certification must establish that their class qualifies under one of the areas listed in Rule 23(b). Fed. R. Civ. P. 23(b).

### A.    PLAINTIFFS HAVE FAILED TO SATISFY THE REQUIREMENTS TO HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO RULE 23(b)(1)(A

Plaintiffs fail to meet the requirements to have this action certified as a Rule 23(b)(1)(A) class action because they cannot show that there is a risk of inconsistent adjudications. A court may only certify an action under Rule 23(b)(1)(A) if "the prosecution of separate actions by or against individual members of the class would create a risk of ... inconsistent or varying adjudications with respect to individual adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

The specter of inconsistent or varying adjudications arises in circumstances where (1) the defendant "is required by practical circumstances to deal with all putative class members in the same way," *Gaffney v. United States*, 834 F. Supp. 1, 6 (D.D.C. 1993); (2) where individual plaintiffs "in the identical legal and factual posture" could achieve differing results leaving the defendant in a position where it "would not know how to proceed," *Brown v. Artery Org., Inc.*, No. 86-3285, 1987 WL 9044 (D.D.C. Mar. 19, 1987); or (3) the party opposing class certification may be subject to "[d]ifferent results from different federal courts," *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002). *See Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 5 (D.D.C. 1992) ("it is clear that this relitigation of settled issues of law would foster inconsistent

results on the same legal and operative facts."). However, in circumstances where these concerns are not present, there "is no genuine risk of 'inconsistent or varying adjudications'" and, therefore, a certification under Rule 23(b)(1)(A) is not appropriate. *Gaffney v. United States*, 834 F. Supp. 1, 6 (D.D.C. 1993).

Due to the wide ranging and varied complaints of the named representatives and putative class members, GEO will not be required to deal with all putative class members in the same way. In the event that GEO were found liable, each particular claim would require its own unique remedy. Because the Court will be required to craft a unique remedy for each type of medical complaint, GEO will not be required to deal with each class member in a uniform way.

The unique claims of each class member also alleviates the risk that class members identical legal and factual posture being treated differently, such that GEO would be unsure how to proceed. The concern in this area is not "that separate judgments would oblige the opposing party to pay damages to sum class members but not to others or to pay them different amounts," but instead that "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." 7AA Wright & Miller, *Federal Practice & Procedure* § 1773 at 15-16.

It is unlikely that there will be separate adjudications that will prevent the creation of a uniform code of conduct because the necessity for individualized responses to medical conditions eschews a uniform course of conduct. For example, if Plaintiffs must proceed in individual actions, an order requiring GEO to provide certain services to Plaintiff Mathis for his dental care, an order requiring specific services for Plaintiff Hamilton's MRSA, and an order to provide pain medication and psychological counseling to Plaintiff Butler would not create inconsistent relief. Thus, the Court should not certify a 23(b)(1)(A) Class in this matter because

there is no risk of varying court orders leaving GEO in a position in which it is unable to adequately direct its actions.

Nor is there a risk in this action of differing results from differing federal courts. In cases such as *Adair*, where this court was faced with "federal courts in California dealing with [three similar] cases hav[ing] already rendered somewhat different decisions on issues similar to those addressed in the case at bar[]" a Rule 23(b)(1)(A) class can be beneficial. *Adair*, 209 F.R.D. at 12. As has been explained in GEO's Motion to Dismiss, the appropriate venue for all actions involving inmates at Rivers is the United States District Court for the Eastern District of North Carolina. Consolidation of all cases regarding inmate claims at Rivers in one judicial district greatly limits the chances that there will be differing decisions from different federal courts. Thus, the Court should not certify a 23(b)(1)(A) class in this matter because it is unnecessary to protect GEO's ability to develop an appropriate response to inmate concerns.

### B.  PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS TO HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO RULE 23(b)(2b)

Rule 23(b)(2) allows a class to seek equitable relief in circumstances where the moving party can demonstrate "(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 217 F.R.D. at 48.

In this case, Plaintiffs seek injunctive relief solely to remedy the alleged violation of their Eighth Amendment rights. (Compl. at 47.)

1.    **THIS MATTER SHOULD NOT BE CERTIFIED AS A RULE
23(B)(2) CLASS ACTION BECAUSE CLAIMS FOR MONETARY
RELIEF PREDOMINATE OVER CLAIMS FOR INJUNCTIVE
RELIEF**

The Court need not reach the factors outlined in *Bynum* because Plaintiffs' claims for

monetary damages predominate over claims for equitable relief. A class may not be certified

pursuant to Rule 23(b)(2) in the event that "the appropriate final relief relates exclusively or

predominantly to money damages." Fed. R. Civ. P. 23(b)(2) Adv. Comm. Note (1966). *See*

*Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1003 n.7 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915,

107 S. Ct. 3188, 96 L.Ed.2d 677 (1987). A request for monetary damages does not predominate

a claim for injunctive relief if "plaintiffs' claim for benefits is equitable in nature because it seeks

restitution, rather than damages...." *Coleman*, 196 F.R.D. at 199. To the contrary, "when the

class seeks to recover ... monetary damages to be allocated based upon individual injuries[]"

monetary damages predominate over equitable claims. *Id.* at 199. Also, if the class seeks a large

amount of monetary relief, then it may predominate over the injunctive relief. *See Garcia v.*

*Veneman*, 211 F.R.D. 15, 23 (D.D.C. 2002) (finding that monetary relief predominated equitable

relief when plaintiffs sought one million dollars per class member).

Plaintiffs request monetary damages for their claims of negligence, breach of contract,

and a violation of the Rehabilitation Act, but do not explicitly state the amount of monetary

damages they seek. Despite the Complaint's silence on the dollar amount Plaintiffs seek the

Court should still determine that the Plaintiffs' monetary claims predominate equitable claims.

(Compl. at 47.)

Plaintiffs explicitly seek "compensatory damages" for members of the Class and Sub-Class. (Compl. ¶ 79.) Moreover, Plaintiffs also explicitly seek "punitive damages." (Compl. at 47.)

The unique character of each class member's injuries also indicate that monetary relief predominates over the injunctive relief.

> This is not a case where damages could be resolved relatively easily, such as where each plaintiff claimed a different amount of damages due to a common injury, or where damages ... could be simply calculated pursuant to a formula. Here, it would be necessary to conduct a careful examination of a class member's individual circumstances to determine the damages to be awarded.

*Williams v. Glickman*, No. 95-1149 (TAF), 1997 WL 33772612, *10 (D.D.C. Feb. 14, 1997). The Court cannot use a formula or simple calculation to determine the appropriate amount of damages for failure to treat an open sore oozing green slime (Compl. ¶ 10), losing the range of mobility in one's legs (Compl. ¶ 11), or the pain and scaring caused by untreated boils (Compl. ¶ 13). Thus, the Court should not certify the class as a Rule 23(b)(2) class because monetary relief predominates over injunctive relief.

## 2. GEO HAS NOT ACTED IN A MANNER WHICH IS COMMON TO ALL MEMBERS OF THE CLASS AND SUB-CLASS

Plaintiffs have not alleged that their damages stem from a single defined policy or practice on the part of GEO. Instead, Plaintiffs attempt to cobble together a unified claim from various discrete events. In order to show that the party opposing classification acted in a manner common to all class members, the moving party must demonstrate that there is some consistent pattern which they seek to enjoin. *See Barnes*, 242 F.R.D. at 123 ("Though each violation complained of may have its own unique facts, [the violations] do not appear to be isolated instances, but instead represent a consistent pattern of activity on the part of the defendant."); *Bynum*, 217 F.R.D. at 48 ("The court is satisfied that defendant's policy and practice of strip

searching court returns after they have been ordered released constitutes conduct that is generally applicable to the members of the class."); *Coleman*, 196 F.R.D. at 199 ("Because the plan amendment suspending LPBs affected all putative class members, class-wide injunctive and declaratory relief is appropriate in this case.").

In this case, Plaintiffs do not seek to change any specific policy, but instead seek to have the Court address a general failure to provide adequate medical care and a general discriminatory animus on the part of GEO. Plaintiffs assert eleven separate ways in which the Rivers health care delivery system fails Rivers inmates. (Compl. ¶ 38.) Plaintiffs also assert various and sundry ways GEO discriminates against disabled inmates. (Compl. ¶¶ 77.) Thus, the Court should not certify this class pursuant to Rule 23(b)(2) because Plaintiffs do not seek to enjoin a single policy or act.

### 3.    PLAINTIFFS CANNOT SEEK FINAL INJUNCTIVE RELIEF WHICH IS APPLICABLE TO THE CLASS AS A WHOLE

Additionally, the Court should not certify the Class under Rule 23(b)(2) as the injunctive relief sought by Plaintiffs would not comply with the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. Moreover, the Court should not certify the Sub-Class under Rule 23(b)(2) as the injunctive relief sought in the Complaint does not apply to the Rehabilitation Act.

Plaintiffs seek injunctive relief which would

Preliminarily and permanently enjoin Defendants, their agents, employees, and all persons acting in concert with them, from subjecting the named Plaintiffs and any member of the Class or Sub-Class to the organizations, systems, policies, practices, and institutional conditions that have caused and continue to cause the delivery of constitutionally inadequate and unlawful medical, dental, and mental health services at Rivers.

(Compl. at 47.)  Put simply, Plaintiffs seek an injunction which prohibits Defendants from violating the Eighth Amendment rights of any individual who was, is, or will be incarcerated at Rivers.

The Court should not certify the Class under 23(b)(2) because Plaintiffs seek injunctive relief that does not apply to the Class as a whole.  This proposed injunctive relief does not apply to class members who seek to recover for only negligence or breach of contract as the Complaint does not seek injunctive relief for those claims. (Compl. at 46-48.)

Also, the Court should not certify the Class under Rule 23(b)(2) because injunctive relief Plaintiffs requested fails to comply with the requirements of Rule 65(d) of the Federal Rules of Civil Procedure.  Rule 65(d) requires:

> Every order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....

Fed. R. Civ. P. 65(d).  Rule 65's specificity requirements exist because "basic fairness requires that those enjoined receive explicit notice of precisely what is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L.Ed.2d 661 (1974).  Merely requiring a party to discontinue organizations, systems, policies, practices, and institutional conditions that result in constitutionally inadequate medical care do not comport with this standard of basic fairness. *See id*. ("Neither the brief judgment order nor the accompanying opinion is 'specific' in outlining the 'terms' of the injunctive relief granted; nor can it be said that the order describes 'in reasonable detail . . . the act or acts sought to be restrained.' Rather, the defendants are simply told not to enforce 'the present Wisconsin scheme' against those in the appellee's class.").

Based upon the Complaint, the Court will be unable to craft an adequate injunction which complies with the requirements of Rule 65(d) without requiring constant, almost daily,

monitoring of Rivers. If Plaintiffs allegations are taken as true, Rivers is incapable of providing adequate medical care for any type of medical condition. (Compl. ¶ 38.) As "the population of persons incarcerated in federal prisons suffer from the full spectrum of routine medical problems found in the general population, such as fractures, abdominal pains, and infections, as well as chronic diseases such as asthma, hypertension, epilepsy, diabetes, tuberculosis, and HIV" (Compl. ¶ 37), the Court would be required either to fashion an injunction which addressed every medical condition known to modern medicine or individually monitor the medical conditions of the current and future inmates at Rivers and regularly amend its injunctive order. These types of injunctions would place this Court perilously close to violating the District of Columbia Court of Appeals' directive that "courts are not to be in the business of running prisons." *Inmates of Occoquan v. Barry*, 844 F.2d. 828, 841 (D.C. Cir. 1988).

