## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH MATHIS, REON HOLLOWAY, DAVID ROGERS, BENJAMIN HAMILTON, CARL BUTLER, HAROLD ROBINSON, CHARLES LEWIS, JOHN DOE, JOHN ROE, and JIMMIE FOWLER, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the UNITED STATES BUREAU OF PRISONS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-1155 (RMU) |

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# <u>TABLE OF CONTENTS</u>

PAGE(S)

TABLE OF AUTHORITIES ...................................................................................................iv

INTRODUCTION ...............................................................................................................1

PROCEDURAL HISTORY ..................................................................................................3

STANDARDS APPLICABLE TO CLASS CERTIFICATION .......................................................4

ARGUMENT ....................................................................................................................7

    I.      THE PROPOSED REHABILITATION ACT SUBCLASS SHOULD
             NOT BE CERTIFIED ...........................................................................7

             A.      The Proposed Rehabilitation Act Subclass Is Not Clearly Defined ............7

                          1.      Plaintiffs' Failure To Define The Term "Disabled" And
                                      Inclusion Of Those Who Have Never Been Diagnosed
                                      With A Disabling Condition Make It Impossible To Identify
                                      Or Limit The Membership Of The Proposed Subclass ....................8

                          2.      Incorporating The Rehabilitation Act's Definition Would
                                        Not Make Purported Subclass Members Readily
                                      Identifiable ......................................................................9

                          3.      Regardless Of How The Term "Disabled" Is Defined, The
                                        Proposed Subclass Is Unmanageable Because Individualized
                                      Mini-Trials Would Be Required To Identify Its Members .............13

             B.      The Numerosity Requirement Of Rule 23(a) Is Not Met For The
                    Proposed Rehabilitation Act Subclass ...........................................15

              C.      The Commonality Requirement Of Rule 23(a) Is Not Met For
                    The Proposed Rehabilitation Act Subclass .......................................16

                            1.      The Individualized Nature Of Rehabilitation Act Analysis
                                      Precludes Any Finding Of Commonality ........................................16

                            2.      The Subclass's Claim For Damages Also Defeats The
                                      Commonality Requirement ...........................................................20

D.    The Typicality Requirement Of Rule 23(a) Is Not Satisfied For The Proposed Rehabilitation Act Subclass ....................................................21

E.    The Adequate Representation Requirement Of Rule 23(a) Is Not Satisfied For The Proposed Rehabilitation Act Subclass ..........................23

F.    The Proposed Rehabilitation Act Subclass Does Not Meet The Requirements For Certification Under Any Subsection Of Rule 23(b) ......24

II.    THE PROPOSED EIGHTH AMENDMENT CLASS SHOULD NOT BE CERTIFIED ........................................................................................27

A.    Plaintiffs' Proposed Class Definition Is Too Broad ....................................27

B.    The Commonality Requirement Is Not Satisfied In Regard To Plaintiffs' Proposed Eighth Amendment Class, Particularly In Regard To Their Claims Against Federal Defendants ..............................27

C.    The Named Class Members Who Are No Longer At Rivers Are Not Adequate Class Representatives ...........................................................33

CONCLUSION .......................................................................................................35

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

Access Now Inc. v. Walt Disney World Co., 211 F.R.D. 452 (M.D. Fla. 2001) ...........................8

Adair v. England, 209 F.R.D. 5 (D.D.C. 2002) ........................................................20, 23

Adashunas v. Negley, 626 F.2d 600 (7th Cir. 1980) ......................................................9

Albertson's, Inc. v. Kirkingburg, 527 U.S. 555 (1999) ............................................10, 11

*Amchem Prods. v. Windsor, 521 U.S. 591 (1997) ....................................................6, 23

Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) .......................................................13

Armstrong v. Wilson, 942 F. Supp. 1252 (N.D. Cal. 1996) ..............................................13

Barnes v. Dist. of Columbia, 242 F.R.D. 113 (D.D.C. 2007) ........................................5, 7

Bradley v. Harrelson, 151 F.R.D. 422 (M.D. Ala. 1993) .................................................15

Burkett v. U.S. Postal Serv., 175 F.R.D. 220 (N.D.W.Va. 1998) .................................10, 18

Bynum v. Dist. of Columbia ("Bynum I"), 214 F.R.D. 27 (D.D.C. 2003) ..........................7, 20, 21

Bynum v. Dist. of Columbia ("Bynum II"), 217 F.R.D. 43 (D.D.C. 2003) .............................7, 20

Calef v. Gillette Co., 322 F.3d 75 (1st Cir. 2003) .......................................................11

Carson ex rel. Foreman v. Heineman, 240 F.R.D. 456 (D. Neb. 2007) .................................28

Chandler v. City of Dallas, 2 F.3d 1385 (5th Cir. 1993) ...........................................10, 18

Clark v. California, No. C96-1486, 1998 WL 242688 (N.D. Cal. May 11, 1998) (unpublished)......12

Clark v. Gunn, No. 06-1068, 2007 WL 1435428 (D. Nev. May 14, 2007) ..................................16

Clarkson v. Coughlin, 783 F. Supp. 789 (S.D.N.Y. 1992) ................................................15

Clarkson v. Coughlin, 145 F.R.D. 339 (S.D.N.Y. 1993) ............................................12, 15

Clay v. Am. Tobacco Co., 188 F.R.D. 483 (S.D. Ill. 1999) .............................................7

Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443 (6th Cir. 2002) ....................................25

Dallas Gay Alliance, Inc. v. Dallas County Hosp. Dist., 719 F. Supp. 1380 (N.D. Tex. 1989) .....34

Davoll v. Webb, 160 F.R.D. 142 (D. Colo. 1995) ...........................................................................10

Dean v. Coughlin, 107 F.R.D. 331 (S.D.N.Y. 1985) .......................................................................28

Disability Rights Council v. WMATA, 239 F.R.D. 9 (D.D.C. 2006) .......................................12, 25

E.E.O.C. v. Gallagher, 181 F.3d 645 (5th Cir. 1999) .....................................................................11

E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395 (1977) .............................................23

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ........................................................................5

Eubanks v. Billington, 110 F.3d 87 (D.C. Cir. 1997) ..............................................................25, 26

Flynn v. Doyle, No. 06-537, 2007 WL 805788 (E.D. Wis. Mar. 14, 2007) .............................12, 27

Forrisi v. Bowen, 794 F.2d 931 (4th Cir. 1986) .............................................................................10

Franklin v. Barry, 909 F. Supp. 21 (D.D.C. 1995) ..........................................................................5

Garcia v. Veneman, 211 F.R.D. 15 (D.D.C. 2002) ...................................................................25, 26

Garcia v. Veneman, 224 F.R.D. 8 (D.D.C. 2004) ....................................................................19, 20

Gates v. Towery, 430 F.3d 429 (7th Cir. 2005) ...............................................................................34

*Gen. Tel. Co. v. Falcon, 457 U.S. 147 (1982) ........................................4, 5, 16, 17, 19, 21, 23, 28

Heisler v. Metro Council, 339 F.3d 622 (8th Cir. 2003) .................................................................11

Hyatt v. United Aircraft Corp., 50 F.R.D. 242 (D. Conn. 1970) ....................................................22

In re Am. Med. Sys., Inc., 75 F.3d 1069 (6th Cir. 1996) .................................................................22

In re Paxil Litig., 212 F.R.D. 539 (C.D. Cal. 2003) ........................................................................8

Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12 (2d Cir. 1971) ............32-33, 33

J.B. ex rel Hart v. Valdez, 186 F.3d 1280 (10th Cir. 1999) ............................................................16

Johnson v. Bd. of Regents, 263 F.3d 1234 (11th Cir. 2001) ...........................................33

Jones v. Goord, 190 F.R.D. 103 (S.D.N.Y. 1999) ........................................................21

Kent Chojnicki v. Runyon, 180 F.R.D. 237 (W.D.N.Y. 1998) ...............................18, 22

Kline v. Security Guards, Inc., 196 F.R.D. 261 (E.D. Pa. 2000) ....................................14

LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D. Ala. 2005) ...............................................8

Lewis v. Cunningham, No. 05-9243, 2007 WL 2412258 (S.D.N.Y. Aug. 23, 2007) ...................34

Lott v. Westinghouse Savannah River Co., 200 F.R.D. 539 (D.S.C. 2000) ...................................26

*Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006) ...............................................18, 20, 26

Love v. Veneman, 224 F.R.D. 240 (D.D.C. 2004) ...........................................................26

Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002) .........................................................20

McCarthy v. Kleindienst, 741 F.2d 1406 (D.C. Cir. 1984) ...............................................5

Mike v. Safeco Ins. Co. of America, 223 F.R.D. 50 (D. Conn. 2004) ...........................................14

Modderno v. King, 82 F.3d 1059 (D.C. Cir. 1996) ...........................................................24

Montez v. Romer, 32 F. Supp. 2d 1235 (D. Colo. 1999) .....................................................13

Nichols v. Riley, No. 04-0065, 2007 WL 60912 (S.D. Ala. Jan. 8, 2007) ...................................34

