**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEITH MATHIS *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Civil Action No.:    07-1155 (RMU) |
| v. : | |
| : | Document Nos.:    5, 29 |
| GEO GROUP, INC. *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' MOTIONS TO TRANSFER

**I.  INTRODUCTION**

This case comes before the court on the defendants'[1] motions to transfer the case to the Eastern District of North Carolina. The plaintiffs filed a proposed class-action lawsuit on behalf of past, present and future prisoners at Rivers Correctional Institute ("Rivers") who are dependent on the institution for medical, dental and mental health care. The plaintiffs claim that the defendants, owners and operators of Rivers, failed to provide adequate care and reasonable accommodations for disabled prisoners in violation of the Eighth Amendment to the U.S. Constitution; the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*; and state contract and tort law. In the alternative, the defendants request that the court transfer this suit to the Eastern District of North Carolina, the district in which the Rivers is located, because the events giving rise to the claims occurred there, the evidence is prevalent there, and the majority of prospective witnesses reside there. The court agrees that transferring the case furthers the interests of justice and grants the defendants' request.

---

[1]    Defendant Geo Group filed a motion to transfer on July 26, 2007. Approximately two months later, defendants Federal Bureau of Prisons and its director, Harley Lappin, also filed a motion to transfer. For ease of reference the court refers to these parties collectively as "the defendants."

## II.  FACTUAL & PROCEDURAL BACKGROUND

Title XI of the Balanced Budget Act of 1997, entitled the National Capital Revitalization and Self-Government Improvement Act of 1997 (the "Revitalization Act"), requires the Bureau of Prisons to incarcerate "at least 50 percent of the District of Columbia sentenced felony population" in "private contract facilities."  Pub. L. No. 105-33, 111 Stat. 251 (1997).  Rivers is one such private contract facility, which defendant GEO Group ("GEO") owns and operates pursuant to a contract with its co-defendant the Federal Bureau of Prisons ("BOP").  Compl. ¶ 21.  In 1998, the plaintiffs allege that GEO entered into a contract with BOP to house prisoners at Rivers (the "Rivers Contract").  *Id.* ¶ 31.  Since its opening in 2001, thousands of D.C. felony offenders have been incarcerated at Rivers, which currently houses 1,300 prisoners.  *Id.* ¶ 32.  The plaintiffs contend that the defendants have neglected their contractual obligations, which require GEO to provide medical, dental and mental health care and require the BOP to ensure that appropriate care is being provided.  *Id.* ¶¶ 31, 33-35 (listing types of reports and other documents GEO must submit to the BOP pursuant to the Rivers Contract).

On June 28, 2007, ten named plaintiffs, who are current or former prisoners at Rivers, brought suit against the defendants – GEO, the BOP and its director – on behalf of all former, present and future prisoners at Rivers.  *Id.* ¶ 40.  The plaintiffs allege that the defendants "are deliberately indifferent to Plaintiffs' serious medical needs, [which] . . . perpetuates a health care delivery system . . . that is so grossly inadequate as to violate the legal rights of the Plaintiffs . . . ."  *Id.* ¶ 38.  Specifically, the plaintiffs assert that (1) the staffing, training and supervision of the health care system is "[w]holly insufficient"; (2) the access to health care, including access to medication, is "habitually and indiscriminately denied"; (3) there are extreme delays in receiving the medication provided; (4) there are no protocols for handling highly contagious outbreaks; (5)

there is no effective quality control procedure or adequate grievance processing department; and (6) disabled prisoners are "denied access to [] programs, services, facilities, and activities." *Id.* ¶¶ 38, 51. These failures, the plaintiffs contend, violate the Eighth Amendment, the Rehabilitation Act and state contract and tort law. *Id.* ¶¶ 62-89. They request that the court permanently enjoin the defendants from continuing sub-standard health care practices and award monetary damages, including punitive damages and attorneys' fees. *Id.* at 46-48.

GEO responded to the plaintiffs' complaint on July 26, 2007 by filing a motion to dismiss for lack of personal jurisdiction and to transfer the case to the Eastern District of North Carolina, the district in which Rivers is located. *See generally* GEO Group's Mot. to Dismiss and to Transfer ("GEO's Mot."). Approximately two months later, the BOP and its director, Harley Lappin, filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, or in the alternative, to transfer the case to the Eastern District of North Carolina. *See generally* Fed. Defs.' Mot. The plaintiffs, in turn, filed a motion to certify the class. The court now turns to the motions to transfer.

## III.  ANALYSIS

Generally, a court should decide questions of personal jurisdiction before questions of venue. *Cameron v. Thornburgh*, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)). Where a "sound prudential justification" exists, a court may consider venue without deciding the question of personal jurisdiction. *Id.* Accordingly, because "it provides an easier resolution of the case," the court focuses first on the question of venue. *Id.*

### A. Legal Standard for Venue Under 28 U.S.C. § 1391(b) and Transfer Pursuant to 28 U.S.C. § 1406(a)

Rule 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiffs' chosen forum. FED. R. CIV. P. 12(b)(3). When federal jurisdiction is not premised solely on diversity, 28 U.S.C. § 1391(b) controls venue, establishing that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

If the district in which the action is brought does not meet the requirements of section 1391(b), then that district court may either dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision of whether dismissal or transfer is "in the interest of justice" is committed to the sound discretion of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Generally, the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962); *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).