Plaintiffs proposed injunctive relief also violates the provisions of the Prison Litigation Reform Act ("PLRA"). The PLRA restricts the extent of injunctive relief which a court may grant in a case involving prison conditions. Specifically, the PLRA requires that "[p]rospective relief in any civil action with respect to prior conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1)(A). The broad injunctive relief sought in this matter does not comply with this provision. Therefore, the injunctive relief sought by Plaintiffs cannot be applied to the class as a whole. Thus, the Court should decline to certify this action pursuant to Rule 23(b)(2). The Court should decline to certify the Sub-Class under 23(b)(2) because the Complaint does not seek injunctive relief for violations of the Rehabilitation Act. (Compl. at 46-48). Therefore, the injunctive relief sought in this matter is not applicable to the Sub-Class as a whole. Thus, the

Court should not certify the Sub-Class under Rule 23(b)(2) because Plaintiffs failed to demonstrate that the injunctive relief sought in this matter is applicable to the Sub-Class.

### C.    PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS TO HAVE THIS ACTION CERTIFIED AS A CLASS PURSUANT TO RULE 23(b)(3)

As an alternative to certification under Rules 23(b)(1) and (b)(2), Plaintiffs ask the Court to certify the Class and Sub-Class under Rule 23(b)(3). Rule 23(b)(3) certification would only apply to claims of negligence, breach of contract, and a violation of the Rehabilitation Act. (Compl. at 47.) A court may only certify a class action under Rule 23(b)(3) if the moving party establishes that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, Plaintiffs seek monetary relief to redress their claims of negligence, breach of contract, and a violation of the Rehabilitation Act. (Compl. at 47.)

### 1.    INDIVIDUAL ISSUES PREDOMINATE OVER ANY ISSUES WHICH ARE COMMON TO THE CLASS

Plaintiffs' claims all require the Court to make a finding for each individual to determine liability and damages. Rule 23(b)(3) "duplicates the commonality analysis in many respects, delving further into an inquiry of the relative importance of the common issues to the case." *Barnes*, 242 F.R.D. at 123. "[T]he issues which [the] Court has already determined to be common to all members of the class must predominate over any non-common issues." *Bynum*, 217 F.R.D. at 49.

Plaintiffs may meet the predominance standard by showing "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *In re Vitamins*

*Antitrust Litig.*, 209 F.R.D. at 262. "[T]he predominance inquiry also requires the identification of the elements of the substantive law at issue." *Id.* at 263.

The Sixth Circuit Court of Appeals, affirming a denial of class certification in a medical device products liability case, demonstrated why cases involving varied medical claims are poorly suited for 23(b)(3) certification:

> [T]he factual and legal issues often *do* differ dramatically from individual to individual because there is no common cause of injury …. No single happening or accident occurs to cause similar types of physical harm…. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses … may depend on facts peculiar to each plaintiff's case.

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084-85 (6th Cir. 1996). In this case, just as in *American Medical Systems*, "each plaintiff has a unique complaint, and each receives different information … from his treating physician. Given the absence of evidence that common issues predominate, certification [is] improper." *Id.* at 1085.

This Court has provided guidelines to determine whether a class should be certified as a Rule 23(b)(3) action.

In *Gaffney v. United States*, 834 F. Supp. 1 (D.D.C. 1993), this court found that "common questions of law do not 'predominate' in this case. Rather, there is only a single common question: the government's liability for Sunday premium pay on days when employees take paid leave. The remaining issues-whether each plaintiff was 'regularly scheduled' to work on Sundays, whether the plaintiff took leave under one of the leave-with-pay statutes, and the amount of backpay to which he or she is entitled-are all "questions affecting only individual members." Id. at 6.

In *Bynum v. District of Columbia*, 217 F.R.D. 43, 49 (D.D.C. 2003) this Court found "the question whether defendant has subjected persons entitled to release to suspicionless strip searches before releasing them is a question of fact that is common to all class members. Similarly, whether these searches violate the Fourth and Fifth Amendments to the Constitution is a question of law that is common to all class members." *Id.* at 49

Thus, a court should certify a class under Rule 23(b)(3) when individuals are subjected to a specific common practice which causes a specific common injury. Plaintiffs' negligence and breach of contract claims depend on evaluations of the individual class member, the specific standard of care for each class member's condition, the individual treatment which the class member received, and the individualized damages the class member may have suffered. There is no specific common practice at issue in this case nor any specific common injury. Therefore, the Court should decline to certify a Rule 23(b)(3) class in this case.

Additionally, the Court should not certify the Sub-Class under Rule 23(b)(3) because Sub-Class Plaintiffs and Sub-Class members must show how the sub-class member is disabled and show that the alleged discrimination took place solely on the basis of their disability. *See supra*, at 9-10. "The instant case, if allowed to proceed as a class action, would quickly devolve into hundreds or perhaps thousands of individual inquiries about each [class member's] particular circumstances." *Garcia v. Veneman*, 211 F.R.D. 15, 24 (D.D.C. 2004). Thus, the Court should not certify the Sub-Class's claims as a Rule 23(b)(3) class because the members would not have similar claims. *See Williams v. Glickman*, No. 95-1149, 1997 WL 33772612 (D.D.C. Feb. 14, 1997); *Garcia*, 211 F.R.D. at 23-24 (citing cases).

### 2. CLASS CERTIFICATION IS NOT A SUPERIOR WAY TO RESOLVE THESE ISSUES BECAUSE OF THE INDIVIDUALIZED NATURE OF THE CLAIMS

The Court should not certify the class under Rule 23(b)(3) because the individual nature of the claims and damages means that other methods for adjudicating these issues is preferable. Superiority is achieved

> where common legal or factual questions allow a court to "consolidate otherwise identical actions in to a single efficient unit." In cases ... involving many extremely similar claims against the same defendant, class certification promises greater efficiency and consistency than serial litigation of nearly identical individual cases. The superiority of the class action device become all the more apparent when it is revealed that the potential damages for each award may be small, indicating that the alternative of multiple individual suits may be an impossible way of vindicating the rights at issue.

*Barnes*, 242 F.R.D. at 123-24 (citations omitted). In this case, the claims are not extremely similar because the class members claims will involve the "full spectrum of routine medical problems found in the general population, such as fractures, abdominal pains, and infections, as well as chronic diseases such as asthma, hypertension, epilepsy, diabetes, tuberculosis, and HIV." (Compl. ¶ 37.) The prospect of hundreds or thousands of mini-trials on the applicable standard of care, the qualifications of treating medical personnel, the requirements of the Rivers contract, and damages demonstrates that a class action is not superior to individual actions.

Nor is class treatment needed to ensure that the class members have a forum to vindicate their rights. The class members in this action are among the most litigious members of society. As the United States Supreme Court recently noted, "[p]risoner litigation 'continues to account for an outsized share of filings' in federal district courts. In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous." *Jones v. Bock*, -- U.S. -- 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). The Court can rest

assured that even if this action is not certified as a class action, inmates at Rivers and elsewhere will not shy away from attempting to vindicate rights they believe have been infringed.

## CONCLUSION

For all of these reasons, the Court should not certify the Class and Sub-Class because Plaintiffs failed to present the minimum amount of evidence to allow the Court to certify the Class and Sub-Class. The evidence that Plaintiffs presented shows that the Class and Sub-Class does not satisfy the elements of numerosity, commonality, typicality and adequacy of representation as required by Rule 23(a). Additionally, Plaintiffs failed to show that this action is suitable for certification under Rule 23(b).

Thus, the Plaintiffs' Motion for Class Certification should be denied.

Respectfully submitted, this the 2nd day of November, 2007.

/s/ Deborah J. Israel
Deborah J. Israel, Esq. (DC Bar No. 430841)
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC 20005
(202) 857-4466 (Telephone)
(202) 261-0034 (Facsimile)
*Counsel for GEO Group, Inc.*

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1987 WL 9044 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

▷
Brown v. Artery Organization, Inc.
D.D.C.,1987.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Rena BROWN, et al., Plaintiffs,
v.
ARTERY ORGANIZATION, INC., et al.,
Defendants.
**Civ. A. No. 86-3285.**

March 19, 1987.

MEMORANDUM AND ORDER
HAROLD H. GREENE, District Judge.
**\*1** On February 24, 1987, this Court issued a preliminary injunction in the above-captioned case on the basis of the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq.,[FN1] ordering the defendants not to evict the named plaintiffs. Shortly thereafter plaintiffs filed an application for a temporary restraining order stating that the defendants were taking actions that caused the constructive eviction of the plaintiffs, thereby evading the purpose and intent of the Court's February 24 Order. The Court denied this application on the ground that the named plaintiffs lacked standing since they did not allege or show any injury to themselves as a result of the alleged actions of the defendants.[FN2] The action is now before the Court on plaintiffs' motion for class certification and for further injunctive relief.

Plaintiffs seek certification of a class defined as "all persons presently residing in either -the Dominion Gardens or the Bruce Street complexes, or who formerly resided in one of those complexes and who have left pursuant to a 120-day notice to quit after October 1, 1986." Motion at 3. This class would include both minority and non-minority tenants.

Certification of a class is proper if the action satisfies all the requirements of Fed. R. Civ. P. 23(a)

and falls within one of the three categories of class suits described in Fed. R. Civ. P. 23(b). The Court, after redefining the appropriate class, will conditionally certify a class in this action.

I

The prerequisites for certification of a class set forth in Rule 23(a) are the following: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties must be able to fairly and adequately protect the interests of the class.

It appears that most of defendants' arguments concern the second and fourth prerequisites: whether questions of law and fact are common to the class, and whether the representative parties are able fairly and adequately to protect the interests of the class. For better understanding, the Court will first examine the issues raised by these two prerequisites'. upon concluding that the putative class must be narrowed to meet these prerequisites, it will then consider whether the putative class as narrowed and defined by the Court satisfies the remaining prerequisites set forth in Rule 23(a).

1. Defendants argue that common questions of law and fact do not exist between the minority tenants and other tenants, and that the second prerequisite is therefore not satisfied. The Court concludes that this argument is meritorious because (1) there are no allegations that the non-minority tenants are being discriminated against on any of the bases prohibited by the FHA and (2) it is not at all clear that, as a matter of law, the Act protects the right of the non-minority tenants to live in an integrated community, as plaintiffs contend. In short, the inclusion of non-minority tenants in the class robs the class of the required common questions of law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1987 WL 9044 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

and fact.

**\*2** Except for the matters discussed under "2" below, common questions of law and fact do exist in this case as among the members of a class defined as the minority tenants. The claims of the minority tenants are all based upon similar allegations of discrimination on the basis of race or national origin at the two housing complexes in question in violation of the Fair Housing Act during the time period delineated by plaintiffs.

Consequently, the Court will narrow the putative class as defined by plaintiffs to exclude the non-minority tenants. On this basis, the second prerequisite of Rule 23 is satisfied.

2. Defendants next contend that the members of the putative class, as so defined, have conflicting interests, thereby rendering the named plaintiffs inadequate class representatives. More specifically, according to defendants, there is a conflict between the interests of the current and those of the former tenants.[FN3] That argument lacks merit.

Defendants claim that there is an inherent antagonism between the interests of the current tenants and those of the former tenants (who are alleged to have been improperly removed) in that only the current tenants have a stake in issues revolving around the continued operation of the apartment complexes. This argument is not consistent with the requirements of the Federal Rules of Civil Procedure and case law. The members of a class need only have their claims based on the same legal theory. Fed. R. Civ. P. 23(a)(3); Stewart v. National Shopmen Pension Fund, 563 F. Supp. 773, 778 (D.D.C. 1983), rev'd on other grounds, 730 F.2d 1552 (D.C. Cir. 1984). The current and former tenants' claims plainly are based on the same legal theory: whether the defendants' actions are in violation of the FHA. It follows that defendants have failed to establish a divergence of interests on the basis of the present residence of a putative class member, and the Court will not deny plaintiffs' motion for class certification or narrow the putative class on this ground.