Pigford v. Glickman, 182 F.R.D. 341 (D.D.C. 1998) ........................................................7

Raines v. Florida, 987 F. Supp. 1416 (N.D. Fla. 1997) .....................................................13

Richards v. Delta Air Lines, Inc., 453 F.3d 525 (D.C. Cir. 2006) ...................................25

Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002) ...........................................34

Robert v. Lane, 530 F. Supp. 930 (D.C. Ill. 1981) ..........................................................15

Rodriguez v. U.S. Dep't of Treasury, 131 F.R.D. 1 (D.D.C. 1990) ...................................14

Rooney v. Koch Air, LLC, 410 F.3d 376 (7th Cir. 2005) ...........................................11, 12

Sanneman v. Chrysler Corp., 191 F.R.D. 441 (E.D. Pa. 2000) ......................................14

Shook v. Bd. of County Comm'rs, No. 02-651, 2006 WL 1801379 (D. Colo. Jun. 28, 2006) ....8, 9

Simer v. Rios, 661 F.2d 655 (7th Cir. 1981) ...........................................................7

Sosna v. Iowa, 419 U.S. 393 (1975) ....................................................................33

*Sutton v. United Airlines, 527 U.S. 471 (1999) ....................................................10, 17

Taylor v. Dist. of Columbia Water & Sewer Auth., 241 F.R.D. 33 (D.D.C. 2007) ......................21

Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002) .............................10, 11

Tucker v. Phyfer, 819 F.2d 1030 (11th Cir. 1987) .......................................................34

*Twelve John Does v. Dist. of Columbia, 117 F.3d 571 (D.C. Cir. 1997) ...........................6

Walker v. Haynes, 659 F.2d 46 (5th Cir. 1981) .........................................................34

Walton v. U.S. Marshal's Service, 492 F.3d 998 (9th Cir. 2007) ...............................11

White v. Williams, 208 F.R.D. 123 (D.N.J. 2002) ....................................................14

## STATUTES

29 U.S.C. § 705(20) ......................................................................................9, 17

29 U.S.C. § 794 .......................................................................................1, 3, 17

42 U.S.C. § 12102(2) ....................................................................................10

## OTHER MATERIALS

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure
Vol. 7A § 1760 ......................................................................................7

Vol. 7A § 1762, at 181-84 .........................................................................15

Vol. 7B § 1790 ......................................................................................6

## INTRODUCTION

Plaintiffs, who are current and former inmates at Rivers Correctional Institution ("Rivers"), a private prison in Winton, North Carolina run by GEO Group, Inc., a private corporate entity under contract with the Federal Bureau of Prisons ("BOP"), filed this action against GEO Group, the BOP, and BOP Director Harley Lappin, alleging that the medical, dental, and mental health care provided at Rivers is inadequate in violation of the Eighth Amendment and that the care and accommodations provided to disabled inmates at Rivers violate Section 504 of the Rehabilitation Act.[1] Plaintiffs now seek certification of a class, for the purpose of asserting their Eighth Amendment claim, and a subclass, for the purpose of asserting their Rehabilitation Act claim. Plaintiffs have failed to meet their burden of establishing that certification is appropriate under Fed. R. Civ. P. 23 for either the proposed class or the proposed subclass.[2]

---

[1]Plaintiffs have also brought claims of negligence and third-party beneficiary breach of contract solely against codefendant GEO Group, Inc. Federal defendants do not address any issues associated with those claims, including the appropriateness of class certification in regard to those claims.

[2]As described below, federal defendants have moved to dismiss plaintiffs' claims against them, or in the alternative, to transfer the action to the Eastern District of North Carolina, and that motion remains pending before the Court. Briefing related to federal defendants' Motion to Dismiss or, in the Alternative, to Transfer will be completed on December 3, 2007. Briefing related to plaintiffs' Motion for Class Certification is currently scheduled to be completed on November 13, 2007. If this Court grants federal defendants' motion to dismiss, federal defendants will no longer be parties to this action. If the Court grants the motion to transfer, the case will be transferred to another jurisdiction. Even if the Court grants federal defendants' motion only in part, the issues in the case will have been narrowed. While federal defendants argue here that class certification is inappropriate, even if the Court were to conclude otherwise, the proper scope of the proposed class and/or subclass cannot be determined until the issues raised in federal defendants' motion are resolved. Federal defendants respectfully suggest that it would be appropriate for this Court to defer consideration of plaintiffs' Motion for Class Certification until the Court reaches a decision with respect to the issues raised in federal

Plaintiffs' proposal to certify a Rehabilitation Act Subclass is particularly inappropriate and should be rejected out of hand. Plaintiffs have defined their proposed subclass in such a way that it would be necessary to conduct individualized mini-trials simply to determine whether a given individual was a member of the subclass. It would be administratively impracticable to manage such a vaguely-defined subclass or to conduct the individualized inquiries necessary to determine the subclass's membership. Moreover, a clarification of the subclass definition will not remedy this defect because of the highly individualized nature of Rehabilitation Act claims.

As many courts have recognized, Rehabilitation Act claims by their nature are heavily dependent on individualized determinations, beginning with whether a claimant has a "disability" within the meaning of the Act, whether the claimant is "otherwise qualified" to receive the benefit, and whether the claimed exclusion or denial was solely by reason of the claimant's disability. Plaintiffs have introduced another individualized element into the analysis by claiming compensatory damages for each alleged violation. Moreover, because plaintiffs' definition lumps individuals with any kind of disability within a single Rehabilitation Act subclass, combining those who claim difficulties with physical access to Rivers facilities together with those whose claim appears to focus on medical or mental health treatment, it is difficult to perceive any common issue, and plaintiffs point to none. The Court should therefore reject subclass certification for the Rehabilitation Act claim on any number of grounds. Indeed, plaintiffs have failed to make any of the required Rule 23 showings for subclass certification.

In regard to plaintiffs' proposed class for purposes of their Eighth Amendment claim, plaintiffs' definition of this class is simply too broad. In particular, plaintiffs' proposed class

defendants' Motion to Dismiss or, in the Alternative, to Transfer.

would include individuals who are no longer incarcerated at Rivers even though with respect to
this claim they seek only declaratory and injunctive relief, which cannot benefit such individuals
and which such individuals have no standing to pursue.  In addition, although plaintiffs assert
that the inadequacies at Rivers are "systemic," plaintiffs have failed to identify any single locus
for the various claims of inadequacy that they assert.  In particular, plaintiffs have failed to
identify any policy or practice of federal defendants that generally affects all proposed class
members.  Finally, those proposed class representatives who are no longer at Rivers cannot
adequately protect class members' interests when, again, they lack any cognizable interest in the
outcome of the litigation and lack standing to pursue the Eighth Amendment claims.

## PROCEDURAL HISTORY

Plaintiffs filed this putative class action on June 28, 2007, against both Geo Group, Inc.
and federal defendants.  The two claims asserted against the federal defendants allege that the
plaintiffs have received inadequate medical treatment at Rivers in violation of the Eighth
Amendment, and that six of the ten plaintiffs have been discriminated against based on their
disabilities in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Plaintiffs seek
declaratory and injunctive relief in regard to both claims, and compensatory damages in regard to
their Rehabilitation Act claim.

Federal defendants filed a motion to dismiss or, in the alternative, to transfer to the
Eastern District of North Carolina, on September 18, 2007.  In support of dismissal, federal
defendants argued that plaintiffs' claims against federal defendants for damages under the
Rehabilitation Act are barred by sovereign immunity, that plaintiffs failed to state a claim under
either the Rehabilitation Act or the Eighth Amendment, and that plaintiffs who are no longer

resident at Rivers due to their release from incarceration or transfer to another facility are barred by Article III's "case or controversy" requirement from seeking injunctive or declaratory relief. <u>See</u> Memorandum in Support of Federal Defendants' Motion to Dismiss or, in the Alternative, to Transfer ("Fed. Defs.' MTD Mem."), at 7-29 (doc. # 28). Plaintiffs filed a response to this motion on October 26, 2007. Federal defendants' reply is due on December 3, 2007. Codefendant Geo Group, Inc. has also filed a motion to dismiss or transfer that is now fully briefed and remains pending before the Court.

Plaintiffs filed their motion for class certification on September 25, 2007, seeking to certify a class which they define as all "former, current and future prisoners in the custody of the [BOP], and incarcerated at [Rivers], who, during their incarceration at Rivers, depend on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care." Pls.' Mot. for Class Cert. at 1; <u>cf.</u> Compl. ¶ 40. As relevant to federal defendants, this class would assert claims of inadequate medical, mental health, and dental care in violation of the Eighth Amendment, for which plaintiffs seek declaratory and injunctive relief. Compl. at pp. 46-47. Plaintiffs also seek to certify a sub-class, which they define as all "former, current, and future disabled prisoners in the custody of the BOP and incarcerated at Rivers, who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failures to adequately diagnose, monitor, treat and/or accommodate their disabilities." Pls.' Mot. for Class Cert. at 1; <u>cf.</u> Compl. ¶ 51. This subclass would seek declaratory and injunctive relief as well as compensatory damages for defendants' alleged Rehabilitation Act violations. <u>See</u> Compl. ¶¶ 71-79.