To transfer the action, the court must ensure as a preliminary matter that venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum. *Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981) (per curiam); *Crisler v. Schmeltzer*, 1990 WL 113887, at *2 (D.D.C. July 24, 1990). The decision regarding transfer rests within the court's sound discretion. *Naartex*, 722 F.2d at 789.

### B.  The Court Grants the Defendants' Motions to Transfer

The plaintiffs do not contest that venue is proper in the Eastern District of North Carolina.  They, however, chose to file this suit in the District of Columbia, and usually a strong presumption exists in favor of the plaintiffs' choice of forum.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  But this preference is not insurmountable, and here, it is entitled to less weight given the posture of many of the plaintiffs as out-of-state prisoners seeking injunctive and declaratory relief.  *See* Compl. at 46-48; *see also Young v. Dir., U.S. Bureau of Prisons*, 367 F.2d 331, 332 (D.C. Cir. 1966) (holding that "declaratory judgment actions brought by inmates not confined in the District of Columbia, not sentenced in the District of Columbia, and seeking resolution of issues in no way related to this jurisdiction . . . should be transferred as a matter of course").  Although the plaintiffs are correct in stating that the standard in *Young* – requiring transfer "absent extraordinary circumstances" – does not apply in this case because the plaintiffs were sentenced in the District of Columbia, Pls.' Opp'n to GEO's Mot. at 15, the interests analyzed by the court in *Young* favor transfer in this case.  These interests are discussed below.

#### 1.  Availability of Witnesses

"Courts have consistently transferred actions when the majority of witnesses live near the transferee forum . . . ."  *Claasen v. Brown*, 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996).  Indeed, "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses."  *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995).  Although at

5

least two of the plaintiffs currently reside in the District of Columbia, several[2] of the plaintiffs continue to be incarcerated at Rivers, and the class the plaintiffs seek to represent includes "past, current, and future prisoners of Rivers . . . ." Compl. ¶ 40.  The plaintiffs recognize that there are "currently approximately 1,300 men at Rivers, each of whom depends upon Defendants to receive needed medical, dental, and mental health care while incarcerated." *Id.* ¶ 42.  Such a large number of potential plaintiffs, including several of the named plaintiffs, located in the Eastern District of North Carolina weighs in favor of transfer.  *Joyner v. District of Columbia*, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (transferring a case because "the plaintiff's claim will require testimony or files that are most easily obtained at or near the place of incarceration").

The plaintiffs argue that the inconvenience of transporting prisoners should be disregarded if the prisoners choose the District of Columbia as their preferred forum.  Pls.' Opp'n to GEO's Mot. at 16.  The plaintiffs cite *Starnes v. McGuire* to support this proposition, but in *Starnes*, this Circuit adopts the opposite view: that "[a] prisoner cannot eliminate [the difficulties of prisoner transportation] by stating his preference for this forum." *Starnes v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974).  In adopting this view, the court explicitly rejects the argument that a prisoner "should be able to force the court to ignore such inconveniences" and concludes "that the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be

---

[2]   The federal defendants submitted an affidavit by James Schluter, an Administrative Remedy Specialist for the Federal Bureau of Prisons.  Fed. Defs.' Mot. to Dismiss or in the Alternative to Transfer, Ex. 1.  As of September 13, 2007, Schluter reported that plaintiff Keith Mathis's projected release date is February 15, 2008; plaintiff David Rogers remained in custody pending a court hearing; plaintiff Benjamin Hamilton's projected release date is January 31, 2020; and plaintiff Jimmie Fowler has been transferred to FCI Petersburg, and his projected release date is July 13, 2009. *Id.*

considered . . . ." *Id.* at 928.  Consequently, the plaintiffs' argument is unavailing, and their use of *Starnes* is both perplexing and troubling.

The plaintiffs also argue that two of the three defendants are located in the District of Columbia.  While this is technically true, the number of persons employed by the defendants with relevant information to the plaintiffs' claims is far greater in the Eastern District of North Carolina than in the District of Columbia.  For example, the individuals responsible for (1) denying the prisoners' medical requests,[3] (2) confiscating medicine and medical devices,[4] and (3) addressing prisoners' complaints[5] were all located at Rivers.  Plainly then, "the balance of convenience is strongly in favor of the defendant[s]."  *Gross v. Ownen*, 221 F.2d 94, 95 (D.C. Cir. 1955).