However, defendants' contention that a conflict of interest may exist among various groups of tenants on another basis has greater merit. Defendant Artery has shown, through the submission of affidavits, that several of the tenants support or do not oppose Artery's or Cafritz's rehabilitation and renovation plans. These tenants include those who want to relocate and utilize the tenant assistance plan and those who have been accepted for inclusion in the renovated project. Clearly, these tenants have interests that conflict with those of the named plaintiffs and the remaining members of the putative class. Since the extent and identity of the minority tenants who favor renovation is not known at this time" it is difficult to determine whether this conflict of interest within the putative class is so great that a class, defined in any manner, should not be certified.

For this reason, the Court's order certifying a class in this action will be conditioned upon plaintiffs' filing, within ten days of the entry of this Memorandum and Order, an amended complaint defining with particularity the class that they seek to represent in this action, a definition which should satisfy the fourth prerequisite, in accordance with this Memorandum; upon the further condition that plaintiffs within that same period file the names and addresses of all members of such class, to the best of their knowledge and belief; and upon the condition that the class as redefined by plaintiffs in accordance with the above, meets the requirements for class certification.[FN4] see Fed. R. Civ. P. 23(d)(4); see also Hardy v. United States, 289 F. Supp. 200, 203 (D.C. Ala. 1967).

**\*3** 3. The court will now examine the remaining two factors on the premise that the above conditions are met and that the class is narrowed in accordance therewith.

a. With regard to the first prerequisite of Rule 23(a), the class as narrowed above appears to be so numerous that joinder of all the members would be impracticable. Plaintiffs estimate that the class as they defined it, minority as well as non-minority tenants at the two complexes in question, has some 2,000 members. Approximately ninety percent of those 2,000 members appear to be minority tenants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1987 WL 9044 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

See Brown v. Artery Organization, Inc., Opinion at 27 (Feb. 24, 1987). A class consisting of 1,800 members, the approximate number of minority tenants would clearly meet the numerosity requirement of Rule 23(a). See E.E.O.C. v. Printing Industry of Metropolitan Washington, D.C., 92 F.R.D. 51 (D.D.C. 1981). The numerosity of the putative class, however, may change depending upon the redefinition of the class to satisfy the fourth prerequisite of Rule 23(a). Upon the filing by the plaintiffs of the names and addresses of class members who are adequately represented by the named plaintiffs, the Court will again examine whether the class meets the numerosity requirement.

b. Upon narrowing the class to minority tenants whom the named plaintiffs adequately represent, it is clear that the claims of the class representatives, i.e., the named plaintiffs, are typical of the claims of that class.[FN5] The claims of the named plaintiffs arise from the "same event or practice of the class members and [their] claims are based on the same legal theory." Stewart, 563 F. Supp. at 778. Thus, the Court concludes that the third prerequisite of Rule 23 is also satisfied.

In short, if plaintiffs are able to meet the conditions set forth above and the class is also narrowed to exclude nonminority tenants, the four prerequisites set forth in Rule 23(a) will be satisfied.

### III

It is necessary to consider next on what grounds, if any, this action may be maintained as a class action.

This action meets the requirements of Rule 23(b)(1)(A) for maintenance as a class action. Rule 23(b)(1)(A) provides that an action may be so maintained if "the prosecution of separate actions by or against individual members of the class would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ....Fed. R. Civ. P. 23(b)(1)(A). In the absence of class certification here, the tenants who are not

protected by the injunction entered by this Court on February 24, 1987, may bring separate actions challenging the defendants' activities on the same basis as that which underlies this action, thereby raising the definite possibility that the defendants may be subject to inconsistent adjudications of the same issues. The result would be that some tenants could be evicted while others, in the identical legal and factual posture, could not. In fact, if conflicting decisions were rendered as to the legality of continued construction on the same building, defendants would not know how to proceed.

*4 In this situation, certification of a class under Rule 23(b)(1)(A) is appropriate for, as described above, absent such certification the defendants may be placed in an "actual or virtual dilemma" of being confronted with varying adjudications. See Advisory Committee Notes to Rule 23.

Alternatively, this action meets the requirements of Rule 23(b)(2) for maintenance as a class action. Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." The defendants' actions in this case affect the putative class, as defined in accordance with the above reasoning, such that their acts apply generally to the whole class. While this action may involve the award of money damages if plaintiffs were successful, the action does not predominantly seek money damages. The primary relief sought by plaintiffs is an injunction and, thus, this action falls within the ambit of Rule 23(b)(2). See Parker v. Local Union No. 1466, United Steelworkers of America, AFL-CIO, 642 F.2d 104, 107 (5th Cir. 1981); Tustin v. Heckler, 591 F. Supp. 1049, 1068 (D.C.N.J. 1984).

For the reasons stated above, it is this 19th day of March, 1987

ORDERED that this action be and it is hereby certified as a class action, the class defined as the minority persons presently residing in the Dominion Gardens or the Bruce Street apartment complexes,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 4

Not Reported in F.Supp., 1987 WL 9044 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

and those who formerly resided in one of those complexes and left pursuant to a 120-day notice to quit after October 1, 1986, subject to the following conditions:

a. that, within ten days of the filing of this Order, plaintiffs shall file an amended complaint defining clearly and with particularity the class that plaintiffs seek to represent in this action, which should be limited to minority tenants and which should exclude any tenants who do not oppose the defendants' actions that are challenged in this action;

b. that, within ten days of the filing of this Order, plaintiffs shall file with the Clerk of this Court in writing, the names and addresses of all members of such class, to the best of their knowledge and belief;

c. that the class as redefined by plaintiffs in accordance with the first condition set forth above meets the requirements for class certification under Fed. R. Civ. P. 23; and it is further

ORDERED that the injunction set forth in this Court's Order of February 24, 1987, in this action, shall enjoin not only the named defendants, but also their officers, directors, agents, employees, and all those acting in concert with them; and it is further

ORDERED that such injunctive relief shall protect all the members of the class certified above.

FN1.  The FHA prohibits discrimination with respect to housing, inter alia, on the basis of race or national origin.

FN2.  This denial was, of course, without prejudice. If there should be future allegations of activities inconsistent with the preliminary injunction against members of the class established by this order, plaintiffs will be free to return to Court and request either a modification of the injunction or the institution of contempt proceedings.

FN3.  Defendants also argue that conflicting interests exists between tenants

who are current in their rent and otherwise in good standing and tenants who are not current and therefore not in good standing. This argument must be rejected since a tenant's entitlement to protection under the FHA does not depend upon whether he has paid rent in a timely fashion. The claims of tenants in good standing and the tenants delinquent in the payment of their rent are based upon the same legal theory: that the defendants' actions violate the FHA. Furthermore, it may ultimately turn out that tenants are deemed to be not in good standing not because of any deficiency of theirs but because of defendants' discriminatory activities. Accordingly, at this juncture at least, the Court will not dismiss plaintiffs' motion on this ground.

FN4.  E.g., that the class is still sufficiently numerous and that the plaintiffs adequately represent the members of the class.

FN5.  If the class included the non-minority tenants, this prerequisite could probably not be satisfied. The named plaintiffs, minority tenants, are cla iming that they have been discriminated against on the basis of race or nat ional origin, while the non-minority tenants' claims would be based upon a different legal theory, i.e., the right to live in an integrated community.

D.D.C.,1987.
Brown v. Artery Organization, Inc.
Not Reported in F.Supp., 1987 WL 9044 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

**H**
Clark v. State of Calif.
N.D.Cal.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Derrick CLARK, et al., Plaintiffs,
v.
STATE OF CALIFORNIA, et al., Defendants.
**No. C96-1486 FMS.**

May 11, 1998.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT.
SMITH, J.

**\*1** Defendants have filed a motion for summary judgment on the grounds that (1) plaintiffs failed to exhaust their administrative remedies as required by 42 U.S.C. § 1997(e); (2) plaintiffs failed to exhaust their state law remedies; (3) plaintiffs have not established equal protection violations; and (4) plaintiffs lack standing to pursue the systematic relief requested in their complaint. Defendants also seek to have the class decertified on the ground that plaintiffs have not demonstrated that the class is so numerous as to make joinder impracticable.

Plaintiffs in this class action are inmates under the control of the California Department of Corrections who are developmentally disabled as defined by California Welfare & Institutions Code § 4512(a). Two developmentally disabled prisoners, Derrick Clark and Ambrose Woods, filed an original complaint on behalf of themselves and all others similarly situated on April 22, 1996. They alleged violations of the Americans with Disabilities Act,

42 U.S.C. § 12131-12133, the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983.

Defendants filed a motion to dismiss on the grounds that (1) the ADA and the RA did not apply to incarcerated felons, (2) plaintiffs' ADA and RA claims were barred by the Eleventh Amendment, (3) plaintiffs lacked standing to pursue their claims, (4) plaintiffs failed to pursue their state law remedies, and (5) the allegations in the complaint were insufficient to state a claim for any of the causes of action. On October 1, 1996, the Court granted the motion with leave to amend as to plaintiffs' § 1983 due process claims and denied the remainder of the motion. On appeal, the Ninth Circuit denied defendant's petition for permission to appeal the Court's decision as to the applicability of the ADA and RA.[FN1]Plaintiffs filed a First Amended Complaint on October 31, 1996 in which they added four additional named plaintiffs and amended their due process claims.[FN2] The court certified the class on February 26, 1997.

> FN1. Defendants have filed a petition for certiorari in the United States Supreme Court. The Supreme Court is reviewing the applicability of the ADA to incarcerated felons this term in *Pennsylvania Dept. of Corrections v. Yeskey,* USSC Case No. 97-634,cert. granted at 522 U.S. 1086, 118 S.Ct. 876, 139 L.Ed.2d 865, 1998 WL 21894 (January 23, 1998).

> FN2. The new named plaintiffs in the First Amended Complaint were Larry Dixon, Jr., Milton Silva, Jack Von Gunten, and Mark Mitchell Morino. On March 26, 1998, following the release from CDC custody of Milton Silva and Ambrose Woods, two other inmates, James Simmons and Estella Holloway, were substituted as named plaintiffs.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiffs have identified six inmates who received disciplinary violations either without having understood the rules they violated or without being provided with staff assistance in defending themselves; six inmates who did not receive staff assistance in classification hearings; three inmates who did not receive assistance in filing administrative appeals; eight inmates subject to physical abuse because of their disabilities; eleven inmates denied adequate medical care because of their disabilities; two inmates denied participation in work programs because of their disabilities; and nine inmates denied participation in educational programs because of their disabilities.[FN3]

> FN3. The numbers of inmates identified as having suffered each harm are taken from defendants' moving papers. Although they do intend to dispute them at trial, for purposes of this motion, defendants accept plaintiffs' claims of injury as true.

Plaintiffs have also offered evidence that there are at least 1,500 developmentally disabled prisoners scattered throughout the CDC system, and that CDC does not have a systematic method of identifying these inmates in order to provide them with assistance and protection. Many of these inmates are functionally illiterate and therefore unable to understand prison rules and regulations, gain access to medical care, and defend themselves without assistance at disciplinary proceedings. They are frequently excluded from educational and vocational programming and work opportunities available to other prisoners, and are subject to abuse and harassment by other inmates and by correctional staff. The parties have stipulated that the defendants acted under color of state law.

## I. Legal Standard

*2 To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact

in dispute. *See* Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, plaintiff is not entitled to rely on the allegations of her complaint. She "must produce at least some 'significant probative evidence tending to support the complaint.' " *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc.,* 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts...." *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 (9th Cir.1980).