## STANDARDS APPLICABLE TO CLASS CERTIFICATION

"The class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982) (internal quotation omitted). Class certification is "peculiarly appropriate" in the limited circumstance where the issues involved "turn on questions of law applicable in the same manner to each member of the class," which so predominate that classwide adjudication would promote fairness and judicial efficiency. Id. (internal quotation omitted).

"'The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one of the categories of Rule 23(b).'" Barnes v. Dist. of Columbia, 242 F.R.D. 113, 120 (D.D.C. 2007) (quoting Franklin v. Barry, 909 F. Supp. 21, 30 (D.D.C. 1995)). Although courts are not free to make an extended "inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974), it is equally clear that they need not simply accept putative class members' factual or legal assertions in evaluating the propriety of class certification. See Falcon, 457 U.S. at 160 (explaining that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"). Thus, the D.C. Circuit has stated that "[n]othing in Eisen precludes a court from scrutinizing plaintiffs' legal causes of action to determine whether they are suitable for resolution on a classwide basis." McCarthy v. Kleindienst, 741 F.2d 1406, 1412 n.6 (D.C. Cir. 1984).

Under Rule 23(a), a party seeking class certification must establish each of the following requirements: (1) the class members are so numerous that joinder is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims and defenses of the class representatives are typical of those of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. Before certifying a class, a court must satisfy itself, through "rigorous analysis, that the prerequisites of Rule 23(a) have been" met. Falcon, 457 U.S. at 161. Plaintiffs' failure to meet their burden in regard to any one of Rule 23(a)'s requirements precludes certification. McCarthy, 741 F.2d at 1410, 1414 n.9.

A party seeking class certification must also demonstrate that the proposed class action is maintainable under one of the three subsections of Rule 23(b). Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997). Certification under 23(b)(1) is available only where "separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class,' Fed. R. Civ. P. 23(b)(1)(A), or would 'as a practical matter be dispositive of the interests' of nonparty class members 'or substantially impair or impede their ability to protect their interests,' Rule 23(b)(1)(B)." Amchem Prods., 521 U.S. at 614. Certification under 23(b)(2) is proper only when the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In order for an action to be maintainable under 23(b)(3), the court must find that issues common to the class members predominate over those that affect only individuals, and that a class action is "superior" to other methods for handling the litigation. Fed. R. Civ. P. 23(b)(3).

In appropriate circumstances, a court may certify one or more subclasses in addition to the class. Fed. R. Civ. P. 23(c)(4). However, "any subclass must independently meet the standards for class certification." Twelve John Does v. Dist. of Columbia, 117 F.3d 571, 575

(D.C. Cir. 1997) (citing 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1790).

**ARGUMENT**

**I.    THE PROPOSED REHABILITATION ACT SUBCLASS SHOULD NOT BE CERTIFIED**

    **A.    The Proposed Rehabilitation Act Subclass Is Not Clearly Defined**

"'It is axiomatic that for a class action to be certified a 'class' must exist.'" <u>Barnes</u>, 242 F.R.D. at 120 (quoting <u>Simer v. Rios</u>, 661 F.2d 655, 669 (7th Cir. 1981)). Thus, the fundamental threshold requirement for a class or subclass to be certified under Rule 23 is that the class or subclass be clearly defined in such a way that a court can determine, without extensive factual inquiry, whether a given individual is or is not a member. <u>See id.</u> at 121 (holding a class definition sufficiently clear where "none of the terms . . . require further clarification or individual hearings to determine class membership"); <u>Bynum v. Dist. of Columbia</u> ("<u>Bynum I</u>"), 214 F.R.D. 27, 31 (D.D.C. 2003) (recognizing that a "class must be sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member"); <u>Pigford v. Glickman</u>, 182 F.R.D. 341, 346 (D.D.C. 1998) (recognizing the existence of a class as a routinely-imposed "common-sense requirement" (citing 7A Wright et al., <u>Federal Practice and Procedure</u> § 1760)). A class definition is sufficiently clear if, rather than requiring an individualized judicial determination to establish membership, "'an individual would be able to determine, simply by reading the definition, whether he or she is a member of the proposed class.'" <u>Bynum v. Dist. of Columbia</u> ("<u>Bynum II</u>"), 217 F.R.D. 43, 46 (D.D.C. 2003) (quoting <u>Bynum I</u>, 214 F.R.D. at 32). Courts have recognized that, "for a class to be sufficiently defined,

the identity of the class members must be ascertainable by reference to objective criteria." <u>Clay v. Am. Tobacco Co.</u>, 188 F.R.D. 483, 490 (S.D. Ill. 1999).

Here, plaintiffs define their proposed Rehabilitation Act Subclass as including all "former, current, and future disabled prisoners in the custody of the BOP and incarcerated at Rivers who have been denied access to programs, services, facilities, and activities at Rivers as a consequence of Defendants' failure to adequately diagnose, monitor, treat and/or accommodate their disabilities." Pls.' Mot. at 1. This definition fails to meet the required criteria because, first, it provides no definition of what is meant by "disabled," and second, it is impossible to know whether an individual is a member of this Subclass without an individualized judicial determination regarding whether the stated conditions of membership are met.

        **1.**      **Plaintiffs' Failure To Define The Term "Disabled" And Inclusion Of Those Who Have Never Been Diagnosed With A Disabling Condition Make It Impossible To Identify Or Limit The Membership Of The Proposed Subclass**

Because plaintiffs' definition of the proposed Rehabilitation Act Subclass does not specify what is meant by "disabled," there are no meaningful or ascertainable limitations on membership.[3] <u>See</u> <u>Access Now Inc. v. Walt Disney World Co.</u>, 211 F.R.D. 452, 454 (M.D. Fla. 2001) (rejecting proposed class definition in Americans with Disabilities Act ("ADA") case where plaintiffs failed to define the term "disabled" because "the term has different meanings"); <u>see also</u> <u>Shook v. Bd. of County Comm'rs</u>, No. 02-651, 2006 WL 1801379, at *7 (D. Colo. Jun. 28, 2006) (rejecting proposed class defined to include all inmates "with serious mental health

---

[3]<u>Cf.</u> <u>LaBauve v. Olin Corp.</u>, 231 F.R.D. 632, 663 (S.D. Ala. 2005) (approving "air" subclass (those subject to chemical plant contamination by air), defined based on objective criterion of residence within particular geographic area, but rejecting "groundwater" and "surface water" subclasses where there was no objective means of determining membership).

needs" because "the term 'serious mental health needs' is vague"); <u>In re Paxil Litig.</u>, 212 F.R.D.

539, 545 (C.D. Cal. 2003) (rejecting class defined as those with "severe" withdrawal symptoms

where "severe" was not defined).  The fact that the definition expressly includes those who have

not been "adequately diagnose[d]," and thus not even identified as disabled under any definition,

makes it even more problematic:  "How does one identify class members consisting of persons

not identified?"  <u>Adashunas v. Negley</u>, 626 F.2d 600, 603-04 (7th Cir. 1980) (refusing to certify a

class of learning disabled children where definition included those not yet identified as learning

disabled, noting that making individualized determinations of disability presented a "gargantuan

task"); <u>see also</u> <u>Shook</u>, 2006 WL 1801379, at *8 (refusing to require prison to provide "an

extensive mental health evaluation . . . at the time of intake" in order to determine whether the

inmate was part of the proposed class).

  Plaintiffs assert that "Defendants possess records sufficient to identify current and former

Rivers prisoners who are members of the . . . Sub-Class."  Pls.' Mem. at 8.  However, the

possibility that records could easily identify who, among Rivers inmates, has a disability that has

<u>not</u> been "adequately diagnose[d], monitor[ed], treat[ed] and/or accommodate[d]" is implausible

on its face.