## 2.  Claims Arose in Eastern District of North Carolina

The plaintiffs argue that their claims arise out of conduct in both the District of Columbia and in the Eastern District of North Carolina.  Pls.' Opp'n to GEO's Mot. at 16.  They contend that "the actions giving rise to th[e] unlawful conduct include acts and omissions that occurred in the District of Columbia," referencing the Rivers Contract requiring GEO to provide adequate

---

[3]   The plaintiffs allege that a medical staff member informed a prisoner that he has "a snowball's chance in hell" of receiving the medical relief requested.  Compl. ¶ 15.  In addition, the plaintiffs allege that a nurse dismissed a prisoner's request for an updated prescription without examining the prisoner's vision because "his eyesight was fine, and . . . he didn't need glasses."  *Id.* ¶ 13.  In other incidents, a doctor allegedly told a prisoner that "physical therapy services were not provided at Rivers," *id.* ¶ 17, and another prisoner was told that psychotropic medications were discontinued or replaced because "[t]his is a business," *id.* at 19.  The last statement is pertinent given the plaintiffs' allegation that "the Rivers Contract is a fixed price contract providing for a set payment to GEO per time period, irrespective of GEO's costs of providing the services . . . .  Thus, to the extent that GEO is able to reduce the costs of . . . health services at Rivers, GEO's profits are increased."  Compl. ¶ 36.

[4]   The plaintiffs allege that prison staff confiscated medicine, back and knee braces, and orthopedic shoes.  Compl. ¶¶ 11, 16-17, 19.

[5]   The plaintiffs also allege that the defendants do not have an adequate quality-control system and that the grievance process is grossly deficient.  Compl. ¶¶ 38(h)-(i).

7

health care; GEO's inadequate reporting to the BOP; and the improper oversight of the facility by the BOP. *Id.* The defendants dispute these connections,[6] but in any event, the court determines that they are merely incidental to the plaintiffs' claims. The gravamen of the plaintiffs' claims that (1) "[m]edical professional staffing levels at Rivers are grossly inadequate";[7] (2) "Defendants routinely refuse to provide prisoners at Rivers with treatment for their serious chronic medical conditions";[8] and (3) "Defendants refuse to make reasonable accommodations for [prisoners with disabilities],"[9] Compl. ¶¶ 3, 6, rests squarely within the Eastern District of North Carolina and has no connection with the District of Columbia.

### 3. Access to Evidence

The plaintiffs' allegations relate to treatment received while incarcerated at Rivers, Compl. ¶¶ 10-19, and evidence surrounding this treatment[10] is located at Rivers. GEO's Mot., Ex. 1 ("White Aff.") ¶¶ 3-5 (stating that "an inmate's records, including [his] Medical Records,

---

[6]  The Vice President in charge of Contract Administration for GEO, Amber Martin, declared that the "Bureau of Prisons' monitoring and administration of the Rivers Contract takes place at the Rivers Correctional Institution in Winton, North Carolina" and that GEO submits all reports to a representative from the BOP in Winton. GEO's Reply, Ex. 2 ("Martin Decl.") ¶¶ 6, 11.

[7]  The plaintiffs contend that "the lone medical doctor . . . also maintains a full-time practice in a local community"; "[t]here is only one part-time dentist"; "[t]here are no trained dental assistants'"; "[t]here is no physical therapist on staff or available on a contract basis"; and "[t]here is only one part-time psychologist." Compl. ¶ 28(a).

[8]  The plaintiffs assert that "Defendants routinely and knowingly fail to provide prisoners with access to essential health care"; they are "habitually and indiscriminately denied treatment," which includes denials of requests for medication and for outside health care, even when GEO Corp. is not equipped to handle the prisoner's condition. Compl. ¶¶ 28(b)-(d). As to the chronic conditions, the plaintiffs insist that GEO Corp. fails to "provide appropriate facilities," "to instruct and assist prisoners in following [medication regimes]," to properly administer medications, "to adequately monitor and treat secondary infections" and "to provide physical therapy treatment." *Id.* ¶¶ 28(f)-(g).

[9]  *See supra* note 5.

[10]  This includes records of denials of requests for medical treatment, records of confiscated medical items, and records of the frequency and type of treatment provided to prisoners. Compl. ¶¶ 11, 16.

are maintained at Rivers while the inmate is incarcerated there"). Furthermore, evidence as to the accessibility of facilities to disabled inmates in and around Rivers will necessarily be taken from the Rivers location. Compl. ¶¶ 11-12, 14. Even the policies, requests, reports and invoices sent to the BOP pursuant to GEO's obligations under the Rivers Contract are located at Rivers. GEO's Reply at 10 (stating that "the administration, monitoring, and oversight of the Rivers Contract are handled by individuals located at Rivers Correctional Institute"); Compl. ¶ 34 (detailing GEO Corp.'s obligations to the BOP under the Rivers Contract). Accordingly, judicial economy is best served by transferring this case to the Eastern District of North Carolina.

### 4. Public Interests

The parties dispute a number of public interest factors including the applicable law, the interest of the respective forums and the congestion of the court dockets. GEO's Mot. at 9-12; Pls.' Opp'n to GEO's Mot. at 18-21. In the court's view, these factors do not heavily sway for or against transfer. The court does note, however, that there continues to be "no sound reason" to litigate all actions against federal officials in the District of Columbia, as this would unnecessarily clog the court's docket. *Young*, 367 F.3d at 333 n.7.

### IV.  CONCLUSION

For the foregoing reasons the court grants the defendants' motions to transfer. An order consistent with the Memorandum Opinion is separately and contemporaneously issued this 28th day of February 2008.

          RICARDO M. URBINA
          United States District Judge