## II. Analysis

### A. Exhaustion of Administrative Remedies

In 1996, Congress enacted the Prison Litigation Reform Act (PLRA). The PLRA amended 42 U.S.C. § 1997e(a) to make exhaustion of administrative remedies a jurisdictional predicate for federal actions by prisoners challenging the conditions of their confinement. *See Morgan v. Arizona Dept. of Corrections,* 976 F.Supp. 892

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 3

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

(D.Ariz.1997). Before the passage of the PLRA, prisoners were not required to exhaust administrative remedies in such cases; the previous version of § 1997e allowed district courts to continue cases in order to require exhaustion "if the court believe[d] that such a requirement was appropriate and in the interests of justice." 42 U.S.C. § 1997e(a)(1); *See Wright v. Morris,* 111 F.3d 414, 415 (6th Cir.1997).

Defendants argue that the current version of § 1997e(a) bars plaintiffs' claims because plaintiffs have not alleged that they have sought or exhausted the administrative remedies available in California; however, the amended § 1997e(a) does not apply to this action. Plaintiffs filed their original complaint on April 22, 1996, four days before the PLRA amendments went into effect. As amended, § 1997e(a) does not have any retroactive effect on cases already filed. *See Wright,* 111 F.3d at 423 (finding the language "no action shall be brought with respect to prison conditions until ... [available] administrative remedies ... are exhausted" to be " explicitly prospective").

**\*3** Defendants argue that even if the exhaustion requirement does not apply to the claims of the two class representatives named in the original complaint, it does apply to the claims of additional class representatives added in amended complaints filed after April 26, 1996, the day the PLRA went into effect. The Court disagrees. First, the claims raised in plaintiffs' amended complaints relate back to the allegations of the original complaint. *See* Fed.R.Civ.P. 15(c)(2). Second, the class representatives added by amendment were members of the class alleged in the original complaint, so their claims were brought before the PLRA became effective.

### B. Exhaustion of State Remedies

A § 1983 claim that would invalidate a conviction or sentence is not cognizable unless the conviction or sentence has been reversed, expunged or called into question by a writ of habeas corpus. *See Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). When a prisoner

challenges the procedures used rather than an actual conviction or sentence, the determination whether his challenge is properly brought under § 1983 must be based on whether "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the [resulting] judgment." *Edwards v. Balisok,* 520 U.S. 641, ----, 117 S.Ct. 1584, 1587, 137 L.Ed.2d 906 (1997).

In *Edwards,* the Supreme Court held that a prisoner's § 1983 claim for damages and declaratory relief for denial of due process in a hearing that led to the loss of good-time credits was barred under *Heck.*The plaintiff in *Edwards* alleged that the hearing officer at the prison was biased and had excluded exculpatory evidence. Because such allegations were of a type that had led to the reinstatement of good-time credits in state and federal courts, the Court held that a victory for the plaintiff would necessarily imply the invalidity of his sentence. *See id.* at 1588-89. The question before this Court then is whether these plaintiffs' due process challenge "necessarily implies" the invalidity of their sentences.

In their § 1983 due process challenge, plaintiffs claim that defendants subject class members to disciplinary, grievance, parole, and administrative proceedings which they lack the ability to participate in meaningfully without assistance, and that defendants disseminate prison rules and regulations in written materials which class members lack the ability to read and understand. As a result, class members are deprived without due process of their liberty interest in good-time credits.

Plaintiffs argue that the Court should focus on whether a plaintiff is seeking prospective relief, relying on the *Edwards* Court's observation that the plaintiff's prayer for prospective relief was not barred by *Heck.See id.* at 1589. Although no court has barred a claim for prospective relief under the *Heck* and *Edwards,* plaintiffs' approach ignores that the focus of the inquiry after *Edwards* is on the nature of the challenge rather than on the type of relief sought. The plaintiff's claim for prospective relief in *Edwards* was based on the prison's failure to date-stamp witness statements, a failure that did not "necessarily imply" the invalidity of a previous

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 4

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

loss of good time credits because the failure to date-stamp witness statements would not necessarily lead to the reinstatement of good time credits.

**\*4** Defendants argue that plaintiffs' allegations that they have been deprived of good time credits as a result of procedural defects bars their claims under *Edwards* and *Gotcher v. Wood,* 122 F.3d 39 (9th Cir.1997), *rev'g* 66 F.3d 1097 (9th Cir.1995). Following *Edwards,* the Ninth Circuit reversed its pre-*Edwards* decision in *Gotcher I. Gotcher I* held that a § 1983 claim challenging the procedures used in denying good-time credits rather than the actual denial of credits was cognizable. The plaintiff in *Gotcher* had alleged that the prison failed to give him 24-hour advanced written notice of allegations against him and did not allow him to call witnesses or present documentary evidence in his defense. Without discussion, the panel in *Gotcher II* held that *Edwards* foreclosed the plaintiff's entire compensatory claim. *Id.* at 39.

Because an allegation of wrongful deprivation of good-time credits will always be necessary to establish a due process claim relating to procedures used when good-time credits are at stake, however, defendants' approach appears to be overly broad. In discussing the reach of *Heck v. Humphrey,* the *Edwards* Court reiterated a distinction made in *Heck* between procedural challenges that "necessarily vitiated the denial of good-time credits" and those that did not. *See Edwards,* 520 U.S. at ----, 117 S.Ct. at 1587. As an example of those that did not, the Court referred to the procedures challenged in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where prison officials had failed to specify what facts and evidence supported a finding of guilt in a disciplinary hearing. *See id.* at 563-64. In her concurrence in *Edwards,* Justice Ginsburg emphasized that the decision was based on plaintiff's specific allegations of "deceit and bias on the part of the decisionmaker" and that under *Wolff,* a claim based on allegations of other procedural defects could still be cognizable.

The Court finds that plaintiffs' claims are analogous to the type of claims presented in *Wolff.* Like the failure to provide a prisoner with facts and evidence against him, the failure to provide plaintiffs with

information and assistance to respond meaningfully to charges against them do not "necessarily vitiate[ ] the denial of good-time credits." The provision of information and assistance plaintiffs seek would not compel the reinstatement of good-time credits formerly lost or guarantee that plaintiffs will not lose good-time credits in the future. Although some plaintiffs might be entitled to a new hearing on certain matters if the Court finds a constitutional violation, this Court's findings will not ensure their success on the merits. The Court concludes, therefore, that plaintiffs' § 1983 due process claims are cognizable.

### C. Equal Protection Claims

In order to establish an equal protection claim, plaintiffs must show that defendants have failed to treat them in the same manner as other similarly situated persons. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Defendants argue that plaintiffs cannot maintain their equal protection claims because the non-developmentally disabled prisoners whose treatment they compare to their own are not similarly situated. The Court agrees. *See Hansen v. Rimel,* 104 F.3d 189 (8th Cir.1997). In *Hansen,* a hearing-impaired inmate brought an equal protection claim alleging that prison officials' failure to provide him with a special telephone denied him telephone access enjoyed by inmates without hearing impairments. The court dismissed the claim because the plaintiff, who could not use a standard telephone, was not "equally capable for the purpose at issue." *Id.* at 190.

**\*5** Plaintiffs argue that for the purposes at issue in this action, they are similarly situated to non-disabled inmates but are receiving different treatment. Plaintiffs claim, however, that they are barred from access to medical care because they are unable to understand and complete the written forms that all prisoners are required to use. They also claim that they are unable to participate in the educational programming offered in the prisons because the level of programming offered to all prisoners is too advanced for them. It appears that all of the different treatment plaintiffs claim to be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 5

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

receiving is the result not of defendants' disparate treatment of them but of their own disabilities. It is difficult to understand, therefore, in what way the equal protection clause is implicated.[FN4]

> FN4. Although plaintiffs' equal protection claims might be viable under a disparate impact rubric, plaintiffs' counsel emphasized at oral argument that the claims are for disparate treatment rather than disparate impact.

### D. Standing

Defendants argue that the Supreme Court's decision in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), requires plaintiffs to demonstrate widespread actual injury to members of the plaintiff class in order to have standing to pursue systemwide relief. As plaintiffs point out, defendants have mistakenly grafted the requirements for obtaining systemwide relief onto the *Lewis* Court's separate discussion of standing.

The plaintiffs in *Lewis* were inmates in the Arizona state prison system. They brought a class action on behalf of all adult present and future prisoners incarcerated by the state of Arizona Department of Corrections (ADOC), alleging that ADOC was depriving them of their right of access to the courts and to counsel under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). *Id.* at 2177. After a trial, the district court found that ADOC's system failed to comply with constitutional standards, and that lockdown prisoners and illiterate or non-English-speaking prisoners were particularly affected by the system's inadequacies. Based on the recommendations of a special master, the court entered an injunction mandating sweeping changes in ADOC's prison library and legal assistance practices, and requiring new procedures and services for lockdown prisoners and illiterate or non-English speaking prisoners. *Id.* at 2178. The Supreme Court reviewed the scope of the relief granted and held that because the plaintiffs had failed to demonstrate widespread actual injury, they were not entitled to systemwide relief.

The *Lewis* Court held as a threshold matter that in order to have standing, a plaintiff alleging a *Bounds* violation must demonstrate that he was deprived of the ability to pursue a non-frivolous legal claim, not just that the available legal resources were inadequate in the abstract. *Id.* at 2180-81. Applying this rule, the Court found only two instances of actual injury in the record. *Id.* at 2182. Based on that finding, the Court held that systemwide relief was not warranted. This holding "does not rest upon the application of standing rules. " *Id.* at 2184, n. 7. It merely imposes a burden on plaintiffs seeking broad relief to prove that such relief is commensurate with the scope of the harm.[FN5]

> FN5. Similarly, *Toussaint v. McCarthy,* 926 F.2d 800 (9th Cir.1987), cited by defendants, only held that there was no basis for an injunction requiring a court-appointed monitor to review a prison's administrative proceedings when only five actual injuries out of 780 potential cases had been identified. Neither *Toussaint* nor *Lewis* imposes a mathematical standing requirement; they merely require plaintiffs seeking broad relief to show widespread harm.

*6 Defendants urge that in order to meet this burden on summary judgment, plaintiffs must prove the breadth of the harm by presenting the Court with specific evidence about the experiences of numerous inmates. Defendants are mistaken. Plaintiffs' burden at this juncture is to raise a genuine issue of fact regarding the existence of widespread injury. They must offer more than their allegations, but there is no requirement that their evidence be in the form that defendants urge.

Plaintiffs have submitted declarations and depositions from eleven inmates attesting to the injuries alleged in the complaint. They have also submitted the declarations of two experts, Albert S. Duncan, Ph.D. and Craig William Haney, Ph.D., indicating that there are at least 1,500 developmentally disabled prisoners scattered throughout the CDC system, and that CDC does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 6

Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

have a systematic method of identifying these inmates in order to provide them with assistance and protection. Based on observation, review of documents and depositions, and his own interviews with inmates and prison personnel, it is Dr. Duncan's opinion that developmentally disabled inmates in CDC institutions are subject to all of the harms that the named plaintiffs have allegedly suffered. Such evidence is sufficient to demonstrate that there are factual questions in dispute regarding the breadth of the harm to the plaintiff class.[FN6]

> FN6. Raising a genuine issue of material fact does not necessarily imply victory at trial. Further, defendants are apparently willing to grant the relief sought. *See* Declaration of William Jenkins, Exhibit C. Both sides are cautioned that continuing to spend taxpayers' funds on unnecessarily protracting this litigation will not be well-received by the Court.

### E. Decertification

Defendants argue that the class should be decertified because plaintiffs have failed to meet the numerosity requirement of Rule 23(a). Because plaintiffs have offered evidence that there are at least 1,500 developmentally disabled inmates under the control of the CDC and that the policies and practices causing harm to the named plaintiffs are in place throughout the system, defendants' motion to decertify is DENIED.