    **2.**  **Incorporating The Rehabilitation Act's Definition Would Not Make
Purported Subclass Members Readily Identifiable**

  The only reasonable interpretation of "disabled" here – where plaintiffs assert a

Rehabilitation Act claim – is one that incorporates the Rehabilitation Act's definition of

"individual with a disability."  <u>See</u> 29 U.S.C. § 705(20).[4]  Yet, relying on this definition in order

---

    [4]An "individual with a disability" is defined as "any person who – (i) has a physical or
mental impairment which substantially limits one or more of such person's major life activities;

-9-

to identify whether an individual is a member of the Subclass only exacerbates the problem.  It is well settled that the determination of whether an individual has a "disability" within the meaning of the Rehabilitation Act, and corresponding provisions within the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), requires an "individualized inquiry."  Sutton v. United Airlines, 527 U.S. 471, 483 (1999); see also Chandler v. City of Dallas, 2 F.3d 1385, 1396 (5th Cir. 1993) (overturning certification of subclasses defined as those with substandard vision and those with insulin dependent diabetes because  "the determinations of whether an individual is handicapped or 'otherwise qualified' are necessarily individualized inquiries"); Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986) (recognizing that "the definitional task" in the Rehabilitation Act context "cannot be accomplished merely through abstract lists and categories of impairments. The inquiry is, of necessity, an individualized one . . . ."); Burkett v. U.S. Postal Serv., 175 F.R.D. 220, 224 (N.D.W.Va. 1998) ("[T]he resolution of the question of whether the rejected applicants were covered by the [Rehabilitation] Act would necessitate, in a manner wholly at odds with the interests that class litigation promotes, a series of 'mini-trials' focusing on the facts and circumstances unique to each individual plaintiff."); Davoll v. Webb, 160 F.R.D. 142, 146 (D. Colo. 1995) ("Various factors would have to be considered in determining whether each named Plaintiff and each member of the putative class has or will have a 'disability' for the purposes of an ADA claim. Such 'necessarily individualized inquiries' are best suited to a case-by-case determination.").  Indeed, there is a "statutory obligation to determine the existence of disabilities on a case-by-case basis." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).

---

(ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."  29 U.S.C. § 705(20)(B).

Medical records that detail a physical or mental impairment, by themselves, are plainly insufficient to establish the existence of a "disability" within the meaning of the Act. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA."). To qualify for protection under the Act, the individual must "have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. at 198. Consequently, a plaintiff "claiming the Act's protection [must] prove a disability by offering evidence that the extent of the limitations in terms of his own experience . . . is substantial." Albertson's, 527 U.S. at 567.

For these reasons, the overwhelming weight of judicial authority specifically rejects the notion advanced by plaintiffs here that the existence of a disability can be established by a medical record that merely details the existence of an impairment. E.g., Calef v. Gillette Co., 322 F.3d 75, 86 (1st Cir. 2003) ("Merely pointing to a diagnosis . . . is inadequate."); E.E.O.C. v. Gallagher, 181 F.3d 645, 655 (5th Cir. 1999) ("[I]t is not enough for an ADA plaintiff to simply show that he has a record of a cancer diagnosis; in order to establish the existence of a disability under [the ADA], there must be a record of an impairment that substantially limits one or more of the ADA plaintiff's major life activities."); Rooney v. Koch Air, LLC, 410 F.3d 376, 381 (7th Cir. 2005) ("[R]ecords of [plaintiff's] injuries and surgeries . . . are not evidence that he was statutorily disabled."); Heisler v. Metro Council, 339 F.3d 622, 630 (8th Cir. 2003) ("[T]he record must be of an impairment that substantially limits a major life activity."); Walton v. U.S. Marshal's Service, 492 F.3d 998, 1011 (9th Cir. 2007) ("medical record of having only one functioning ear and being unable to localize sound . . . failed to raise a genuine issue that this

impairment is a substantially limiting impairment" within the meaning of the Rehabilitation Act).[5]

Because plaintiffs' proposed Subclass seeks to assert broad claims of Rehabilitation Act violations, there are no objective standards based on readily available factual information that would be appropriate here for determining whether an individual is "disabled." This case therefore differs significantly from those cited by plaintiffs, see Pls.' Mem. at 1-2, 12-13. For example, in Disability Rights Council v. WMATA, 239 F.R.D. 9, 25 (D.D.C. 2006), where the plaintiffs alleged deficiencies in the provision of paratransit services for mobility-impaired individuals, the court approved a class of "individuals with disabilities who by definition meet readily defined eligibility criteria for paratransit services." Id. at 25. Thus, rather than hinging on the definition of "disability" in the Rehabilitation Act or ADA, class membership could be determined based on the objective eligibility criteria set forth in 49 C.F.R. § 37.123. 239 F.R.D. at 25. Similarly, in Clarkson v. Coughlin, 145 F.R.D. 339 (S.D.N.Y. 1993), the court certified male and female subclasses of deaf and hearing-impaired inmates where subclass membership could be determined based on the prison system's eligibility criteria for being housed in Sensorially Disabled Units. See id. at 346 & n.6 (noting that the prison's determination of SDU eligibility was a necessary prerequisite for determining whether an individual had issues in

---

[5]The recent decision in Flynn v. Doyle, No. 06-537, 2007 WL 805788, at *3 (E.D. Wis. Mar. 14, 2007), approving a subclass broadly defined as "prisoners who have a disability," and relying on the fact that "defendants' own records will identify which inmates have a disability," is unpersuasive authority in light of the overwhelming precedent to the contrary, which includes the Seventh Circuit's opinion in Rooney, 410 F.3d at 381.

common with the plaintiffs).[6]  These cases therefore provide no support for certification in this

case.  The Rehabilitation Act's definition remains the only relevant standard here, and as

discussed, the weight of authority is clearly opposed to certification of a class where

membership, based on that definition, must be individually determined.

### 3. Regardless Of How The Term "Disabled" Is Defined, The Proposed Subclass Is Unmanageable Because Individualized Mini-Trials Would Be Required To Identify Its Members

It would be impossible to ascertain whether a particular former, current, or future Rivers

inmate is included within the plaintiffs' proposed Subclass definition without making

individualized determinations regarding (1) whether the inmate is "disabled," however that term

is defined, (2) whether the inmate was "denied access" to Rivers programs, services, facilities, or

activities, and (3) whether this denial of access was caused by defendants' failure to diagnose,

monitor, treat, or accommodate the inmate's disability.  Because the various elements  –

disability, denial of access, and causation – do not depend on objective factual details alone but

---

[6]The other cases cited by plaintiffs are equally unpersuasive.  In Clark v. California, No. C96-1486, 1998 WL 242688 (N.D. Cal. May 11, 1998) (unpublished), the court's certification order limited class membership to those who were "developmentally disabled" as that term is defined in Cal. Welf. & Inst. Code § 4512(a).  See Order, No. C96-1486 (N.D. Cal. entered Feb. 26, 1997) (PACER doc. # 50).  In Raines v. Florida, 987 F. Supp. 1416 (N.D. Fla. 1997), the identification of inmates with physical or mental disabilities evidently relied on the prison's categorization of inmates by "medical grade" and adoption of policies based on that categorization.  Id. at 1420-21.  In Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001), the district court appears to have certified a class limited to quite specific categories – inmates with mobility, sight, hearing, learning, or kidney disabilities.  See Armstrong v. Wilson, 942 F. Supp. 1252, 1254 (N.D. Cal. 1996) (referring to earlier class certification order, which is unavailable on PACER).  The Ninth Circuit substantially deferred to the district court's findings, noting also that the defendants had stipulated to a motion amending the plaintiff class and had not objected to further amendment to the class.  Armstrong, 275 F.3d at 867-68.  In Montez v. Romer, 32 F. Supp. 2d 1235, 1237 (D. Colo. 1999), the actual definition of the class is not indicated in the opinion or on the docket, which limits any persuasive capacity the court's certification decision might have.

require the application of legal concepts to facts, the determination would have to be made by a court. Such a process would be administratively cumbersome, contravening the supposed efficiency that class actions are intended to promote.

Further, this definition essentially incorporates, though loosely and inaccurately, the elements that would establish a Rehabilitation Act violation. The individualized determinations that would establish whether an inmate was a member of the Subclass would thus go far towards establishing whether a Rehabilitation Act violation has occurred, defeating the entire purpose of using the class action device. A member of this court has previously denied certification of a Rehabilitation Act subclass for this very reason. See Rodriguez v. U.S. Dep't of Treasury, 131 F.R.D. 1, 9 (D.D.C. 1990).[7] Courts have repeatedly rejected class definitions that simply mirror the elements of the plaintiffs' legal claims, thus requiring "mini-trials" on the merits of individuals' claims in order to determine membership in the class. See Mike v. Safeco Ins. Co. of America, 223 F.R.D. 50, 53 (D. Conn. 2004) ("The proposed class is untenable because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership."); White v. Williams, 208 F.R.D. 123, 129-30 (D.N.J. 2002) (rejecting class definition that "would require the Court to conduct a number of mini-trials or to employ some other screening mechanism prior to defining the class");

_____

[7]The court stated:
   In the case of the applicant ostensibly rejected for non-discriminatory reasons, but reporting a history of asthma, the prima facie case is an entirely individualized burden. . . . [P]roof that one is 'otherwise qualified,' *and* was denied employment because of the alleged handicap must necessarily be grounded in facts and circumstances peculiar to the applicant. [Certification] of this group would also require endless 'mini-trials,' and void any advantage to class resolution. Efficiency and economy would evaporate.
Id.

Kline v. Security Guards, Inc., 196 F.R.D. 261, 266 & n.5 (E.D. Pa. 2000) (rejecting class definition including criterion that class member be subjected to "unlawful" activity because it required individualized determinations of liability "simply to determine class membership"); Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 (E.D. Pa. 2000) (rejecting class definition that would require "a mini-hearing on the merits of each class member's case").