Defendants' motion for summary judgment is GRANTED as to plaintiffs' § 1983 equal protection claims; these claims are DISMISSED with prejudice. Defendants' motion is DENIED as to exhaustion of administrative remedies, exhaustion of state remedies, and standing. Defendants' motion for decertification is DENIED.

SO ORDERED.

N.D.Cal.,1998.
Clark v. State of Calif.
Not Reported in F.Supp., 1998 WL 242688 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

98 Fed.Appx. 1                                                                      Page 1

98 Fed.Appx. 1, 2004 WL 852218 (C.A.D.C.)
(Cite as: 98 Fed.Appx. 1)

**H**
Maydak v. U.S.
C.A.D.C.,2004.
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. District of Columbia Circuit Rule 28(c). (FIND CTADC Rule 28.)
United States Court of Appeals,District of Columbia Circuit.
Keith MAYDAK, et al., Appellants,
v.
UNITED STATES OF AMERICA, et al., Appellees.
No. 02-5168.

April 20, 2004.

**Background:** Inmates brought action alleging that Bureau of Prisons (BOP) improperly withheld newspaper subscription, destroyed personal property, and refused their requests for religious-based vegan diet. The United States District Court for the District of Columbia, Emmet G. Sullivan, J., entered summary judgment in favor of government, and inmates appealed.

**Holdings:** The Court of Appeals, Tatel, Circuit Judge, held that:

(1) withholding of newspapers from inmate while he was in disciplinary segregation was proper;

(2) fact issues remained as to whether inmate established ownership of confiscated property; and

(3) inmates' claims for declaratory and injunctive relief were moot.

Affirmed in part, reversed in part, and remanded.
West Headnotes
**[1] Constitutional Law 92 ⚖1422**

92 Constitutional Law
    92XIII Freedom of Religion and Conscience
        92XIII(B) Particular Issues and Applications
            92k1421 Prisons and Pretrial Detention
                92k1422 k. In General. Most Cited Cases
    (Formerly 92k84.5(14))

**Prisons 310 ⚖4(8)**

310 Prisons
    310k4 Regulation and Supervision
        310k4(8) k. Access to Reading Matter. Most Cited Cases
Withholding of newspapers from inmate while he was in disciplinary segregation was reasonably related to legitimate penological interest in deterring and punishing misbehavior, and thus did not violate inmate's First Amendment rights, where inmate enjoyed access to other reading materials, accommodating inmate would have made disciplinary segregation appear less unattractive, and there was no real alternative that could have been undertaken as disciplinary measure. U.S.C.A. Const.Amend. 1; 28 C.F.R. § 541.21(c)(8).

**[2] Federal Civil Procedure 170A ⚖2491.5**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Genuine issue of material fact as to whether inmate established ownership of confiscated personal property precluded summary judgment in inmate's action alleging that Bureau of Prisons (BOP) had improperly destroyed property. 28 C.F.R. § 553.13.

**[3] Civil Rights 78 ⚖1376(7)**

78 Civil Rights
    78III Federal Remedies in General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 Fed.Appx. 1                                                                                    Page 2

98 Fed.Appx. 1, 2004 WL 852218 (C.A.D.C.)
**(Cite as: 98 Fed.Appx. 1)**

        78k1372 Privilege or Immunity; Good Faith
and Probable Cause
                78k1376 Government Agencies and
Officers
                78k1376(7) k. Prisons, Jails, and Their
Officers; Parole and Probation Officers. Most
Cited Cases
Federal inmates did not have clearly established
right to religious-based vegan diet, and thus Bureau
of Prisons (BOP) employees who denied inmates'
request for such diet were entitled to qualified
immunity from liability in connection with inmates'
claims.

**[4] Declaratory Judgment 118A ⬚84**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(A) Rights in General
                118Ak84 k. Criminal Laws. Most Cited
Cases
Former federal inmates' action requesting
declaratory and injunctive relief requiring Bureau of
Prisons (BOP) to provide them with religious-based
vegan diet was moot, where one inmate had been
released from BOP custody, and other inmate was
currently in custody of Canadian officials.

**\*1** Appeal from the United States District Court for
the District of Columbia. (No. 97cv02199).

Keith Maydak, British Columbia, Canada, pro se.
Paul Lee, Lexington, KY, pro se.
Gregory Smith, East McKeesport, PA, pro se.
R. Craig Lawrence, Assistant U.S. Attorney, Roscoe
Conklin Howard, Jr., U.S. **\*2** Attorney, Michael
Joseph Ryan, Assistant U.S. Attorney, Michael
Conrad Johnson, U.S. Attorney's Office,
Washington, DC, for Defendant-Appellee.

Before RANDOLPH, ROGERS, and TATEL,
Circuit Judges.

### JUDGMENT

**\*\*1** This appeal was considered on the record from
the United States District Court for the District of
Columbia and on the briefs and arguments of the

parties. It is

**ORDERED AND ADJUDGED** that the judgment
of the district court be affirmed in part, reversed in
part, and the case remanded for further proceedings,
in accordance with the unpublished memorandum
and the published opinion issued herein this date.

Pursuant to D.C.Cir. Rule 36, the memorandum will
not be published. The Clerk is directed to withhold
issuance of the mandate herein until seven (7) days
after resolution of any timely petition for rehearing
or rehearing en banc. *See*Fed. R.App. P. 41(b);
D.C. Cir. Rule 41.

\* Opinion for the court filed by Circuit Judge Tatel

Appellants Keith Maydak and Gregory Smith were
inmates in the custody of the Federal Bureau of
Prisons at the time they filed this action against the
United States, the Federal Bureau of Prisons, and
two BOP officials. Appellants' Privacy Act and
Inmate Trust Fund claims are resolved in a
published opinion issued simultaneously herewith.
This memorandum resolves the remaining issues,
which do not require a published opinion:
appellants' claims regarding the withholding of
Maydak's *Wall Street Journal* subscription, the
destruction of Maydak's personal property, and the
denial of Maydak's and Smith's requests for a
religious-based vegan diet.

**[1]** While Maydak was in disciplinary segregation
at the Beckley federal correctional institution,
prison staff withheld his daily subscription to the
*Wall Street Journal.* After his release from
disciplinary segregation, staff returned all back
copies of the *Journal,* but destroyed them a few
days later pursuant to prison regulations prohibiting
the accumulation of material that may represent a
fire, sanitation, security, or housekeeping hazard.
*See*28 C.F.R. § 553.11(b) (2003). We find no error
in the district court's grant of summary judgment to
the government on Maydak's First Amendment, tort,
and contract claims. *See Maydak v. United States,*
No. 97-2199, slip op. (D.D.C. May 4, 2001). With

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 Fed.Appx. 1                                                                    Page 3

98 Fed.Appx. 1, 2004 WL 852218 (C.A.D.C.)
**(Cite as: 98 Fed.Appx. 1)**

respect to Maydak's constitutional claim, the government has shown that withholding particular publications from inmates in disciplinary segregation is reasonably related to legitimate penological interests. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (establishing a four-factor analysis for determining the constitutional validity of prison regulations). The practice of limiting reading materials during such segregation, 28 C.F.R. § 541.21(c)(8) (2003), bears a "valid, rational connection" to the legitimate governmental interest in deterring and punishing misbehavior, *see Turner v. Safley,* 482 U.S. at 89 (internal quotation marks omitted), because permitting inmates whatever reading materials they desire would eliminate one of the punitive aspects of disciplinary segregation (factor one). The government also satisfies the other three factors: Maydak enjoyed access to other reading materials (factor two), accommodating Maydak would make disciplinary segregation appear less unattractive, having a potentially **\*3** adverse effect on other inmates' incentives for following prison rules (factor three), and Maydak points to no real alternative that BOP could undertake as a disciplinary measure (factor four). Maydak's tort and contract claims fail because he has alleged no facts showing that BOP had any duty to deliver newspapers to him while he remained in disciplinary segregation, nor has he presented any evidence demonstrating that BOP behaved negligently in destroying the papers.

**\*\*2** [2] While Maydak was in disciplinary segregation, Beckley prison staff also confiscated two pieces of his property, a Radisson Worldwide hotel directory and a "Coles" directory. Staff eventually destroyed the directories pursuant to BOP rules that allow for the destruction of contraband if inmates fail to prove ownership of the property within a specified period of time. *See* 28 C.F.R. § 553.13 (2003). The district court granted summary judgment to the government on Maydak's claim for compensation under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (2000 & Supp. III 2003). *Maydak,* No. 97-2199, slip. op. at 11. Maydak alleged, however, that the "property lieutenant," a prison employee, acknowledged that the items were Maydak's, that "ownership was not the issue," and that the property would be held until

Maydak's lawsuits were adjudicated. Maydak Supplemental Decl. Opp'n Summ. J. ¶ G9. The government presents no evidence to the contrary, simply declaring that the "confiscation and destruction of [the directories] appear[ ] to be within the guidelines promulgated by the Bureau of Prisons." Hopkins Decl. ¶ 8. In fact, the government shifted its argument during summary judgment briefing: in its motion for summary judgment, it argued that prison staff destroyed the directories because Maydak failed to *claim* ownership-despite the prison confiscation form showing that Maydak had done so; but in reply to Maydak's opposition to summary judgment, it argued that Maydak failed to *provide evidence* of ownership. Because the record reveals a genuine issue of material fact as to whether Maydak established ownership of the directories as required by BOP rules, the grant of summary judgment on this issue is reversed and the matter remanded for further proceedings. *See Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[3][4] Claiming that they practice the Wicca religion, Maydak and Smith requested that BOP provide them with a religious-based vegan diet. BOP denied the request, stating that appellants could accommodate their dietary needs by selecting non-meat and non-dairy items from the pre-existing food lines. Appellants seek injunctive and declaratory relief, as well as damages against the BOP Director and BOP Administrator of National Inmate Appeals. The district court dismissed the damages claim against the two BOP officials for want of personal service, and in the alternative, for failure to state a claim. *Maydak,* No. 97-2199, slip. op. at 2-4. The district court also found that the declaratory and injunctive relief claims were moot because BOP had implemented a nationwide "no flesh" diet, released Maydak to a community program, and moved Smith to another facility. *Id.* at 4-5. We affirm, albeit on different grounds. With respect to appellants' claim for damages, qualified immunity shields the two BOP officials from liability. Appellants have alleged no facts indicating that the actions of the two officials were not "objectively reasonable, as measured in light of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 Fed.Appx. 1                                                                              Page 4

98 Fed.Appx. 1, 2004 WL 852218 (C.A.D.C.)
**(Cite as: 98 Fed.Appx. 1)**

the legal rules that were 'clearly established' at the time of their actions." *Kalka v. Hawk,* 215 F.3d 90, 94 (D.C.Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Appellants' requests for declaratory and injunctive**4** relief are no longer properly before this court. Smith's claims are moot as he has been released from BOP custody. Maydak is currently in the custody of Canadian officials while the United States seeks his extradition. Not only is it unclear when he will be returned to the United States, but Maydak indicates that he may avail himself of "additional due process and judicial review avenues" in the Canadian justice system. Appellants' Reply Br. at 1. Because Maydak cannot show imminent injury with respect to his claim for injunctive relief, nor how his purported past injury could be redressed by a declaratory judgment, we lack jurisdiction over his claims for equitable relief. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 106-07, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

**3** We have considered appellants' remaining arguments and find them without merit. Therefore, the district court's judgment is reversed and remanded for further proceedings with respect to the destruction of the directories, and affirmed in all other respects.