### B.    The Numerosity Requirement Of Rule 23(a) Is Not Met For The Proposed Rehabilitation Act Subclass

Plaintiffs have failed to make any showing whatsoever that their proposed Rehabilitation Act Subclass is sufficiently numerous to justify class certification.  The only assertion plaintiffs make in this regard is that, "[u]pon Plaintiffs' information and belief, a substantial percentage of the men at Rivers suffer from severe mental illnesses or physical impairments that substantially limit one or more major life activities."  Pls.' Mem. at 9.  This baldly speculative statement is insufficient to meet plaintiffs' burden of establishing numerosity.  See 7A Wright et al., Federal Practice and Procedure § 1762, at 181-84 ("[M]ere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).").  Rather, courts have required plaintiffs to make some showing of actual numbers before holding the numerosity requirement satisfied.  See, e.g., Bradley v. Harrelson, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (relying on data regarding number of seriously mentally ill inmates who were transferred to mental health unit to establish numerosity); Clarkson, 145 F.R.D. at 347-48 (requiring evidence regarding how many hearing-impaired inmates were currently incarcerated at the defendant facilities)[8]; Robert v. Lane, 530 F.

---

[8]Indeed, the court in Clarkson had previously rejected class certification based on lack of numerosity, stating that even where plaintiffs alleged that the information necessary to determine membership in the purported class was within defendants' control, "there must be something within the record" – meaning some actual data – "from which it can be inferred that a class does

Supp. 930, 942 (D.C. Ill. 1981) (accepting statistical estimates of prison psychiatric needs only

where defendants had conceded that plaintiffs' class size estimate was reasonable).  Here, the

vagueness of plaintiffs' Subclass definition, and the individualized inquiries that would be

required to establish membership, compound the problem of determining whether any significant

number of Rivers inmates would qualify as members of the proposed Subclass.  Because the

numerosity requirement has not been satisfied, this Court should deny Subclass certification.

### C.    The Commonality Requirement Of Rule 23(a) Is Not Met For The Proposed Rehabilitation Act Subclass

#### 1.    The Individualized Nature Of Rehabilitation Act Analysis Precludes Any Finding Of Commonality

The Supreme Court has recognized that there is a "wide gap" between an individual's

claim of discrimination in a particular case and "the existence of a class of persons who have

suffered the same injury as that individual, such that the individual's claim and the class claims

will share common questions of law or fact and that the individual's claim will be typical of the

class claims." Falcon, 457 U.S. at 157.  Here, plaintiffs have failed to bridge that gap.  Although

plaintiffs claim "systemic" violations of the Rehabilitation Act, far more is required to establish

commonality than simply to label a problem as "systemic" or "systematic."  J.B. ex rel Hart v.

Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999) ("We refuse to read an allegation of systematic

failures as a moniker for meeting the class action requirements."); Clark v. Gunn, No. 06-1068,

2007 WL 1435428, at *26 (D. Nev. May 14, 2007) ("Generalized policy and practice allegations

do not substitute for the kind of specific legal and factual showings required by Rule 23.").  The

individualized nature of Rehabilitation Act analysis precludes a finding of commonality for this

---

exist."  Clarkson v. Coughlin, 783 F. Supp. 789, 798 (S.D.N.Y. 1992).

Subclass.

Plaintiffs allege that there are at least four "common issues of fact and law" that bind together the members of the proposed Rehabilitation Act Subclass. Pls.' Mem. at 12. A cursory review of these allegedly common issues reveals that, in fact, the only issue alleged, though rephrased in four different ways, is whether defendants violated the Rehabilitation Act by engaging in unlawful discrimination.[9] "But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." Falcon, 457 U.S. at 157. As already discussed, the determination of whether the Rehabilitation Act has been violated cannot be made in an across-the-board fashion; rather, it requires a highly individualized inquiry into, first of all, whether a particular individual is an "individual with a disability," as defined in 29 U.S.C. § 705(20)(B), as well as whether the individual is "otherwise qualified," whether the individual was discriminated against in any way, and whether the discrimination was "solely by reason of her or his disability." 29 U.S.C. § 794(a); cf. Sutton, 527 U.S. at 483. Courts have recognized, and common sense

_____

[9]The four supposedly separate issues that plaintiffs list are: "a. whether Defendants systemically exclude Sub-Class members from access to, participation in, and the benefits of, any program, service, facility, or activity at Rivers solely by reason of their disabilities; b. whether Defendants systematically deny access to, participation in, and the benefits of, any part of Rivers or its programs, services, facilities, or activities to Sub-Class members solely by reason of their disabilities; c. whether Defendants have subjected Sub-Class members to discrimination solely by reason of their disabilities; and d. whether Defendants have violated Section 504 of the Rehabilitation Act." Pls.' Mem. at 12. A comparison of plaintiffs' language with the text of the Rehabilitation Act shows that all these issues are actually the same although the first two suggest the violation is "systemic" or "systematic" while the second two do not. See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .").

dictates, that "the effect of a given type of impairment, both on major life activities in general and on a person's ability to perform specific tasks, can vary widely from individual to individual," and that individualized inquiries are particularly necessary in regard to the "individual with a disability" element of a Rehabilitation Act claim.  Chandler, 2 F.3d at 1396.

Where individualized determinations are necessary, the commonality requirement is not met.  Love v. Johanns, 439 F.3d 723, 731 (D.C. Cir. 2006) (affirming district court's finding a lack of commonality where the discrimination claims of a substantial number of class members would require separate determinations of whether the "individual reasons" given for loan denials were pretextual).  Thus, courts have rejected class certification of Rehabilitation Act claims based not only on failure to define a class, as emphasized above, but also on the failure to meet the commonality requirement.  See, e.g., Kent Chojnicki v. Runyon, 180 F.R.D. 237, 243 (W.D.N.Y. 1998) (holding commonality and typicality requirements not met for Rehabilitation Act claims because the issues raised in such claims "require an individualized inquiry, analysis and determination," and that "[e]ven the creation of subclasses would not alleviate the need for individualized fact-driven determinations"); Burkett, 175 F.R.D. at224 (holding the commonality requirement was not met because of the particularized assessments required to determine if individuals were "disabled" within the meaning of the Rehabilitation Act).

Moreover, the breadth of plaintiffs' claims makes it impossible to suppose that the analysis of discrimination or failure to accommodate could be similar for all disabled inmates. For example, plaintiffs allege that individuals confined to wheelchairs face architectural barriers within the Rivers facility that, for example, "require [such individuals] to navigate a path with curbs and other obstacles that impede their trips such that they often cannot reach an accessible

bathroom in time to use it," as well as the lack of showerheads and gym equipment usable by those confined to wheelchairs.  Compl. ¶¶ 11, 12, 14.  These same barriers would pose no obstacle at all to an individual with a severe hearing impairment, or to an individual with severe disabling diabetes or heart disease.  At the same time, the proposed Subclass also would evidently include those who, like proposed Subclass representative John Doe (a pseudonym), are or might be HIV positive, or who, like proposed Subclass representative John Roe (also a pseudonym), allegedly suffer from depression and schizophrenia, for whom the alleged Rehabilitation Act violations would presumably be of an entirely different sort, involving failures in treatment or care rather than architectural accommodations, and in fact are difficult to distinguish, going by the allegations in plaintiffs' Complaint, from the alleged Eighth Amendment violations.[10]  Such a diverse array of issues should not be litigated on a classwide basis.  Among other things, it would be unfair to absent class members, whose circumstances may be quite different, to resolve all Rehabilitation Act issues through the class mechanism.  Garcia v. Veneman, 224 F.R.D. 8, 11 (D.D.C. 2004) (noting the most important purpose of the commonality requirement "is to . . . guard against the 'potential unfairness to the class members bound by the judgment if the framing of the class is overbroad'" (quoting Falcon, 457 U.S. at 161 (internal quotation omitted))).

---

[10]For example, plaintiffs allege that John Doe has been forced to miss meals because Rivers utilizes a "pill line" to distribute prescription medications and that the medications he brought to Rivers were confiscated when he entered the facility.  Compl. ¶ 17.  These allegations are substantially similar to those alleged on behalf of plaintiffs Charles Lewis and Jimmie Fowler, see Compl. ¶¶ 16, 19, whom plaintiffs do not include as members of the proposed Rehabilitation Act Subclass.  Plaintiffs' allegations concerning John Roe are evidently that he has been denied required mental health treatment and medications.  Compl. ¶ 18.  Since plaintiffs claim that medical treatment at Rivers is inadequate for everyone, it is unclear that there is any discrimination claim here, much less one that is "common" to the proposed Subclass.