C.A.D.C.,2004.
Maydak v. U.S.
98 Fed.Appx. 1, 2004 WL 852218 (C.A.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                Page 1

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Williams v. Glickman
D.D.C.,1997.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Robert WILLIAMS, et al., Plaintiffs,
v.
Daniel R. GLICKMAN, Secretary, U.S. Dept. of
Agriculture, Defendant.
**No. Civ.A. 95-1149(TAF).**

Feb. 14, 1997.

FLANNERY, J.
**\*1** The plaintiffs in this case applied for farm loans
with the former Farmers Home Administration (" FmHA") of the United States Department of
Agriculture ("USDA") or sought the FmHA's
assistance with farm loans. Claiming the FmHA
discriminated against them because of their race or
national origin, the plaintiffs sued Daniel R.
Glickman, the Secretary of the USDA (the "Secretary"), in his official capacity, seeking
damages and equitable relief under the Equal Credit
Opportunity Act, 15 U.S.C. § 1691 ("ECOA");
equitable relief under 42 U.S.C. § 1982 and the
Fifth Amendment; and equitable relief for their
common law claims of fraud and misrepresentation.
FN1

> FN1. The Court has dismissed several
> additional claims raised by the plaintiffs.
> *See Williams v. Glickman,* 936 F.Supp. 1
> (D.D.C.1996).

Pending before the Court is the plaintiffs' Motion
for Class Certification. After considering the
arguments and authorities presented in the briefs
filed by the parties, the arguments presented at the
December 13, 1996 hearing on this matter, as well
as the entire record herein, the Court will deny the

plaintiffs' motion for the following reasons.

I. BACKGROUND

A. *The Federal Farm Loan Program*

The FmHA,FN2 the credit agency for agriculture in
the USDA, is statutorily authorized to make loans to
farmers who have trouble obtaining credit from
commercial institutions. *See* Consolidated Farm and
Rural Development Act, 7 U.S.C. § 1921 *et seq.;*
Federal Agricultural Improvement and Reform Act
of 1996, Pub.L. No. 104-127 §§ 601-663, 110 Stat.
888, 1084-1108 (April 4, 1996). Such loans are
made upon the borrower's full personal liability, and
typically are secured by chattels, crops or real estate.

> FN2. In 1994, the FmHA was reorganized,
> and its functions were transferred to an
> entity within the USDA known as the
> Farms Service Agency. For the sake of
> simplicity, the Court will refer to that
> agency as the FmHA.

The FmHA makes loans for a number of different
purposes. Such loans include: "farm ownership"
loans, which are intended to assist farmers in buying
or improving farm property, *see* 7 C.F.R. § 1943.2
(1996); "operating" loans, which provide credit and
management assistance to help farmers run their
farms, *see* 7 C.F.R. § 1941.2; and emergency loans,
which are intended to help farmers resume
operations after an officially-declared disaster. *See* 7
C.F.R. § 1945.152. Until recently, the FmHA was
authorized to make "annual production" or "
continuing assistance" loans to certain delinquent
borrowers who had acted in good faith but were
nevertheless unable to repay their loans due to
unexpected circumstances.FN3 *See* 7 C.F.R. §
1941.14. And the FmHA was formerly able to make
loans which helped farmers continue operations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

during economic emergencies.[FN4] *See* 7 C.F.R. §§ 1945.101-02.

> FN3. Section 648(b) of the 1996 Act prohibited the FmHA from making annual production loans to delinquent borrowers, although limited authority for loans requested prior to April 5, 1996 was restored by § 2002 of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134 (April 26, 1996).

> FN4. The FmHA's authorization to make such loans was repealed in 1990. *See* Food, Agriculture, Conservation, and Trade Act of 1990, Pub.L. No. 101-624 § 1851, 104 Stat. 3359, 3837 (Nov. 28, 1990).

To apply for an FmHA loan, a qualified applicant[FN5] must submit a Farm and Home Plan ("FHP"), which includes the applicant's farming record, financial condition, and an explanation of how the loan proceeds will be used. The FHP must demonstrate that the applicant's expected cash flow is sufficient to repay the requested loan. *See* 7 C.F.R. §§ 1941.4, 1943.4, 1943.24. A three-farmer county committee reviews the FHP[FN6] and forwards acceptable applications to the FmHA's county supervisor for final approval or disapproval. Denials of loan applications may be appealed.

> FN5. An applicant for an FmHA loan must not be able to obtain credit elsewhere. *See* 7 C.F.R. §§ 1941.2, 1943.2.

> FN6. In evaluating loan applications, the FmHA considers not only the FHP, but also the overall limits on the amount of debt that an applicant may carry, *id.* §§ 1941.29, 1943.29, and the adequacy of collateral or security. *Id.* §§ 1941.33(b), 1943.33(b).

**\*2** In addition to providing loans, the FmHA also provides loan servicing options for borrowers who

become delinquent on their loans. For example, the FmHA provides "primary loan servicing" for delinquent borrowers, which includes such options as debt restructuring, deferral, or write-down. 7 C.F.R. § 1951.909(e). Delinquent borrowers may also request "debt settlement," including compromise of the debt, as well as adjustment, cancellation, or charge-off of the debt. *See* 7 C.F.R. § 1956.54.

### B. *The Claims of the Proposed Class Representatives*

Robert Williams is a black farmer who lives in Roscoe, Texas. In 1989, Williams applied for a loan with the FmHA in order to purchase a 349-acre farm. His application was approved. However, soon after Williams purchased the farm, the FmHA denied Williams's application for an operating loan, stating that Williams's FHP indicated a lack of sufficient cash flow to service the debt. Williams and his wife filed an administrative complaint of discrimination with the UDSA's Office of Civil Rights Enforcement ("OCRE") alleging that (1) their local FmHA office should not have loaned them money to buy their farm based on the FHP they had submitted; (2) the FmHA did not use all available loan servicing tools to assist them with their farm operation; and (3) the state and county offices refused to process their continuation loan application after they filed a complaint of discrimination.

OCRE determined that Mr. and Mrs. Williams were indeed discriminated against because of their race, and ordered the FmHA to relocate them to another farm, to provide supervision in farm management, and to pay off certain debts they had incurred.

Welchel Long is a black farmer who lives in Dewey Rose, Georgia. He too filed a complaint with OCRE, alleging that his local FmHA office had discriminated against him based on his race over a period of ten years. OCRE concluded that Long " has been affected by systemic discrimination resulting from FmHA officials' lack of consistency and uniformity in their interpretation, application and administration of FmHA loan policies, practices

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

and procedures."Specifically, OCRE found that FmHA officials (1) provided loans to Long when his FHP was not feasible; (2) failed to provide close technical guidance and management supervision as required by FmHA regulations; and (3) did not provide loans to Long in a timely manner as required by FmHA regulations. It is not clear from the record what steps OCRE took to remedy this discrimination.

Walter Powell is a black farmer who lives in Monroe, Louisiana. Ruling on Powell's administrative complaint of discrimination, OCRE found that Powell's local FmHA office had discriminated against him because of his race when it (1) first approved, and then rejected Powell's debt settlement offer; (2) falsely accused him of possessing certain machinery and equipment; (3) carried out an administrative offset against him; (4) lost his application for a debt settlement; (5) asked him to sign a blank debt settlement application; and (6) initiated a foreclosure action against him. It is not clear from the record what steps OCRE took to remedy this discrimination.

**\*3** Jim Bowie [FN7] is a black farmer who lives in Colfax, Louisiana. Ruling on Bowie's administrative complaint, OCRE found that local and state FmHA officials had discriminated against him when they rejected his loan and servicing requests over a six-year period, and when they failed to inform him of certain appeal rights. As a result of this finding, OCRE ordered the FmHA to cancel Bowie's debt with them, and to release him from personal liability.

> FN7. Although the plaintiffs have submitted affidavits and other documents concerning Jim and Grace Bowie's allegations of discrimination, the Court notes that their names do not appear in the caption of the complaint. However, because the Secretary has been on notice of their claims since the complaint was filed-the Bowies are listed as plaintiffs in the body of the complaint-the Court will treat them as plaintiffs for the purposes of this motion.

Henry Herrera is an Hispanic farmer who lives in Roscoe, Texas. After receiving financial assistance from the FmHA for seven years, Henry Herrera applied for an additional loan in 1989. The FmHA denied this request because of an inadequate FHP. As a result of the denial of his loan, Henry Herrera stopped farming in 1990. Four years later, in 1994, Henry Herrera spoke with an officer of his local FmHA office about applying for loan servicing and rescheduling of his FmHA debts. That officer told him that there was nothing he could do, and discouraged him from seeking further assistance. As a result of this incident, Henry Herrera filed a complaint with OCRE alleging race discrimination. Henry Herrera's administrative complaint is still pending.

Sixto Herrera, Henry Herrera's brother, is an Hispanic farmer living in Roscoe, Texas. Sixto Herrera's claims are similar to those of his brother. Sixto Herrera approached the same local FmHA official his brother had approached, and asked him about restructuring his FmHA debt so he could resume farming. The official told Sixto Herrera that there was nothing the FmHA could do to help him. As a result of this incident, Sixto Herrera filed a complaint with OCRE alleging race discrimination; that complaint is still pending.

## II. DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure permits individual litigants to file suit on behalf of a class. This procedure is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Class relief is "peculiarly appropriate" when the " issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class."*Id.* Under these circumstances, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

fashion under Rule 23."*Id.*

The plaintiffs [FN8] seek certification of the following class:

> FN8. LaVerne Williams, Robert Williams's wife, and Emma Long, Welchel Long's wife, are also named as plaintiffs in this case. Gracie Bowie, like her husband Jim, was not named in the caption of the original complaint, but has been named in subsequent captions. *See* footnote 7.

All African American or Hispanic American persons who, between 1981 and the present, have suffered from racial or national origin discrimination in the application for or the servicing of loans or credit from the FmHA (now Farm Services Agency) of the USDA, which has caused them to sustain economic loss and/or mental anguish/emotion [sic] distress damages.

**\*4** Rule 23 of the Federal Rules of Civil Procedure sets forth a two-step procedure to determine whether a class action is appropriate. First, the Court must decide if the proposed class meets the four preliminary requirements of Rule 23(a). Second, the class must also meet one of the three subsections of Rule 23(b). The Court has broad discretion to determine whether a particular action is worthy of certification. *Franklin v. Barry,* 909 F.Supp. 21, 30 (D.D.C.1991).

### A. *Rule 23(a)*

Rule 23(a) states:

### Prerequisites to a Class Action

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A trial court must conduct a "rigorous analysis" before concluding that the requirements of Rule 23(a) have been satisfied. *Falcon,* 457 U.S. at 160-61. All four elements must be present before the Court may certify the proposed class.

### 1. *Membership in a clearly defined class*

The proposed class must first meet a requirement which is not explicit in the text of Rule 23: the class must be susceptible to precise definition.*Lewis v. National Football League,* 146 F.R.D. 5, 8 (D.D.C.1992); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981) ("it is axiomatic that for a class action to be certified a 'class' must exist"). This requirement alerts the Court and the parties to the potential burdens of certification. *Simer,* 661 F.2d at 670. A class must be ascertainable for another important reason: the outcome of the class action suit is binding on all unnamed class members. *Harris v. General Dev. Corp.,* 127 F.R.D. 655, 658 (N.D.Ill.1989); *seealsoSimer,* 661 F.2d at 670 ("identifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided").