Plaintiffs have failed to meet their burden of "mak[ing] a significant showing [sufficient] to permit the court to infer that members of the [Sub]class suffered from a common policy of discrimination that pervaded all of the [defendants'] challenged" actions. <u>Love</u>, 439 F.3d at 728 (internal quotation omitted); <u>cf.</u> <u>Garcia</u>, 224 F.R.D. at 13 (commonality was not satisfied because plaintiffs provided no evidence that a common decisionmaker was responsible for otherwise disparate claims of discrimination).[11]  Moreover, the fact that plaintiffs' proposed Subclass also includes those who have not been "adequately . . . diagnose[d]" with having a disability, Pls.' Mem. at 8, makes it even more difficult to conceive of any commonality here.  This case is far different from those where commonality was satisfied because, for example, all proposed class members were subjected to a strip search, <u>Bynum II</u>, 217 F.R.D. at 47, or because plaintiffs pointed to specific policies which, they alleged, affected particular religious groups differently, <u>Adair v. England</u>, 209 F.R.D. 5, 10 (D.D.C. 2002).  Plaintiffs have failed to identify a single "aspect or feature" of the alleged Rehabilitation Act claims that is common to all Subclass members.  <u>Cf.</u> <u>Bynum I</u>, 214 F.R.D. at 33.

## 2. The Subclass's Claim For Damages Also Defeats The Commonality Requirement

For the reasons set forth above, the commonality requirement is not satisfied even in regard to the proposed Rehabilitation Act Subclass's claims for injunctive and declaratory relief.  Commonality is also lacking in regard to the proposed Subclass's request for damages for the alleged Rehabilitation Act violations.  Where monetary relief is sought, the "particularized

---

[11]Tellingly, plaintiffs do not even attempt to list any examples of "systemic" discrimination based on disability, as they do in regard to their Eighth Amendment claims of systemically inadequate medical care.  <u>Cf.</u> Pls.' Mem. at 4-6.

determinations" required in order to establish "the amount of compensatory damages" present no issues common to the class. Lovell v. Chandler, 303 F.3d 1039, 1047 (9th Cir. 2002); see also Jones v. Goord, 190 F.R.D. 103, 113 (S.D.N.Y. 1999) ("[I]t is neither feasible nor desirable to determine monetary damages on a class-wide basis" where "the nature and gravity of the injuries alleged . . . is diverse" and each plaintiff's claim would "require fact-specific inquiry").

Moreover, the combination of seeking both damages and injunctive relief for a proposed Subclass that includes future inmates as well as past and current inmates defeats commonality. Any issues related to damages are clearly not common to any Subclass members who have not yet entered Rivers and therefore cannot have suffered any injury. Similarly, any issues related to injunctive relief are not relevant to those who are no longer at Rivers.

### D.    The Typicality Requirement Of Rule 23(a) Is Not Satisfied For The Proposed Rehabilitation Act Subclass

"Typicality requires that the claims of the representative be typical of those of the class." Taylor v. Dist. of Columbia Water & Sewer Auth., 241 F.R.D. 33, 44 (D.D.C. 2007). "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." Bynum I, 214 F.R.D. at 34. Like commonality, the typicality requirement serves as a "guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157 n.13.

Here, three of the six proposed Subclass representatives (Holloway, Rogers, and Butler)

assert claims related to their confinement to wheelchairs, Compl. ¶¶ 11, 12, 14, one (Doe) asserts

claims related to his condition as HIV positive, Compl. ¶ 17, one (Roe) asserts claims related to

his mental health conditions, Compl. ¶ 18, and one (Robinson) asserts claims related to injuries

he sustained in an automobile accident, Compl. ¶ 15.  The individualized nature of Rehabilitation

Act analysis precludes any one of these individual's Rehabilitation Act claims from being

considered "typical" of anyone else's.  See Kent-Chojnicki, 180 F.R.D. at 243 (holding typicality

requirement not satisfied in Rehabilitation Act action).  For the same reasons discussed above,

any claim of inadequacy of medical care or treatment or failure to accommodate can only be

made in reference to a particular claimant's individual circumstances and the nature of the

claimant's disability.  Accordingly, it is impossible to say that these proposed representatives'

interests are necessarily aligned with those of absent members of the purported Subclass or that

the proposed representatives efforts to assert their own Rehabilitation Act claims will advance

the interests of these absent members.  See In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th

Cir. 1996) ("A necessary consequence of the typicality requirement is that the representative's

interests will be aligned with those of the represented group, and in pursuing his own claims, the

named plaintiff will also advance the interests of the class members.").

Moreover, all but one of the six proposed Subclass representatives (all but Rogers) are no

longer at Rivers.  These representatives can claim damages but not injunctive relief.  Even if the

damages claims of the five representatives no longer at Rivers were typical of the claims of other

past or current disabled inmates, they would not be typical of the claims of future inmates, who

cannot claim damages and could only benefit from injunctive relief.  See Hyatt v. United Aircraft

Corp., 50 F.R.D. 242, 247 (D. Conn. 1970) (holding typicality requirement not satisfied in the

case of a class representative who could only claim damages).  Plaintiffs thus fail to meet their burden in establishing that the typicality requirement is satisfied.

   E.    **The Adequate Representation Requirement Of Rule 23(a) Is Not Satisfied For The Proposed Rehabilitation Act Subclass**

   The adequacy of representation requirement tends to merge with the commonality and typicality requirements, <u>Falcon</u>, 457 U.S. at 157 n.13, and is unsatisfied here for the same reasons discussed above.  In addition, class representatives are inadequate if they "have antagonistic or conflicting interests with the unnamed members of the class."  <u>Adair</u>, 209 F.R.D. at 11.  Here, the fact that five of the six Rehabilitation Act Subclass representatives have nothing to gain from injunctive relief while all representatives seek damages calls into question their interest in adequately protecting the interests of current and future inmates who would be Subclass members.  <u>Amchem Prods.</u>,521 U.S. at 626 (recognizing the conflict between the "currently injured," whose "critical goal is generous immediate payments," and those who will be similarly situated in the future, whose interest is in injunctive relief).  Moreover, class representatives must themselves be members of the class, <u>E. Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977) (emphasizing that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members" (internal quotation omitted)), and, as previously mentioned, it has not been established that all six representatives are actually members of the Subclass.  This determination depends on how the Subclass definition is interpreted and on individualized assessments of whether the representatives are "disabled" within the meaning of the definition.

-23-

**F.    The Proposed Rehabilitation Act Subclass Does Not Meet The Requirements For Certification Under Any Subsection Of Rule 23(b)**

None of the categories set forth in Fed. R. Civ. P. 23(b) are suitable for the claims set forth by the proposed Rehabilitation Act Subclass.  First, 23(b)(1) certification is inappropriate because the individualized assessments that are required to establish Rehabilitation Act violations make it unlikely that the results of separate actions would be inconsistent.  Cf. Fed. R. Civ. P. 23(b)(1)(A).  A holding that an accommodation is required in one instance does not necessarily have any bearing on whether it is required in another instance.  Nor is it likely that any injunctive relief ordered in one individual proceeding would interfere in any way or be incompatible with relief that might be ordered in a different individual proceeding.  Cf. Fed. R. Civ. P. 23(b)(1)(B).  Plaintiffs assert (b)(1) certification is appropriate for their constitutional claims, Pls.' Mem. at 17, but do not cite any authority that supports its applicability to the claims of the Rehabilitation Act Subclass.

Second,  certification under 23(b)(2) is not appropriate because plaintiffs have failed to identify any "grounds" for their alleged Rehabilitation Act claims that would be "generally applicable" to the Subclass or that would make final injunctive or declaratory relief appropriate "with respect to the [Sub]class as a whole."  Cf. Fed. R. Civ. P. 23(b)(2).  As emphasized above, plaintiffs have failed to identify any policy or practice that they allege discriminates against disabled individuals and that they therefore seek to enjoin.  Injunctive relief that addressed the architectural barrier claims of some proposed representatives would not benefit class members without mobility impairments.  Injunctive relief directed at improving the medical treatment of all Rivers inmates is not a remedy available under the Rehabilitation Act.  Modderno v. King, 82

-24-

F.3d 1059, 1061 (D.C. Cir. 1996) (holding that the Rehabilitation Act only addresses discriminatory treatment that distinguishes those who meet the Act's definition of "individual with a disability" from those who do not).

In addition, (b)(2) certification is not appropriate because the Rehabilitation Act Subclass seeks compensatory damages based on members' individualized injuries. The D.C. Circuit has recognized that (b)(2) is "not intended to 'extend to cases in which the appropriate final relief relates exclusively or predominantly to monetary damages.'" Richards v. Delta Air Lines, Inc., 453 F.3d 525, 530 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 23 advisory committee notes). Particularly in regard to five out of the six named representatives and all class members no longer at Rivers, who, as mentioned above, are not in a position to seek or benefit from injunctive relief, the compensatory damages sought here predominate over any injunctive relief. The majority of courts considering the issue have held that claims for damages, by their nature, will predominate over claims for injunctive relief unless the damages claims are purely incidental, flowing automatically from a holding of liability without the need for individualized determinations. Garcia v. Veneman, 211 F.R.D. 15, 23 (D.D.C. 2002) (observing that the Fifth, Seventh, and Eleventh Circuits follow this approach); see also Disability Rights Council, 239 F.R.D. at 29 (recognizing the concerns with (b)(2) certification where damages are sought and concluding the concerns did not preclude (b)(2) certification there only because the plaintiffs' claims of lack of access to public transportation were "fairly uniform," and plaintiffs did not seek compensation for individual injuries). Here, the highly individualized nature of the compensatory damages determinations suggests the predominance of damages issues. See Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 449 (6th Cir. 2002) (vacating (b)(2) class certification because

of the individualized nature of the compensatory damages determinations that would be involved).[12]  Moreover, plaintiffs have not identified any allegedly discriminatory actions that defendants have taken or refused to take that would be "generally applicable" to all members of the proposed Subclass, regardless of the type of disability they might have.