A proposed class must be clearly defined in order to make it "administratively feasible for the court to determine whether a particular individual is a member."*Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y.1983) (quoting 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1760 at 581 (1972)). Here, the Court must answer several fact-intensive questions to determine if a given person is a member of the proposed class, including (1) whether that person suffered from discrimination in connection with that person's dealings with the FmHA; (2) whether that person suffered economic loss or emotional distress; and (3) whether such loss or distress was caused by the FmHA's discrimination.[FN9]*SeeFalcon,* 457 U.S. at 160-61 (emphasizing need for "more precise pleadings"; "without reasonable specificity, the court cannot define the class, cannot determine whether the representation is adequate, and the employer does not know how to defend."); *Simer,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                         Page 5

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

661 F.2d at 670-71 (the practical difficulties of identifying the members of an "amorphous" class was a "proper factor for the district court to consider in denying class certification"). Because the Court must answer numerous fact-intensive questions before determining if an individual may join the class, the proposed class is not clearly defined.[FN10]

> FN9. For further explanation of individual issues, *see* discussion of Rule 23(b)(3) below.

> FN10. The plaintiffs claim that there is no need for every member of the proposed class to be identifiable for purposes of class certification. While true enough, this argument does not change the fact that the Court must resolve complicated factual and legal questions for *each* potential plaintiff to determine if he or she qualifies for the class.

**\*5** The proposed class is also overly broad. It is not limited to any specific policy or practice which is alleged to be discriminatory; instead, the class purports to include those black and Hispanic farmers who have suffered *any* type of discrimination in their dealings with the FmHA.

### 2. *Numerosity*

The plaintiffs must establish that "the class is so numerous that joinder of all members is impracticable."Fed.R.Civ.P. 23(a). They must show, in other words, that the number of members of the prospective class is so large that it would be extremely difficult or inconvenient to join all the members of the class. *Franklin v. Barry,* 909 F.Supp. 21, 30 (D.D.C.1991). This determination depends on the circumstances of each case. *Id.*

To make their case that the proposed class is sufficiently numerous, the plaintiffs have submitted some forty administrative complaints of discrimination [FN11] to the Court.[FN12]In doing so, the plaintiffs appear to assume that anyone who

files an administrative complaint is entitled to membership in the class. This is not necessarily so. Indeed, a close look at the submitted complaints reveals that many of the complainants do not qualify as members of the proposed class. One of the complainants, a *white* farmer, clearly does not qualify. Reply, Exhibit 3. Still other complaints allege "minority" or "race" status as the basis of discrimination, but do not indicate whether the complainant is black or Hispanic. Reply, Exhibit 48; Motion to Supplement, Exhibit 5. Several other complainants have filed separate discrimination actions in federal district court, and would not be entitled at a second bite at the apple as class plaintiffs.[FN13]Reply, Exhibits 8, 25. Another claimant, after filing an administrative complaint, wrote the authorities that "I am satisfied with his apology regarding my discrimination complaint against him. I have decided not to pursue this matter further."Reply, Exhibit 12. Still others withdrew their complaints for other reasons. Reply, Exhibits 23, 24. And still other complaints appear to be barred by the six-year statute of limitations. *See* Reply, Exhibit 2. In several other cases, the USDA *agreed* that the complainants were discriminated against because they were black or Hispanic, and presumably received administrative relief as a result. Reply, Exhibits 20, 21, 46; Motion to Supplement, Exhibit 4.

> FN11. Based on the Secretary's First Supplemental Interrogatory Answer No. 10, the plaintiffs claim that "the proposed class consists of at least 127 Black and Hispanic families."Motion at ¶ 42. However, this interrogatory response concerns the numbers of administrative complaints of *race and national origin* discrimination filed with the USDA regarding farm loan programs; neither the interrogatory nor the answer were limited to complaints filed by blacks or Hispanics.
> The plaintiffs soft-pedal this problem, assuring the Court that further investigation will reveal how many of the cited administrative complaints were actually filed by blacks and Hispanics. Because the results of any such "further

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                     Page 6

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

investigation" are not before the Court, the Court will not guess what those results might be.

FN12. In addition to the administrative complaints, the Court has granted the plaintiffs' motion to supplement the record with the following evidence: (1) a preliminary inquiry, dated April 8, 1993, into discrimination in a Virginia FmHA office; (2) an administrative decision, dated October 11, 1996, concluding that the FmHA had discriminated against John W. Boyd, Jr.; (3) a letter from Willie D. Cook, dated July 18, 1996, referring to an administrative finding of the FmHA's discrimination against Willie L. Crute, Jr.; and (4) newspaper articles in which the Administrator of the Farmer Service Agency is quoted as acknowledging " instances of discrimination responding to requests for our services in the past."*See Williams v. Glickman,* Civil Action No. 95-1149 (D.D.C. January 21, 1997).
The Court has considered this evidence. But the Court notes that the plaintiffs' motion to supplement merely *describes* this evidence without explaining how it strengthens their case. Without such guidance from the plaintiffs, the Court has not given this evidence substantial weight. In any case, as the Court observed in its January 21, 1997 order, this evidence is cumulative of the evidence the plaintiffs had previously submitted.

FN13. Indeed, all of those who filed administrative complaints which were rejected were notified of their right to appeal the rejection; the plaintiffs have not told the Court how many of them did so.

Granted, the proposed class is defined so broadly that it includes those who claim discrimination regarding virtually any aspect of the loan process. Nonetheless, the Court is not willing to assume that this group is sufficiently numerous to meet the requirements of Rule 23(a).*SeeKinsey v. Legg. Mason & Co., Inc.,* 60 F.R.D. 91, 100 (D.D.C.1973)

("mere conjecture" may not be the basis for a finding of numerosity), *rev'd on other grounds,*557 F.2d 830 (D.C.Cir.1977). The plaintiffs bear the burden of showing that the requirement of numerosity has been met. They have not carried this burden.

### 3. *Common Questions of Law and Fact*

**\*6** The plaintiffs must next show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Stressing that "racial discrimination is by definition class discrimination," *General Telephone Co. v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the plaintiffs claim that the common legal issue in this case is the existence of a "common thread of discrimination in the granting and servicing of loans by FmHA, which is a basic issue that affects all or a significant number of the putative class."The plaintiffs acknowledge the Department of Agriculture's stated policy of anti-discrimination, FN14 but claim the county supervisors under the FmHA had "unbridled discretion to determine whether or not to award or service farm loans to minority applicants."Under these circumstances, the plaintiffs argue, the fact that they "want to be treated the same as white farmers and they have been denied that equal treatment" as well as the fact that they have all suffered the same "injury"-that is, denial of credit and loan servicing-establishes common questions of law.

FN14.*See*7 C.F.R. §§ 15.51, 1901.202(b)).

It is true, as a general matter, that "racial discrimination is by definition class discrimination." *Falcon,* 457 U.S. at 157. However, "the allegation that such discrimination has occurred ... neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified."*Id.* Potential class plaintiffs must make a "specific presentation identifying the questions of law or fact that were common to the claims of [the class representative] and of the members of the class he sought to represent."FN15*Id.* at 158.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

FN15. It makes sense to require the plaintiffs to make such a specific presentation. If one allegation of discriminatory treatment were enough, every discrimination case could become a class action case, regardless of the circumstances of the alleged discrimination. *SeeFalcon,* 457 U.S. at 158-59.

In *Wagner v. Taylor,* a would-be class plaintiff sought to certify a class consisting of disappointed applicants and/or employees who eventually were fired, denied promotions, or discriminated against in the terms and conditions of their employment. 836 F.2d 578, 593 (D.C.Cir.1987). The plaintiff asserted that the common question of law or fact was "the common threat of discrimination that confronts all members of the class."*Id.* The D.C. Circuit found that this bare allegation of discrimination, by itself, did not establish among members of the proposed class the commonality mandated by Rule 23(a).*Id.*

Like the *Wagner* plaintiff's claim of a "common threat of discrimination that confronts all members of the class," the plaintiffs' bare allegation of a " common thread of discrimination" does not satisfy the *Falcon* Court's requirement of a rigorous " specific presentation." The plaintiffs have not shown the existence of a common legal question. [FN16] *SeeHartman v. Duffey,* 19 F.3d 1459, 1472 (D.C.Cir.1994) ("there is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group.").

FN16. The *Falcon* Court recognized that " *significant proof* that an employer operated under a general policy of discrimination conceivably could justify a class ... if the discrimination manifested itself ... in the same general fashion, such as through *entirely subjective decisionmaking processes."*457 U.S. at 159 n. 15 (emphasis added). Although the plaintiffs have claimed that the local FmHA supervisors had "unbridled discretion" in

making their decisions, they have not presented "significant proof" that this is so. Merely stating that the supervisors had such discretion is not enough to establish the existence of a common legal question.

Turning to the existence of common factual questions, the plaintiffs propose a long list of some 24 factual issues that are supposedly common to " all members of the Class." Several of these issues are quoted below:
*7 * County officials discourage minority applicants from seeking FmHA assistance by imposing unduly high or restrictive eligibility requirements.
* When applicants presented figures for a farm and home plan that appear to work, the officials would change the figures.
* FmHA promised operating money that was, in fact, not received. When an applicant would actually either sign a mortgage or be prepared to sign a mortgage, FmHA did not provide the money to the farmer.
* FmHA intentionally over-valued equipment in real estate appraisals.
* State or county officials or offices refused to process continuation of loan applications, in retaliation, if a farmer filed a discrimination complaint.
* FmHA loaned money to the complainant to get into the farming business even though the FmHA officials knew the farm plan was poor and would not work.

In support of their claim that this list contains common factual questions, the plaintiffs point to the deposition of Carlton Lewis, the branch chief of the Program Compliance Section of the Civil Rights Staff of the FmHA. However, Mr. Lewis never testified that the 24 factual questions were *common* to those who had filed administrative complaints; indeed, he was never asked that question. Rather, he said that he had *heard of* each of these allegations being made in individual cases. Further, Mr. Lewis did not testify-and he was not asked-how frequently these allegations of discrimination arose, or whether they were related to the claims of the proposed class representatives in this case.[FN17]Apart from Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Lewis's deposition, the plaintiffs have introduced no other evidence-including statistical evidence-showing just how "common" these factual questions are.[FN18]

> FN17. In addition to their failure to establish that the proposed list of issues are *common* to the class, still another problem exists. The plaintiffs' lawyers asked Mr. Lewis, broadly, about claims of "discrimination" or claims by "minorities," without attempting to limit Lewis's responses to claims of blacks or Hispanics. This fact makes Mr. Lewis's deposition-the *sole* source of the plaintiffs' proposed list of common issues-even more suspect.

> FN18. The plaintiffs justify their failure to produce such statistics by claiming that "statistics relate to the merits of the case, and such proof is not required in the determination of class certification."The plaintiffs are wrong. It is indeed appropriate to use statistical evidence to establish the existence of common factual questions in connection with a motion for class certification. *See Wagner,* 836 F.2d at 594; *Gonzalez v. Brady,* 136 F.R.D. 329, 331 (D.D.C.1991) ("Statistics generally are offered at the certification stage of litigation to show that a class-wide problem exists")).

The plaintiffs are asking the Court to certify a class which would encompass every possible instance of discrimination in connection with the FmHA's making and servicing of loans. They have not come close to establishing that there are common legal and factual issues common to this wide-ranging class.

### 4. *Typicality*

The plaintiffs must establish that the claims of the named plaintiffs are typical of those of the class. Fed.R.Civ.P. 23(a) (3). A plaintiff's claim is typical if it arises from the same event or practice or course

of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *E.E.O.C. v. Printing Industry,* 92 F.R.D. 51, 54 (D.D.C.1981). The plaintiffs say that their own individual claims are typical of those of the members of the class because "all class members have applied for and been denied or delayed credit on the basis of their black or brown race and African or Mexican/Hispanic national origin even though there may be factual variations." In addition, the named plaintiffs say they have suffered damages that are typical of those of the proposed class.

As discussed earlier, the proposed class is so overbroad that it would encompass every possible claim of race or national origin discrimination in connection with the FmHA's processing loan applications and servicing loans. Thus, it is impossible to tell whether the claims of the named plaintiffs could be typical of such a wide-ranging proposed class. Indeed, in their pleadings, the plaintiffs have not even attempted to summarize the individual factual allegations they have made,[FN19] much less explain how those claims could be typical of those of the proposed class.