The factors militating against certification under 23(b)(3) are similar to the concerns with (b)(2) certification, in regard to the predominance of damages issues.  In addition, "Rule 23(b)(3)'s predominance criterion is far more demanding than the commonality requirement of Rule 23(a)."  Love v. Veneman, 224 F.R.D. 240, 246 (D.D.C. 2004) (internal quotation omitted),aff'd in relevant part by Love, 439 F.3d at 733; see also Garcia, 211 F.R.D. at 24 (rejecting (b)(3) certification where the necessity of fact-specific individualized inquiries defeated any claim that common issues predominated).  For all the reasons that Rehabilitation Act claims are more properly treated on an individual basis, discussed in detail above, Rule 23(b)(3)'s requirement that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" is not satisfied.  Because (b)(3) certification is not appropriate to begin with, it would also be inappropriate to certify a hybrid (b)(2)/(b)(3) class.  Garcia, 211 F.R.D. at 25 (rejecting hybrid certification where (b)(3) requirements are not met because "hybrid certification 'requires satisfaction of both the (b)(2)

---

[12]The fact that the D.C. Circuit has authorized district courts to allow (b)(2) class members to opt out of the class where compensatory damages are sought, see Eubanks v. Billington, 110 F.3d 87, 95-96 (D.C. Cir. 1997), does not make (b)(2) certification appropriate in this case.  As the Circuit Court in Billington recognized, allowing class members to opt out of an otherwise mandatory class weakens the potential that a class action will be resolved through settlement.  Id.  It also unfairly exposes defendants to broad injunctive requirements while at the same time subjecting them to a multiplicity of damages claims by individual plaintiffs who have opted out of the class.

and (b)(3) requirements'" (quoting Lott v. Westinghouse Savannah River Co., 200 F.R.D. 539, 563 (D.S.C. 2000))).

## II.    THE PROPOSED EIGHTH AMENDMENT CLASS SHOULD NOT BE CERTIFIED

### A.    Plaintiffs' Proposed Class Definition Is Too Broad

In regard to plaintiffs' Eighth Amendment claims, the proposed class of "former, current and future prisoners in the custody of the [BOP], and incarcerated at [Rivers], who, during their incarceration at Rivers, depend on the organizations, systems, policies, and practices of Defendants for their receipt of medical, dental, and mental health care" should not be certified because its definition is too broad. Although plaintiffs seek only injunctive and declaratory relief for their Eighth Amendment claim, the class includes past inmates who have no interest in such relief, and no standing to seek it. Perhaps for this reason, federal defendants are unaware of any other instance where a class alleging inadequate medical care at a prison in violation of the Eighth Amendment and seeking injunctive relief has included past inmates. See, e.g., Flynn, 2007 WL 805788, at *3 (certifying class of "current and future" inmates and citing other cases with similar class definitions in regard to Eighth Amendment claims).

### B.    The Commonality Requirement Is Not Satisfied In Regard To Plaintiffs' Proposed Eighth Amendment Class, Particularly In Regard To Their Claims Against Federal Defendants

Plaintiffs assert that there are "many common issues of fact and law" that make class certification appropriate in this case. Pls.' Mem. at 11. The six issues they list, insofar as these issues relate to federal defendants at all,[13] essentially mirror a single legal claim: that defendants

---

[13]The sixth issue listed is "whether the inadequacies in the provision of medical, mental health, and dental care at Rivers arise from Defendants' arbitrary efforts to reduce costs and, in

have violated the Eighth Amendment in the provision of medical, mental health, and dental care

to Rivers inmates.  Id.  Plaintiffs appear to rely, for purposes of establishing commonality, on a

bare assertion that there are "'systems-level' violations of the Eighth Amendment at Rivers.  Pls.'

Mem. at 13.  However, as explained above in regard to plaintiffs' proposed Rehabilitation Act

Subclass, more is required.  The Supreme Court has held that even where the claim is

discrimination, which "by definition" is treatment that is based on one's membership in a

particular group, Rule 23 requires a plaintiff to make some showing that the way he was treated

is "typical" of the way others have been treated, was motivated by a particular "policy," or is

reflected in other "practices" of the defendant.  Falcon, 457 U.S. at 158.  Unlike discrimination

claims, there is nothing intrinsically group-oriented about inadequate medical, mental health, and

dental care claims.  In regard to medical care, courts have required a specific showing of

"repeated acts which disclose a pattern of conduct by the prison medical staff, or by evidence of

such systemic deficiencies in staffing, facilities, or procedures that unnecessary suffering is

inevitable."  Dean v. Coughlin, 107 F.R.D. 331, 333 (S.D.N.Y. 1985); accord Flynn, 2007 WL

805788, at *4 (recognizing the requirement that  a "pattern of misconduct" be apparent from the

_____

the case of GEO, to boost profits."  Id.  Federal defendants are uncertain how this asserted
common issue of law relates to any of the factual or legal claims against federal defendants that
plaintiffs raised in their Complaint.  It is possible that, by "efforts to reduce costs," plaintiffs refer
to the BOP's entry into a contract with GEO Group to house D.C. felony offenders.  However, as
explained in federal defendants' Motion to Dismiss, or in the Alternative, to Transfer ("Fed.
Defs.' MTD Mem."), the BOP was required by Congress to enter into such a contractual
relationship. Fed. Defs.' MTD Mem. at 3.  Plaintiffs did not raise any suggestion in their
Complaint that federal defendants could have violated the Eighth Amendment simply by
fulfilling their statutory obligation.  Plaintiffs have also not challenged the terms of the contract
between the BOP and GEO Group as unconstitutional on their face (nor are federal defendants
aware of any basis upon which plaintiffs might assert such a claim).  Federal defendants therefore
disagree that this issue is implicated at all in regard to plaintiffs' Eighth Amendment claims,
much less that it is common to all class members.

facts alleged in support of inmates claims in order to show commonality).

Plaintiffs list a number of allegedly systemic problems at Rivers. Pls.' Mem. at 4-6. However, the factual descriptions in their Complaint regarding the treatment of ten individuals simply are insufficient to support these allegations of systemic deficiencies. The complaints of plaintiff Mathis relate to the provision of dental care and the treatment of an infection. Compl. ¶ 10. The complaints of plaintiff Holloway relate to the provision of physical therapy and prescription medication for bone loss.[14] Compl. ¶ 11. The complaints of plaintiff Rogers relate to the provision of physical therapy and medications. Compl. ¶ 12. The complaints of plaintiff Hamilton relate to the provision of treatment for boils on his leg which ultimately proved to be symptoms of Methicillin-resistant Staphylococcus aureus ("MSRA"), medications, treatment for pain in one knee, a vision examination, and eyeglasses. Compl. ¶ 13. The complaints of plaintiff Butler relate to the provision of physical therapy, prescription pain medications, and mental health care. Compl. ¶ 14. The complaints of plaintiff Robinson relate to the provision of physical therapy and pain medication. Compl. ¶ 15. The complaints of plaintiff Lewis relate to the provision of physical therapy, speech therapy, medications, and care by cardiology and neurology specialists. Compl. ¶ 16. The complaints of plaintiff Doe relate to the provision of medications and a special diet. Compl. ¶ 17. The complaints of plaintiff Roe relate to the provision of mental health care, psychotropic medications, and treatment for chronic physical conditions. Compl. ¶ 18. The complaints of plaintiff Fowler relate to the provision of insulin for

---

[14]In regard to plaintiff Holloway and other members of the proposed Rehabilitation Act Subclass, this list attempts to include any claims that might conceivably relate to the individual's Eighth Amendment claims although plaintiffs do not distinguish which facts relate to which claims.

diabetes and high blood pressure medication.  Compl. ¶ 19.  While these claims may suffice to

raise a common issue regarding Rivers' provision of medications, and perhaps of physical

therapy, they do not provide justification for discerning a common issue related to medical,

dental, and mental health care in general.

In particular, the fact that only one plaintiff asserts claims regarding dental care, only one

asserts claims regarding vision care, and only two assert claims regarding mental health care does

not support the notion that these isolated incidents are typical or reflect a common policy or

pattern of misconduct regarding these categories of care.  As dental, vision, and mental health

examinations all rely on different medical professionals in particular areas of specialization, one

or two individuals' deficient treatment in one of these areas says little about how most inmates

are treated in that particular area, and nothing about the provision of treatment in other areas.

Thus, the acts that have been alleged do not reflect any particular pattern or practice in regard to

the provision of dental, vision, or mental health care.