> FN19. The Court further notes that the plaintiffs have failed to properly plead the factual claims of the individual plaintiffs. The class complaint merely concludes, vaguely, that the named plaintiffs have "endured ... continuous racial and national origin discrimination, because of their ... race and ... national origin, by the officials of the FmHA."*See, for example,* Complaint at ¶ 5. The Court is aware of the named plaintiffs' allegations only through affidavits and additional documents attached to the plaintiffs' class certification motion.

*8 In addition, plaintiffs Robert Williams, Welchel Long, Jim Bowie, and Walter Powell have received administrative findings of discrimination from the UDSA's Office of Civil Rights Enforcement ("OCRE").[FN20] The Secretary expects that the plaintiffs will argue at trial that these findings of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 9

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

discrimination are binding on the USDA, and the plaintiffs do not deny this. Thus, it appears that these plaintiffs will raise a different legal theory (namely, that the USDA is bound by previous findings of discrimination) from the potential class members who have not received such findings. In this respect also, their claims are not typical of those of the proposed class.

> FN20. One such finding-concerning plaintiff Robert Williams-was later withdrawn. Reinvestigation of that claim led to a subsequent finding by OCRE of no discrimination.

The claims of plaintiffs LaVerne Williams, Emma Long, and Grace Bowie are also not typical of the class. These plaintiffs are married to farmers who claim they suffered discrimination in the application for or servicing of FmHA farm loans or credit. According to their affidavits, these plaintiffs say they were injured due to their husbands' dealings with the FmHA. Thus, their claims are not typical of the class, which does not include claims of an applicant's spouse.

To be sure, typicality is not necessarily destroyed by factual variations between the claims of the named plaintiffs and those of the class. *Wagner,* 836 F.2d at 591. Even recognizing that this is so, it is apparent that the plaintiffs have not met their burden of establishing that their claims are typical of those of the proposed class.

### 5. *Fair and Adequate Representation*

The plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The class representatives are not appropriate representatives of the class because their claims are not typical of the class. Because plaintiffs Robert Williams, Welchel Long, Jim Bowie, and Walter Powell have already received favorable administrative decisions on their claims, *see* above, they presumably will not need to litigate the merits of their claims of discrimination. Thus, these plaintiffs appear to have little incentive to

litigate the merits of the claims of the other class members. For this reason, they are inadequate class representatives. *See* In re American Medical Systems, Inc., 75 F.3d 1069, 1083 (6th Cir.1996) (" the adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."). And because the claims of LaVerne Williams, Emma Long, and Gracie Bowie are not typical of the proposed class, *see* above, they too are not adequate class representatives.

### B. *Rule 23(b)*

As explained above, the plaintiffs have not met the requirements of Rule 23(a). However, even assuming for the sake of argument that they have done so, the plaintiffs have similarly failed to show that their class may be certified under Rule 23(b). The Court shall evaluate the plaintiffs' entitlement to certification under Rule 23(b)(2) and (b)(3).

### 1. *Rule 23(b)(2)*

**\*9** Under Rule 23(b)(2), the plaintiffs must demonstrate that:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

However, this provision may not be invoked where " the appropriate final relief relates exclusively or predominantly to money damages."Fed.R.Civ.P. 23(b)(2) Adv. Comm. Note (1966); *see*Walsh v. Ford Motor Co., 807 F.2d 1000, 1003 n. 7 (D.C.Cir.1986), *cert.denied,*482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987).

The plaintiffs concede that they seek money damages for the class, but argue that such damages are merely ancillary to their claims for injunctive relief, thus permitting their claim to fall within subsection (b)(2).*See*Probe v. State Teachers' Retirement System, 780 F.2d 776, 780 (9th

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 10

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Cir.1980), *cert.denied,*476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (the requirement of subsection (b)(2) can be met despite the existence of a damages claim, so long as the damages relief sought is "merely incidental" to a primary claim for injunctive relief).

The Court is not convinced by the plaintiffs' attempt to downplay the importance of damages in this lawsuit. First, the plaintiffs' proposed definition of the class requires a class member to have "sustain[ed] economic loss and/or mental anguish/emotion [sic] distress damages."Thus, the plaintiffs' quest for money damages is important enough that entitlement to such damages is a requirement for admission to the proposed class.

Next, the plaintiffs' request for injunctive relief is somewhat half-hearted. The plaintiffs do not seek primary injunctive relief here. They do not ask the Court to order the Secretary to approve loans which had been denied, or to order that the class be given special treatment in the future. Rather, the plaintiffs somewhat vaguely demand an injunction to prevent alleged discrimination in the future, even though they concede that the USDA has a policy of anti-discrimination. *See*7 C.F.R. §§ 15.51, 1901.202(b)(1995).

At oral argument, when the Court suggested the possibility of certifying the class for injunctive relief only, plaintiffs' counsel balked at the idea. This is essentially a suit to recover damages, not to obtain injunctive relief. Thus, the class as proposed may not be certified under subsection (b)(2).*See Christina Mortgage Corp. v. Delaware Mortgage Bankers Ass'n,* 136 F.R.D. 372, 381-82 (D.Del.1991) (when "the realities of the litigation" demonstrate that the suit has been brought primarily for money damages, it may not be maintained as a(b)(2) class action, even if injunctive relief may be appropriate at some point during the litigation) (quoting *In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.1986)).

### 2. Rule 23(b)(3)

Rule 23(b)(3) requires:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action....

*10 The plaintiffs must first show that the common questions of law or fact they argued exist under Rule 23(a) also predominate over individual questions in this matter. As the Court has noted earlier, there are numerous questions of. fact for each individual plaintiff which must be assessed to determine whether discrimination occurred. For example, in order to determine whether the FmHA took a given action against a given class member for a discriminatory purpose, the Court must look into the financial qualifications and the repayment ability of individual class members. This would require the Court, for each individual class member, to examine individual loan applications to determine if they were "feasible" and to evaluate the adequacy of each applicant's collateral for making the loan. In addition, the Court would have to scrutinize the knowledge and intent of FmHA officials who are alleged to have discriminated here, and in fact decide whether discrimination occurred in every individual case.

Further, in order to determine whether the applicable statute of limitations periods bar individual claims, the Court would have to examine the dates of the plaintiffs' involvement with the FmHA. More importantly, because the plaintiffs have alleged that the Secretary's discrimination is "continuing," the Court must determine whether a given class member experienced a series of related acts of discrimination, rather than single, unrelated acts of discrimination. *See,e.g.,Valentino v. U.S.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

*Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982). Figuring out whether the alleged acts of discrimination are related for statute of limitations purposes would be another individualized inquiry specific to each farmer's dealings with the FmHA.

Finally, individual questions predominate with respect to damages issues. This is not a case where damages could be resolved relatively easily, such as where each plaintiff claimed a different amount of damages due to a common injury, or where damages or back pay could be simply calculated pursuant to a formula. Here, it would be necessary to conduct a careful examination of a class member's individual circumstances to determine the damages to be awarded. For example, to determine damages, it would be necessary to ask whether such losses were caused by the Secretary's discrimination; such an inquiry would require asking whether any losses were caused by other factors, such as bad weather, or a class member's poor farming practices or poor spending practices. The plaintiffs also seek damage for emotional distress, which would require taking into account the individual state of mind of each class member.

Without addressing the specific issues raised by the Secretary, the plaintiffs simply cite a "rule" that " specific determinations of injury and damages will not preclude a finding that common issues predominate."In support, they cite *Lewis v. National Football League,* 146 F.R.D. 5 (D.D.C.1992). The court in *Lewis* found that "the need for individualized damages determinations *does not preclude a finding that common issues predominate."Id.* at 12 (emphasis added). This holding only means that a court *could* determine that common issues predominate in a case where individualized questions of damages need to be resolved. It does not mean that a court *must* make that determination. Upon a review of the record in this case, it is apparent to the Court that calculations of damages in each individual case would be complicated, and would predominate over any common issues here. This finding is not inconsistent with the holding in *Lewis.*

**\*11** Finally, the plaintiffs must show that the class action is "superior to other available methods for

the fair and efficient adjudication of the controversy. "Fed.R.Civ.P. 23(b)(3). They have not done so. The greater the number of individual issues, the less likely superiority can be established.*Castano v. American Tobacco Co.,* 84 F.3d 734, 745 n. 19 (5th Cir.1996). Here, as explained above, numerous individual issues would predominate at trial. Further, grouping together numerous distinct factual situations and issues would not achieve sufficient " economies of time, effort, and expense."*See* Fed.R.Civ.P. 23(b)(3) Adv. Comm. Note (1966); *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (the "principal purpose" of class action procedure is to advance "the efficiency and economy of litigation"). To the contrary, the Court would be faced with daunting logistical problems if the class were certified, involving claims of liability and damages of farmers in 32 states and over fourteen years.[FN21]

> FN21. Although class certification is not appropriate here, potential class members may certainly bring individual actions as appropriate. And such individual lawsuits would not waste judicial resources. This is so because courts deciding separately-filed lawsuits would not have to decide common legal or factual questions needlessly. Rather, each court would quite properly consider the unique issues raised by each individual farmer's claims of discrimination.

### III. CONCLUSION

For the reasons stated above, the Court finds that the plaintiffs have failed to satisfy the requirements of Rule 23(a) and Rule 23(b). Accordingly, their motion for class certification is denied. An appropriate order accompanies this opinion.

D.D.C.,1997.
Williams v. Glickman
Not Reported in F.Supp., 1997 WL 33772612 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH MATHIS, et al.,                    )
                                         )
                    Plaintiffs,          )
                                         )
v.                                       )     Case No. 1:07-cv-01155-RMU
                                         )
GEO GROUP, INC., et al.,                 )
                                         )
                    Defendants.          )
                                         )

## ORDER

UPON CONSIDERATION of the Motion for Class Certification filed by Plaintiffs, any opposition thereto, and the entire record herein,

It is ORDERED that Plaintiffs' Motion for Class Certification is DENIED.

_____
The Honorable Ricardo M. Urbina
United States District Judge

Date: _____

Copies to:

Deborah J. Israel, Esq.
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, 7th Floor
Washington, DC  20005
*Counsel for Defendant GEO Group, Inc.*

Danielle M. Estrada
Anthony Herman
Donald J. Ridings, Jr.
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
*Counsel for Plaintiffs*

Philip J. Fornaci
Donald Lee Kahl
Ivy Ann Lange
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW Suite 400
Washington, DC 20036
*Counsel for Plaintiffs*

Karen L. Melnik
Kathryn L. Wyer
U.S. Attorney's Office
535 Fourth Street, NW
Room E4112
Washington, DC  20550
*Counsel for Bureau of Prisons & Harley Lappin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2007, a true and correct copy of the

foregoing *DEFENDANT GEO GROUP, INC'S MEMORANDUM OF POINTS AND*

*AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-*

*REPLY* has been served via CM/ECF on the following:

Danielle M. Estrada
Anthony Herman
Donald J. Ridings, Jr.
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Plaintiffs*

Philip J. Fornaci
Donald Lee Kahl
Ivy Ann Lange
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW Suite 400
Washington, DC 20036
*Counsel for Plaintiffs*

Karen L. Melnik
Kathryn L. Wyer
U.S. Attorney's Office
535 Fourth Street, NW
Room E4112
Washington, DC 20550
*Counsel for Bureau of Prisons and
Harley Lappin*

The undersigned hereby certifies that the foregoing has been served upon the
following non-CM/ECF participant:

Donald J. Ridings, Jr.
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Plaintiffs*

/s/ Deborah J. Israel
Deborah J. Israel

1