Moreover, even if the Court determines that plaintiffs have alleged a pattern or practice in

regard to the provision of medical care, class certification should be limited to the issues related

to the particular pattern or practice that plaintiffs have identified.  Plaintiffs' assertions that a

number of Rivers inmates have faced initial confiscation of prescription medications, and

distribution of medications through a "pill line," are insufficient to sustain certification of a class

to challenge the entire system of medical care at Rivers.

Furthermore, even if the Court determines that plaintiffs have sufficiently identified a

policy or practice at Rivers that fulfills the commonality requirement with respect to plaintiffs'

claims against GEO Group, plaintiffs clearly have not met the requirement with respect to their

claims against federal defendants.  As discussed in federal defendants' Motion to Dismiss or

Transfer, plaintiffs have not identified any policy or practice of federal defendants – who do not

themselves provide medical, mental health, or dental care to inmates at Rivers – that they are

challenging.  See Fed. Defs.' MTD Mem. 19-21.  None of the descriptions of the alleged

inadequacies in the care or treatment of the named plaintiffs mentions any involvement, action,

or even inaction by federal defendants that had an impact on these plaintiffs.  Cf. Compl. ¶¶ 10-

19.  Likewise, none of the alleged "examples of Defendants' dysfunctional organizations,

systems, policies, and practices" refer to organizations, systems, policies, or practices of federal

defendants.  Cf. Pls.' Mem. at 4-6.  Thus, no common policy or pattern of misconduct by federal

defendants is discernible from plaintiffs' Complaint or memoranda.

      Plaintiffs suggest that because they request only injunctive and declaratory relief for their

Eighth Amendment claim, the existence of common issues should be automatically recognized.

Pls.' Mem. at 11.  In fact, however, plaintiffs' failure to identify any specific actions that should

be taken, while instead merely asserting entitlement to broad and undefined injunctive relief,

actually demonstrates a lack of commonality.  In this regard, the circumstances in this case are

quite similar to those described in Carson ex rel. Foreman v. Heineman, 240 F.R.D. 456 (D. Neb.

2007), where the court found a lack of commonality in claims challenging a state's handling of

its child welfare system.  Id. at 506.  The claim in that case, as described by the court, was "that

due to a lack of monetary resources, caseworkers, and more and better placement options, and the

State's reluctance to pursue termination of parental rights, the named plaintiffs are languishing in

the child welfare system rather than living a normal family life."  Id.  The court rejected the claim

that "because injunctive relief is requested, the factual differences among the class members are

largely irrelevant." Id. (internal quotation and alteration marks omitted). Rather, it found that a lack of commonality was demonstrated by the nebulous nature of the requested relief, which essentially would have required the court to order that the state "obey the law." Id. at 507.

Here as well, plaintiffs seek injunctive relief that is so vague and so broad in its formulation that, if granted, would essentially consist of an order by this Court that the defendants obey the law. Plaintiffs' prayer for relief requests that this Court "enjoin Defendants, their agents, employees and all persons acting in concert with them, from subjecting the named Plaintiffs and any member of the Class or Sub-Class to the organizations, systems, policies, practices, and institutional conditions that have caused and continue to cause the delivery of constitutionally inadequate and unlawful medical, dental, and mental health services at Rivers." Compl. at p. 47. As in Carson, plaintiffs essentially ask the Court to require federal defendants to comply with Eighth Amendment requirements without providing any suggestion of what this would entail.

In addition, such relief, if ordered, would place this Court in the position of overseeing every aspect of federal defendants' oversight of GEO Group's compliance with the BOP-GEO Group contract, insofar as this oversight might relate to GEO Group's provision of medical care. To the extent the contract between BOP and GEO Group does not require, or allow, the kind of oversight activities that plaintiffs seem to suggest are required, the Court will then be in the position of changing the terms of the contract, and altering the contractual relationship between the BOP and GEO Group. Before engaging in such an endeavor, this Court should require plaintiffs, at the very least, to identify a single policy or practice of federal defendants, as opposed to GEO Group, that affects all proposed class members in common in a way that

-32-

violates the Eighth Amendment.

Finally, plaintiffs cite Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 24 (2d Cir. 1971), for the proposition that the commonality requirement is met because "each member of the Class . . . has a common interest in preventing the recurrence of the wrongful conduct alleged." Pls.' Mem. at 12. Again, the "conduct" that appears to be at issue here is so diverse and vaguely defined that any uniform interest, such as plaintiffs claim, is doubtful. Moreover, though Inmates of Attica also concerned a class of inmates, that class was comprised only of current inmates. Inmates of Attica, 453 F.2d at 24. The court's statement there clearly does not apply with respect to those purported class members here who are past, but not current, Rivers inmates. As explained, past inmates have no legally cognizable interest in future conditions at Rivers. Thus, to the extent the class includes all past Rivers inmates, commonality is lacking.

## C.    The Named Class Members Who Are No Longer At Rivers Are Not Adequate Class Representatives

"A litigant must be a member of the class which he or she seeks to represent at the time the class is certified." Sosna v. Iowa, 419 U.S. 393, 403 (1975); accord Johnson v. Bd. of Regents, 263 F.3d 1234, 1268 (11th Cir. 2001) ("[A] plaintiff cannot serve as a class representative if she lacks standing to advance the class's claim."). Here, as explained in federal defendants' Memorandum In Support Of Their Motion To Dismiss, seven of the ten proposed class members named in plaintiffs' Complaint are no longer at Rivers because they have either been released or transferred. See Fed. Defs.' MTD Mem. at 21-26. For the reasons explained above, even if a class is otherwise appropriate, the proposed class definition should be narrowed

-33-

to exclude past Rivers inmates. Assuming that a class is certified and the class definition is so narrowed, the seven individuals no longer at Rivers should not be permitted to represent the class in this litigation because they will not be members of the class and because they cannot adequately represent the interests of those (current and future Rivers inmates) who are. See, e.g., Lewis v. Cunningham, No. 05-9243, 2007 WL 2412258, at *4 (S.D.N.Y. Aug. 23, 2007) (stating that proposed representative of inmate class "has been released from custody, and he thus cannot fairly and adequately represent a class of currently incarcerated prisoners with chronic heart conditions").

Moreover, because it is well established that those individuals who were not in Rivers at the time the Complaint was filed lack standing to seek equitable relief, and the claims of those who have been released or transferred since then are moot, these individuals are not qualified to serve as class representatives. See Gates v. Towery, 430 F.3d 429, 432 (7th Cir. 2005) (holding plaintiffs were adequate representatives in regard to seeking monetary relief but lacked standing to seek prospective injunctive relief); Tucker v. Phyfer, 819 F.2d 1030, 1035 (11th Cir. 1987) (holding that where plaintiff's claim had become moot by the time he filed for class certification, the motion for class certification must be denied); Walker v. Haynes, 659 F.2d 46, 48 (5th Cir. 1981) (holding that plaintiff inmates who had been transferred to a different prison by the time of their amended complaint could not seek class certification of their claims because they lacked standing); Nichols v. Riley, No. 04-0065, 2007 WL 60912 (S.D. Ala. Jan. 8, 2007) (holding that plaintiff inmate's transfer out of the prison required dismissal of the case despite plaintiff's pending motion for class certification); Dallas Gay Alliance, Inc. v. Dallas County Hosp. Dist., 719 F. Supp. 1380, 1384-85 (N.D. Tex. 1989) ("The named plaintiff's individual claims must be

"live" both at the time the class action complaint is filed and at the time of class certification.");

see also Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir. 2002) (reversing district

court's certification of a class before determining whether individual plaintiffs had standing

because "[s]tanding is an inherent prerequisite to the class certification inquiry" (internal

quotation omitted)).  The plaintiffs who are no longer at Rivers should therefore not be accorded

the status of class representatives even if the case is certified as a class action.


## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification should be denied.


Dated: November 2, 2007                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General
                                           JEFFREY A. TAYLOR
                                           United States Attorney
                                           VINCENT M. GARVEY
                                           Deputy Branch Director

                                           /s/ Kathryn L. Wyer
                                           KATHRYN L. WYER
                                           U.S. Department of Justice, Civil Division
                                           20 Massachusetts Ave. NW, Room 7218
                                           Washington, D.C.  20001
                                           Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                           kathryn.wyer@usdoj.gov
                                           *Attorneys for Federal Defendant*s

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEITH MATHIS, REON HOLLOWAY, DAVID ROGERS, BENJAMIN HAMILTON, CARL BUTLER, HAROLD ROBINSON, CHARLES LEWIS, JOHN DOE, JOHN ROE, and JIMMIE FOWLER, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 07-1155 (RMU) |
|  | ) |  |
| GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the UNITED STATES BUREAU OF PRISONS, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## [Proposed] ORDER

Upon the Court's consideration of plaintiffs' motion for class certification, the opposition

thereto, and the entire record in this case, it is, this _____ day of _____, 2007,

ORDERED that plaintiffs' motion for class certification is denied.


_____
The Honorable Ricardo M. Urbina
United States District Judge